**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ISLAND VIEW CROSSING II, L.P., | : | |
| | : | Case No. 17-14454 (ELF) |
| | : | |
| Debtor. | : | |
| | : | |

**DEBTOR'S MOTION FOR ENTRY OF A FINAL ORDER AUTHORIZING THE DEBTOR TO: (I) OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 364 AND 363 OF THE BANKRUPTCY CODE, (II) ENTER INTO VARIOUS LOAN DOCUMENTS, AND (III) GRANTING LIENS ON PROPERTY OF THE ESTATE SENIOR TO ALL OTHER LIENS PURSUANT TO SECTION 364(d)(1) OF BANKRUPTCY CODE AND MODIFYING THE AUTOMATIC STAY TO IMPLEMENT THE FINANCING TERMS**

Island View Crossing II, L.P. (the "Debtor"), by and through its undersigned counsel, hereby moves for post-petition financing and other related relief as above captioned, and in support hereof, states as follows:

**Introduction**

By this motion (this "Motion"), the Debtor is requesting the entry of a final order (the "Final DIP Order") authorizing the Debtor to enter into a certain Business Loan Agreement (the "Credit Agreement"), as well as other related loan and collateral documents (collectively, the "Loan Documents"), to obtain a post-petition line of credit in the maximum principal amount of $4,100,000.00 (the "Loan"). As more fully set forth below, the Loan will be used to fund construction and other related costs associated with the completion of a portion of the Debtor's real property and improvements located generally at Radcliffe Street in Bristol Borough, Bucks County, Pennsylvania and known as "Island View Crossing" (the "Real Property"), which consists of a residential real property development located on approximately 17.5 acres and

approved for 73 townhouses and 96 condo units (each such townhouse and condo being referred to as a "Unit").

Of the combined 169 Units in the Real Property project, the proposed financing will enable the Debtor, among other things, to construct 22 Units. Then, upon the sale of 20 of those Units (the other two will be models to spur additional sales), the Debtor will have repaid the *entire* proposed post-petition Loan, paid or escrowed meaningful sums towards certain creditors holding a mortgage lien or liens on the Real Property and created much needed capital to complete the project, which, once complete, will result in the payment in full of all allowed claims in this case.

The Credit Agreement and Final DIP Order approving this Motion are not yet in final form; accordingly, the Debtor will file each of the foregoing as a supplement to this Motion, together with an updated Bankruptcy Rule 4001(c)(1)(B) Concise Statement with all appropriate cross references.

## **Bankruptcy Rule 4001(c)(1)(B) Concise Statement**

The Loan transaction, if approved by this Court, provides for the following:

a. *Borrower:*   Island View Crossing II, L.P. (i.e., the Debtor).

b. *Lender:*  Commonwealth Capital, LLC ("Commonwealth")[1]

c. *Guarantors:* Island View Properties, Inc., AmeriCorp Homes Inc. and Renato J. Gualtieri.

d. Loan *Amount:*   $4,100,000.00.

e. *Use of Proceeds:* The proceeds of the Loan shall be used as follows: (i) $2,800,000 to fund the closing costs, working capital, soft costs, completion site work, and finish construction of Building 4 (Units 41, 42, 43, 44, 45, 46 and 47) and Building 2 (Units 7, 8, 9, 10 and 11) and (ii) $1,300,000 to fund

---

[1] Commonwealth has advised the Debtor that Susquehanna International Group ("Susquehanna") will be a participant in the proposed post-petition financing facility. Accordingly, all references to Commonwealth will be deemed to refer to Commonwealth, along with Susquehanna as its loan participant.

    construction and related costs of Building 10 (Units 37, 38, 39 and 40) and Building 11(Units 31, 32, 33, 34, 35 and 36). Construction-related draws will be based upon a draw request schedule approved by Commonwealth.

  f. *Origination Fee:* An origination fee equal to 4% of the Loan amount (i.e., $164,000) will be paid by the Debtor to Commonwealth from the Loan proceeds.

  g. *Interest Rate:* Each advance under the Loan shall bear interest on the unpaid principal amount thereof from the date of such advance through the first anniversary of the Loan at a fixed annual rate of 12% and thereafter at an annual rate equal to the greater of (i) *Wall Street Journal* Prime Rate plus 8% or (ii) 12%.

  h. *Interest Reserve:* $492,000 of the Loan will be reserved and not available for draws by the Debtor (the "Interest Reserve"); instead, the Interest Reserve will be advanced monthly by Commonwealth to pay accrued interest on account of the Loan until the Interest Reserve is depleted.

  i. *Loan Payments:* Interest on each amount advanced on account of the Loan shall be payable in arrears on a monthly basis from the Interest Reserve and thereafter by the Debtor from operating capital accumulated from the sale of Units. Furthermore, the Debtor shall pay to Commonwealth the sum of $140,000 upon the sale of each Unit identified in subpart e. above and an additional $144,445 upon the sale of Units from Buildings 10 and 11, all of which will be applied by Commonwealth against the principal balance of the Loan.

  j. *Loan Term*: 2 years with an option to extend for 6 months at the request of the Debtor, which request can be approved or denied by Commonwealth at its sole discretion. Upon any such renewal, the Debtor must pay a renewal fee equal to 1% of the amount committed for the renewal term.

  k. *Grant of Liens:* Pursuant to Bankruptcy Code Section 364(d), the Debtor seeks authority to grant a first priority lien in favor of Commonwealth on the following assets (the "DIP Collateral"): (i) a mortgage on the Real Property; (ii) an assignment of all leases and agreements affecting the Real Property; (iii) a security interest in all personal property of the Debtor; (iv) a collateral assignment of all tort claims of the Debtor; and (v) a security interest in all personal property of the corporate guarantors, namely Island View Properties, Inc. and AmeriCorp Homes Inc.

  l. *Events of Default:* Events of default include (i) failure to make payments when due; (ii) failure to comply with the Loan Documents; (iii) untrue representations

   or warranties; (iv) an event of default under any other Loan Document; (v) an event of default under other agreements; (vi) a material adverse change in the Debtor's financial condition; (vii) insolvency-related defaults other than the within bankruptcy case; (viii) casualty to the Real Property; (ix) death or incompetency of any individual guarantor; or (x) unauthorized transfer of the Real Property or interest in the Debtor.

 m. *Avoidance Actions.* The Debtor will not be granting a lien to Commonwealth on avoidance actions.

 n. *Exit Fee*: The Debtor must pay to Commonwealth a $41,000 exit fee upon payoff of the Loan (by maturity or sooner) or upon an event of default.

## Jurisdiction & Venue

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

**The Bankruptcy Case**

4. On June 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

5. The Debtor owns the Real Property, which consists of approximately 17.5 acres of residential real property approved for 73 townhouses and 96 condo units. Since the Petition Date, the Debtor has been operating its businesses and managing its property as a

debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. As of the date of the filing of this Motion, no official committee of creditors has been appointed or designated, however, Prudential Savings Bank ("Prudential") has filed a motion seeking to have this case, along with the related cases of *One State Street Associates, L.P.,* case no. 17-14291, *Calnshire Estates, LLC*, case no. 17-14457 and *Steeple Run, L.P.,* case no. 17-14458, converted to cases under chapter 7 of the Bankruptcy or, alternatively, to have a chapter 11 trustee appointed in the cases. The Debtor and the foregoing related entities believe that the aforesaid motion is baseless and, accordingly, has objected thereto.

**The Debtor and The Mortgages on the Real Property**

7. The Debtor was formed as a Pennsylvania limited partnership on June of 2003, and it acquired the Real Property from the Redevelopment Authority of Bucks County (the "RDA") at approximately the same time, subject to a mortgage in favor of the RDA in the original principal amount of $2,500,000 (the "First RDA Mortgage").

8. In September of 2011, the original general and limited partners of the Debtor sold their interests in the Debtor to Island View Properties, Inc., which became the Debtor's general partner, and Renato J. Gualtieri, who became the Debtor's sole limited partner. Previously, one of the Debtor's affiliates, Steeple Run, L.P. ("Steeple")—a chapter 11 itself before this Court—had obtained a loan from Prudential in the amount of $3,911,250 secured by a first mortgage on real property owned by Steeple. In September of 2011 the Debtor offered Prudential a mortgage on the Debtor's Real Property in the original principal amount of $3,911,250 (the "Steeple Mortgage") to cross-collateralize the existing Steeple loan. The

Steeple Mortgage was and is subject to the First RDA Mortgage.

9. The Debtor first obtained financing from Prudential in September of 2013 in the original principal amount of $1,400,000, which was secured by a mortgage on the Real Property (the "$1.4 Million Mortgage"), subject to the First RDA Mortgage.

10. In 2014, to raise additional capital for the Debtor, Mr. Gualtieri sold 3% of his limited partnership interests.

11. In July of 2014, Prudential recorded another mortgage on the Real Property, in the face amount of $5,136,000.00, in order to cross-collateralize a loan that Prudential had made to one of the Debtor's affiliates, Calnshire Estates, LLC ("Calnshire")—yet another chapter 11 debtor before this Court. The loan that Prudential made to Calnshire is secured by: (i) a first mortgage on real property owned by Calnshire; and (ii) a fourth mortgage on the Debtor's Real Property (the "Calnshire Mortgage").

12. In November of 2014, Prudential made a construction loan to the Debtor in the maximum principal amount of $5,541,468 (the "Construction Loan"). The Construction Loan is secured by a mortgage on the Debtor's Real Property (the "Construction Mortgage").

13. Pursuant to various subordination agreements filed with the Recorder of Deeds in Bucks County, Prudential revised the lien priority of its various mortgages on the Real Property. The end result of which was that the Calnshire Mortgage became a second lien on the Real Property, subordinate to the First RDA Mortgage; the Construction Mortgage became a third lien on the Real Property; the $1.4 Million Mortgage became a fourth lien on the Real Property; and the Steeple Mortgage became a fifth lien on the Real Property.

**Events Causing the Cessation of Construction At The Site**

14. At the time that Prudential began financing the Debtor's project, the Debtor's principal, Renato Gualtieri, had a lending relationship with Prudential dating back nearly twenty years within which he and his entities borrowed and repaid in excess of $50,000,000 in loans.

15. All as more fully chronicled in a 189-paragraph lender liability complaint that the Debtor and Mr. Gualtieri filed on March 31, 2016 against Prudential in the matter styled *Island View Crossing II, L.P. v. Prudential Savings Bank*, Philadelphia County Court of Common Pleas, No. March Term 2016, No. 03161, that has since been removed to this Court (the "Lender Liability Action"), beginning in or around November of 2015, Prudential engaged in a pattern of improper and unlawful behavior that the Debtor believes was designed to ameliorate Prudential's profit from the project at a direct cost to, and ultimately to the detriment of, the Debtor, the Real Property and the Debtor's creditors.

16. The more direct and concise effect of Prudential's behavior manifested itself, among other ways, as follows: (a) delaying construction-related loan advances to the Debtor, (b) arbitrarily choosing which of the Debtor's draw requests to honor and which ones not to honor, and (c) ultimately ceasing all funding of the Debtor's project, thereby causing a once extremely promising residential real estate project to come to a sudden halt, including work on structures where construction had begun as well as the cessation of site improvements at the location.

17. When the Lender Liability Case was commenced, the Debtor had twelve

townhouses under construction, seven of which are 80% complete and five of which are 60% complete. In addition, the Debtor had obtained 12 agreements of sale, but it is unlikely that any of the original purchasers would still complete the purchase at this time because of Prudential's actions and the resulting delays in construction.

18.  As a result of this, as well as the other and more specific behavior of Prudential as set forth in the Lender Liability Case, the Debtor is seeking $27,000,000 in damages against Prudential.

### Relief Requested

19.  The Debtor requests that the Court authorize it to obtain secured post-petition financing not to exceed an aggregate principal amount of $4,100,000 pursuant to the terms of this Motion, the Credit Agreement and the Final DIP Order. The proposed financing will be provided by Commonwealth.

20.  Specifically, the Debtor requests that the Court authorize it to: (i) obtain loans and advances and such other financial accommodations in an aggregate principal amount not to exceed $4,100,000; (ii) enter into the Loan Documents and to perform such other and further acts as may be required in connection with the Loan Documents, (iii) grant a first priority lien on the DIP Collateral in accordance with the Loan Documents and the Final DIP Order to secure any and all of the Loan obligations; and (iv) modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and Commonwealth to implement the terms of the Final DIP Order.

21.  The Debtor is seeking to obtain the Loan from Commonwealth pursuant to

Bankruptcy Code Section 364(d)(1) to grant liens in favor of Commonwealth on the DIP Collateral senior in priority to all liens existing as of the Petition Date, as required by Commonwealth, because the Debtor is unable to obtain credit otherwise without the granting of senior liens, and the Debtor believes that the all parties holding liens on the DIP Collateral are adequately protected.

### **Inability to Obtain Credit**

22. In order to advance the process of obtaining credit prior to the filing of the within bankruptcy case, the Debtor retained the services of Dorchester Capital ("Dorchester"), which is a local company that assists businesses in finding suitable commercial lenders.

23. After evaluating a number of different financing scenarios through Dorchester and otherwise, the Debtor selected Commonwealth Capital, LLC, which is an established and prominent private lender based in the Philadelphia region, to fulfill its financing needs.

24. The Debtor believes that Commonwealth has offered lending terms and conditions that are generally comparable or better than the Debtor could get elsewhere, and the Debtor does not have any type of loan commitment from another lender that allows for liens to collateralize any such loan with a lesser priority vis-à-vis those being required by Commonwealth.

### **Adequate Protection**

25. Although Commonwealth is requiring a senior lien on all of the DIP Collateral, the Debtor believes that all other parties holding liens on the same collateral will be adequately protected.

26. Prior to the filing of this Motion, the Debtor ordered an appraisal of the Real Property. Despite having not yet received said appraisal, the Debtor expects and believes that the value of the Real Property will not be less than $20 million.

27. To effect a first priority mortgage lien, as well as a first priority assignment of any leases, rents and agreements affecting the Real Property, in favor of Commonwealth on the Real Property, the following mortgage liens will have to be subordinated to the proposed mortgage lien to Commonwealth (collectively, the "Existing Mortgages"): (i) First RDA Mortgage dated August 13, 2003 in favor of Redevelopment Authority of Bucks County in the original principal amount of $2,500,000 recorded on August 25, 2003 in Mortgage Book 3537, page 792 *et seq.*; (ii) Steeple Mortgage dated September 20, 2011 in favor of Prudential Savings Bank in the original principal amount of $3,911,250 recorded on October 19, 2011 in Mortgage Book 6838, page 230 *et seq.*; (iii) $1.4 Million Mortgage dated September 20, 2013 in favor of Prudential Savings Bank in the original principal amount of $1,400,000 recorded on September 27, 2013 as Instrument Number 2013080879; (iv) Calnshire Mortgage dated May 30, 2014 in favor of Prudential Savings Bank in the original principal amount of $5,136,000 recorded on July 23, 2014 as Instrument Number 2014038527; (v) Construction Mortgage dated November 26, 2014 in favor of Prudential Savings Bank in the original principal amount of $5,541,468 recorded on January 7, 2015 as Instrument Number 2015001098; and (vi) mortgage dated July 21, 2016 in favor of Redevelopment Authority of Bucks County in the original principal amount of $127,627.83 recorded on July 22, 2016 as Instrument Number 2016043135.

28. Furthermore, the following other liens will have to be subordinated to the proposed mortgage lien to Commonwealth (the "Existing Other Liens") : (i) municipal lien in favor of Borough of Bristol dated April 22, 2016, Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2016-71251 in the amount of $56,239.22; and (ii) mechanics lien in favor of Michael Antolino Construction, Inc. dated August 5, 2016, Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2016-80111 in the amount of $11,763.

29. Finally, the following judgment liens will have to be subordinated to the proposed mortgage lien to Commonwealth (the "Existing Judgment Liens;" together with the Existing Mortgages and the Existing Other Liens, the "Existing Liens") : (i) judgment lien in favor of Samira Ranganathan dated June 19, 2017 Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2016-05724 in the amount of $49,980 (under appeal); (ii) arbitration award (under appeal) in favor of Frank Del Grasso dated March 23, 2017 Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2016-006685 in the amount of $27,250; and (iii) judgment lien in favor of Bohler Engineering PA, LLC dated January 5, 2017 Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2017-00032 in the amount of $48,853.63.

30. The following is a summary of the Debtor's belief as to the amounts owing as of the Petition Date on account of all claims that lien the Real Property with all such claims being set forth in their expected order of priority:

| Lienholder | Amount |
| --- | --- |
| Redevelopment Authority of Bucks County | $1,800,000.00 |
| Prudential Savings Bank[2] | $3,546,037.90 |
| Prudential Savings Bank | $1,324,195.75 |
| Prudential Savings Bank[3] | $3,604,047.46 |
| Prudential Savings Bank[4] | $2,361,673.65 |
| Borough of Bristol | $62,586.81 |
| Michael Antolino Construction, Inc. | $11,763.00 |
| Bohler Engineering PA, LLC | $48,853.63 |
| Frank Del Grasso | $27,250.00 |
| Samira Ranganathan | $49,980.00 |
| **TOTAL** | **$12,759,158.20** |

31. With respect to the personal property of the Debtor, Prudential Savings Bank is the only other party with a filed UCC-1; accordingly, that security interest will be subordinated

---

[2] Given the Lender Liability Case, all of the Prudential obligations are "disputed."

[3] The primary collateral for this loan is the real property owned by Steeple and not the Real Property. Prudential's 2015 appraisal of Steeple's real property stated a value of $3 million, and Steeple believes that the current market value of its property is currently higher.

[4] The primary collateral for this loan is the real property owned by Calnshire and not the Real Property. Prudential's 2015 appraisal of Calnshire's real property stated a value of $1.64 million, and Calnshire believes that the current market value of its property is currently higher.

to the proposed security interest to be granted to Commonwealth.

32. Given the minimum appraised value of the Real Property, the holders of Existing Liens are adequately protected because even if the Existing Liens are primed by a mortgage lien granted to Commonwealth on the Real Property securing an additional $4,100,000 in secured borrowings, there is still a multi-million dollar equity cushion protecting clams secured by the Existing Liens and that's before considering over $4,000,000 in other real estate collateral securing any allowed obligations owing to Prudential.

33. Without post-petition funding, the Debtor lacks cash to build out and ultimately complete the project, which is the only way to ensure that all creditors are paid on account of their claims. In this regard, the Debtor's bankruptcy schedules reflect unsecured debt of almost $3,000,000, although some of those obligations are secured with judgment liens and others are budgeted to be paid from the proceeds of the Loan from Commonwealth.

34. The Debtor has reasonably determined that the Loan offered by Commonwealth provides favorable terms to the Debtor and its estate.

35. In the sound exercise of its business judgment and fiduciary duties, the Debtor has determined to proceed to seek this Court's authorization to obtain the Loan.

### The Loan Should Be Authorized

36. The Debtor's intended use of the proceeds of the Loan is to fund various operating costs, including the costs associated with completing the following 22 Units: (a) Building 4 (Units 41, 42, 43, 44, 45, 46 and 47), (b) Building 2 (Units 7, 8, 9, 10 and 11), (c) Building 10 (Units 37, 38, 39 and 40) and (d) Building 11(Units 31, 32, 33, 34, 35 and

36) (the "<u>Constructed Units</u>")**.**

37.    The specific need for the Loan proceeds is more fully set forth in a budge to be filed supplemental to this Motion once in final form and approved by Commonwealth (the "<u>IVC Budget</u>").  The first column entitled "Full Budget" is the full amount of the anticipated cash needed to complete the Constructed Units.  The second column entitled "Proceeds Funded" is the amounts that the Debtor will fund once it begins selling Constructed units.  The third column entitled "DIP Financing" is the amount needed from draws under the Loan.

38.    According to the Debtor's projections, as set forth in the DIP Financing Cash Flow Projections to be filed supplemental to this Motion once finalized with Commonwealth, once the Debtor sells 20 of the 22 Constructed Units (2 of the Units will not be sold, but used as models for marketing purposes), the Debtor will have (a) repaid the Loan balance owing to Commonwealth in full; (b) paid the RDA the sum of no less than $247,000 on account of its mortgage on the Real Property; (c) escrowed the sum of no less than $500,000 for the benefit of Prudential to be paid if and to the extent that Prudential has allowed claim; and (d) created excess net cash in the amount of $1,700,000 to fund construction and completion of the remainder of the project consisting of 147 Units.

39.    The Debtor submits that the circumstances of this case require the Debtor to obtain the priming financing set forth above and, accordingly, obtaining the Loan reflects the exercise of its sound business judgment and, in so doing, still adequately protecting the holders of Existing Liens.  Based upon the foregoing, courts routinely grant a debtor considerable deference once the Debtor demonstrates that it's exercising its sound business judgment.

40. The terms and conditions of the Loan Documents are fair and reasonable and were negotiated extensively by represented parties with no prior or existing relationship (other than that forged by the Loan Documents) in good faith and at arms' length. Accordingly, Commonwealth and all obligations incurred under the Credit Agreement should be accorded the benefits and protections of Section 364(e) of the Bankruptcy Code.

### The Automatic Stay Should Be Modified on a Limited Basis

41. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to: (i) grant the liens described above with respect to Commonwealth and to perform such acts as may be requested to assure a first priority lien status and affords Commonwealth rights upon the termination of the Credit Agreement; (ii) execute such other documents, such as a mortgage, as may be required to effectuate the financing and (iii) implement the terms of the proposed Final DIP Order.

42. Stay modifications of this kind are ordinary features of post-petition financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances.

### Notice

43. The Debtor has provided notice of this Motion to (the "Notified Parties"): (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) all parties with known liens against the Real Property, including (i) Redevelopment Authority of Bucks County; (ii) Prudential Savings Bank; (iii) Borough of Bristol; (iv) Michael Antolino Construction, Inc.; (v) Samira Ranganathan; (vi) Frank Del Grasso and (vii) Bohler

Engineering PA, LLC.; (c) all applicable taxing authorities, including (i) the Internal Revenue Service; (ii) the Commonwealth of Pennsylvania, Department of Labor and Industry; (iii) the Commonwealth of Pennsylvania, Department of Revenue; (d) all creditors and parties in interest in the bankruptcy case; and (e) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submits that no further notice is necessary.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form submitted and grant such other and further relief as is just and proper.

Dated: August 21, 2017                    SMITH KANE HOLMAN, LLC

By: __/s/ David B. Smith_____
David B. Smith, Esquire
112 Moores Road, STE 300
Malvern, Pa 19355
(610) 407-7217
dsmith@skhlaw.com
Counsel for the Debtor