UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ISLAND VIEW CROSSING II, L.P., | : | |
| | : | Case No.  17-14454 (ELF) |
| | : | |
| Debtor. | : | |
| | : | |

**DEBTOR'S AMENDED MOTION FOR ENTRY OF A FINAL ORDER AUTHORIZING THE
DEBTOR TO: (I) OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 364 AND 363 OF THE BANKRUPTCY CODE, (II) ENTER INTO VARIOUS LOAN DOCUMENTS, AND (III) GRANTING LIENS ON PROPERTY OF THE ESTATE SENIOR TO ALL OTHER LIENS PURSUANT TO SECTION 364(d)(1) OF BANKRUPTCY CODE AND MODIFYING THE AUTOMATIC STAY TO IMPLEMENT THE FINANCING TERMS**

Island View Crossing II, L.P. (the "Debtor"), by and through its undersigned counsel, hereby moves for post-petition financing and other related relief as above captioned, and in support hereof, states as follows:

### Introduction

By this motion (this "Motion"), the Debtor is requesting the entry of a final order (the "Final ~~DIP~~ Order") authorizing the Debtor to enter into a certain Debtor-In-Possession Business Loan Agreement (the "Credit Agreement"), as well as other related loan and collateral documents (collectively, the "DIP Loan Documents"), to obtain a post-petition line of credit in the maximum principal amount of $4,100,000.00 (the "DIP Loan").  As more fully set forth below, the ~~Loan~~DIP Loan will be used to fund construction and other related costs associated with the completion of a portion of the Debtor's real property and improvements located generally at Radcliffe Street in Bristol Borough, Bucks County, Pennsylvania and known as "Island View Crossing" (the "Real Property"), which consists of a residential real property

Page | 1

development located on approximately 17.5 acres and approved for 73 townhouses and 96 condo units (each such townhouse and condo being referred to as a "Unit").

Of the combined 169 Units in the Real Property project, the proposed financing will enable the Debtor, among other things, to construct 22 Units. Then, upon the sale of 20 of those Units (the other two will be models to spur additional sales), the Debtor will have repaid the *entire* proposed post-petition ~~Loan~~DIP Loan, cured and remained current on obligations owing to the first mortgagee, the Redevelopment Authority of Bucks County, ~~paid or~~ escrowed payments upon the sale of each Unit for the benefit of Prudential Savings, Bank, the other mortgagee, ~~meaningful sums towards certain creditors holding a mortgage lien or liens on the Real Property~~ and created much needed capital to complete the project, which, once complete, will result in the payment in full of all allowed claims in this case.

The Credit Agreement is attached hereto and incorporated herein by reference as Exhibit "A," and ~~and~~ the ~~Final DIP Order~~Final Order is attached hereto and incorporated herein by reference as Exhibit "B." Below is the Debtor's Concise Statement pursuant to ~~approving this Motion are not yet in final form; accordingly, the Debtor will file each of the foregoing as a supplement to this Motion, together with an updated~~ Bankruptcy Rule 4001(c)(1)(B) with cross references to the applicable paragraphs in Credit Agreement (CA) and/or Final Order (Ord):~~Concise Statement with all appropriate cross references.~~

**Bankruptcy Rule 4001(c)(1)(B) Concise Statement**

The ~~Loan~~DIP Loan transaction, if approved by this Court, provides for the following:

a. *Borrower:* Island View Crossing II, L.P. (i.e., the Debtor).

b. *Lender:* Commonwealth Capital, LLC ("Lender~~Commonwealth~~").[1]

c. *Guarantors:* Island View Properties, Inc., AmeriCorp Homes Inc. and Renato J. Gualtieri. *See CA at 1(j)(vi).*

d. Loan *Amount:* $4,100,000.00. *See CA at 1(a)(i); Ord at 2.*

e. *Use of Proceeds:* The proceeds of the ~~Loan~~DIP Loan shall be used as follows: (i) $2,800,000 to fund the closing costs, working capital, soft costs, completion site work, and finish construction of Building 4 (Units 41, 42, 43, 44, 45, 46 and 47) and Building 2 (Units 7, 8, 9, 10 and 11) and (ii) $1,300,000 to fund construction and related costs of Building 10 (Units 37, 38, 39 and 40) and Building 11(Units 31, 32, 33, 34, 35 and 36)**.** Construction-related draws will be based upon a draw request schedule approved by ~~Commonwealth~~Lender. *See CA at 1(a)(iii).*

f. *Origination Fee:* An origination fee equal to 4% of the ~~Loan~~DIP Loan amount (i.e., $164,000) will be paid by the Debtor to ~~Commonwealth~~Lender from the ~~Loan~~DIP Loan proceeds. *See CA at 1(g)(i).*

g. *Interest Rate:* Each advance under the ~~Loan~~DIP Loan shall bear interest on the unpaid principal amount thereof from the date of such advance through the first anniversary of the ~~Loan~~DIP Loan at a fixed annual rate of 12% and thereafter at an annual rate equal to the greater of (i) *Wall Street Journal* Prime Rate plus 8% or (ii) 12%. *See CA at 1(a)(iii).*

h. *Interest Reserve:* $492,000 of the ~~Loan~~DIP Loan will be reserved and not available for draws by the Debtor (the "Interest Reserve"); instead, the Interest Reserve will be advanced monthly by ~~Commonwealth~~Lender to pay accrued interest on account of the ~~Loan~~DIP Loan until the Interest Reserve is depleted. *See CA at 1(b).*

---

[1] Commonwealth has advised the Debtor that Susquehanna International Group ("Susquehanna") will be a participant in the proposed post-petition financing facility. Accordingly, all references to ~~Commonwealth~~ Lender will be deemed to refer to Commonwealth Capital, LLC, along with Susquehanna as its loan participant.

Page | 3

i. *Loan Payments:* Interest on each amount advanced on account of the ~~Loan~~DIP Loan shall be payable in arrears on a monthly basis from the Interest Reserve and thereafter by the Debtor from operating capital accumulated from the sale of Units. Furthermore, the Debtor shall pay to ~~Commonwealth~~Lender the sum of (1) $213,300 ~~140,000~~ upon the sale of each of Units 41-46 and Units 7-11~~identified in subpart e. above~~, ~~and an additional~~ (2) $331,522 upon the sale of each of Units 37-39, 31 and 32 and (3) $96,090 upon the sale of Unit 33 ~~144,445 upon the sale of Units from Buildings 10 and 11~~, all of which will be applied by ~~Commonwealth~~Lender against the principal balance of the ~~Loan~~DIP Loan. *See CA at 1(a)(vi).*

j. ~~*Loan*~~ *DIP Loan Term*: 2 years with an option to extend for 6 months at the request of the Debtor, which request can be approved or denied by ~~Commonwealth~~Lender at its sole discretion. Upon any such renewal, the Debtor must pay a renewal fee equal to 1% of the amount committed for the renewal term. *See CA at 9.*

k. *Grant of Liens:* Pursuant to Bankruptcy Code Section 364(d), the Debtor seeks authority to grant a first priority lien in favor of ~~Commonwealth~~Lender on the following assets (the "~~DIP~~ Collateral"): (i) a mortgage on the Real Property; (ii) an assignment of all leases and agreements affecting the Real Property; (iii) a security interest in all personal property of the Debtor; (iv) a collateral assignment of all tort claims of the Debtor; and (v) a security interest in all personal property of the corporate guarantors, namely Island View Properties, Inc. and AmeriCorp Homes Inc. *See CA at 1(d); Ord at 4.*

*l. Grant of Superpriority Administrative Expense Status: Pursuant to Bankruptcy Code Section 364(c)(1), the Debtor seeks authority to grant Lender an allowed administrative expense claim with priority over any and all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b). See CA at 1(f); Ord at 8.*

~~k.~~*m. Adequate Protection to Existing Mortgage Holders: From the DIP Loan, the Debtor will cure all arrearages owing to the Redevelopment Authority of Bucks County and will remain current on all future quarterly interest and annual principal payments required under the applicable loan documents. The Debtor also intends to pay into escrow $25,000 at the closing on the sale of each Unit for the benefit of Prudential Savings Bank. See CA at 1(g)(ii); Ord at 2&9-.*

~~l.~~n. *Events of Default:* Events of default include (i) failure to make payments when due; (ii) failure to comply with the ~~Loan Documents~~DIP Loan Documents; (iii) untrue representations or warranties; (iv) an event of default under any other ~~Loan~~DIP Loan Document; (v) an event of default under other agreements; (vi)

a material adverse change in the Debtor's financial condition; (vii) insolvency-related defaults other than the within bankruptcy case; (viii) appointing a trustee, granting stay relief, an event affecting the Final Order or DIP Loan Documents or a sale of the Debtor's assets; (ix) the filing of a plan that does not pay the DIP in full; (x) events affecting the Debtor's exclusive right to file a plan; (xi) casualty to the Real Property; (~~i~~xii) death or incompetency of any individual guarantor; or (xiii) unauthorized transfer of the Real Property or interest in the Debtor. *See CA at 8.*

o. *Avoidance Actions~~.~~:* The Debtor will not be granting a lien to ~~Commonwealth~~Lender on avoidance actions ("Avoidance Actions"). *See CA at 1(d); Ord at 4.*

p. *Relief From Automatic Stay:* The bankruptcy stay will be modified and vacated to allow Lender to perform under the Final Order and to exercise remedies as to the Collateral upon the earlier of the maturity of the DIP Loan or upon an Event of Default. *See CA at 8(d); Ord at 11.*

q. *Modification of Debtor's Right to File A Plan:* The Debtor waives the right to (a) propose, support or file a plan of reorganization or liquidation that ~~is inconsistent with the DIP Loan Documents, any cash collateral arrangement with Lender or contains any provision reasonably unsatisfactory to lender~~does not provide for the indefeasible payment in full and satisfaction of all obligations owing to the Lender or (b) seek relief that would restrict or impair the rights and remedies of Lender. *See CA at 8(x); Ord at 13.*

r. *Perfection of Liens:* The entry of the Final Order will grant the Lender a valid and perfected first priority lien on the Collateral. *See CA at 1(e); Ord at 7.*

~~m.~~s. *Section 506(c) Waiver:* No costs or expenses of administration will be charged against the Lender or the Collateral pursuant to Section 506(c) of the Bankruptcy Code. *See Ord at 14.*

~~n.~~t. *Exit Fee*: The Debtor must pay to ~~Commonwealth~~Lender a $41,000 exit fee upon payoff of the ~~Loan~~DIP Loan (by maturity or sooner) or upon an event of default. *See CA at 1(h)~~; Ord at~~.*

## Jurisdiction & Venue

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

**The Bankruptcy Case**

4. On June 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

5. The Debtor owns the Real Property, which consists of approximately 17.5 acres of residential real property approved for 73 townhouses and 96 condo units. Since the Petition Date, the Debtor has been operating its businesses and managing its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. As of the date of the filing of this Motion, no official committee of creditors has been appointed or designated, however, Prudential Savings Bank ("Prudential") has filed a motion seeking to have this case, along with the related cases of *One State Street Associates, L.P.*, case no. 17-14291, *Calnshire Estates, LLC*, case no. 17-14457 and *Steeple Run, L.P.*, case no. 17-14458, converted to cases under chapter 7 of the Bankruptcy or, alternatively, to

have a chapter 11 trustee appointed in the cases. The Debtor and the foregoing related entities believe that the aforesaid motion is baseless and, accordingly, has objected thereto.

**The Debtor and The Mortgages on the Real Property**

7. The Debtor was formed as a Pennsylvania limited partnership i~o~n June of 2003, and it acquired the Real Property from the Redevelopment Authority of Bucks County (the "RDA") at approximately the same time, subject to a mortgage in favor of the RDA in the original principal amount of $2,500,000 (the "First RDA Mortgage").

8. In September of 2011, the original general and limited partners of the Debtor sold their interests in the Debtor to Island View Properties, Inc., which became the Debtor's general partner, and Renato J. Gualtieri, who became the Debtor's sole limited partner. Previously, one of the Debtor's affiliates, Steeple Run, L.P. ("Steeple")—a chapter 11 itself before this Court—had obtained a loan from Prudential in the amount of $3,911,250 secured by a first mortgage on real property owned by Steeple. In September of 2011 the Debtor offered Prudential a mortgage on the Debtor's Real Property in the original principal amount of $3,911,250 (the "Steeple Mortgage") to cross-collateralize the existing Steeple loan. The Steeple Mortgage was and is subject to the First RDA Mortgage.

9. The Debtor first obtained financing from Prudential in September of 2013 in the original principal amount of $1,400,000, which was secured by a mortgage on the Real Property (the "$1.4 Million Mortgage"), subject to the First RDA Mortgage.

10. In 2014, to raise additional capital for the Debtor, Mr. Gualtieri sold 3% of his limited partnership interests.

11. In July of 2014, Prudential recorded another mortgage on the Real Property, in the face amount of $5,136,000.00, in order to cross-collateralize a loan that Prudential had made to one of the Debtor's affiliates, Calnshire Estates, LLC ("Calnshire")—yet another chapter 11 debtor before this Court. The loan that Prudential made to Calnshire is secured by: (i) a first mortgage on real property owned by Calnshire; and (ii) a fourth mortgage on the Debtor's Real Property (the "Calnshire Mortgage").

12. In November of 2014, Prudential made a construction loan to the Debtor in the maximum principal amount of $5,541,468 (the "Construction Loan"). The Construction Loan is secured by a mortgage on the Debtor's Real Property (the "Construction Mortgage").

13. Pursuant to various subordination agreements filed with the Recorder of Deeds in Bucks County, Prudential revised the lien priority of its various mortgages on the Real Property. The end result of which was that the Calnshire Mortgage became a second lien on the Real Property, subordinate to the First RDA Mortgage; the Construction Mortgage became a third lien on the Real Property; the $1.4 Million Mortgage became a fourth lien on the Real Property; and the Steeple Mortgage became a fifth lien on the Real Property.

**Events Causing the Cessation of Construction At The Site**

14. At the time that Prudential began financing the Debtor's project, the Debtor's principal, Renato Gualtieri, had a lending relationship with Prudential dating back nearly twenty years within which he and his entities borrowed and repaid in excess of $50,000,000 in loans.

15. All as more fully chronicled in a 189-paragraph lender liability complaint that

the Debtor and Mr. Gualtieri filed on March 31, 2016 against Prudential in the matter styled *Island View Crossing II, L.P. v. Prudential Savings Bank*, Philadelphia County Court of Common Pleas, No. March Term 2016, No. 03161, that has since been removed to this Court (the "Lender Liability Action"), beginning in or around November of 2015, Prudential engaged in a pattern of improper and unlawful behavior that the Debtor believes was designed to ameliorate Prudential's profit from the project at a direct cost to, and ultimately to the detriment of, the Debtor, the Real Property and the Debtor's creditors.

16. The more direct and concise effect of Prudential's behavior manifested itself, among other ways, as follows: (a) delaying construction-related loan advances to the Debtor, (b) arbitrarily choosing which of the Debtor's draw requests to honor and which ones not to honor, and (c) ultimately ceasing all funding of the Debtor's project, thereby causing a once extremely promising residential real estate project to come to a sudden halt, including work on structures where construction had begun as well as the cessation of site improvements at the location.

17. When the Lender Liability Case was commenced, the Debtor had twelve townhouses under construction, seven of which are 80% complete and five of which are 60% complete. In addition, the Debtor had obtained 12 agreements of sale, but it is unlikely that any of the original purchasers would still complete the purchase at this time because of Prudential's actions and the resulting delays in construction.

18. As a result of this, as well as the other and more specific behavior of Prudential as set forth in the Lender Liability Case, the Debtor is seeking $27,000,000 in damages against

Prudential.

## **Relief Requested**

19. The Debtor requests that the Court authorize it to obtain secured post-petition financing not to exceed an aggregate principal amount of $4,100,000 pursuant to the terms of this Motion, the Credit Agreement and the ~~Final DIP Order~~Final Order. The proposed financing will be provided by ~~Commonwealth~~Lender.

20. Specifically, the Debtor requests that the Court authorize it to: (i) obtain loans and advances and such other financial accommodations in an aggregate principal amount not to exceed $4,100,000; (ii) enter into the ~~Loan Documents~~DIP Loan Documents and to perform such other and further acts as may be required in connection with the ~~Loan Documents~~DIP Loan Documents, (iii) grant a first priority lien on the ~~DIP Collateral~~Collateral in accordance with the ~~Loan Documents~~DIP Loan Documents and the ~~Final DIP Order~~Final Order to secure any and all of the ~~Loan~~DIP Loan obligations; and (iv) modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and ~~Commonwealth~~Lender to implement the terms of the ~~Final DIP Order~~Final Order.

21. The Debtor is seeking to obtain the ~~Loan~~DIP Loan from ~~Commonwealth~~Lender pursuant to Bankruptcy Code Section 364(d)(1) to grant liens in favor of ~~Commonwealth~~Lender on the ~~DIP Collateral~~Collateral senior in priority to all liens existing as of the Petition Date, as required by ~~Commonwealth~~Lender, because the Debtor is unable to obtain credit otherwise without the granting of senior liens, and the Debtor believes that the all parties holding liens on the ~~DIP Collateral~~Collateral are adequately protected.

~~21.~~22. The Debtor also is seeking to grant Lender a so-called "superpriority claim" or an allowed administrative expense claim pursuant to Bankruptcy Code Section 364(c)(1) with priority over any and all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b).

## **Inability to Obtain Credit**

~~22.~~23. In order to advance the process of obtaining credit prior to the filing of the within bankruptcy case, the Debtor retained the services of Dorchester Capital ("Dorchester"), which is a local company that assists businesses in finding suitable commercial lenders.

~~23.~~24. After evaluating a number of different financing scenarios through Dorchester and otherwise, the Debtor selected Commonwealth Capital, LLC, which is an established and prominent private lender based in the Philadelphia region, to fulfill its financing needs.

~~24.~~25. The Debtor believes that ~~Commonwealth~~Lender has offered lending terms and conditions that are generally comparable or better than the Debtor could get elsewhere, and the Debtor does not have any type of loan commitment from another lender that allows for liens to collateralize any such loan with a lesser priority vis-à-vis those being required by ~~Commonwealth~~Lender.

## **Adequate Protection**

~~25.~~26. Although ~~Commonwealth~~Lender is requiring a senior lien on all of the ~~DIP Collateral~~Collateral, the Debtor believes that all other parties holding liens on the same

collateral will be adequately protected.

26.27.	Prior to the filing of this Motion, the Debtor ordered an appraisal of the Real Property.  Despite having not yet received said appraisal, the Debtor expects and believes that the value of the Real Property will ~~not~~ be approximately ~~less than~~ $2018 million.  In addition, Prudential appears to hold a valid mortgage lien on the real property owned by Calnshire Estates, LLC and Steeple Run, L.P., each of which, as noted above, has a currently pending chapter 11 case before this Court.

28.	To effect a first priority mortgage lien, as well as a first priority assignment of any leases, rents and agreements affecting the Real Property, in favor of ~~Commonwealth~~Lender on the Real Property, the following mortgage liens will have to be subordinated to the proposed mortgage lien to ~~Commonwealth~~Lender (collectively, the "Existing Mortgages"): (i) First RDA Mortgage dated August 13, 2003 in favor of Redevelopment Authority of Bucks County in the original principal amount of $2,500,000 recorded on August 25, 2003 in Mortgage Book 3537, page 792 *et seq.*; (ii) Steeple Mortgage dated September 20, 2011 in favor of Prudential Savings Bank in the original principal amount of $3,911,250 recorded on October 19, 2011 in Mortgage Book 6838, page 230 *et seq.*; (iii) $1.4 Million Mortgage dated September 20, 2013 in favor of Prudential Savings Bank in the original principal amount of $1,400,000 recorded on September 27, 2013 as Instrument Number 2013080879; (iv) Calnshire Mortgage dated May 30, 2014 in favor of Prudential Savings Bank in the original principal amount of $5,136,000 recorded on July 23, 2014 as Instrument Number 2014038527; (v) Construction Mortgage dated November 26, 2014 in

favor of Prudential Savings Bank in the original principal amount of $5,541,468 recorded on January 7, 2015 as Instrument Number 2015001098; and (vi) mortgage dated July 21, 2016 in favor of Redevelopment Authority of Bucks County in the original principal amount of $127,627.83 recorded on July 22, 2016 as Instrument Number 2016043135.

27.29. Nevertheless, pursuant to the DIP Loan, the Debtor is authorized, and intends to, cure all arrearages owing to the Redevelopment Authority of Bucks County. Furthermore, the Debtor intends to remain current on all future quarterly interest and annual principal payments required under the loan documents with the Redevelopment Authority of Bucks County. The Debtor also intends to pay into escrow $25,000 at the closing on the sale of each Unit for the benefit of Prudential Savings Bank, to be disbursed either to Prudential Savings Bank or to the Debtor upon a determination of the extent to which Prudential Savings Bank has an allowed secured claim against the Debtor.

28.30. Furthermore, the following other liens will have to be subordinated to the proposed mortgage lien to CommonwealthLender (the "Existing Other Liens") : (i) municipal lien in favor of Borough of Bristol dated April 22, 2016, Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2016-71251 in the amount of $56,239.22; and (ii) mechanics lien in favor of Michael Antolino Construction, Inc. dated August 5, 2016, Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2016-80111 in the amount of $11,763.

29.31. Finally, the following judgment liens will have to be subordinated to the proposed mortgage lien to CommonwealthLender (the "Existing Judgment Liens;" together

with the Existing Mortgages and the Existing Other Liens, the "<u>Existing Liens</u>") : (i) judgment lien in favor of Samira Ranganathan dated June 19, 2017 Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2016-05724 in the amount of $49,980 (under appeal); (ii) arbitration award (under appeal) in favor of Frank Del Grasso dated March 23, 2017 Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2016-006685 in the amount of $27,250; and (iii) judgment lien in favor of Bohler Engineering PA, LLC dated January 5, 2017 Court of Common Pleas of Bucks County, Pennsylvania, Docket No. 2017-00032 in the amount of $48,853.63.

30.32.    The following is a summary of the Debtor's belief as to the amounts owing as of the Petition Date on account of all claims that lien the Real Property with all such claims being set forth in their expected order of priority:

| Lienholder | Amount |
|---|---|
| Redevelopment Authority of Bucks County | $1,800,000.00 |
| Prudential Savings Bank[2] | $3,546,037.90 |
| Prudential Savings Bank | $1,324,195.75 |
| Prudential Savings Bank[3] | $3,604,047.46 |
| Prudential Savings Bank[4] | $2,361,673.65 |
| Borough of Bristol | $62,586.81 |
| Michael Antolino Construction, Inc. | $11,763.00 |
| Bohler Engineering PA, LLC | $48,853.63 |
| Frank Del Grasso | $27,250.00 |
| Samira Ranganathan | $49,980.00 |
| **TOTAL** | **$12,759,158.20** |

31.33.    With respect to the personal property of the Debtor, Prudential Savings Bank is the only other party with a filed UCC-1; accordingly, that security interest will be

---

[2] Given the Lender Liability Case, all of the Prudential obligations are "disputed."

[3] The primary collateral for this loan is the real property owned by Steeple and not the Real Property. Prudential's 2015 appraisal of Steeple's real property stated a value of $3 million, and Steeple believes that the current market value of its property is currently higher.

[4] The primary collateral for this loan is the real property owned by Calnshire and not the Real Property. Prudential's 2015 appraisal of Calnshire's real property stated a value of $1.64 million, and Calnshire believes that the current market value of its property is currently higher.

subordinated to the proposed security interest to be granted to ~~Commonwealth~~Lender.

32.34.  Given the minimum appraised value of the Real Property, the holders of Existing Liens are adequately protected because even if the Existing Liens are primed by a mortgage lien granted to ~~Commonwealth~~Lender on the Real Property securing an additional $4,100,000 in secured borrowings, there is still a multi-million dollar equity cushion protecting clams secured by the Existing Liens and that's before considering over $4,000,000 in other real estate collateral securing any allowed obligations owing to Prudential.

33.35.  Without post-petition funding, the Debtor lacks cash to build out and ultimately complete the project, which is the only way to ensure that all creditors are paid on account of their claims. In this regard, the Debtor's bankruptcy schedules reflect unsecured debt of almost $3,000,000, although some of those obligations are secured with judgment liens and others are budgeted to be paid from the proceeds of the ~~Loan~~DIP Loan from ~~Commonwealth~~Lender.

34.36.  The Debtor has reasonably determined that the ~~Loan~~DIP Loan offered by ~~Commonwealth~~Lender provides favorable terms to the Debtor and its estate.

35.37.  In the sound exercise of its business judgment and fiduciary duties, the Debtor has determined to proceed to seek this Court's authorization to obtain the ~~Loan~~DIP Loan.

**The ~~Loan~~DIP Loan Should Be Authorized**

36.38.  The Debtor's intended use of the proceeds of the ~~Loan~~DIP Loan is to fund various operating costs, including the costs associated with completing the following 22 Units:

(a) Building 4 (Units 41, 42, 43, 44, 45, 46 and 47), (b) Building 2 (Units 7, 8, 9, 10 and 11), (c) Building 10 (Units 37, 38, 39 and 40) and (d) Building 11 (Units 31, 32, 33, 34, 35 and 36) (the "Constructed Units").

~~37.~~39.  The specific proposed application of ~~need for the Loan~~DIP Loan proceeds is more fully set forth in a budget attached hereto and incorporated herein by reference as Exhibit "C" ~~to be filed supplemental to this Motion once in final form and approved by Commonwealth~~ (the "IVC Budget"). The first column entitled "Full Budget" is the full amount of the anticipated cash needed to complete the Constructed Units. The second column entitled "Proceeds Funded" is the amounts that the Debtor will fund once it begins selling Constructed units. The third column entitled "DIP Financing" is the amount needed from draws under the ~~Loan~~DIP Loan.

~~38.~~40.  According to the Debtor's projections, as set forth in the DIP Financing Cash Flow Projections to be filed supplemental to this Motion once finalized with ~~Commonwealth~~Lender, once the Debtor sells 20 of the 22 Constructed Units (2 of the Units will not be sold, but used as models for marketing purposes), the Debtor will have (a) repaid the ~~Loan~~DIP Loan balance owing to ~~Commonwealth~~Lender in full; (b) paid the RDA the sum of no less than $247,000 on account of its mortgage on the Real Property; (c) escrowed the sum of no less than $500,000 for the benefit of Prudential to be paid if and to the extent that Prudential has allowed claim; and (d) created excess net cash in the amount of $1,700,000 to fund construction and completion of the remainder of the project consisting of 147 Units.

~~39.~~41.  The Debtor submits that the circumstances of this case require the Debtor

to obtain the priming financing set forth above and, accordingly, obtaining the ~~Loan~~DIP Loan reflects the exercise of its sound business judgment and, in so doing, still adequately protecting the holders of Existing Liens. Based upon the foregoing, courts routinely grant a debtor considerable deference once the Debtor demonstrates that it's exercising its sound business judgment.

    ~~40.~~42.    The terms and conditions of the ~~Loan Documents~~DIP Loan Documents are fair and reasonable and were negotiated extensively by represented parties with no prior or existing relationship (other than that forged by the ~~Loan Documents~~DIP Loan Documents) in good faith and at arms' length. Accordingly, ~~Commonwealth~~Lender and all obligations incurred under the Credit Agreement should be accorded the benefits and protections of Section 364(e) of the Bankruptcy Code.

### **The Automatic Stay Should Be Modified on a Limited Basis**

    ~~41.~~43.    The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to: (i) grant the liens described above with respect to ~~Commonwealth~~Lender and to perform such acts as may be requested to assure a first priority lien status and affords ~~Commonwealth~~Lender rights upon the termination of the Credit Agreement; (ii) execute such other documents, such as a mortgage, as may be required to effectuate the financing and (iii) implement the terms of the proposed ~~Final DIP Order~~Final Order.

    44.    Stay modifications of this kind are ordinary features of post-petition financing facilities and, in the Debtor's business judgment, are reasonable under the present

circumstances.

### Lender's Other Requirements In the DIP Loan

45. In order to obtain the DIP Loan, the Debtor has agreed to all of the terms and conditions in the DIP Loan Documents as well as the Final Order. Nevertheless, by way of specific disclosure, the following additional terms affecting its Bankruptcy Proceeding.

46. At all times during the pendency of this bankruptcy case until the obligations to the Lender are paid in full, and whether or not an event of default has occurred under the DIP Loan, the Debtor irrevocably waives any right that it may have to (a) propose, support or file a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all obligations owing to the Lender on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Loan Documents, or (b) seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would directly restrict or impair the rights and remedies of Lender under this Final Order or the DIP Loan Documents.

47. Furthermore, the entry of the Final Order alone will be sufficient to grant Lender a valid and perfected first priority lien on the Collateral.

~~42.~~48. Finally, no costs or expenses of administration which have or may be incurred in this case shall be charged against the Lender or the Collateral pursuant to Section 506(c) of the Bankruptcy Code.

### Notice

~~43.~~49. The Debtor has provided notice of this Motion to (the "Notified Parties"): (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) all

parties with known liens against the Real Property, including (i) Redevelopment Authority of Bucks County; (ii) Prudential Savings Bank; (iii) Borough of Bristol; (iv) Michael Antolino Construction, Inc.; (v) Samira Ranganathan; (vi) Frank Del Grasso and (vii) Bohler Engineering PA, LLC.; (c) all applicable taxing authorities, including (i) the Internal Revenue Service; (ii) the Commonwealth of Pennsylvania, Department of Labor and Industry; (iii) the Commonwealth of Pennsylvania, Department of Revenue; (d) all creditors and parties in interest in the bankruptcy case; and (e) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submits that no further notice is necessary.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form submitted and grant such other and further relief as is just and proper.

Dated: ~~August 21~~September 29, 2017                SMITH KANE HOLMAN, LLC

By: __/s/ David B. Smith_____
David B. Smith, Esquire
112 Moores Road, STE 300
Malvern, Pa 19355
(610) 407-7217
dsmith@skhlaw.com
Counsel for the Debtor