# EXHIBIT B

**LENDER DRAFT**
**SEPTEMBER 29, 2017**

## UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ISLAND VIEW CROSSING II, L.P., | : | |
| | : | Case No.  17-14454 (ELF) |
| | : | |
| Debtor. | : | |
| | : | |

## FINAL ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF

AND NOW, this _____ day of _____, 2017, upon consideration of the *Amended Motion of Island View Crossing II, L.P.* (the "Debtor"), *for Entry of a Final Order Authorizing the Debtor to: (I) Obtain Post-Petition Financing Pursuant to Sections 364 and 363 of the Bankruptcy code, (II) Enter Into Various Loan Documents, and (III) Granting Liens on Property of the Estate Senior to all Other Liens Pursuant to Section 364(d)(1) of Bankruptcy Code and modifying the Automatic Stay to Implement the Financing Terms* (the "Motion"),  and  the Court having considered the Motion, the exhibits attached thereto and all other filings in connection therewith, including, without limitation, the DIP Loan Documents[1]; and a final hearing having been held and concluded; and upon all of the pleadings filed with the Court, all evidence presented in support of this Final Order, and  all of the proceedings  held  before  the Court; and after due deliberation and consideration and good and sufficient cause appearing  therefor,

---

[1]  All capitalized terms not defined in this Order shall have the meaning ascribed to such terms in the DIP Loan Documents.

THE COURT HEREBY FINDS:

A.      On June 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Proceeding").

B.      The Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Notice of the relief sought by the Motion was delivered by regular mail to the Notified Parties.  Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rules 2002 and 4001 in all respects for purposes of entering this Final Order.

E.      The Debtor is unable to obtain the required funds on terms more favorable than those offered by Lender under the terms of the DIP Loan Documents and this Final Order.

F.      The Debtor has requested that, pursuant to the terms of the DIP Loan Documents, Lender make the DIP Loan and advances to the Debtor to be used by the Debtor solely in accordance with the terms of the DIP Loan Documents. The ability of the Debtor to continue its business and reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtor obtaining such financing. The Debtor will suffer harm if the requested DIP Loan is not available on a final basis.

G.      Lender is only willing to extend post-petition credit to the Debtor under the terms of the DIP Loan Documents that is secured by a lien senior to all other liens, claims

and encumbrances on the Collateral and otherwise under the terms of the DIP Loan Documents. In light of the determined value of the Collateral, upon approval and consummation of the DIP Loan, and the creation of the liens in favor of Lender on the Collateral, there is adequate protection of the interest of each holder of a lien on the Collateral.

H.    As of the Petition Date, the following entities (the "Prepetition Secured Claimants") have asserted liens, claims and encumbrances on some or all of the Collateral: (1) Redevelopment Authority of Bucks County; (2) Prudential Savings Bank; (3) Borough of Bristol; (4) Michael Antolino Construction, Inc.; (5) Bohler Engineering PA, LLC; (6) Frank Del Grasso; and (7) Samira Ranganathan (the "Alleged Prepetition Liens").

I.    The proceeds of the Collateral constitutes Lender's cash collateral within the meaning of section 363(a) of the Bankruptcy Code ("Lender Cash Collateral").

J.    The Debtor's entry into the DIP Loan Documents is fair and reasonable and is a sound exercise of its business judgment consistent with its fiduciary duties. The DIP Loan Documents were negotiated at arm's length and in good faith between the Debtor and Lender, and the DIP Loan and extensions of credit provided for in the DIP Loan Documents constitute reasonably equivalent value and fair consideration. Accordingly, the relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and property, and to avoid irreparable harm to the Debtor, its business, estate, and parties in interest and is therefore in the best interests of the Debtor and its estate, creditors, and parties in interest.

K.    Based on the record before the Court for the Final Hearing, the terms of the DIP Loan Documents, pursuant to which the DIP Loan, advances and other credit and financial accommodations will be made or provided to the Debtor by Lender, in each case have been negotiated at arm's length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and is in the best interests of the Debtor and its estate, creditors, and parties in

interest. Lender has acted in good faith in connection with this Final Order and its reliance on this Final Order is in good faith. Lender is extending the DIP Loan to the Debtor in good faith and is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

   L.  It is in the best interests of the Debtor's estate that it be allowed to finance its operations under the terms and conditions set forth herein and in the DIP Loan Documents. The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the entry of this Final Order pursuant to Bankruptcy Rule 4001(c),

    NOW, THEREFORE, IT IS HEREBY ORDERED:

  1.  <u>Motion Granted.</u> The Motion is granted on the terms and conditions set forth herein. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Final Order shall become effective immediately upon its entry and to the extent of any inconsistency between the DIP Loan Documents and this Final Order, this Final Order shall govern.

  2.  <u>Authorization to Borrow and Use DIP Loan Proceeds.</u> The Debtor is hereby authorized to borrow, pursuant to the DIP Loan Documents, the principal amount of $4.1 million to be used in accordance with the IVC Budget. Upon the entry of this Final Order, the Debtor shall be authorized (A) to draw on the DIP Loan to make any disbursement as specifically provided in the IVC Budget, but solely in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents, (B) to repay the DIP Loan Obligations as provided for in the DIP Loan Documents, and (C) to perform all other terms and conditions of the DIP Loan Documents.

  3.  <u>Approval of DIP Loan Documents.</u> The DIP Loan Documents (including,

without limitation, the Agreement) attached hereto as Exhibit A and each term set forth therein are approved. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtor and the Lender, and of each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Loan Obligations arising thereunder, including, without limitation, all principal, interest, and such fees, costs and expenses, including, without limitation, all of the Lender's and its' participant's reasonable professional fees and expenses, as more fully set forth in the DIP Loan Documents are approved.

4.    Granting of DIP Liens. To secure the prompt payment and performance of any and all obligations of the Debtor to the Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Lender, shall have and is hereby granted, effective as of the Closing Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's estate may have in and upon all of the Collateral (collectively, the "DIP Liens").

5.    DIP Lien Priority. The DIP Liens shall be first and senior in priority to all other interests and liens claims or encumbrances of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, the Alleged Prepetition Liens, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law. The DIP Liens and the Superpriority Claim (as defined below) (a) shall not be subject to Sections 510, 542, 549, 550, or 551 of the Bankruptcy Code, the "equities of the case" exception of Section 552 of the Bankruptcy Code, or Section 506(c) of the Bankruptcy Code, (b) shall be senior in priority and

right of payment to (x) any lien that is avoided and preserved for the benefit of the Debtor and its estate under Section 551 of the Bankruptcy Code or otherwise and (y) any intercompany or affiliate liens or claims of the Debtor, and (c) shall be valid and enforceable against any trustee or any other estate representative appointed or elected in the Bankruptcy Proceeding, upon the conversion of the Bankruptcy Proceeding to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of the Bankruptcy Proceeding.

6.      Enforceable Obligations.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Loan Obligations of the Debtor, which DIP Loan Obligations shall be enforceable against the Debtor, its estate and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and its creditors, in accordance with their terms.  No obligation, payment, transfer, or grant of security under the DIP Loan Documents, or this Final Order shall be stayed, restrained, voidable, avoidable, disallowable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Section 502(d) of the Bankruptcy Code), or subject to any avoidance, disallowance, impairment, reduction, setoff, offset, recoupment, recharacterization, disgorgement, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, surcharge, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

7.      Post-Petition Lien Perfection.  This Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, effective as of the Closing Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act

to validate or perfect such security interest or lien (each, a "Perfection Act"). Notwithstanding the foregoing, if Lender shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, Lender is authorized to perform such act, and the Debtor is authorized and directed to perform such act to the extent necessary or reasonably required by Lender, which act or acts shall be deemed to have been accomplished as of the Closing Date, notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. Lender may choose to file, record, or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Final Order in accordance with applicable law. Should Lender choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Final Order.

8.    Superpriority Administrative Expense. For all DIP Loan Obligations, this Final Order, the DIP Loan Documents, or otherwise, Lender is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, whether now in existence or hereafter incurred by the Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia* Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become

secured by a judgment lien or other non-consensual lien, levy, or attachment (the "Superpriority Claim"). The Superpriority Claim shall, for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under Section 503(b) of the Bankruptcy Code, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof. Except as provided in the IVC Budget, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 326, 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Bankruptcy Proceeding, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the Superpriority Claim or the DIP Loan Obligations, or with any other claims of the Lender arising hereunder.

9. <u>Use of Cash</u>. The Debtor shall be permitted to use advances on the DIP Loan solely for the expenses and cash uses included on the IVC Budget. The Debtor is not authorized to and shall not use, spend, pledge, dissipate or otherwise convey Lender Cash Collateral except as provided for in the Agreement, and the Debtor's waiver of any non-consensual use of the Lender's Cash Collateral that is not otherwise permitted by the Agreement is hereby approved. Should the Debtor request non-consensual use of Lender Cash Collateral in accordance with the Agreement, all of Lender's rights and objections, under the Bankruptcy Code or otherwise, are expressly reserved.

10. <u>Authorization to Pay Fees, Costs and Expenses</u>. Any and all fees paid or required to be paid by the Debtor in connection with the DIP Loan and under the DIP Loan Documents (including, but not limited to, the fees and expenses of Lender and its participants) are hereby authorized and shall be paid as set forth in the DIP Loan Documents.

11. <u>Rights and Remedies; Relief from Stay</u>. Upon the occurrence of an Event of

Default, Lender shall be permitted to exercise its rights and remedies under the DIP Loan Documents without further notice, all as permitted under the DIP Loan Documents.  The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Lender to perform any act authorized or permitted under or by virtue of this Final Order or the DIP Loan Documents, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Final Order and pursuant to the terms of the DIP Loan Documents, and (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral.  In addition, and without limiting the foregoing, on the date that is five business days after the earlier of the maturity date of the DIP Loan or the occurrence of an Event of Default (the "Termination Date") without full payment of the DIP Loan Obligations in full  (the "Stay Relief Date"), Lender shall have relief from the automatic stay and may foreclose on all or any portion of the Collateral, collect accounts receivable and apply the proceeds thereof to the DIP Loan Obligations, occupy Borrower's premises to sell or otherwise dispose of the Collateral or otherwise exercise remedies against the Collateral permitted by applicable nonbankruptcy law and may occupy, sell, foreclose upon or otherwise dispose of the Real Property, the Improvements and the Units.  During the period from the Termination Date to the Stay Relief Date, Lender shall not oppose an emergency hearing before the Bankruptcy Court for the sole purpose of contesting whether the Termination Date has occurred. Unless during such period the Bankruptcy Court determines that the Termination Date has not occurred and/or is not continuing, the automatic stay, as to the Lender, shall automatically terminate on the Stay Relief Date, without further notice or order.

12. _Good Faith_. The terms of this Final Order were negotiated in good faith and at arm's length by and among the Debtor and Lender. Lender shall be entitled to the full protections of Section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise. Accordingly, if any or all of the provisions of this Final Order are hereafter modified, vacated, or stayed, such modification, vacation, or stay shall not affect, prejudice or impair (a) the validity of any obligation, indebtedness or liability incurred by the Debtor to Lender under the DIP Loan Documents before the effective date of such modification, vacation or stay, or (b) the validity or enforceability of any security interest, lien, priority, or other protection authorized or created by this Final Order. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations or liabilities incurred by the Debtor to Lender before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Final Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations or liabilities.

13. _Debtor's Waivers_. The Debtor shall not seek authority to use Lender Cash Collateral under Section 363 of the Bankruptcy Code that is not consistent the DIP Loan Documents or otherwise with Lender's consent; provided, that no such consent shall be implied from any action, inaction, or acquiescence by Lender. At all times during the Bankruptcy Proceeding until the DIP Loan Obligations are paid in full, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to (a) propose, support or file a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all DIP Loan Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Loan Documents, or (b)

seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would directly restrict or impair the rights and remedies of Lender under this Final DIP Order or the DIP Loan Documents.

14.    Section 506(c) Claims.  No costs or expenses of administration which have or may be incurred in the Bankruptcy Proceeding shall be charged against the Lender or the Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of Lender in its sole and absolute discretion, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

15.    Collateral Rights.  Until all of the DIP Loan Obligations shall have been indefeasibly paid and satisfied in full, (a) no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral; and (b) after the Stay Relief Date, Lender shall have the right to enter upon, occupy and use the Real Property and assume control of the construction of the Improvements and the Units.

16.    No Modification or Stay of This Final Order.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this Final Order, the DIP Loan Documents or any term hereunder or thereunder or (b) the dismissal or conversion of the Bankruptcy Proceeding (each, a "Subject Event"), (i) the acts taken by Lender in accordance with this Final Order, and (ii) the DIP Loan Obligations incurred or arising prior to the Lender's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Order, and the acts taken by Lender in accordance with this Final Order, and the liens granted to Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Lender pursuant to this Final Order and the DIP Loan Documents shall remain valid and in full

force and effect pursuant to Section 364(e) of the Bankruptcy Code.  For purposes of this Final

Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed

to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Final

Order by this Court or any other tribunal.

17.    <u>Power to Waive Rights; Duties to Third Parties</u>.  Lender, in its sole and absolute

discretion, shall have the right to waive any of the terms, rights and remedies provided or

acknowledged in this Final Order in respect of Lender (the "Lender Rights"), and shall have no

obligation or duty to any other party with respect to the exercise or enforcement, or failure to

exercise or enforce, any Lender Rights.  Any waiver by Lender of any Lender Rights shall not be

or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender

Rights shall neither constitute a waiver of such Lender Rights, subject Lender to any liability to

any other party, nor cause or enable any other party to rely upon or in any way seek to assert a

defense to any obligation owed by the Debtor to Lender.

18.    <u>Reservation of Rights</u>.  The terms, conditions, and provisions of this Final Order

are in addition to and without prejudice to the rights of Lender to pursue any and all rights and

remedies under the Bankruptcy Code, the DIP Loan Documents, or any other applicable

agreement or law.

19.    <u>Binding Effect of Final Order</u>.  Immediately upon entry by this Court, this Final

Order shall be valid and binding upon and inure to the benefit of Lender, the Debtor and its

estate, all other creditors of any of the Debtor, and all other parties in interest and their respective

successors and assigns (including any chapter 11 or chapter 7 trustee or any other fiduciary

hereafter appointed as a legal representative of the Debtor), in the Bankruptcy Proceeding, any

Successor Case, or upon dismissal of the Bankruptcy Proceeding or Successor Case.

20.    <u>No Owner/Operator Liability</u>.    In determining to make the DIP Loan, or in exercising any rights or remedies as and when permitted pursuant to the DIP Loan Documents or this Final Order, Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

21.    <u>Marshalling</u>.    Lender shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.  Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to Lender with respect to proceeds, products, offspring or profits of any of the Collateral.

22.    <u>Termination</u>.  Notwithstanding any provision of this Final Order to the contrary, the DIP Loan authorized by this Final Order may be terminated pursuant to the terms of the DIP Loan Documents.

23.    <u>Findings and Conclusions</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

24.    <u>Final Order Governs</u>.  In the event that any provision of this Final Order conflicts with any term of the DIP Loan Documents, this Final Order shall govern.

25.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to interpret and enforce the provisions of this Final Order.


Dated: _____, 2017

_____
HONORABLE ERIC L. FRANK
CHIEF UNITED STATES BANKRUPTCY
JUDGE

**Exhibit 1**

**DIP Loan Documents**

164673.1