# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : CHAPTER 11 |
| ISLAND VIEW CROSSING II, LP., | : BANKRUPTCY NO. 17-14454 (ELF) |
| Debtor. | |
| In re: | : CHAPTER 11 |
| ONE STATE STREET ASSOCIATES, LP., | : BANKRUPTCY NO. 17-14291 (ELF) |
| Debtor. | |
| In re: | : CHAPTER 11 |
| CALNSHIRE ESTATES, LLC., | : BANKRUPTCY NO. 17-14457 (ELF) |
| Debtor. | |
| In re: | : CHAPTER 11 |
| STEEPLE RUN, LP., | : BANKRUPTCY NO. 17-14458 (ELF) |
| Debtor. | |

**JOINT PLAN OF REORGANIZATION OF DEBTORS**

David B. Smith, Esquire
Smith Kane Holman, LLC
112 Moores Road, Suite 300
Malvern, PA 19355

Attorneys for Debtors

Dated:  November 28, 2017

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................................. 1

**ARTICLE 1   DEFINITIONS, RULES OF INTERPRETATION AND TIME** ................... 1

    **A.**    **Scope Of Definitions** ......................................................................................... 1

    **B.**    **Definitions** ......................................................................................................... 1

    **C.**    **Rules Of Interpretation** ................................................................................... 5

    **D.**    **Computation Of Time** ...................................................................................... 6

**ARTICLE II   CLASSIFICATION OF CLAIMS AND INTERESTS** ................................. 6

    **A.**    **Introduction** ...................................................................................................... 6

    **B.**    **Unclassified Claims** ......................................................................................... 6

    **C.**    **Unimpaired Classes Of Claims** ...................................................................... 6

    **D.**    **Impaired Classes Of Claims** ........................................................................... 7

    **E.**    **Unimpaired Class of Interests** ....................................................................... 7

**ARTICLE III   TREATMENT OF CLAIMS AND INTERESTS** ........................................ 7

    **A.**    **Unclassified Claims** ......................................................................................... 7

    **B.**    **Unimpaired Classes of Claims and Intersts** ................................................. 8

    **C. Impaired Classes of Claims and Interests** ........................................................ 9

**ARTICLE IV   MEANS FOR IMPLEMENTATION OF THE PLAN** ............................. 10

    **A.**    **Sources of Cash for Distributions.** ............................................................... 10

    **B.**    **Effectuating Documents; Further Transactions** ....................................... 10

    **C.**    **Bar Date for Administrative Expense.** ........................................................ 10

**ARTICLE V   EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS** ................................................................................................................... 11

**ARTICLE VI   PRESERVATION OF LITIGATION CLAIMS** ...................................... 11

**ARTICLE VII   PROVISIONS GOVERNING DISTRIBUTIONS** ................................... 11

    **A.**    **Interest on Claims** ......................................................................................... 11

    **B.**    **Disbursing Agent** ........................................................................................... 12

    **C.**    **Delivery of Distributions** .............................................................................. 12

    **D**    **Distributions in Respect of Disputed Claims** ............................................. 12

**ARTICLE VIII   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............................................................................................................................... 12

    **A.**    **Executory Contracts and Leases** ................................................................. 12

| | | |
|---|---|---|
| B. | Bar To Rejection Damages | 12 |
| **ARTICLE IX   CONDITIONS PRECEDENT** | | **13** |
| B. | Conditions to Effective Date | 13 |
| **ARTICLE X   MODIFICATIONS AND AMENDMENTS** | | **13** |
| **ARTICLE XI   RETENTION OF JURISDICTION** | | **13** |
| **ARTICLE XII   COMPROMISES AND SETTLEMENTS** | | **14** |
| **ARTICLE XIII   MISCELLANEOUS PROVISIONS** | | **14** |
| A. | Setoffs | 14 |
| B. | Withholding And Reporting Requirements | 14 |
| C. | Joint and Several Obligations / Intercompany Claims / Vesting of Property | 14 |
| D. | Discharge | 14 |
| E. | Exculpation And Limitation Of Liability | 15 |
| F. | Binding Effect | 15 |
| G. | Notice of Default Under the Plan | 15 |
| H. | Notices | 15 |
| I. | Term Of Injunctions Or Stays | 16 |
| J. | Governing Law | 16 |
| K. | Nonseverability and Mutual Dependence of Plan Provisions | 16 |

# INTRODUCTION

Island View Crossing II, L.P.; One State Street Associates, L.P.; Calnshire Estates, LLC; and Steeple Run, L.P. (collectively, the "Debtors") hereby propose the following plan of reorganization for the resolution of their outstanding creditor Claims and equity Interests. Reference is made to the Disclosure Statement related to this Plan for results of operations, projections for future operations, risk factors, a summary and analysis of the Plan, a summary of the litigation instituted by the Debtors and related matters.

All holders of Claims against, and Interests in, the Debtors are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject it.

# ARTICLE I.

# DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### A. Scope Of Definitions

Except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined in this Plan shall have the meanings ascribed to them in this Article I. Any term used but not defined in this Plan which but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, defined terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B. Definitions

1. "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the Debtor's business, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, Professional Fees, and all fees and charges assessed against under Section 1930 of Title 28, United States Code, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Section 546(c)(2)(A) of the Bankruptcy Code.

2. "Adversary Proceeding" means the adversary proceeding commenced by IVC and others against Prudential Savings Bank under Adversary Docket No. 17-0202 in the Bankruptcy Court.

3. "Allowed Claim" means a Claim or any portion thereof (a) that has been allowed by a Final Order, (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is Scheduled, other than a Claim that is Scheduled at zero or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court, or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan.

4. "Allowed Class __ Claim" means an Allowed Claim in the particular Class described.

5. "Allowed Class __ Interest" means an Interest in the particular Class described (a) that has been allowed by a Final Order, (b) for which (i) no objection to its allowance has been filed within the periods of limitation fixed by the Bankruptcy Code or by any Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or (c) that is expressly allowed in the Plan.

6. "Ballot" means each of the ballot forms that will be distributed with the Disclosure Statement to holders of Claims in Classes that are impaired under the Plan and entitled to vote.

7. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

8. "Bankruptcy Court" means the Bankruptcy Court of the United States District Court for the Eastern District of Pennsylvania or such other court as may have jurisdiction over the Chapter 11 Cases.

9. "Bankruptcy Rule(s)" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

10. "Business Day" means any day other than a Saturday, Sunday or other day on which commercial banks in Philadelphia, Pennsylvania are authorized or required by law to close.

11. "Calnshire" means Calnshire Estates, LLC., a Pennsylvania limited liability corporation and the debtor and debtor-in-possession in Bankruptcy Case No. 17-14457.

12. "Cash" means legal tender of the United States.

13. "Chapter 11 Cases" means the Chapter 11 cases of the Debtors, pending in the Bankruptcy Court.

14. "Claim" means a claim against any one or more of the Debtors, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

15. "Class" means a category of holders of Claims or holders of Interests described in Article II of the Plan.

16. "Class 3 Cash" means an amount equal to the lesser of (i) the aggregate amount of Allowed General Unsecured Claims and (ii) the Distributable Cash.

17. "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

18. "Confirmation Hearing" means the hearing on confirmation of the Plan under Section 1128 of the Bankruptcy Code.

19. "Confirmation Order" means the order, entered by the Bankruptcy Court, confirming the Plan.

20. "Cure" means the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to Section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

21. "Debtors" means IVC; State Street; Calnshire and Steeple.

22. "Defendant" means Prudential Savings Bank, the defendant in the Adversary Proceeding.

23. "DIP Lender" means Commonwealth Capital, LLC.

24. "DIP Lender Secured Claim(s)" means the Allowed Claim(s) of the DIP Lender to the extent such Allowed Claim is secured by any of the Debtor's assets.

25. "Disallowed Claim" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) is the subject of an objection filed by the Debtors with the Court and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

26. "Disbursing Agent" means the Debtors or a person designated by the Debtors and approved by the Bankruptcy Court to serve as a disbursing agent.

27. "Disclosure Statement" means the written disclosure statement that relates to the Plan, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified, or supplemented from time to time.

28. "Distributable Cash" means the net income or net proceeds remaining on each anniversary of the Effective Date and available for distribution to the holders of Allowed Class 3 Claims after payment of amounts owing on account of the following as they become due under this Plan: (i) Allowed Administrative Claims; (ii) Allowed Priority Tax Claims; (iii) Allowed Other Priority Claims; (iv) DIP Lender Secured Claim; (v) all payments currently due to the RDA without acceleration; (vi) all payments currently due to Penn Community Bank without acceleration; and (vii) the creation of a $30,000.00 reserve for the payment of quarterly fees to the United States Trustee and a $145,000.00 reserve for post-Effective Date professional fees.

29. "Disputed Claim" means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim.

30. "Effective Date" means the third Business Day (that is at least fourteen (14) days after the Confirmation Date) after which all conditions to the effective date of the Plan set forth in the Plan have been satisfied or waived.

31. "Estate" means the joint estate comprised of the bankruptcy estates of all of the Debtors, pursuant to Section 541 of the Bankruptcy Code.

32. "Face Amount" means, (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the holder of such Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

33. "Final Order" or "Final Judgment" means an order or judgment, the operation or effect of which has not been stayed, reversed, modified or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, no longer remains pending.

34. "General Unsecured Claim(s)" means an Allowed Claim(s) that is not: (i) an Administrative Claim; (ii) a Priority Claim or Other Priority Claim; (iii) secured by any property owned by the Debtor; or (iv) an Interest.

35. "Homebuyers" means a Person who has entered into a written contract to purchase a townhouse or condominium at the Project and have made a deposit towards the purchase price under that contract.

36. "Homebuyer Deposit Claims" means the Allowed Claim(s) of the Homebuyers for the return of any deposit money that they paid under a written contract to purchase a townhouse or condominium at the Project.

37. "Insider Claim" means a Claim of an insider, as insider is defined under the Bankruptcy Code.

38. "Interest" means the rights of any current or former holder or owner of any general or limited partnership interest of the Debtor.

39. "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

40. "IVC" means Island View Crossing II, L.P., a Pennsylvania limited partnership and the debtor and debtor-in-possession in Bankruptcy Case No. 17-14454.

41. "IVP" means Island View Properties, Inc., a Pennsylvania company and the general partner of IVC.

42. "Limited Partners" means, collectively, each of Renato Gualtieri, the Estate of Francesco Gualtieri, Antonio and Lesa Gualtieri, and Nancy Maychuk.

43. "Other Priority Claim" means a Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

44. "Other Secured Claim(s)" means all other Allowed Secured Claim(s) (if any) of creditors, other than the DIP Lender, RDA, Penn Community Bank or Prudential, to the extent such other Allowed Secured Claim is secured by any of the Debtors' assets.

45. "Ownership Percentage" means the ownership interest in the Debtors of each Limited Partner, general partner and/or member (expressed as a percentage) as of the Petition Date.

46. "Penn Community Bank" means Penn Community Bank, formerly known as First Federal Savings and Loan Associates of Bucks County.

47. "Penn Community Bank Secured Claim(s)" means the Allowed Secured Claim(s) (if any) of Penn Community Bank to the extent such Allowed Secured Claim is secured by any of the Debtors' assets.

48. "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

49. "Petition Date" means June 21, 2017 as to State Street and June 30, 2017 as to each of IVC, Steeple and Calnshire, the date on which teach Debtor filed its petition for reorganization commencing its Chapter 11 Case.

50. "Plan" means this plan of reorganization, dated November 28, 2017, proposed by the Debtors as it may be amended from time to time in accordance with the Bankruptcy Code.

51. "Priority Tax Claim" means a Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

52. "Professional Fees" means a Claim of a professional retained in the Chapter 11 Case pursuant to Section 327 of the Bankruptcy Code or otherwise, for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Confirmation Date.

53. "Project" means the 169 unit townhouse and condominium development being completed on the Property by IVC.

54. "Property" means the 17.5 acre parcel of land and improvements owned by IVC and located at 1600 Radcliffe Street in Bristol Borough, Bucks County, Pennsylvania.

55. "Pro Rata" means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

56. "Prudential" means Prudential Savings Bank.

57. "Prudential Escrow Balance" means the amount of money escrowed by IVC from the closings on the sale of townhouses, condominiums or lots at the Project for potential payment to Prudential or as otherwise provided under this Plan.

58. "Prudential Interest" means interest accruing at the rate of the Wall Street Journal Prime Rate plus 2%, calculated on the outstanding principal balance of the Prudential Secured Claim, based upon a 365 day year.

59. "Prudential Secured Claim(s)" means the Allowed Claim(s) (if any) of Prudential to the extent such Allowed Claim is secured by any of the Debtor's assets.

60. "RDA" means the Redevelopment Authority of the County of Bucks.

61. "RDA Secured Claim(s)" means the Allowed Claim(s) (if any) of the RDA to the extent such Allowed Claim is secured by any of the Debtor's assets.

62. "Renato Gualtieri Partnership Interest" means the 96% limited partnership interest in IVC.

63. "Reorganized Debtors" means the Debtors, as a joint and consolidated entity for all purposes and obligations assumed under this Plan, on and after the Effective Date of the Plan, but as legally separate business entities for all other and future purposes.

64. "Scheduled" means, with respect to any Claim or Interest, the status and amount (if any) of such Claim or Interest as set forth in the Schedules.

65. "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed in the Bankruptcy Court by the Debtors, as such schedules or statements have been or may be further amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

66. "Settlement Agreements" mean: (i) the May 8, 2017 settlement agreement among GeoStructures, Inc., Americorp Homes, Inc., IVP and IVC; and (ii) the December 22, 2016 settlement agreement between Bohler Engineering, PA, LLC and IVC.

67. "State Street" means One State Street Associates, L.P., a Pennsylvania limited partnership and the debtor and debtor-in-possession in Bankruptcy Case No. 17-14291.

68. "Steeple" means Steeple Run, L.P., a Pennsylvania limited partnership and the debtor and debtor-in-possession in Bankruptcy Case No. 17-14458.

65. "Unsecured Claim(s) of the Defendant" means the Allowed Claims (if any) of Defendant, Prudential Savings Bank, which are not secured by any of the Debtors' assets.

C. **Rules of Interpretation**

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an

5

existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

  **D.** **Computation of Time**

  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

  **A.** **Introduction**

  All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below, have not been classified.

  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

  **B.** **Unclassified Claims (not entitled to vote on the Plan)**

   1. Administrative Claims

   2. Priority Tax Claims

  **C.** **Unimpaired Classes of Claims (deemed to have accepted the Plan, and, therefore, not entitled to vote on the Plan)**

   1. Class 1: Other Priority Claims

  Class 1 consists of all Other Priority Claims.

   2. Class 2: DIP Lender Secured Claim(s)

  Class 2 consists of the Allowed DIP Lender Secured Claim(s), if any.

   3. Class 2A: RDA Secured Claim(s)

  Class 2A consists of all RDA Secured Claim(s).

   4. Class 3A: Homebuyer Deposit Claim(s)

  Class 3A consists of all Homebuyer Deposit Claim(s)

    **D.**    **Impaired Classes of Claims (entitled to vote on the Plan)**

        1.    Class 2B:  Prudential Secured Claim(s)

Class 2B consists of all Prudential Secured Claim(s), if any.

        2.    Class 2C:  Penn Community Bank Secured Claim(s)

Class 2C consists of all Penn Community Bank Secured Claim(s).

        3.    Class 2D:  Other Secured Claim(s)

Class 2D consists of all Other Secured Claim(s), if any.

        4.    Class 3:  General Unsecured Claims

Class 3 consists of all General Unsecured Claims.

    **E.**    **Unimpaired Classes of Interests (deemed to have accepted the Plan, and, therefore, not entitled to vote on the Plan)**

        1.    Class 4:  Interests of Limited Partners and Members

Class 4 consists of all limited partnership and membership interests in the Debtors.

        2.    Class 5:  Interests of General Partners

Class 5 consists of all general partnership interests in the Debtors.

## ARTICLE III.
## TREATMENT OF CLAIMS AND INTERESTS

    **A.**    **Unclassified Claims**

        1.    Administrative Claims

Each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which the Debtors and such holder shall have agreed upon in writing, <u>provided</u>, <u>however</u>, that Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of their businesses during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.  Unless otherwise agreed to by the holder of an Allowed Administrative Claim, each holder of an Allowed Administrative Claim shall receive its distribution under this Plan on the later of: (i) the Effective Date; and (ii) fourteen (14) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim.

*Payment of Statutory Fees*.  On or before the Effective Date, all fees payable pursuant to 28 U.S.C. Section 1930 arising on or before the Confirmation Date, as determined by the Bankruptcy Court at the hearing on Confirmation, shall be paid in cash equal to the amount of such fees constituting an Administrative Expense.  All such fees arising after the Confirmation Date shall be paid when due.

        2.    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall be entitled to receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim as follows.  All Allowed Priority Tax

Claims, other than prepetition real estate taxes at the Property, shall be paid by the Debtor, in cash, in monthly installments with interest at an annual rate of 5% starting on the first Business Day of the month following the Effective Date and continuing through June of 2022 or as otherwise agreed by the applicable taxing authority pursuant to Section 1129(a)(9)(C).  As to the Allowed Priority Tax Claims in the nature of real estate taxes at the Property, the Debtor shall pay or cause to be paid same at and upon the sale of each unit at the Property, but in no event later than June of 2022, or as otherwise agreed by the applicable taxing authority.

      **B.**      **Unimpaired Classes of Claims and Interests**

      1.  Class 1: Other Priority Claims

A holder of an Allowed Class 1 Other Priority Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 1 Other Priority Claim (a) Cash equal to the amount of such Allowed Class 1 Other Priority Claim or (b) such other treatment as to which the Debtors and such holder shall have agreed upon in writing.  Unless otherwise agreed to by the holder of an Allowed Other Priority Claim, each holder of an allowed Other Priority Claim shall receive its distribution under this Plan on the later of: (i) the Effective Date; and (ii) fourteen (14) days after the date on which such Other Priority Claim becomes an Allowed Other Priority Claim.

      2.  Class 2:  DIP Lender Secured Claim(s)

In full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 2 DIP Secured Claim(s), the holder to the Class 2 DIP Lender Secured Claim(s) shall retain its liens on IVC's assets and all other legal, equitable and contractual rights set forth under the applicable documents evidencing the financing provided to IVC and any order(s) approving such financing shall remain in full force and effect, without alteration.

      3.  Class 2A: RDA Secured Claim(s)

In full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 2A RDA Secured Claim(s), the holder to the Class 2A RDA Secured Claim(s) shall retain its liens on the Debtors' assets and all other legal, equitable and contractual rights set forth under the applicable documents evidencing the financing provided to IVC, without alteration.  To the extent the Debtors have not already done so on or before the Effective Date, the Debtors shall cure any default that occurred before the Effective Date; reinstate the maturity of the documents evidencing the financing, as it existed before the default; and perform all of IVC's obligations under such documents as stated therein.

      4.  Class 3A:  Homebuyer Deposit Claim(s)

In full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 3A Homebuyer Deposit Claim(s), all Homebuyers shall obtain a full repayment of their Allowed Homebuyer Deposit Claim(s) on or before the Effective Date.

      5.  Class 4:  Interests of Limited Partners and Members

On the Effective Date, all Class 4 Interests shall remain unaltered with regard to their legal, equitable and contractual rights to which they were entitled pre-petition.  As such, the Interests of Limited Partners and members of the Debtors are unimpaired and deemed to have accepted the Plan.

      6.  Class 5: Interests of General Partners

On the Effective Date, all Class 5 Interests shall remain unaltered with regard to their legal, equitable and contractual rights to which they were entitled pre-petition.  As such, the Interests of General Partners are unimpaired and deemed to have accepted the Plan.

### C. Impaired Classes of Claims and Interests

1. Class 2B: Prudential Secured Claim(s) (If Any)

In full satisfaction, settlement, release, and discharge of its Allowed Class 2B Claim, Prudential shall retain all of its existing and otherwise unavoidable liens on the Debtors' assets. Within thirty (30) days after the full and final resolution of the Adversary Proceeding, Prudential shall receive the lesser of: (i) the Prudential Secured Claim(s) plus the accrued Prudential Interest; and (ii) the then-existing Prudential Escrow Balance. To the extent that the Prudential Secured Claim and accrued Prudential Interest are not fully satisfied by such payment, Prudential shall receive a release price of $25,000 at closing on the remainder of each of the first 30 townhouse units sold at the Property after the full and final resolution of the Adversary Proceeding until the Prudential Secured Claim and all accrued Prudential Interest has been satisfied. Thereafter, to the extent that the Prudential Secured Claim(s) and all accrued Prudential Interest has not been satisfied, the release price paid to Prudential shall increase to $100,000 for the remaining 41 townhouse units, then $100,000 for the first 74 condominium units and then $125,000 for the remaining 22 condominium units until the earlier of: (y) satisfaction of the Prudential Secured Claim(s) and all accrued Prudential Interest; and (z) the seventh (7th) year anniversary of the full and final resolution of the Adversary Proceeding, at which time the balance of the Prudential Secured Claim(s) plus all accrued Prudential Interest shall be due and payable.

2. Class 2C: Penn Community Bank Secured Claim(s)

In full satisfaction, settlement, release, and discharge of its Allowed Class 2C Penn Community Bank Secured Claim(s), Penn Community Bank shall retain its liens on State Street's assets and all other legal, equitable and contractual rights set forth under the applicable documents evidencing the financing provided to State Street without alteration. To the extent the State Street has not already done so on or before the first, second and third annual anniversaries of the Effective Date, the Debtors shall pay at least one-third of the amount necessary to cure any default that occurred before the Effective Date. In addition, commencing with the first regularly monthly payment that would become due after the Effective Date, the Debtors shall make all regularly monthly payments required under the documents evidencing the Penn Community Bank financing, as it existed before the default; and perform all of State Street's obligations under such documents as stated therein. As such, the Debtors will cure the defaults over time, reinstate the maturity of the State Street financing and resume making all monthly payments that would come due on and after the Effective Date.

3. Class 2D: Other Secured Claim(s)

In full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 2D Other Secured Claim(s), the holders of the Other Secured Claim(s) shall retain their liens on the Property until paid in full and receive four payments, one each on the first, second, third and fourth anniversaries of the Effective Date; provided, however, that each unit sold at the Property shall be conveyed free and clear of the lien of any such Other Secured Claim(s). Each such payment shall be 25% of the Other Secured Claim(s).

3. Class 3: General Unsecured Claim(s)

In full satisfaction, settlement, release, and discharge of their Claim, each holder of a General Unsecured Claim(s) shall receive five annual payments, beginning on the one-year anniversary and continuing until the fifth anniversary, of the Effective Date from the Debtors as follows:

| | |
|---|---|
| First Anniversary | $ 100,000.00 |
| Second Anniversary | $ 500,000.00 |
| Third Anniversary | $1,000,000.00 |
| Fourth Anniversary | $1,000,000.00 |
| Fifth Anniversary | $ Balance |

Each annual distribution to the holders of the General Unsecured Claim(s) shall be no less than 35% of the Distributable Cash available thirty (30) days before the next annual anniversary of the Effective Date. All such distributions shall be made on a Pro Rata Basis to the holders of General Unsecured Claim(s). Such annual

9

distributions to General Unsecured Creditors shall continue until all General Unsecured Claims have been paid in full, without interest.

In addition, if IVC or any of the other Debtors recover money (not including any claim discounts or releases of claims) in or as a result of its Adversary Proceeding or the release to the Debtors of some or all of the Prudential Escrow Balance, holders of General Unsecured Claim(s) shall receive a supplemental Pro Rata distribution of 25% of such money recovered from the Adversary Proceeding or the money released to the Debtors from the Prudential Escrow Balance until such General Unsecured Claim(s) have been satisfied in full.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.     Sources of Cash for Distributions; Transfer Tax Exemption.**

The Cash necessary to make the distributions under this Plan shall come from proceeds derived from one or more of the following sources: (i) loans received by the Debtors; (ii) cash flow from the Debtors' operations; (iii) cash recoveries from the Adversary Proceeding; (iv) the sale of units at the Property and (v) the sale(s) of some or all of the Debtors' other assets.  All Cash used for distributions made pursuant to this Plan shall be done by depositing funds into a disbursement account opened and maintained by the Disbursing Agent, with all such Plan disbursements made by the Disbursing Agent therefrom.

On and after the Effective Date of this Plan, IVC shall be permitted to sell units, lots, townhouses, condominiums and land free and clear of all liens, claims and encumbrances pursuant to the Confirmation Order to the full extent permitted under the Bankruptcy Code, without any further order of the Bankruptcy Court.  Upon such sale, no creditor holding a lien upon the asset(s) being sold shall be entitled to demand or receive a release price or amount from any such sale except on account of the release price(s) set forth in the cash flow projections attached to the Disclosure Statement as Exhibit C.

Pursuant to section 1146(a) of the Bankruptcy Code, and to the extent permitted by applicable bankruptcy law, the issuance, transfer or exchange of notes or the issuance of debt under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the sale and transfer of the Property by the Reorganized Debtor, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.  Accordingly, the sale of the Property, individual units at the Property and any property owned by any of the Debtors, pursuant to the Plan shall be exempt from any transfer taxes.

**B.     Effectuating Documents; Further Transactions**

The Debtors' general partners or managing members (as applicable) acting by or through any of their duly authorized officers or agents shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**C.     Bar Date for Administrative Expenses.**

*General Provisions*.  Except as provided below with respect to (i) Administrative Expenses of Professionals, (ii) non-tax liabilities incurred in the ordinary course of business by the Debtors, and (iii) tax claims, requests for payment of Administrative Expenses arising out of transactions or occurrences before the Effective Date must be filed no later than thirty (30) days after the Effective Date.  Any holder of such an Administrative Expense who is required to file a request for payment of such Administrative Expense and that does not file such a request by the applicable bar date shall be forever barred from asserting such Administrative Expense against the Debtors, the Reorganized Debtors or any of their respective property.

*Professionals*. All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Reorganization Case) shall file and serve on the Debtors, the Debtors' Counsel, the United States Trustee and any other party requesting notice an Application for Final Allowance of Compensation and Reimbursement of Expenses no later than sixty (60) days after the Effective Date.

*Tax Claims*. All requests for payment of Administrative Expenses and other claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date ("Post-petition Tax Expenses") and for which no bar date has otherwise been previously established, must be filed on or before the later of: (i) thirty (30) days following the Effective Date; and (ii) one hundred and twenty (120) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any holder of any Post-petition Tax Expense that is required to file a request for payment of such taxes and does not file such a request by the applicable bar date shall be forever barred from asserting any such Post-petition Tax Expense against any of the Debtors, the Reorganized Debtors, or their respective property, whether any such Post-petition Tax Expense is deemed to arise prior to, on, or subsequent to the Effective Date.

*Post-Effective Date Professional Fees*. Following the Effective Date, the engagement of Professionals may continue at the sole discretion of the Reorganized Debtors. All fees and expenses incurred by the Debtors' or the Reorganized Debtors' professionals after the Effective Date shall be paid in the ordinary course of business without the need for Bankruptcy Court approval.

## ARTICLE V.
## EFFECT OF REJECTION BY ONE OR MORE
## CLASSES OF CLAIMS OR INTERESTS

If any class of Claims or Interests fails to accept this Plan, the Debtors will request confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.

## ARTICLE VI.
## PRESERVATION OF LITIGATION CLAIMS

In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein or in the Settlement Agreements, the Reorganized Debtors shall succeed to, retain and may, in their sole discretion, enforce, continue to prosecute, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings (other than the claims resolved in the Settlement Agreement), whether in law or in equity, whether known or unknown, that the Debtors or their Estate may hold against any Person. The Reorganized Debtors or any of their successors may pursue such retained litigation claims in accordance with the best interests of the Reorganized Debtors or their successors who hold such rights of action.

In accordance with Sections 365 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, approval of this Plan shall constitute assumption and approval of all terms, covenants and conditions contained in the Settlement Agreements pursuant to Rule 9019.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    **Interest on Claims**

Except as specifically provided for in this Plan, post-petition interest shall not accrue or be paid on Claims. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim if any portion of the objection to such Claim is sustained.

### B.  Disbursing Agent

The Disbursing Agent shall make all distributions required under this Plan without the need for a bond.

### C.  Delivery of Distributions

Distributions to holders of Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the proof of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of claim, or (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Disbursing Agent has not received a written notice of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  Amounts in respect of undeliverable distributions made through the Disbursing Agent shall be returned to the Reorganized Debtors until such distributions are claimed.  All claims for undeliverable distributions shall be made on or before the first anniversary of the Effective Date or such claims shall be forfeited.

### D.  Distributions in Respect of Disputed Claims

Except as may be otherwise agreed with regard to any Disputed Claim and approved by the Bankruptcy Court, no distribution shall be made on any portion of a Disputed Claim unless such Disputed Claim shall have become an Allowed Claim.

Upon any Distribution to a Class for which there exists any Disputed Claims, the Disbursing Agent shall set aside an amount of Cash equal to the amount of the Distribution on account of the Disputed Claim(s), unless previously provided for.  At such time thereafter that all Disputed Claim(s) in such Class have been resolved by Final Order, the Disbursing Agent shall make payment in Cash equal to the amount required under this Plan to the holders of Allowed Claims in such Class.  Excess Cash set aside for Disputed Claims after they have been disallowed or become an Allowed Claim, shall be distributed to the holders of claims in the same class (if any Claims in such class remain) and then in any subordinate class until all such Claims have been paid.

## ARTICLE VIII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.  Executory Contracts and Leases

The Debtors shall assume the Settlement Agreements and the leases at the State Street property as of the Effective Date and cure and reinstate those Settlement Agreements and said leases.  The Debtors shall also assume all other executory contracts set forth in a "Schedule of Contracts to be Assumed" which shall be filed of record with the Bankruptcy Court no later than ten (10) days prior to the Confirmation Hearing on this Plan.  All other executory contracts (other than the Settlement Agreements and those listed on the Schedule of Contracts to Be Assumed) to which the Debtors are a party shall be rejected as of the Effective Date, unless such executory contract (i) shall have been previously assumed by the Debtors, or (ii) is the subject of a motion to assume filed on or before the Confirmation Date.

### B.  Bar to Rejection Damages

If the rejection, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors or the properties of any of them unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors within thirty (30) days after the earlier of (i) entry of the Confirmation Order on the Docket, or (ii) entry on the Docket of any other order specifying that the executory contract or unexpired lease has been rejected.

## ARTICLE IX.
## CONDITIONS PRECEDENT

A.  **Conditions to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date:

i)  the Confirmation Date shall have occurred; and

ii)  the Confirmation Order shall have become a Final Order.

## ARTICLE X.
## MODIFICATIONS AND AMENDMENTS

At any time, the Debtors and the Reorganized Debtors may each seek to alter, amend, or modify the Plan or any Exhibits thereto under Section 1127(a) of the Bankruptcy Code.  After the Confirmation Date and prior to substantial consummation of the Plan as defined in Section 1101(2) of the Bankruptcy Code, the Debtors or the Reorganized Debtors (as the case may be) may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims or holders of Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding Confirmation or the Effective Date having occurred, the Bankruptcy Court shall retain full jurisdiction as provided in 28 U.S.C. Sections 157 and 1334 to enforce the provisions, purposes, and intent of this Plan including, without limitation:

(a)  Determination of the allowability of Claims and Interests upon objection to such Claims and Interests;

(b)  Approval, pursuant to Section 365 of the Bankruptcy Code and this Plan, of the assumption, assignment, or rejection of any Executory Contract;

(c)  Any determination necessary or appropriate under Section 505 of the Bankruptcy Code or other determination relating to tax returns filed or to be filed by the Debtors for all periods through the end of the fiscal year in which the Effective Date occurs, including the determination of amount of net operating losses or tax attributes of the Debtors;

(d)  Determination of requests for payment of Claims entitled to priority under Sections 507(a)(2) of the Bankruptcy Code, including compensation of parties entitled thereto;

(e)  Resolution of controversies and disputes regarding interpretation of this Plan;

(f)  Implementation of the provisions of this Plan and entry of orders in aid of Confirmation, including, without limitation, appropriate orders to protect the Debtor from creditor action;

(g)  Modification of the Plan pursuant to Section 1127 of the Bankruptcy Code;

(h)  Adjudication of any causes of action brought or continued by one or more of the Debtors, including among other things, the Adversary Proceeding and other avoidance Claims under Chapter 5 of the Bankruptcy Code;

    (i)    Entry of a final decree closing the Chapter 11 Case.

## ARTICLE XII.
## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Rule 9019(a), the Debtors and Reorganized Debtors may compromise and settle various Claims (a) against the Debtors and (b) that the Debtors have against other Persons. The Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against the Estate and Claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, such right shall pass to the Reorganized Debtors.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### A.    Setoffs

The Debtors may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against the holder of such Claim; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that they may have against such holder.

### B.    Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### C.    Joint and Several Obligations / Intercompany Claims / Vesting of Property

All obligations of the Debtors and Reorganized Debtors under this Plan shall be joint and several obligations of each of the Debtors unless otherwise specified under the Plan.

On the Effective Date, all intercompany claims that one or more of the Debtors has against other Debtors shall be disallowed and shall not be entitled to receive or retain any property or interest in property on account of such intercompany claims under the Plan.

In accordance with Sections 1123(a)(5) and 1141 of the Bankruptcy Code, on the Effective Date, title to all of the remaining assets of the Debtors and property of the Debtors' joint bankruptcy Estate, other than as set forth in this Plan, shall vest back in the respective Debtor(s), subject to all claims, liens, interests and encumbrances, except as otherwise provided in this Plan, and be administered by the Debtors, the Debtors' counsel (in the case of any escrows) and the Reorganized Debtors until distributed.

### D.    Discharge

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims of any nature whatsoever against the Debtors and the Reorganized Debtors, and/or any of their assets or properties, and, except as otherwise provided herein or in the Confirmation Order, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, upon the Effective Date, the Debtors and the Reorganized Debtors, shall be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, or (c) the holder of a Claim based upon such debt accepted the Plan. The Confirmation

Order shall be a judicial determination of discharge of the Debtors and the Reorganized Debtors and shall discharge such entities of all debts arising before the Confirmation Date.

      E.      **Exculpation and Limitation of Liability**

Except as otherwise provided in this Plan, neither the Debtors nor the Reorganized Debtors nor any of their respective, present or former members, officers, directors, partners, employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Reorganized Debtors, or any of their respective general or limited partners, present or former members, officers, directors, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct.

      F.      **Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors and Reorganized Debtors, all present and former holders of Claims, all present and former holders of Interests, and their respective successors and assigns.

      G.      **Notice of Default Under the Plan**

No default shall be declared under the Plan unless any payment due under the Plan (other than a payment required on the Effective Date) shall not have been made or deemed made thirty (30) days after the receipt of written notice of the default by counsel to the Debtors and the Reorganized Debtors.

*Requirements for Notice of Default.* Any notice of default as provided for in the Plan shall: (a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of the default, including a reference to the specific provision of the Plan as to which a default or defaults allegedly has occurred; and (c) describe any action required to cure the default, including the exact amount of any payment required to cure such default, if applicable.

*Cure of Default Under the Plan.* The Reorganized Debtors shall have thirty (30) days after receipt of a written notice of default under the Plan in which to cure such default.

      H.      **Notices**

Any notice required or permitted to be provided to the Debtors or Reorganized Debtors under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

      If to the Debtors / Reorganized Debtors:

      c/o Renato J. Gualtieri
      One South State Street
      Newtown, PA  18940

With Copies to:

David B. Smith, Esquire
Smith Kane Holman, LLC
112 Moores Road, Suite 300
Malvern, PA 19355

### I. Term Of Injunctions Or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Section 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### J. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the Commonwealth of Pennsylvania shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

### K. Nonseverability and Mutual Dependence of Plan Provisions

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face, illegal as applied to any Claim or Interest, or in violation of any provision of the Bankruptcy Code, such provision shall be unenforceable either as to all Holders of Claims or Interests or as to the Holder of such Claim or Interest as to which the provision is illegal, respectively.  In such event, provided the Debtors consent, the Bankruptcy Court shall consider whether the Plan may be confirmed without such unenforceable provision.  In the event the Plan is confirmed any such determination of unenforceability of any provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

Respectfully submitted,

SMITH KANE HOLMAN, LLC

Dated:  November 28, 2017           By: /s/  David B. Smith,
                                          David B. Smith, Esquire
                                          Smith Kane Holman, LLC
                                          112 Moores Road, Suite 300
                                          Malvern, PA 19355
                                          (610) 407-7217 Telephone
                                          (610) 407-7218 Fax