IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------- x
In re                                : Chapter 11
                                     :
                                     :
ISLAND VIEW CROSSING II, L.P.,       : Case No. 17-14454 (ELF)
                                     :
Debtor.                              :
                                     :
------------------------------------------------------- :

**EMERGENCY MOTION OF CREDITOR STRADLEY RONON STEVENS & YOUNG, LLP TO:  (a) ESTIMATE ITS CLAIM FOR VOTING PURPOSES OR RULE ON THE OBJECTION TO ITS CLAIM PRIOR TO THE VOTE ON THE ELECTION OF A CHAPTER 11 TRUSTEE; AND (b) SHORTEN TIME AND <u>EXPEDITE HEARING ON THIS MOTION</u>**

Stradley Ronon Stevens & Young, LLP ("**Stradley**"), an unsecured creditor of Island View Crossing II, L.P. (the "**Debtor**"), hereby files this *Emergency Motion of Creditor Stradley Ronon Stevens & Young, LLP to:  (a) Estimate Its Claim for Voting Purposes or Rule on the Objection to Its Claim Prior to the Vote on the Election of a Chapter 11 Trustee; and (b) Shorten Time and Expedite the Hearing on this Motion* (the "**Estimation Motion**") seeking the entry of an order substantially in the form attached to this Emergency Motion estimating or allowing Stradley's claim against the Debtor in its full amount – $1,680,625.69.  In support of this Estimation Motion, Stradley states the following:

## BACKGROUND

1.    In late November 2015, the Debtor and certain of its affiliates first engaged Stradley to act as their counsel in connection with a series of loans that the Debtor and its affiliates had with Prudential Savings Bank ("**Prudential**").  The Debtor and its affiliates entered into a written  engagement agreement on December 22, 2015, and a modified, written engagement agreement on May 31, 2016, as a result of significant changes to the scope of the representation.   Signed copies of the two engagement agreements were provided to the Debtor,

and upon information and belief are part of and contained in the Debtor's business records and will be produced to the Court at the hearing.

2. The first engagement letter given to Stradley was signed only by the Debtor's principal, Renato Gualtieri, even though the scope of the work described therein was primarily related to negotiations between Prudential and the Debtor concerning their loan relationship.

3. On March 31, 2016, Stradley filed a lender liability complaint against Prudential which seeks damages in excess of $27 million (the "**Lender Liability Case**") on behalf of the Debtor, its general partner and Renato Gualtieri, commencing a new and expanding phase of the representation of the Debtor and its affiliates.

4. On May 31, 2016, the Debtor and certain of its affiliates entered into an amended, written engagement agreement (the "**Amended Engagement Agreement**") to memorialize the material changes to the scope and demands of the representation from negotiations between borrowers and their lender to litigation concerning those relationships.  Among other things, the Amended Engagement Agreement was signed by all of the individuals and entities that Stradley had been representing up to that point and contained an agreement by all such signatories to the Amended Engagement Agreement to be co-obligors for all of Stradley's fees and expenses without requiring allocations of every service and expense benefitting the group.

5. Under both engagement agreements, it was understood and agreed that Stradley would be paid on an hourly basis for its work and that it would submit monthly bills to the Debtor and Mr. Gualtieri for the services provided and the costs incurred by Stradley.

6. At all times prior to the Debtor's bankruptcy filing, Stradley sent monthly invoices to the Debtor and Mr. Gualtieri seeking payment for the services provided and costs incurred in the representation of the Debtor and its affiliates.  Upon information and belief,

copies of all such Stradley invoices are part of and contained in the Debtor's business records which are available to the Interim Trustee.

7. From the time that it started preparing the Lender Liability Case until the Debtor filed its bankruptcy petition, Stradley represented the Debtor and its affiliates in more than 26 separate actions initiated by Prudential, the Lender Liability Case and numerous motions, petitions and settlement conference relating to the foregoing, involving thousands of hours of attorney time.

8. On June 30, 2017, the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code.

9. On July 28, 2017, the Debtor filed its schedules. In Schedule E, at item 3.37, of the Debtor's schedules, the Debtor lists Stradley as an unsecured creditor in the amount of $1,400,000.00 (an amount that does not include the last 3 pre-petition Stradley invoices). Notably, the Debtor's schedules do not assert that Stradley's claim is contingent, unliquidated or disputed.

10. On September 21, 2017, Stradley filed a proof of claim (# 14 on the Claims Docket), asserting an unsecured claim against the Debtor in the amount of $1,680,625.69 (the "**Stradley Claim**"). The Addendum to the Stradley Claim specifically states, "A summary of charges is attached to this Addendum. The detailed bills for the services provided relate to ongoing litigation and are privileged and confidential, but have been provided to the Debtor."

11. Neither the Debtor nor its affiliates have ever disputed any of the monthly invoices submitted by Stradley or the work performed by Stradley in its representation of the Debtor and its affiliates.

12.     On December 18, 2017, this Court entered an order directing the United States Trustee's Office to appoint a chapter 11 trustee for the Debtor.

13.     On December 21, 2017, Christine Shubert was appointed as interim chapter 11 trustee ("**Interim Trustee**") for the Debtor.

14.     On December 22, 2017, two of Island View's largest unsecured creditors, Stradley and Premium Excavating, LLC, filed separate requests for the United States Trustee to hold a meeting for unsecured creditors to vote upon and elect a permanent chapter 11 trustee.

15.     On December 27, 2017, the United States Trustee sent notice to all creditors and parties in interest indicating that it had scheduled a meeting to be held at 1:00 p.m. on January 11, 2018, for the election of a permanent chapter 11 trustee.

16.     Beginning less than 24 hours prior to the election of the permanent chapter 11 trustee and continuing until a few hours before the election, the Interim Trustee and Prudential filed a series of objections to the claims filed against and scheduled by the Debtor.  In all, the Interim Trustee and Prudential collectively objected to 15 claims valued in excess of $2.476 million, more than 80% of the amount of unsecured claims filed against and scheduled by the Debtor.[1]

17.     As reflected by the time stamp on the Interim Trustee's filing, at 5:36 p.m. on January 10, 2018 (the evening before the election), the Interim Trustee filed the *Objection of Christine C. Shubert, Chapter 11 Trustee*, to *Proof of Claim No. 14-1 Filed by Stradley Ronon*

---

[1] Given the fact that 15 combined objections were filed by the Interim Trustee and Prudential in less than 24 hours and that the total objections exceeded 80% of the potentially "allowable" unsecured claims, without any duplication, it appears that the Interim Trustee and the defendant in the Lender Liability Case, which is potentially the largest asset in the Debtor's estate, acted in concert to affect or chill the voting on a permanent trustee.

*Stevens & Young, LLP Pursuant to 11 U.S.C. § 502, Fed. R*. Bankr. P. 3007 and L.B.R. 3007-1 (the "**Objection**").[2]

18.    In paragraph 14 of the Objection, the Interim Trustee alleges that "Due to the lack of documentation attached to the Proof of Claim, it is not possible to determine or establish: (i) the legal liability of the Debtor to pay all amounts due and owing to Stradley for the legal services it provided to the Debtor . . . ; (ii) what portion of the $1,680,625.69 . . . should be allocated to the Debtor . . . ; (iii) what portion of the $1,680,625.69 . . . should be allocated to the Other Debtors . . . ; or (iv) what portion of the $1,680,625.69 . . . should be allocated to Gualtieri and the other non-debtor affiliates . . . ." Objection at ¶ 14.

19.    In paragraph 15 of the Objection, the Interim Trustee alleges that "The Proof of Claim does not include any agreement between Stradley and the Debtor that provides that the Debtor would pay for the legal fees and costs incurred by the Other Debtors, Gualtieri, and the non-debtor affiliates in connection with the Litigation Actions." The Interim Trustee also states that the invoices for the legal services performed are not attached to the Stradley Claim. Objection at ¶ 15. While it is true that such invoices are not attached to the Stradley Claim, the Objection ignores the statements in the Addendum to the Stradley Claim that specifically mention the privileged and confidential nature of such invoices (because of the ongoing $27 million Lender Liability Case that the Debtor is litigating against Prudential) and the statements indicating that the Debtor (and, therefore, the Interim Trustee) has copies of all such documents.

20.    The Interim Trustee and her counsel had almost three weeks to investigate the Stradley Claim prior to filing the Objection, and even longer if it wasn't intended simply to

---

[2] In addition to objecting to the Stradley Claim, the Interim Trustee objected to the claim of Premium Excavating, LLC, the other unsecured creditor requesting a meeting to elect a permanent chapter 11 trustee, notwithstanding the Debtor's schedules and testimony of the Debtor's principal that the Debtor owes this creditor for the substantial site improvements (including roads, curbs and sewers) performed by Premium Excavating, LLC on the Island View project.

disenfranchise Stradley. However, based upon the affidavits of David B. Smith, Esq. and Renato Gualtieri attached hereto as Exhibits A and B, it is clear that the Interim Trustee failed to request any documents from the Debtor prior to filing her Objection or any of the other claim objections filed by her or Prudential. In point of fact, at the time that she felt it necessary to file claim objections, she had not even requested or obtained control of the Debtor's books and records or any of its assets, making the claim objections her first official act, aside from hiring professionals.

21. Similarly, on December 26, 2017, the Interim Trustee's counsel, Michael Menkowitz, sent Michael Cordone at Stradley an email asking if it would be helpful if the Interim Trustee met with Stradley. Within an hour, Michael Cordone responded that he would be "happy to get on the phone with the [Interim Trustee and her counsel] to discuss the case . . ." and the Interim Trustee's intentions because it would be faster and cheaper by phone. Neither Michael Menkowitz nor the Interim Trustee responded in any way to the December 26, 2017 email from Michael Cordone about a telephone call. The next communication between Stradley and the Interim Trustee was the electronic service of the Stradley Objection, literally on the eve of the permanent trustee election. A copy of the email exchange between Michael Cordone and Michael Menkowitz is attached hereto as Exhibit C.

22. Neither the Interim Trustee nor her counsel have ever requested from Stradley copies of its invoices referenced in the Stradley Claim, any engagement agreements or any other information pertaining to the pre-petition services provided by Stradley. Similarly, neither the Interim Trustee or her counsel have ever discussed with Stradley what could be the largest asset of the Debtor's estate - the Lender Liability Case.

23.     Stradley is an unsecured creditor that this Court permitted to participate in all previous hearings in the Debtor's case, including the hearing on the request by Prudential to appoint a trustee. While the Interim Trustee was not a party to those proceedings, there has already been testimony about the scope of Stradley's representation of the Debtor and its affiliates that is part of the record available to the Interim Trustee.

24.     It appears that the Interim Trustee did not do a good faith investigation of the facts before filing her Objection to the Stradley Claim, [3] despite having two readily available alternatives to obtain the confidential and privileged (as to third parties) information that the Interim Trustee has improperly made the subject of the Stradley Objection.

25.     The "object first and ask questions later" manner in which the Interim Trustee has proceeded and the timing of her claim objections – on the eve of the permanent trustee election – in conjunction with the Prudential objections strongly suggest that the Interim Trustee and Prudential were seeking to disenfranchise unsecured creditors in this case to deny them the rights accorded to them under 11 U.S.C. § 1104(b), Fed.R.Bankr.P. 2007.1.

26.     On January 11, 2018, all parties in attendance at the chapter 11 trustee election meeting agreed to postpone the election , without prejudice, to January 29, 2018 at 1:00 p.m.

## GROUNDS FOR ESTIMATION OF CLAIM FOR VOTING PURPOSES

27.     Pursuant to 11 U.S.C. §1104(b)(1) and Federal Rule of Bankruptcy Procedure 2007.1, upon the request of "a party in interest made not later than 30 days after the court orders the appointment of a trustee . . . the United States Trustee shall convene a meeting of creditors for the purpose of electing one disinterested person to serve as trustee in the case."

---

[3] The allegations made in the Objection further highlight the insufficient investigation done by the Interim Trustee prior to filing the Objection and her complete lack of knowledge of the relationships between the Debtor and its affiliates, the loan relationships between some of the entities, and who are the general partners of the respective entities – none of which appeared to be important to the Interim Trustee before she felt compelled to begin objecting to creditor claims with Prudential.

28.     Once a meeting is requested, § 1104(b)(1) states that the provisions of 11 U.S.C. § 702(a), (b), and (c) govern the process for the election of a chapter 11 trustee.

29.     Section 702(a) only permits creditors holding:  (1) allowable, undisputed, fixed and liquidated unsecured claims; (2) no materially adverse interest; and (3) no insider status to vote on the election of a permanent chapter 11 trustee.[4]  The objections filed by the Interim Trustee and Prudential to otherwise allowed claims on the eve of the permanent chapter 11 trustee election appear to be aimed at converting otherwise allowed claims (according to the Debtor) permitted to vote on the election of a permanent trustee into disputed claims under § 702(a)(1), arguably unable to vote.  11 U.S.C. § 702(a).

30.     Section 702(b) and (c) specify the minimum requirements for voting to be requested at an election meeting, the minimum requirements for votes cast, and the method of calculating the majority of votes cast, all of which are based upon the dollar amount of the claims at issue and not merely the number of eligible creditors voting.  11 U.S.C. § 702(b) and (c).

31.     As a result of the choreographed and intentionally last-minute objections filed by the Interim Trustee and Prudential to more than 80% of the entire pool of allowable, unsecured claims of the Debtor, the combined efforts of the Interim Trustee and Prudential have created uncertainty about who may legitimately vote, what the amount is that can be voted by such creditors (if any), and how the United States Trustee can and should count the request for a vote and any such votes cast in meeting the requirements of § 702(b) and (c).

32.     The Interim Trustee and Prudential should not be permitted to disenfranchise unsecured creditors and deny them their right to elect a permanent trustee in order to further their

---

[4] It is ironic that Prudential, which itself fails to hold an unsecured claim and holds an adverse interest as a result of the disputes to its claims as stated in the Lender Liability Case, is the creditor that has objected to many of the claims of the subcontractors that have worked on the Island View project and is thereby trying to do indirectly what it is not permitted to do directly – have a say on who will be the chapter 11 trustee for the Debtor.  This type of blatant circumvention of the Bankruptcy Code and Rules should not be permitted.

own personal agendas. The Interim Trustee had the ability and duty to investigate the claims to which she now objects, but she chose not to do so. She did not review the books and records of the Debtor, and she did not reach out to the creditors – even those like Stradley who offered to speak to her.

33. The Interim Trustee could have avoided the appearance of impropriety and unnecessary litigation by either: (i) speaking with the unsecured creditors and letting them know her intentions for the case; and /or (ii) attending the election meeting and advocating her case to be elected as permanent trustee. Instead, and in spite of her fiduciary obligations, she elected to seek to disenfranchise the majority of the unsecured creditors without first properly investigating her claim objections.

34. While not specifically provided for in the Bankruptcy Rules or the Bankruptcy Code with regard to a chapter 11 trustee election, 11 U.S.C. § 502(c)(1) permits estimation of contingent and unliquidated claims in order to prevent undue delays in the administration of a bankruptcy case and often has been used by bankruptcy courts to estimate disputed claims in order to create appropriate reserves. *See, e.g., In re Jacom Computer Servs., Inc.,* 280 B.R. 570, 571 and 573 (Bankr. S.D.N.Y. 2002)(granting request to estimate certain disputed claims at zero for reserve purposes); *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 740 (Bankr. S.D.N.Y. 1992)(estimating disputed claims for trustee's claim reserve). Similarly, Bankruptcy Rule 3018 allows a court to temporarily allow a claim in an amount determined (i.e., estimated) by the court for the purpose of voting to accept or reject a plan.

35. While neither § 502(c) nor Bankruptcy Rule 3018 are directly applicable to addressing objections to creditor claims before a trustee election and Rule 2003(b)(3) is not specific on how a court is supposed to rule on an objection to the "allowability" of a claim for

voting purposes, there is a need for some prompt method of resolving these intentionally last-minute objections without further delaying the election of a trustee and the administration of the bankruptcy case and without disenfranchising the very creditors upon whom Bankruptcy Rule 2007.1 attempts to confer the right to vote (particularly in a situation with the appearance of impropriety in the claim objections). Section 105(a) of the Bankruptcy Code, which permits this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" is the gap-filler that permits this Court to adapt the estimation process used in other contexts to address the disputed claim issues presented here on a timely basis.

36. In estimating a claim, there is no particular procedure that must be employed. *Mann, Coffee & Co. v. Coffey,* 300 F.3d 340, 356 (3d Cir. 2002). The only requirement in estimating a claim is that the Court employ a process that determines the value of the claim in accordance with the legal rules that will govern the final amount of the claim other than the general principles of the Bankruptcy Code. *In re Armstrong World Industries, Inc.,* 348 B.R. 111, 123 (D. Del. 2006). While courts have substantial discretion in estimation proceedings, they must have sufficient evidence upon which to base a reasonable estimate of the claim. *Bittner v. Borne Chem. Co.,* 691 F.2d 134, 135 (3d Cir. 1982). The overarching purpose of estimation is to "realize the goals of Chapter 11," which are speed and efficiency. *Id.* at 136-7.

37. The original engagement letter shows that Renato Gualtieri and the Debtor had hired Stradley to represent them in negotiations with Prudential concerning the Island View project and its loan relationship with Prudential at the end of 2015. The amended engagement letter and the prior testimony of the Debtor and Stradley in this case further establish that: (i) the scope of that relationship significantly expanded in early 2016; and (ii) by May 31, 2016, the Debtor, and all of its affiliated entities that Stradley represented, confirmed in the amended

engagement letter that they had each agreed to be co-obligors for the legal fees and costs incurred by Stradley.

38. Based upon the clear language in the engagement letters, the Debtor (and all affiliates that signed the May 31, 2016 amended engagement letter) each agreed to be co-obligors for all of the present and future legal fees and costs incurred by Stradley in its representation of the entire client group. The fact that a creditor may have recourse against a non-debtor does not negate the ability or propriety of asserting the full claim against the debtor. *In re Poage,* 92 B.R. 659, 665 (Bankr. N.D. Tex. 1988) (full claim can be asserted against debtor even when there is joint and several liability with non-debtors). In fact, this is wholly consistent with Prudential's claims of cross-collateralization on the Island View project and this Court's determination in its December 18, 2017 oral opinion that the Debtor and its affiliates were "controlled as though they were divisions of a single entity." December 18, 2017 oral opinion of this Court (Docket # 142).

39. With the foregoing facts in mind and upon consideration of the timing and baseless allegations in the Objection, it is clear that the Interim Trustee did not meet her good faith obligation to investigate the underlying facts and does not have a legitimate basis for the allegations that she makes in the Objection.[5] *See In re Poage,* 92 B.R. at 665 (fact that creditor had claims against non-debtor, co-obligors was not a legitimate basis for interim trustee's last-minute objections to the creditor's claim that were interposed to prevent vote on permanent trustee). "When an objection to a claim is filed for the purposes of challenging the claimant's

---

[5] Moreover, the Interim Trustee's failure to review the Stradley engagement letters and invoices, which were readily available to her in the Debtor's books and records and her inexplicable need to object to legitimate creditor claims on the eve of a trustee election strongly suggest that she was motivated by her own goal of self-preservation rather than a need to object to claims for some valid administrative purpose that could be considered consistent with her fiduciary duties under 11 U.S.C. § 704. The same question – whether the Interim Trustee has breached her fiduciary obligation to unsecured creditors – arises from the Interim Trustee's objection to the claim of Premium Excavating, LLC on the eve of the election.

qualification under § 702(a) to vote, 'it is incumbent upon the objecting party to present facts from which the court can reasonably conclude that ... the objecting party could present evidence of equal probative force to that of the creditor's claim.'" *In re Petters Company, Inc.,* 425 B.R. 534, 549 (Bankr. D. Minn. 2010) (citing *Poage*). In the absence of any legitimate and actual basis for the Interim Trustee's Objection, the Interim Trustee has failed to meet her burden "to produce evidence sufficient to negate the *prima facie* validity of the filed claim." *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173 (3d Cir. 1992). Therefore, Stradley's claim should be estimated at its full value of $1,680,625.69 for voting purposes or allowed in full as stated below.

### EXPEDITED CLAIM DETERMINATION ALTERNATIVE

40. Alternatively, if this Court has any reluctance to estimate the Stradley Claim for voting purposes, Stradley is fully prepared and would welcome the opportunity to have the Objection determined on an expedited basis sufficiently in advance of the rescheduled chapter 11 trustee election on January 29, 2018.

### REQUEST FOR EXPEDITED CONSIDERATION

41. If the Court does not resolve the issues surrounding the last-minute claim objections promptly, the delay in addressing the claim objections will ultimately delay the process of electing a final chapter 11 trustee and likewise delay the administration of the Debtor's bankruptcy case. The hearing on the Objection is currently scheduled for February 21, 2018 at 11:00 a.m., a date that would delay the administration of the Debtor's case. If the issues surrounding the claim objections can be decided between now and January 29, the election will likely be final at that time, and the parties will eliminate or minimize the post-election issues that could cloud the election and delay the chapter 11 trustee's work.

42. Stradley communicated with counsel for the Debtor, the Interim Trustee and the United States Trustee by email before 8:00 a.m. on January 16, 2018. Counsel for the Debtor and the Interim Trustee have each consented to expedited consideration of this Estimation Motion without indicating any date preference or exclusions. Dave P. Adams from the Office of the United States Trustee indicated that he was "not opposed" to an emergency hearing but did not give any suggested dates for the hearing.

WHEREFORE, Stradley respectfully requests that the Court: (i) schedule a prompt hearing prior to January 29, 2018, to estimate or allow the Stradley Claim; (ii) grant this Estimation Motion and either estimate or allow the Stradley Claim in its full amount, $1,680,625.69; and (iii) grant such other and further relief as the Court deems just.

STRADLEY RONON STEVENS & YOUNG, LLP

Dated: January 16, 2018

 */s/  Michael J. Cordone*
Michael J. Cordone, Esquire
2005 Market Street
Suite 2600
Philadelphia, PA  19103
Telephone:  215-564-8002
Facsimile:  215-564-8120
Email:  mcordone@stradley.com

# 3463038  v. 3