## UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | Chapter 11 |
| ISLAND VIEW CROSSING II, L.P., : | Case No. 17-14454 (ELF) |
| Debtor. : | |

**REPLY OF CHRISTINE C. SHUBERT, CHAPTER 11 TRUSTEE, TO EMERGENCY MOTION OF CREDITOR STRADLEY RONON STEVENS & YOUNG, LLP TO: (A) ESTIMATE ITS CLAIM FOR VOTING PURPOSES OR RULE ON THE OBJECTION TO ITS CLAIM PRIOR TO THE VOTE ON THE ELECTION OF A CHAPTER 11 TRUSTEE; AND (B) SHORTEN TIME AND EXPEDITE HEARING**

Christine C. Shubert (the "Trustee"), the chapter 11 trustee for debtor Island View Crossing II, L.P. (the "Debtor"), by and through her attorneys, Fox Rothschild LLP, files this reply (the "Reply") to the Emergency Motion to: (a) Estimate its Claim for Voting Purposes or Rule on the Objection to its Claim Prior to the Vote on the Election of a Chapter 11 Trustee; and (b) Shorten Time and Expedite Hearing (the "Motion") filed by Stradley Ronon Stevens & Young, LLP ("Stradley"). In support of the Reply, the Trustee respectfully states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this Reply pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue of this proceeding and this Reply is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. § 702 and Fed. R. Bankr. P. 2003.

## BACKGROUND

### I. BANKRUPTCY FILING AND CONVERSION

4. On June 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

5. On August 4, 2017, Prudential Savings Bank filed a *Motion of Prudential Savings Bank for an Order Converting Chapter 11 Bankruptcy Cases to Chapter 7 or in the Alternative Appointing a Chapter 11 Trustee* (the "Conversion Motion"). [D.I. 34].

6. On September 26, 2017, the Bankruptcy Court granted the Debtor's Application to Employ Stradley as Special Counsel. [D.I. 78].

7. On December 18, 2017, the Bankruptcy Court granted the Conversion Motion in part, denied the Conversion Motion in part, and deferred the Conversion Motion in part (the "Order") [D.I. 141], therein authorizing the Office of the United States Trustee to appoint a chapter 11 trustee in the Debtor's bankruptcy case pursuant to 11 U.S.C. § 1104(a)(2).

8. On December 21, 2017, the Office of the United States Trustee appointed the Trustee as chapter 11 trustee, which appointment remains in effect. [D.I. 147].

9. On December 22, 2017, creditors Stradley and Premium Excavating, LLC filed requests to convene a meeting to elect a permanent chapter 11 trustee. [D.I. 149, 153].

10. On January 10, 2018, the Trustee filed an Objection to Claim Number 14 filed by Stradley. [D.I. 178].

11. On January 16, 2018, Stradley filed an *Emergency Motion to (a) Estimate Stradley Ronon Stevens and Young, LLP's Claim for Voting Purposes or Rule on the Objection to Its Claim*

*Prior to the Vote on the Election of a Chapter 11 Trustee; and (b) Shorten Time and Expedite Hearing*. [D.I. 214].

12. On January 17, 2018, the Trustee filed a Praecipe to Withdraw the Objection to Claim Number 14 filed by Stradley. [D.I. 216].

**II.    STRADLEY'S CLAIM**

    **A.    Stradley's Pre-Petition Representation of Debtors, Gualtieri, and Certain Non-Debtor Affiliates**

13. Stradley acted as pre-petition counsel to (i) the Debtor, One State Street Associates LP ("One State Street"), Calnshire Estates, LLC ("Calnshire"), and Steeple Run, L.P. ("Steeple Run" and collectively with One State Street and Calnshire, the "Other Debtors")[1] in the Debtors' negotiations with Prudential Savings Bank ("Prudential"); (ii) the Debtor, non-debtor affiliate Island View Properties, Inc. ("IVP"), and the Debtor's principal Renato J. Gualtieri ("Gualtieri") in the Lender Liability Action (as defined below); and (iii) the Debtors and certain non-debtor affiliates as defendants in the Civil Actions (as defined below). See Stradley Motion at ¶ 1-4.

14. Stradley also represented the Debtor, non-debtor IVP, and Gualtieri in their lender liability action against Prudential filed on March 31, 2016, in the Philadelphia County Court of Common Pleas, captioned as *Island View Properties, Inc. et al. v. Prudential Savings Bank*, Case No. 160303161 (the "Lender Liability Action"), asserting claims against Prudential based on its allegedly improper and impermissible conduct as a lender. Id. at ¶ 3. Prudential removed the Lender Liability Action to this Court, and Stradley continues to represent the Debtor, non-debtor IVP, and Gualtieri in the Lender Liability Action as special counsel.

---

[1] The Debtor and the Other Debtors are collectively defined herein as the "Debtors".

3

15. Additionally, Stradley represented the Debtors and certain non-debtor affiliates[2] in over twenty-six different civil actions filed by Prudential (the "Civil Actions," and collectively with the Lender Liability Action, the "Litigation Actions") against certain Debtors and non-debtor affiliates, including, but not limited to, confession of judgment actions, mortgage foreclosure actions, and other types of actions. See Response of Stradley in Opposition to Conversion Motion at ¶ 3.

16. Under the Amended Engagement Agreement dated May 31, 2016 (the "Engagement Agreement"), the following parties are co-obligors for the legal fees and costs incurred by Stradley: (1) Gualtieri (individually); (2) IVP; (3) the Debtor; (4) Americorp Homes, Inc.; (5) Durham Manor, LLC; (6) Calnshire Estates, LLC; (7) Steeple Run; (8) Americorp Realty, LLC; (9) One State Street; (10) Fidelity Properties, Inc.; and (11) other entities that Gualtieri controls or owns.

### B. Stradley's Proofs of Claim for Pre-Petition Legal Services Provided To The Debtor, the Other Debtors, Gualtieri, and Other Non-Debtor Affiliates

17. On September 21, 2017, Stradley filed a proof of claim in the Debtor's bankruptcy case asserting an unsecured claim (the "Proof of Claim"). Stradley asserts in the Proof of Claim that it holds a claim in the amount of $1,680,625.69, which represents "fees and costs for legal services rendered" by Stradley from "November 2015 through the Petition Date." See **Exhibit "A,"** Proof of Claim, at Addendum to Proof of Claim.

18. Stradley has also filed three identical proofs of claim for the same amount of $1,680,625.69 in each of the Other Debtors' bankruptcy cases: (1) Proof of Claim No. 6-1 filed by Stradley in One State Street Associates, L.P., Case No. 17-14291-elf; (2) Proof of Claim No. 3-1

---

[2] Stradley represented certain non-debtor affiliates in certain Civil Actions, including, but not limited to, Americorp Homes, Inc., IVP, Durham Manor, LLC, and Fidelity Properties, Inc.

filed by Stradley in Calnshire Estates, LLC, Case No. 17-14457-elf; and (3) Proof of Claim No. 4-1 filed by Stradley in Steeple Run, L.P., Case No. 17-14458-elf (collectively, the "Other Proofs of Claim,"[3] and together with the Stradley Proof of Claim sometimes collectively referred to herein as the "Stradley Proofs of Claim").

19. The Unsecured Claim of $1,680,625.69 represents the total amount of fees and costs for the pre-petition legal services that Stradley rendered to all parties under the Engagement Agreement, as evidenced by the four identical Stradley Proofs of Claim filed in each of the Debtors' bankruptcy cases. Additionally, upon information and belief, Stradley's Unsecured Claim includes amounts owed to Stradley for legal services it provided to Gualtieri as part of the Lender Liability Action, and to Gualtieri and other non-debtor affiliates in the Civil Actions.

### III. THE ISLAND VIEW LOANS

20. On September 20, 2013, Prudential entered into a Loan Agreement (the "Island View Loan Agreement") under which Prudential made a loan to the Debtor, IVP, Gualtieri, and Americorp Homes, Inc. (the "Borrowers") in the principal amount of One Million Four Hundred Thousand Dollars ($1,400,000), as evidenced by that certain Promissory Note, dated September 20, 2013, executed by the Borrowers in favor of Prudential (the "Island View Note"). A copy of the Island View Loan Agreement and the Island View Note are attached as **Exhibit "C"** and **Exhibit "D,"** respectively.

21. As security for the Island View Note, on or about September 20, 2013, the Debtor executed and delivered to Prudential a Mortgage and Security Agreement (the "Island View Mortgage") encumbering the Island View Property, as more specifically described in the Island

---

[3] True and correct copies of the Other Proofs of Claim are attached hereto as **Exhibit "B"** and incorporated herein by reference.

5

View Mortgage. The Recorder of Deeds for Bucks County recorded the Island View Mortgage on September 27, 2013, under instrument number 2013080879. A copy of the Island View Mortgage is attached as **Exhibit "E"**. The Island View Loan Agreement, the Island View Note and the Island View Mortgage are collectively referred to as the "Island View Loan Documents."

22. On November 26, 2014, Prudential entered into a Development Construction Loan Agreement (the "Second Island View Loan Agreement") under which Prudential issued a construction loan to the Debtor in the principal amount of Five Million Five Hundred Forty-One Thousand and Four hundred Sixty-Eight Dollars ($5,541,468.00), as evidenced by that certain Promissory Note, dated November 16, 2014, executed by the Debtor, IVP, and Gualtieri in favor of Prudential (the "Second Island View Note") of the same date for a loan. A copy of the Second Island View Loan Agreement and the Second Island View Note are attached as **Exhibit "F"** and **Exhibit "G,"** respectively.

23. As security for the Second Island View Note, on or about November 26, 2014, the Debtor executed and delivered to Prudential an Open-End Mortgage and Security Agreement (the "Second Island View Mortgage") encumbering the Island View Property, as more specifically described in the Second Island View Mortgage. The Recorder of Deeds for Bucks County recorded the Island View Mortgage on January 7, 2015, under instrument number 2015001143. A copy of the Island View Mortgage is attached as **Exhibit "H"**. The Second Island View Loan Agreement, the Second Island View Note, and the Second Island View Mortgage are collectively referred to as the "Second Island View Loan Documents."[4]

---

[4] The Island View Loan Documents and the Second Island View Loan Documents are sometimes collectively referred to herein as the "Loan Documents."

6

24. Upon information and belief, defaults have occurred under the Island View Loan Documents and Second Island View Documents due to, among other things, (1) the Borrowers failing to pay all amounts owed under the Island View Loan Documents, (2) certain personal judgments entered against Gualtieri, and (3) the Borrowers failing to maintain the required insurance coverage on the Island View Loan Documents. See Conversion Motion at ¶ 56.

25. Additionally, upon information and belief, the Debtor is in default under the Second Island View Loan Documents by allegedly misappropriating security deposits made by prospective buyers of the townhomes that the Debtor failed to complete. These prospective buyers have filed at least seven civil actions against the Debtor seeking the return of their security deposits.[5] Id. at ¶ 81-83 [D.I. 34].

## LEGAL ARGUMENT

26. This Court should deny Stradley's Motion because—regardless of the amount or allowability of its claim—Stradley is nevertheless ineligible to vote. Under § 702(a), creditors eligible to vote are those: (1) whose claims are allowable, undisputed, fixed, liquidated, [and] unsecured; (2) who do not hold materially adverse interests to other unsecured creditors; and (3) who are not insiders. See In re PL Liquidation Corp., 305 B.R. 629, 634 (Bankr. D. Del. 2004).

27. Stradley is an insider as established by the volume and continuity of Stradley's pre-petition representation of the Debtor, the Debtor's principal, the Other Debtors, and each of the non-debtor affiliates. Stradley also holds materially adverse interests to other unsecured creditors because: (1) Stradley and the Debtor's estate each hold competing claims against Gualtieri, IVP,

---

[5] Monica L. Caione v. Island View Crossing II LP, Americorp Homes, Island View Crossing II Inc., Bucks County, CCP, No. 2016-02011; Samira Ranganathan v. Island View Crossing II LP, Bucks County, CCP, No. 2016-05724; Benjamin A. Mastridge, Sr. v. Island View Crossing II LP, Bucks County, CCP, No. 2016 – 06373; Frank Del Grasso v. Island View Crossing II LP, et al., Bucks County, CCP, No. 2016-06685; Peter Bridge v. Island View Crossing II, LP, Phila. Municipal Court, MJ-07102-CV-0000142-2016.

One State Street, and Steeple Run; and (2) Stradley holds an administrative claim for post-petition legal services.

## I. STRADLEY IS AN INSIDER.

28. Section 702(a)(2) of the Bankruptcy Code states that insiders may not vote for a trustee. 11 U.S.C. § 702(a)(2). For corporate debtors, the Bankruptcy Code defines the term "insider" to include (1) a director of the debtor; (2) an officer of the debtor; (3) a person in control of the debtor; (4) a general partner of the debtor; (5) a relative of a general partner, director, officer, or person in control of the debtor; or (6) an affiliate or insider of an affiliate of the debtor. See 11 U.S.C. § 101(31)(B)-(E). That said, this list is not exclusive and insider status may be applied even if the creditor falls outside the enumerated categories. In re Winstar Communications, Inc., 554 F.3d 382, 396-97 (3d Cir. 2009).

29. When a debtor and an entity have a close relationship, a factual inquiry is necessary to determine whether the entity is an insider. See, e.g., In re Broumas, 1998 WL 77842 at *8 (4th Cir. 1998). Courts have identified a party's intimate knowledge of the debtor's affairs and ability to influence a debtor's decision as factors that would support a determination of insider status. See, e.g., In re Schuman, 81 B.R. 583, 586 (9th Cir. BAP 1987) ("The tests developed by courts in determining who is an insider focus on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor.").

30. "Insider status may be based on a professional or business relationship with the debtor . . . where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." In re Friedman, 126 B.R. 63, 70 (9th Cir. BAP 1991).

8

31. A debtor's pre-petition attorney holding an unsecured claim for legal services cannot vote for a permanent trustee under section 702(a)(3). See Matter of Montagna, 31 B.R. 10 (Bankr. W.D. Pa. 1983). In Montagna, the debtor's pre-petition attorney held an unsecured claim for attorney's fees as part of litigation and other matters over the course of several years. Id. at 10.

32. In nullifying the attorney's vote for a permanent trustee, the Western District of Pennsylvania stated that:

> [A] claim for attorney fees for services to the debtor cannot be voted in a trustee's election was held in Beale v. Snead, 81 F.2d 970 (4th Cir. 1936) and is prohibited by 11 U.S.C. 702(a)(3) . . . which prohibits votes by insiders at such election, and [the attorney's] status as an insider is shown by the volume and continuity of his representation of said debtors evidenced by his itemization of such services attached to his claim . . . .

Id. at 11. See also In re Talsma, 436 B.R. 908, 916 n. 13 (citing Matter of Montagna for the same proposition).

33. Here, like in Montagna, Stradley qualifies as an insider because of its significant pre-petition entanglement with the Debtor, Gualtieri, and each of the entities that Gualtieri owns or controls. Since 2015, Stradley acted as pre-petition counsel for ten separate, but related parties: (1) Gualtieri (individually); (2) the Debtor; (3) IVP; (4) Americorp Homes, Inc.; (5) Durham Manor, LLC; (6) Calnshire Estates, LLC; (7) Steeple Run.; (8) Americorp Realty, LLC; (9) One State Street; and (10) Fidelity Properties, Inc. The scope of Stradley's representation included negotiations with Prudential, the Lender Liability Action, and twenty-six different Civil Actions. See Response of Stradley in Opposition to Conversion Motion at ¶ 1-4.

34. In fact, the Engagement Agreement is so broad that it even covers other "entities that [Gualtieri] owns or controls."

35. Excluding the Debtor, six of these parties are directly involved in the Debtor's bankruptcy case. The parties include (1) Gualtieri (individually and as the principal of the Debtor);

9

(2) IVP (General Partner of the Debtor); (3) Americorp Homes, Inc. (unsecured creditor); (4) Calnshire Estates, LLC (unsecured creditor); (5) One State Street (loan receivable); and (6) Steeple Run (loan receivable). Stradley also continues to represent the Debtor and Gualtieri as counsel in the Lender Liability Action.

36. As in Montagna, Stradley's relationship with the Debtor, the Other Debtors, Gualtieri, and certain non-debtor affiliates has allowed Stradley to gain intimate knowledge of the Debtor's affairs. Allowing Stradley to steer the course of this case despite its deep-rooted connection with the Debtor would belie basic bankruptcy principles—not the least of which is maximizing the recovery for creditors. This is especially true considering this Court's appointment of a chapter 11 trustee in the first place. Given the volume and continuity of Stradley's pre-petition representation, Stradley qualifies as an insider and is therefore ineligible to vote.

## II. STRADLEY HOLDS MATERIALLY ADVERSE INTERESTS TO OTHER UNSECURED CREDITORS.

37. Section 702(a)(2) of the Bankruptcy Code states that a creditor may vote only if it does not have an "interest materially adverse" to the interests of other unsecured creditors. Id. § 702(a)(2). The Bankruptcy Code does not define the phrase "interest materially adverse" as used in section 702(a)(2). In determining whether an interest is "materially adverse" to other creditors, the reviewing court must balance various factors on a case-by-case basis. A&E 128 North Corp. v. DeGiacomo, 528 B.R. 190, 200 (B.A.P. 1st Cir. 2015); In re Petters Co., 425 B.R. 534, 548-49 (Bankr. D. Minn. 2010).[6]

38. These factors include the nature and size of the adverse interest and the degree to which it is adverse. DeGiacomo, 528 B.R. at 200 ("The comparison is between the nature,

---

[6] The relevant time to measure a creditor's adverse interest is the date of the election. In re Barkany, 542 B.R. 662, 682 (Bankr. E.D.N.Y. 2015).

10

magnitude, and degree of the subject matter's interest, and the interests of the general body of unsecured creditors.").

### A.    Stradley and the Debtor's estate each hold competing claims.

39.    A creditor having the prospective ability to enhance its recovery at the estate's expense holds a materially adverse interest to the estate. DeGiacomo, 528 B.R. at 200; In re Klein, 199 B.R. 971 (N.D. Ill. 1990). In DeGiacomo, the interim chapter 7 trustee of two jointly administered estates objected to a creditor's voting eligibility based on the creditor holding a materially adverse interest. Id. at 195. There, the creditor filed identical proofs of claim in each of the debtor's cases asserting unsecured claims for $178,920.51. Id. at 193. Attached to those proofs of claim were promissory notes guaranteed by the sole officer, director, and shareholder of the Debtors. Id. at 200. Importantly, the guarantor also owed money to the Debtors. Id.

40.    The United States Bankruptcy Panel of the First Circuit held that, because the bankruptcy estates had claims against the guarantor, and the creditor also had claims against the guarantor, the creditor's interest were materially adverse to the interests of the bankruptcy estates. Id. at 201. That is, "[the creditor] had the prospective ability to enhance its recovery by pursuing [the principal's] personal guarantees, and, to the extent [the principal] could not satisfy both [the creditor's] and the estates' claim, they would be competing for those funds. Thus, [the creditor's] interests were materially adverse to those of the other unsecured creditors." Id.

41.    In so holding, the court rejected the creditor's argument that the Trustee must establish that the creditor is pursuing, or intends to pursue, its competing claim. Id. Indeed, the court explicitly refused to adopt such a heighted evidentiary standard. Id. ("Reimer offers no support for the heightened evidentiary standard it proposes, and we do not adopt it here."). As

such, the Trustee need not show that Stradley is pursuing its competing claim, but can only show Stradley's *prospective ability* to bring such a claim. Id.

42. Here, similar to the guarantor in DeGiacomo, it is undisputed that Gualtieri, IVP, One State Street, and Steeple Run are co-obligors of the debt owed to Stradley. This relationship is evidenced by Stradley's Motion, the filing of identical proofs of claim in the Other Debtor's bankruptcy cases (also co-obligors of the debt), and the language of the Debtor's Engagement Agreement with Stradley.

43. As co-obligors, Gualtieri, IVP, One State Street, and Steeple Run are each individually responsible for the debt owed to Stradley. Stradley therefore holds a claim against Gualtieri, IVP, One State Street, and Steeple Run. In fact, Stradley has an incentive to recover from these parties directly rather than receive a diluted share of the assets from the Debtor's estate.

44. At the same time, the Debtor's estate holds claims against Gualtieri, IVP, One State Street, and Steeple Run. For example, there have been several claims lodged against the Debtor for the theft of security deposits made by prospective buyers of the Debtor's townhomes. Indeed, at least seven civil actions have been filed against the Debtor by prospective homebuyers seeking the return of "stolen security deposits." These complaints allege that the security deposits were improperly given to Gualtieri or one of Gualtieri's undercapitalized and insolvent entities. See Conversion Motion at ¶ 82. The Debtor's estate will certainly seek to recover those amounts from Gualtieri.

45. Moreover, both IVP and Gualtieri are co-borrowers under Loan Documents. Pennsylvania law is clear that all co-obligors of any indebtedness must contribute equally in

12

discharging their common obligation.[7] See Miller v. Miller, 1991 WL 334951 at *1 (Pa. D. & C.4th 1991). When there are joint obligors, and one of the obligors discharges the debt, that obligor has the right to proportionate contribution from the other obligors. See Goldberg v. Altman, 154 A.2d 279 (Pa. Super. Ct. 1959); Resolution Trust Corp. v. Gross, 1996 WL 89380, at *2 (E.D. Pa. 1996).

46. If the disposition of this case results in the sale of Prudential's collateral, and the Debtor's estate uses the proceeds to pay all of a large portion of the Prudential claim, the Debtor's estate will have a claim for contribution against Gualtieri and IVP as co-borrowers of the Debtor.

47. Finally, One State Street and Steeple Run each owe the Debtor $253,471.75 and $541,576.64 respectively for loans receivable. See Debtor's Petition at 3. In accordance with the Trustee's fiduciary obligations, the Debtor's estate will pursue these funds for the benefit of the estate.

48. To the extent that Gualtieri, IVP, One State Street, and Steeple Run cannot fully satisfy the aforementioned claims brought by both the Estate and Stradley, Stradley and the Estate will be competing for available assets. In other words, and identical to the reasoning in DeGiacomo, Stradley's potential recovery from Gualtieri, IVP, One State Street, and Steeple Run necessarily reduces the amount available for the benefit of unsecured creditors in this case. Thus, like the creditor in DeGiacomo, Stradley is ineligible to vote because Stradley holds an interest materially interest to other unsecured creditors.

---

[7] The Island View Loan Agreement is governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. Island View Loan Agreement at ¶ 6.9.

**B.    Stradley holds an administrative claim for post-petition legal services.**

49.    Stradley's likely administrative claim inherently creates a conflict between the interests of Stradley and other unsecured creditors. Although a creditor's assertion of a priority claim does not automatically disqualify a creditor from voting, see TBR USA, 429 B.R. at 618, a creditor who is primarily concerned with its priority claim holds a materially adverse interest to unsecured creditors. In re Jotan, Inc., 236 B.R. 79, 84 (Bankr. M.D. Fla. 1999). This is because a creditor's right to priority payment over general unsecured creditors "inherently creates a conflict with general unsecured creditors." Id. at 84.

50.    Stradley's interests are materially adverse to other unsecured creditors because Stradley likely holds a considerable administrative claim for post-petition legal services. Prudential has removed the Lender Liability Action to this Court, and Stradley continues to represent the Debtor, IVP, and Gualtieri in the Lender Liability Action.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order denying the Motion, and for any further relief that is just.

[The remainder of this page has been intentionally left blank]

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: */s/ Michael G. Menkowitz*
Michael G. Menkowitz, Esquire
Jason C. Manfrey, Esquire
Jesse M. Harris, Esquire
Fox Rothschild LLP
2000 Market Street – 20th floor
Philadelphia, PA  19103-3222
(215) 299-2000/Fax: (215) 299-2150
mmenkowitz@foxrothschild.com
jmanfrey@foxrothschild.com
jesseharris@foxrothschild.com

Dated:  January 24, 2018        Counsel for Christine C. Shubert, Chapter 11 Trustee for Debtor Island View Crossing II, L.P.