# Exhibit "C"

# LOAN AGREEMENT

THIS LOAN AGREEMENT made this **20th** day of **September**, **2013** by and among **Island View Crossing II, L.P.**, a PA Limited Partnership ("Borrower"), **Island View Properties, Inc.**, a PA Corporation ("Island View Inc."), **Renato J. Gualtieri** ("Gualtieri"), and **Americorp Homes, Inc.**, a PA Corporation ("Americorp") {Island View Inc., Gualtieri and Americorp hereinafter sometimes referred to as Co-Borrower(s)"] and Prudential Savings Bank (the "Lender" or the "Bank")

## BACKGROUND

Borrower is now or will immediately become the owner in fee simple of all that certain lot or piece of land with buildings and improvements thereon erected situate and known as Lot No. 119, Radcliffe Street, Bristol, PA 19007 as more particularly described in Exhibit "A" attached hereto and made a part hereof (the "Real Property"). Borrower and Co-Borrowers desire to borrow certain monies from Lender to be used to reduce the balance due on a certain loan from the Bank to Durham Manor, LLC ("Durham Manor") on which loan Gualtieri and Americorp (Account No. 48-275) are obligors and/or payment of costs and expenses associated with the loan closing and Lender under certain terms and conditions hereinafter set forth is willing to lend Borrower and Co-Borrowers the said money.

## AGREEMENT

NOW THEREFORE, in consideration of the premises, and of the mutual promises and undertakings of the parties set forth herein and as an inducement for Lender to advance sums to Borrower, and with the intention of being legally bound hereby, the parties hereto agree as follows:

## SECTION 1. THE LOAN

1.1. **Amount and Term:** Lender shall lend to Borrower and Borrower shall borow from Lender **One Million Four Hundred Thousand ($1,400,000.00) Dollars** (the "Loan") according to the terms and conditions set forth herein, the Loan to be for the purposes set forth in Section 1.5.

1.2. **Interest and Payment:** The loan provided for by this Agreement shall bear interest and shall be repaid as provided in the Note (as hereafter defined), as such Note may be amended from time to time upon the mutual consent of the parties thereto.

1.3. **Loan Fee:** If not having been paid earlier, at closing on the Loan, a fee of Seven Thousand ($7,000.00) Dollars shall be paid by Borrower to the Bank. Such fee shall be in addition to the interest and other amounts which Borrower is required to pay under the Loan Documents (as hereafter defined).

1.4 **Loan Documents**.

(a) <u>Note</u>. Borrower's obligation to repay the Loan shall be evidenced by the Note of Borrower and

Co-Borrowers of even date herewith in the principal amount of One Million Four Hundred Thousand ($1,400,000.00) Dollars (the "Note") providing for the payment of principal, together with interest thereon at the rate set forth therein, in such installments, at such times and according to such terms as set forth therein.

(b) Security for Note. The Note and all of the obligations of Borrower and Co-Borrowers and all other parties thereunder and hereunder shall be and are secured by the following, which Borrower shall execute and deliver to Lender or cause to be executed and delivered to Lender, as the case may be, and as applicable:

(i) A second lien priority Mortgage and Security Agreement securing an aggregate amount of One Million Four Hundred Thousand ($1,400,000.00) Dollars ("Mortgage") covering the Real Property, the Improvements, and all furniture, furnishings, appliances, plumbing heating, ventilating and air-conditioning systems, fixtures, machinery, equipment, contracts, permits, books, records, and personal property necessary or incidental to the general operation and maintenance of the Real Property, and all renewals and replacements thereof or additions thereto (collectively, the "Mortgaged Property"), which mortgage shall be junior in lien priority and distribution only to a certain Two Million Five Hundred Thousand ($2,500,000.00) Dollar June 13, 2003 first mortgage to the Redevelopment Authority of Bucks County, recorded at the Office of the Bucks County Recorder of Deeds in Book 3537 at page 792 et seq. Pursuant to such Mortgage, Borrower shall grant to Lender, inter alia, a first priority security interest and lien which with the recording of the Financing Statements referred to in Subsection 1.4 (b) (ii) below shall constitute a perfected security interest in all such furniture, furnishings, appliances, plumbing, heating, ventilating, and air-conditioning systems, fixtures, machinery, equipment, books, records, accounts receivable and personal property owned or hereafter acquired by Borrower and used or useful in connection with the Mortgage Property and the cash and non-cash proceeds thereof.

(ii) Two (2) UCC-1 Financing Statements from Borrower to Lender evidencing the security interests referred to in Subsection 1.4 (b) (i) above, to be filed with the Bucks County Department of Records, and the Secretary of State of the Commonwealth of Pennsylvania.

(iii) A second lien priority assignment of and security interests in all of Borrower's rights under all existing or future leases of the Mortgaged Property or any portion thereof (including deposit monies thereunder) and the proceeds thereof.

(iv) The unlimited and unconditional guarantee and suretyship agreement of the Co-Borrowers to guarantee payment, and not merely collection, of all of the amounts due under the Loan Documents, and the prompt performance of all obligations under the Loan Documents, and which shall contain, inter alia, a warrant of attorney to confess judgment.

(c) Additional Documents; Filing Fees. Borrower and Co-Borrowers shall execute and deliver such additional documents, instruments, agreements, guaranties, assignments or security as the Lender shall require in order to perfect Lender's interest in any of the foregoing property or which Lender deems necessary to adequately secure the Loan. This Agreement, the Note and all of the documents and instruments referred to in Subsection 1.4 (b) above and all documents collateral thereto (all of which, together with this Agreement, are herein collectively referred to as the "Loan Documents") shall be in form and substance satisfactory to

Lender and Lender's counsel, and all necessary filing and recording fees with respect thereto shall be paid by Borrower.

1.5 **Use of Loan Proceeds.** The loan proceeds shall be used to pay (i) settlement costs, including loan fee, attorney fees, recording and title insurance, apprisal fees, real estate taxes and interest as per HUD-1 Settlement Statement attached and (ii) to pay down and reduce Prudential Savings Bank Loan No. 48-270 to Durham Manor in an amount set forth on the HUD-1 Settlement Statement attached.

1.6. **Use of Repayments Received From Durham Manor.** All monies received from sale and settlement of Durham Ridge lots shall be paid to the Bank and used for the purposes and in the estimated amounts as set forth on Exhibit "B".

### SECTION 2. BORROWER'S REPRESENTATIONS AND WARRANTIES

Borrower hereby represents and warrants to Lender (which representations and warranties shall survive until the Loan has been paid and satisfied in full and the Loan Documents have been terminated) that:

2.1 **Valid Organization.** Borrower is a Limited Partnership duly formed, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania and has full power and authority to carry on its business as it is now being conducted. Borrower has full power and authority to own, operate and develop the Real Property in the Commonwealth of Pennsylvania. True and correct copies of the Limited Partnership Certificate and the Limited Partnership Agreement of Borrower, together with all amendments thereto, have been certified by Borrower and delivered to Bank, and the same are in full force and effect as of the date of this Agreement. None of the interests of Borrower have been offered, issued, distributed or sold in violation of any state or federal securities laws.

2.2. **Title to Real Property.** Borrower has or will at closing have good and marketable title to an indefeasible fee simple estate in the Real Property, subject to no lien, charge or encumbrance except as existing in favor of Lender with respect to the Mortgage (as defined hereinbelow) and such as are listed as exceptions to title or exclusions from coverage in the title insurance policy being issued by Chicago Title Insurance Company ("Title Company") to Lender concurrently with the recording of the Mortgage.

2.3 **Power and Authority; Authorization; Enforceability.** Borrower has full power, authority and legal right to execute, deliver and comply with each of the Loan Documents and any other documents or instruments relating to the Loans to be executed. All actions of Borrower and all other authorizations necessary (or appropriate for the execution and delivery of and compliance with the Loan Documents and such other documents and instruments have been taken or obtained. The Loan Documents and such other documents and instruments shall constitute the valid and legally binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

2.4. **Governmental Approval of Loan Documents.** No consent, approval or other authorization of or by any court, administrative agency or other governmental authority is required in connection with Borrower's execution and delivery of or compliance with any of the Loan Documents or any other document

ISLAND VIEW CROSSING II, L.P    LOAN AGREEMENT                                -3-

or instrument relating to the Loans.

2.5. **Conflict; Breach.** Borrower's execution and delivery of and compliance with the Loan Documents and any other documents and instruments relating to the Loan will conflict with or result in a breach of; (a) any applicable law, judgment, order, writ, injunction, decree, rule or regulation of any court, administrative agency or other governmental authority; or (b) any agreement or other document or instrument to which Borrower is a party or by which any of them are bound, and such action by Borrower will not result in the creation of imposition of any lien, charge or encumbrance upon any property of Borrower in favor of anyone other than Lender.

2.6. **Litigation.** There is no action, suit or proceeding pending or threatened against or affecting the Real Property, or Borrower before or by any court, administrative agency or other governmental authority, or which brings into question the validity of the transactions contemplated hereby.

2.7. **Financial Statements:** All financial statements of Borrower and Co-Borrowers which have been furnished to Lender fairly and accurately reflect the financial condition of the Borrower and Co-Borrowers, as of and for the time periods set forth therein, and there has been no material adverse change in the financial condition of Borrower or any of the Co-Borrowers since the latest dates thereof.

2.8. **Tax Returns.** Any and all federal, state and local income tax returns required to have been filed by Borrower and the Co-Borrowers have been filed, and all taxes reflected upon any such tax returns, all past due taxes, interest and penalties and all estimated payments required to be paid have been paid, such tax returns are complete and accurate in all respects.

2.9. **Title to Personal Property.** All personal property with respect to which Borrower will or has granted to Lender a security interest pursuant to any of the Loan Documents is owned by Borrower free and clear of all liens, encumbrances and security interests except those in favor of Lender.

2.10. **Governmental Approval.** All necessary approvals from governmental or quasi-governmental authorities having jurisdiction over the Real Property, including, but not limited to, zoning or use permits, variances or special exceptions, historic certifications and approvals of fire underwriters, have been or will be obtained, are or will be in full force and effect, are or will be final and the time for appeal from the granting of all such permits and approvals has run with no appeal having been taken therefrom. The current and proposed use of the Real Property and Improvements complies with all zoning, building, environmental and other applicable laws, ordinances, rules and regulations.

2.11. **Bankruptcy; Insolvency.** Neither Borrower nor any Co-Borrowers has applied for or consented to the appointment of a receiver, trustee or liquidator for, as the case may be, itself or themselves or any of its or their property, admitted in writing its or their inability to pay its or their debts as they mature, made it general assignment for the benefit of creditors, been adjudicated a Bankruptcy or insolvent or filed a voluntary petition in Bankruptcy, or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any Bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material

allegations of a petition filed against it or them in any proceeding under any such law, and no action has been taken by it or them for the purpose of effecting any of the foregoing. No order, judgment or decree has been entered by any court of competent jurisdiction approving a petition seeking reorganization of all or a substantial part of the assets of Borrower or appointing a receiver, sequestrator, trustee or liquidator or any of their property.

2.12. **Leases**. Exhibit "C" attached hereto is an accurate and complete list identifying all leases and agreements of sale currently executed and in effect for the Unit(s) setting forth: (a) the lessee's name and address; (b) the date of the lease and/or agreement; and (c) the security deposit amount. Borrower has delivered to Bank copies of all Leases and Agreements of Sale, together with all amendments and modifications thereto.

## SECTION 3. BORROWER'S COVENANTS

Borrower hereby covenants and agrees that, until the Loan has been paid and satisfied in full and the Loan Documents have been terminated:

3.1. **Additional Financing**. The Borrower shall not be permitted to obtain any other loans or other financing, whether or not secured by an encumbrance, lien, mortgage, security interest or other interest in the Mortgaged Property, without the Lender's prior written consent, which consent the Lender reserves the right to withhold in its sole discretion.

3.2. **Changed Circumstances**. Borrower shall promptly notify Lender of any change in any fact or circumstance represented or warranted by Borrower herein and in any other documents furnished to Lender in connection with this Agreement.

3.3. **Evidence of Payment of Premiums**. All premiums and other charges relating to all insurance required hereunder shall be paid by Borrower for such periods as Lender may require and evidence thereof shall be delivered to Lender promptly upon payment of such premiums and charges.

3.4. **Sale or Issuance of Ownership Interests**. No interests in the Real Property shall be sold, transferred, assigned or encumbered without the prior written consent of Lender, which consent Lender reserves the right to withhold in its sole discretion.

3.5. **Compliance with Laws and Agreements**. Borrower shall comply with all federal, state and local statutes, regulations and agreements applicable to the Real Property. Borrower shall comply with all contracts, leases, agreements and restrictions pertaining to the Real Property.

3.6. **Insurance**. Borrower shall at all times maintain or cause to be maintained such insurance coverage as Lender may from time to time require. Such insurance policies shall be in such amounts and shall be issued by companies satisfactory to Lender and shall contain the agreement of the insurer to give Lender not less than thirty (30) days written notice prior to cancellation or material change in coverage and confirmation that no cancellation or change in coverage made in the absence of such notice shall be effective as to Lender.

ISLAND VIEW CROSSING II, L.P    LOAN AGREEMENT                                                -5-

With respect to all casualty loss insurance for the Mortgaged Property, Lender shall be named as insured mortgagee with a standard mortgagee's endorsement and with respect to liability insurance, Lender shall be named as an additional insured, Borrower shall not take out any insurance with respect to the Mortgaged Property without having Lender named as insured mortgagee (or additional insured, as applicable. The proceeds of any insurance shall be applied by Lender as provided in the Mortgage.

Borrower shall deliver to Lender the insurance policies (or, if permitted by Lender, certificates of insurance) evidencing such required insurance coverage and any renewals thereof at least thirty (30) days prior to expiration of any such policies together with evidence of the payment of the premium therefore.

### 3.7. **Financial Statements.**

(a)  Borrower's Annual Statements.  Borrower and Co-Borrower shall furnish or cause to be furnished to Bank within ninety (90) days after the end of each fiscal year annual financial statements for such fiscal year, All such financial statements (i) shall be prepared by independent certified public accountants on a review basis, (ii) shall be prepared in accordance with generally accepted accounting principles ("GAAP") consistently applied, (iii) shall be in a form satisfactory to Bank, and (iv) shall be certified by the Chief Financial Officer of Borrower or Co-Borrower, as the case may be.

(b)  Other Financial Information.  Borrower and Co-Borrowers shall also deliver or cause to be delivered to Bank such other information related to their financial condition as Bank may require from time to time, in form and substance satisfactory to Bank.

### 3.8. **Tax Returns.**

Borrower and Co-Borrowers shall furnish or cause to be furnished to Bank at or prior to execution and delivery of this Agreement, copies of their 2012 income tax returns, each of which shall be certified by the preparer as true, correct and complete copies of such returns actually filed, and shall furnish or cause to be furnished to Bank within ten (10) days after the applicable filing date or any extension thereof (provided that a timely filed a request for extension for the filing of such return and a copy of such request was delivered to Bank within ten (10) days after the filing thereof), copies of income tax returns for each year of the loan term, all of which returns shall be certified by the preparer as true, correct and complete copies of such returns as actually filed.

### 3.9. **Books and Records.**

Borrower and Co-Borrowers shall keep complete and accurate books and records in accordance with generally accepted accounting principles consistently applied, and shall furnish to the Bank all such written information relating to its affairs as may be requested by the Bank from time to time.

### 3.10. **Audit.**

Bank shall have the right at any time and from time to time to audit the books and records of Borrower and Co-Borrowers who shall be obligated to make available for any such audit all books, records and other information that Bank may request for such purpose and to cooperate fully with Bank in connection therewith.

### 3.11. **Environmental.**

The Real Property is not in violation of any Federal, State or local law, ordinance or regulations relating to industrial hygiene or to the environmental conditions on same, Hazardous materials

shall include but shall not be limited to substances defined as "hazardous substances" in the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended; the Hazardous Materials Transportation Act of 1975; the Resource Conservation and Recovery Act of 1976; and those substances defined as "hazardous waste" or "hazardous substances" by the laws, ordinances or regulations adopted pursuant thereto of the state, county or any subdivision thereof where the mortgaged premises are situate. Borrower shall protect, indemnify, defend and hold the Lender harmless from and against any and all claims, losses, damages, liabilities and enforcement actions of any kind and all costs and expenses incurred in connection therewith, including, but not limited to, attorney's fees and expenses arising directly or indirectly out of any failure of Borrower to comply with the provisions of this paragraph.

## SECTION 4. CONDITIONS PRECEDENT

The obligations of Lender to advance the proceeds of the Loan is subject to the satisfaction of the following conditions precedent at the time of each such advance:

4.1. **Representations and Warranties**. Each and all of the representations and warranties set forth in Section 2 hereof shall be true and correct in all respects, as though separately and independently made on and as of the date of each such advance,

4.2. **Covenants**. Each and all of the covenants set forth in Section 3 hereof shall have been performed and complied with in all respects.

4.3. **No Default**. There shall be no Event of Default in existence under any of the Loan Documents.

4.4. **Fees, Charges, Premiums**. Borrower shall have paid for all premiums on insurance policies and bonds, all recording and conveyancing costs assessed against Borrower (including, without limitation, transfer taxes and title insurance premiums), all fees of Lender and the legal fees and disbursements of the Lender's counsel in connection with the Loans.

4.5. **Delivery of Loan Documents**. The Loan Documents shall have been duly executed on behalf of Borrower and Co-Borrowers and delivered to Lender and, where applicable, shall have been recorded or filed in the appropriate public office.

4.6. **Delivery of Other Documents**. The following documents shall have been delivered by or on behalf of Borrower to Lender:

(a) **Title Insurance**. A marked-up title report of the Title Company, representing its commitment to issue in favor of Lender, but at the expense of Borrower, a standard ALTA form mortgage title insurance policy, insuring the lien of the Mortgage as a valid first lien on the Real Property and a valid perfected first security interest on the Improvements, including but not limited to all easements and appurtenances thereto, free and clear of all liens (including possible mechanics' and materialmen's liens, filed or unfiled, arising out of the construction of the Improvements) and encumbrances and subject only to such other objections and

ISLAND VIEW CROSSING II, L.P    LOAN AGREEMENT                                                    -7-

exceptions as Lender may approve in writing.

(b) <u>Property, Liability and Other Insurance</u>. Evidence of such insurance as Lender may require, covering any loss, damage or defect to the Real Property or to persons or other property in, on or about the Real Property.

(i) An original policy of flood insurance to the extent required by any applicable federal, state or local law, including, without limitation, the Flood Disaster Protection Act of 1973 (P.L. 93-234), or in the alternative, a certification in form and content acceptable to Lender that the Real Property is not located in a flood hazard area identified by the United States Department of Housing and Urban Development.

(ii) All policies, certificates and endorsements required in this Agreement shall be issued to: Prudential Savings Bank, 1834 W. Oregon Avenue, Philadelphia, PA 19145. Receipt of any policies or certificates of insurance shall not bar Lender from requiring other or additional insurance which the Lender reasonably requires due to changed circumstances.

(c) <u>Other Insurance</u>. Evidence, in form and substance acceptable to Lender, that all assets of Borrower are adequately insured and Lender has been named as loss payee on all policies of insurance covering assets in which Lender has a security interest.

4.7. **Fees, Charges and Premiums.** Borrower shall have paid for: (i) all premiums on insurance policies; (ii) all recording and conveyancing costs assessed against Borrower (including, without limitation, transfer taxes and title insurance premiums); (iii) Lender's fees; and (iv) all expenses incurred by Lender in connection with making the Loan, including without limitation, counsel fees and disbursements.

4.8. **No Material Adverse Change.** There shall be no material adverse change in the financial or operating condition of Borrower or Co-Borrower nor any material adverse change in the value of the Real Property or any other collateral securing the Loan, other than increased liability for sums advanced hereunder or in the costs of construction.

## SECTION 5. DEFAULTS

5.1. **Events of Default.** The occurrence of any one or more of the following events all, at the sole option of Lender, constitute an event of default hereunder:

(a) Borrower shall fail to pay within fifteen (15) days after the date when due any payment of interest or principal or any other sums as provided hereunder, or under any or all of the Loan Documents.

(b) Borrower shall fail to observe and perform any of the covenants or agreements on its part to be observed and performed under this Agreement, any or all of the Loan Documents, and such failure shall continue beyond thirty (30) days following notice from Lender to Borrower of such failure.

(c) Any representation or warranty of Borrower or of a Co-Borrower in this Agreement, in any

ISLAND VIEW CROSSING II, L.P    LOAN AGREEMENT                                -8-

of the other Loan Documents or otherwise made to Lender proves to be false or misleading in any material respect.

(d)  Any uncured Event of Default shall occur under any of the other Loan Documents.

(e)  Borrower or a Co-Borrower shall apply for or consent to the appointment of a receiver, trustee, or liquidator of itself or themselves or any of its or their property, admit in writing its or their inability to pay its or their debts as they mature, make a general assignment for the benefit of creditors, be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt dissolution or liquidation, law or statute, or an answer admitting the material allegations of a petition filed against them in any proceeding under any such law, or if action shall be taken by Borrower or a Co-Borrower for the purpose of effecting any of the foregoing.

(f)  Any order, judgment or decree shall be entered by any court of competent jurisdiction, approving a petition filed by any third party seeking reorganization of Borrower, or all or a. substantial part of the assets of Borrower, or appointing a receiver, sequestrator, trustee or liquidator of Borrower, or any of its or their property, and such order, judgment or decrees shall continue unstayed and in effect for any period of forty five (45) days.

(g)  Borrower fails to comply with any requirements of governmental or quasi-governmental authorities having jurisdiction over the Real Property within ten (10) days after notice of such requirement has been given to Borrower.

(h)  If any assets of Borrower or a Co-Borrower are subject to attachment, execution or other judicial seizure or enforcement, the enforcement of which has not been stayed by appropriate legal process.

(i)  If a judgment shall be entered against Borrower in any way adversely affecting Borrower's ability to perform its or their respective obligations owed to Lender and Borrower fails to bond against the judgment or fails to cause it to be satisfied or released within thirty days.

(j)  The death of a Co-Borrower.

(k)  Except as expressly permitted by Lender, Borrower shall not voluntarily, involuntarily or by, operation of law, sell, assign, transfer, convey, pledge, mortgage or encumber any or all of the Mortgaged Property or other collateral for the Loan or any interest therein, without the prior written consent of Lender.

5.2.  **Acceleration and Remedies.**  Upon the occurrence of any Event of Default hereunder, in addition to any other rights or remedies available to it hereunder or under any other Loan Document or at law or in equity, Lender may exercise any or all of the following rights and remedies as it may deem necessary or appropriate:

(a)  Terminate the Loan.

ISLAND VIEW CROSSING II, L.P    LOAN AGREEMENT                                               -9-

(b)     Declare the outstanding principal balance of the Loan, together with all accrued and unpaid interest thereon and all other sums due hereunder or under any of the other Loan Documents, to be immediately due and payable in full.

(c)     Enter upon and take possession of the Real Property.

For the purpose of carrying out the provisions and exercising the rights, powers and privileges granted by this section, Borrower hereby irrevocably constitutes and appoints Lender its true and lawful attorney-in-fact to execute, acknowledge and deliver any instruments and do and perform any acts such as are referred to in this section in the name and on behalf of Borrower. Anything herein to the contrary notwithstanding, it is specifically understood and agreed that all funds furnished by Lender and employed in performance of the obligations of Borrower under this Agreement shall be deemed advanced by Lender under an obligation to do so, regardless of the identity of the person or persons to whom such funds are furnished. Funds advanced by Lender in the reasonable exercise of its judgment that the same are needed to protect its security are to be deemed obligatory advances hereunder and are to be added to the total indebtedness secured by the Loan Documents and said indebtedness shall be increased accordingly.

(d)     Effect new leases or agreements of sale, cancel or surrender existing leases or agreements of sale.

### 5.3. Remedies Cumulative, Etc.

(a)     No right or remedy conferred upon or reserved to Lender under any of the Loan Documents, or with respect to any guaranty of payment of the Loan or of performance of any of Borrower's obligations under any of the Loan Documents or any collateral securing the payment of the Loan under any of the Loan Documents ("Collateral"), or now or hereafter existing at law or in equity or by statute or any other such legislative enactment, is intended to be or shall be deemed exclusive of any other such right or remedy, and each and every such right or remedy shall be cumulative and concurrent, and shall be in addition to every other such right or remedy, and may be pursued singly, concurrently, successively or otherwise, at the sole discretion of Lender, and shall not be exhausted by any one exercise thereof but may be exercised as often as occasion therefore shall occur. No act of Lender shall be deemed or construed as an election to proceed under any one such right or remedy to the exclusion of any other such right or remedy; furthermore, each such right or remedy of Lender shall be separate, distinct and cumulative and none shall be given effect to the exclusion of any other. The failure to exercise or any delay in exercising any such right or remedy, or the failure to insist upon strict performance of any term of any of the Loan Document, shall not be construed as a waiver or release of the same, or of any event of default thereunder, or of any obligation or liability of Borrower thereunder. Nothing herein however, shall be construed to prevent Lender from waiving any condition, obligation or default it should so elect. In the event of such election by Lender, any waiver, in order to be effective, must be in writing and signed by Lender, and any such waiver shall be strictly limited in its effect to the condition, obligation or default specified therein and shall not extend to any subsequent condition, obligation or default or impair any right of Lender with respect thereto.

(b) The recovery of any judgment by Lender and/or the levy of execution under any judgment

ISLAND VIEW CROSSING II, L.P     LOAN AGREEMENT                                -10-

shall not affect in any manner or to any extent liens or other security interests or any rights, remedies, or powers of Lender under any of the Loan Documents or with respect to any guaranty, but such liens and security interests, and such rights, remedies and powers of the Lender shall continue unimpaired as before. Further, the entry of any judgment by Lender shall not affect in any way the interest rate payable under any of the Loan Documents on any amounts due to Lender, but interest shall continue to accrue on such amounts at the Default Rate specified in the Note.

(c) Cease making any further disbursements or advances hereunder.

(d) Borrower and Co-Borrower hereby waive presentment, demand, notice of nonpayment, protest, notice of protest, or other notice of dishonor, and any and all other notices in connection with any default in the payment of, or any enforcement of the payment of, the Loan. Borrower and Co-Borrower further waive and release all procedural errors, defects and imperfections in any proceedings instituted by Lender under the terms of any of the Loan Documents or with respect to any guaranty or any collateral.

(e) Borrower and Co-Borrower agree that Lender may release, compromise, forbear with respect to, waive, suspend, extend or renew any of the terms of the Loan Documents or any guaranty (and Borrower hereby waives any notice of any of the foregoing), and that the Loan Documents or any guaranty may be amended, supplemented or modified by Lender and the other signatory parties and that Lender may resort to any guaranty and any collateral in such order and manner as it may think fit, or accept the assignment, substitution, exchange or pledge of any other collateral or guaranty in place of, or release of such consideration, or none, as it may require, all or any portion of any collateral or any guaranty, without in any way affecting the validity of any liens over or other security interest in the remainder of any such collateral (or the priority thereof or the position of any subordinate holder of any lien or other security interest with respect thereof), or any rights which it may have with respect thereof, or any rights which it may have with respect to any other guaranty; and any action taken by Lender pursuant to the foregoing shall in no way be construed as a waiver or release of any right or remedy of Lender, or of any event of default, or any liability or obligation of Borrower under any of the Loan Documents.

5.4. **Cost and Expenses.** Borrower and Co-Borrowers shall pay upon demand all costs and expenses (including all amounts paid to attorneys, accountants, real estate brokers and other advisors employed by Lender and/or to any contractors for labor and materials), incurred by Lender in the exercise of any of its rights, remedies, or powers under any of the Loan Documents or with respect to any guaranty or any Collateral, or to preserve or protect the Collateral and any amount thereof not paid promptly following demand therefor with interest thereon at the rate specified in the Note from the date of such demand, shall become part of the Loan and shall be secured by the Loan Documents and all other Collateral. In connection with and as part of the foregoing, in the event that any of the Loan Documents is placed in the hands of an attorney for the collection of any sum payable thereunder, Borrower agrees to pay all reasonable attorneys' fees for the collection of the amount being claimed under such Loan Document, as well as all costs, disbursements and allowances provided by law, the payment of which sums shall be secured by the Loan Documents and all other Collateral.

5.5. **Jurisdiction; Venue.** Borrower and Co-Borrower agree that any action or proceeding against it to enforce the Loan may only be commenced in state or federal court in any county in the Commonwealth of

ISLAND VIEW CROSSING II, L.P    LOAN AGREEMENT    -11-

Pennsylvania, and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and shall confer personal jurisdiction if served by registered or certified mail in accordance with the notice provisions set forth herein.

### SECTION 6.  MISCELLANEOUS

6.1. **Time of the Essence.** All dates and times for the performance of Borrower's and Co-Borrowers' obligations set forth herein and in the Loan Documents shall be deemed to be of the essence of this Agreement.

6.2. **Broker's and Finder's Fees.** Borrower and Co-Borrower represent and warrant that it has not dealt with or through any broker or other intermediary in connection with the Loan and agrees to indemnify, defend and hold Lender harmless from and against any loss, liability or damage (including attorneys' fees and expenses) arising from any claim for a broker's fee or finder's fee in connection with the Loan. Borrower and Co-Borrower further agree to pay all costs and fees of the brokers and shall deliver to Lender prior to Closing proof of such payments in form acceptable to Lender.

6.3. **Successors and Assigns.** This Agreement inures to the benefit of and binds the parties hereto and their respective successors and assigns, and the words "Borrower" and "Lender" whenever occurring herein shall be deemed to include such respective successors and assigns. However, Borrower shall not voluntarily, or by operation of law, assign or transfer any interest which it may have under this Agreement, in the proceeds of the Loan or convey the Real Property or the Improvements, or any part thereof, without the prior written approval of Lender. Lender may assign or otherwise transfer the Loan and any or all of the Loan Documents to any other person, or seek and obtain participants) satisfactory to Lender for portions of the Loan. In connection therewith, Lender shall have the right to deliver to any such assignee, transferee or participant any and all information regarding Borrower or the Loan Documents. Such assignee, transferee or participant shall thereupon become vested with all of the benefits in respect thereof granted to Lender herein or otherwise.

6.4. **Notices.** All notices, requests and demands to or upon the parties hereto shall be in writing and shall be deemed to have been duly given or made if delivered in person, immediately upon delivery; if by facsimile transmission, immediately upon sending and upon confirmation of all transmission; if by nationally recognized overnight courier service with instructions to deliver the next business day, one (1) business day after sending; and if by registered or certified mail, return receipt requested, five (5) days after mailing. All notices, requests and demands upon the parties are to be given to the following addresses (or to such other address as any Party may designate by notice in accordance with this Section):

**Borrower and Co-Borrowers:**
Renato J. Gualtieri
One South State Street
Newtown, PA 18940

**Lender:**
Prudential Savings Bank

ISLAND VIEW CROSSING II, L.P    LOAN AGREEMENT                                                           -12-

1834 W. Oregon Avenue
Philadelphia, PA 19145-4725
ATTENTION: Salvatore Fratanduono, Sr. V/P and CLO

   **with copy to:**
   Jerome R. Balka, Esquire
   Balka and Balka
   Two Penn Center, Suite 520
   1500 John F. Kennedy Blvd.
   Philadelphia, PA 19102-1756

   6.5. **Representatives.** Lender shall have the right, for any reasonable cause and at Borrower's sole expense, to make such inspections of the Real Property as Lender may require. Lender and its representatives shall be granted access to the Real Property, and all records maintained by Borrower or its representatives at all times.

   6.6. **Definitions: Numbers and Gender.** In the event Borrower consists of more than one person or entity, the obligations and liabilities hereunder of each of such persons and entities shall be joint and several, and the word "Borrower" shall mean all or some or any of them. For purposes of this Agreement, the use of any gender shall be deemed to include all genders, The singular member shall include the plural, or the plural the singular, as the context may require.

   6.7. **Conflicts Between Instruments.** In the event of any conflict between the provisions of this Agreement and the provisions of any of the other Loan Documents, the provisions of this Agreement shall prevail. This Agreement shall supersede the Agreement of Sale and Addendum thereto.

   6.8. **Captions.** The captions or headings of the paragraphs of this Agreement are for convenience only and shall not control or affect the meaning or construction of any of the terms or provisions of this Agreement.

   6.9. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

   6.10. **Survival.** The terms and conditions of this Agreement and all representations and warranties made by or on behalf of Borrower herein or in the Loan Documents shall survive repayment of the Loan.

   6.11. **Modification, Waiver, Consent.** Any modification or waiver of any provision of this Agreement, or any consent to any departure by Borrower therefrom, shall not be effective in any event unless the same is in writing and signed by Lender, in which event such modification, waiver (or consent shall be effective only in the specific instance and for the specific purpose given. Any notice to or demand on Borrower not specifically required of Lender hereunder shall not entitle Borrower to any other of further notice or demand in the same, similar or other circumstances unless specifically required hereunder.

   6.12. **Severability.** If any provision of this Agreement is prohibited by, or is unlawful or unenforceable

under, any applicable law of any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof; provided, however, that any such prohibition in any jurisdiction shall riot invalidate such provision in any other jurisdiction; and provided, further, that where the provision of any such applicable law may be waived, is hereby waived by Borrower to the full extent permitted by law to the end this Agreement shall be deemed to be a, valid and binding agreement in accordance with its terms.

6.13. **Entire Agreement**. This writing contains the entire agreement between the parties with respect to the subject mater hereof and supersedes all prior oral or written representations, understandings, promises or agreements which are not included herein. However, simultaneously herewith, the parties have entered into other agreements on different subject matters, each of which shall be given full force and effect in accordance with the terms and provisions thereof.

6.14. **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute only one agreement, It shall not be necessary, when making proof of this Agreement, to produce or account for more than one counterpart.

**IN WITNESS WHEREOF**, Borrower and Lender have executed this Agreement, on the date first set forth.

**ISLAND VIEW CROSSING II, L.P., A**
**PA Limited Partnership**
By: Island View Properties, Inc., its
    General Partner

by: _____
    Renato J. Gualtieri
    President

**PRUDENTIAL SAVINGS BANK**

by: _____
    Salvatore Fratanduono
    Sr. VP/CLO

_____
Renato J. Gualtieri, Individually

**ISLAND VIEW PROPERTIES, INC., A**
**PA Corporation**

by: _____
    Renato J. Gualtieri
    President

**AMERICORP HOMES, INC., A**
**PA Corporation**

by: _____
    Renato J. Gualtieri
    President

## EXHIBIT "A"

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of land, situate in Bristol Borough, Bucks County, Pennsylvania described according to Plan of Subdivision dated March 29, 2000, revised May 1, 2000 and recorded in Plan Book 300 Page 96, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Radcliffe Street (SR 2002), a corner of Lot No. 2 on said Plan; thence extending from said point of beginning along said Lot No. 2, South 54 degrees 04 minutes 10 seconds East 694.13 feet to a point in line of the Delaware River; thence extending along the same, the two following courses and distances: (1) South 21 degrees 17 minutes 52 seconds West 27188 feet; and (2) South 33 degrees 23 minutes 27 seconds West 718.45 feet to a point, a corner of lands now or late of Bucks County Redevelopment Authority; thence extending along the same, the three following courses an distances, viz; (1) North 54 degrees 04 minutes 50 seconds West 450.19 feet; (2) South 35 degrees 55 minutes 10 seconds West 36.63 feet; and (3) North 54 degrees 04 minutes 10 seconds West 344.47 feet to a point on the Southeasterly side of Radcliffe Street, aforesaid; thence extending along the same, North 35 degrees 55 minutes 50 seconds East 1017.52 feet to the first mentioned point and place of beginning.

BEING Lot No. 1 on said Plan
(Lot 119, Radcliffe Street, Bristol, PA 19007)

BEING Tax Parcel No. 4-027-119

BEING the same premises which Redevelopment Authority of the County of Bucks by Deed dated June 5, 2003 and recorded August 25, 2003 in the Office of the Recorder of Deeds in and for the County of Bucks, Pennsylvania in Book 3537, Page 23, granted and conveyed unto Island View Crossing II, LP, in fee

CORRECTIVE DEED from Redevelopment Authority of the County of Bucks dated October 17, 2006 and recorded November 9 2006 in the Office of the Recorder of Deeds in and for the County of Bucks, Pennsylvania, in Book 5172, Page 342, granted and conveyed unto Island View Crossing II, LP, in fee

**UNDER AND SUBJECT** to the lien of a certain first mortgage from Redevelopment Authority of Bucks County dated June 13, 2003 and recorded on August 25, 2003 in Mortgage Book 3537 at Page 792 in the principal amount of $2,500,000.00 as reduced by payments on account.

ANY DEFAULT IN ANY MORTGAGE which is a lien senior to the lien of this Mortgage shall be considered a default under this Mortgage

## EXHIBIT "B"

## USE OF REPAYMENTS FROM DURHAM MANOR
(Section 1.6)

| | | |
|---|---:|---:|
| Loan payments | | $147,500.00 |
| Complete construction at Durham Manor | | 200,000.00 |
| Pay RDA payment refund to Durham Manor | | 120,000.00 |
| Island View Crossing site preparation and pre-construction | | |
|   Architectural Design Reimbursement | $75,000.00 | |
|   Clearing Shoreline | 75,000.00 | |
|   Erosion and Sediment Control | 75,000.00 | |
|   Sales Center (Trailer) | 50,000.00 | |
|   (Landscaping, electric, deck) | | |
|   Site Preparation | 100,000.00 | 375,000.00 |
|   (Parking lot concrete removal) | | |
| | | |
| Reimbursement to Island View of closing costs | | 125,000.00 |
| | | |
|   Calnshire's Interest Reserve | | 100,000.00 |
|   Island View reserve for monthly payments | | 50,000.00 |
|   Advance to Americorp for operating expenses | | 302,250.00 |
| **TOTAL** | | **$1,419,750.00** |

# EXHIBIT "C"

## LEASES

None at this time