# Exhibit "E"

### *BUCKS COUNTY RECORDER OF DEEDS*
**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

Instrument Number - 2013080879
Recorded On 9/27/2013 At 3:00:29 PM          * Total Pages - 23
* Instrument Type - MORTGAGE - CORPORATIONS
Invoice Number - 620919          User -  SMC
* Mortgagor - ISLAND VIEW CROSSING II L P
* Mortgagee - PRUDENTIAL SAV BK
* Customer - SIMPLIFILE LC E-RECORDING
* FEES

```
RECORDING FEES          $137.00
TOTAL PAID              $137.00
```

| Bucks County UPI Certification |
| :---: |
| On September 27, 2013 By TF |

| |
| :---: |
| This is a certification page |
| **DO NOT DETACH** |
| This page is now part |
| of this legal document. |

**RETURN DOCUMENT TO:**
ATTLEBORO ABSTRACT CO
117 E. MAPLE AVE
LANGHORNE, PA 19047

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

0E713F

```
CERTIFIE. PROPERTY IDENTIFICATION NUMBERS
04-027-119-           -        BRISTOL BOR
        CERTIFIED 09/27/2013 BY TF
```

*HH-13--*

PREPARED BY:

Jerome R. Balka, Esquire

Two Penn Center, Suite 520

1500 John F. Kennedy Blvd.

Philadelphia, PA 19102-1756

RECORD & RETURN TO:

Attleboro Abstract Company

117 East Maple Avenue

Langhorne, PA 19047

215-741-4222

UPI Number: 4-027-119

# MORTGAGE

MORTGAGOR:        ISLAND VIEW CROSSING II, L.P.

MORTGAGEE:        PRUDENTIAL SAVINGS BANK

1

PREPARED BY:

Jerome R.  Balka, Esquire

Two Penn Center, Suite 520

1500 John F.  Kennedy Blvd.

Philadelphia, PA 19102-1756


RECORD & RETURN TO:

Attleboro Abstract Company

117 East Maple Avenue

Langhorne, PA 19047

215-741-4222


UPI Number: 4-027-119

# MORTGAGE

MORTGAGOR:        ISLAND VIEW CROSSING II, L.P.

MORTGAGEE:        PRUDENTIAL SAVINGS BANK

1

# MORTGAGE AND SECURITY AGREEMENT

**THIS MORTGAGE** (the "Mortgage") made this __20th__ day of __September, 2013__, by and between **Island View Crossing II, L.P.,** a PA Limited Partnership, whose mailing address is One South State Street, Newtown, PA 18940 ("Mortgagor") and **Prudential Savings Bank**, with an office at 1834 W. Oregon Avenue, Philadelphia, PA 19145 ("Mortgagee").

Mortgagor has executed and delivered to Mortgagee a Mortgage Note dated this date ("Note") payable to the order of Mortgagee in the stated principal sum of **One Million Four Hundred Thousand ($1,400,000.00) Dollars**, payable with interest; and on the terms and conditions set forth therein, all of which are incorporated herein by reference. The Note, this Mortgage and Security Agreement and any other documents executed and delivered in connection with the Loan are sometimes individually referred to herein as a "Loan Document" and collectively as the "Loan Documents," and any other collateral securing any of Mortgagor's obligations under any of the Loan Documents are hereinafter referred to collectively as "Collateral".

**NOW, THEREFORE**, Mortgagor, in consideration of the indebtedness evidenced by the Loan Documents, and for better securing payment of the same, with interest and in accordance with their respective terms and conditions, together with all other sums recoverable by Mortgagee under the terms of the Loan Documents and for performance of the agreements, conditions, covenants, provisions and stipulations contained herein and therein, has granted, bargained, sold, released and conveyed and by these presents does grant, bargain, sell, release and convey unto Mortgagee, its successors and assigns, the real property situate and known as __Lot No. 119, Radcliffe Street, Bristol, Bucks County, PA 19007__, as described in Exhibit "A" attached hereto and incorporated herein by reference (the "Real Estate")

**TOGETHER WITH** all of Mortgagor's right, title and interest now owned or hereafter acquired in all buildings and improvements erected or hereafter erected on the Real Estate;

**AND TOGETHER WITH** (a) all fixtures, machinery, equipment and other articles of property of every nature whatsoever, whether or not real property, now or at any time hereafter installed in, attached to or situated in or upon, or used or intended to be used in connection with or in the operation or maintenance of, the Real Estate or the buildings and improvements erected or hereafter erected thereon and owned by Mortgagor, or in the operation of any buildings, improvements, or business now or hereafter situate thereon, which shall include, but not be limited to, all lighting, heating, ventilating, security, air conditioning, sprinkling and plumbing equipment, fixtures and systems, irrigation, water and power systems and fixtures, engines and machinery, boilers, gas and electric fixtures, radiators, heaters, ranges, refrigerators, furnaces, oil burners or units thereof, elevators and motors, refrigeration plants or units, communication systems, dynamos, transformers, generators, electrical equipment, storm and screen windows, shutters, doors, decorations, awnings, shades, blinds and signs, and trees, shrubbery and other plantings; (b) all furnishings, furniture,

ISLAND VIEW CROSSING II, L.P.        Mortgage and Security Agreement Confession                    2

appliances, supplies, tools, accessories and operating inventory now or hereafter owned by Mortgagor and located on the Real Estate; (c) all building materials, fixtures, building machinery and building equipment delivered on site to the Real Estate or any portion thereof during the course of, or in connection with the construction of, or reconstruction of, or remodeling of any buildings and improvements, from time to time during the term hereof; (d) all parts, fittings, accessories, accessions, substitutions and replacements therefor and thereof; and (e) all proceeds from the sale, transfer or other disposition of any of the foregoing, whether voluntary or involuntary, and all proceeds of the conversion of any of the foregoing into cash or liquidated claims, including without limitation, proceeds of insurance and condemnation awards.

**AND TOGETHER WITH** all the singular the tenements, hereditaments and appurtenances belonging to the Real Estate or any part thereof, hereby mortgaged or intended so to be, or in anywise appertaining thereto (including, without limitation, all rents, issues, income and profits arising therefrom); all streets, alleys, passages, ways, watercourses; all other rights, liberties, easements, covenants and privileges of whatsoever kind or character; the reversions and remainders; and all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well at law as in equity, of Mortgagor, in and to all of the foregoing or any or every part thereof, and all of the estate, right, title and interest of Mortgagor in and to each and every existing and future lease with respect to all or any portion of the Real Estate, including, without limitation, all rents, issues, income and profits arising therefrom. All of the Real Estate, together with the buildings, improvements, fixtures, machinery, equipment, tenements and other property and property interests above mentioned are collectively referred to herein as the "Mortgaged Premises".

**TO HAVE AND TO HOLD** the Mortgaged Premises hereby granted and conveyed, or mentioned and intended so to be, with the appurtenances, unto Mortgagee, forever.

**AS INDEPENDENT AND SEPARATE SECURITY** for the payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, Mortgagor hereby (a) grants to Mortgagee a security interest under the Pennsylvania Uniform Commercial Code in, among other things, all fixtures, furnishings, furniture, equipment, appliances, machinery, supplies, tools, accessories and operating inventory now or hereafter owned by Mortgagor and now or hereafter located on the Real Estate, and such other items as are stated and more particularly described in the granting clauses set forth above, (b) assigns to Mortgagee all leases, whether now in existence or hereafter created, together with all rents due and to become due thereunder and deposits and other payments made in respect thereof and, upon the occurrence of an Event of Default as hereinafter provided, confers upon Mortgagee the power to enter upon and take possession of the Mortgaged Premises and to rent the same, either in its own name or in the name of Mortgagor, and to receive the rents, issues and profits and to apply the same to the payment of interest, principal, taxes, insurance premiums, repairs, alterations, improvements and other expenses in such order of priority as Mortgagee shall determine, but such collection of rents, issues and profits shall not operate as an affirmance of any tenant, lease co sublease in the event that title to all or any part of the Mortgaged Premises should be acquired by Mortgagee or any other purchaser at a foreclosure sale, (c) all "proceeds" of any of the above described property, which term shall have the meaning given to it in the Uniform Commercial Code of the state in which the Real Estate is located and shall additionally include whatever is received upon the use,

lease, sale, exchange, collection, or other utilization or any disposition of any of the above described property, voluntary or involuntary, whether cash or non-cash, including proceeds of insurance and condemnation awards, rental or lease payments, accounts, chattel paper, instruments, documents, contract rights, general intangibles, equipment and inventory, (d) assigns to Mortgagee, as additional collateral security for all amounts secured hereby, all of Mortgagor's right, title and interest in and to all insurance polices, proceeds of insurance policies and condemnation proceeds applicable to all or any part of the Mortgaged Premises.

## ADDITIONAL PROVISIONS

Mortgagor represents, covenants, warrants and agrees to and with Mortgagee, as follows:

**1.    Title; Power.** Mortgagor has good and valid title to the Mortgaged Premises, to all rents, issues and profits therefrom, and has the right, full power and lawful authority to grant, convey and assign the same to Mortgagee in the manner and form set forth herein. The Mortgaged Premises are free and clear of all liens, encumbrances and other charges whatsoever, excepting only those items excepted from the coverage of the ALTA Loan Policy of Title Insurance issued simultaneously herewith to, and approved by, Mortgagee (the "Permitted Exceptions"). Mortgagee, its successors and assigns, will quietly enjoy and possess the Mortgaged Premises to the extent provided in this Mortgage, and Mortgagor shall defend as to all of the Mortgaged Premises the title of Mortgagee hereby created.

**2.    Compliance; Use or Storage of Hazardous Materials.**

2.1.    Mortgagor shall duly observe, conform, obey and comply with, or shall cause due observation, conformance, obedience and compliance with, all requirements of any governmental or quasi-governmental authority affecting all or any part of the Mortgaged Premises or the occupancy thereof or the business or operations now or hereafter conducted thereon, and will ensure that the Mortgaged Premises continuously complies with all applicable environmental and other laws, ordinances and regulations; provided, however, that if Mortgagor in good faith and by appropriate action, protest or proceedings shall contest the validity or application of any such requirement, law, rule or regulation, then Mortgagor shall not be required to comply with any such requirement, law, rule or regulation so long as the contest (a) operates to prevent enforcement thereof or the potential sale, forfeiture or loss of the Mortgaged Premises; (b) does not interfere with the use, occupancy or operations of the Mortgaged Premises, the rent payable by tenants of the Mortgaged Premises and the timely payment of all sums due hereunder; and (c) is maintained and prosecuted with diligence and has not been terminated or discontinued adversely to Mortgagor.

2.2.    Mortgagor represents and warrants that the mortgaged premises is not in violation of any Federal, State or local law, ordinance or regulations relating to industrial hygiene or to the environmental conditions on the Mortgaged Premises. Hazardous materials shall include but shall not be limited to substances defined as "hazardous substances" in the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, the Hazardous Materials Transportation Act of 1975; the Resource

Conservation and Recovery Act of 1976; and those substances defined as "hazardous waste" or "hazardous substances" by the laws, ordinances or regulations adopted pursuant thereto of the state, county or any subdivision thereof where the Mortgaged Premises are situate.

Mortgagor agrees to comply fully in a timely manner with, and to cause his tenants and any other persons occupying or present on the mortgaged premises to so comply with all applicable federal, state and local laws and regulations and other legal requirements relating to the generation, use, handling, storage, treatment and disposal of any hazardous material located or present on the Mortgaged premises and Mortgagor agrees to indemnify and hold Mortgagee harmless from and against any and all claims, losses, costs and expenses incurred in connection therewith, including, but not limited to, attorney's fees and expenses arising directly or indirectly out of any failure of Mortgagor to comply with the provisions of this paragraph.

**3. Payment and Performance.** Mortgagor, without offset, counterclaim or defense, shall pay to Mortgagee, in accordance with the terms of the Note and this Mortgage, the principal and interest, and all other sums therein and herein set forth, and shall perform and comply with all the agreements, conditions, covenants, provisions and undertakings contained in each of the Note, this Mortgage and all of the other Loan Documents.

**4. Taxes and Other Charges.**

4.1.  Mortgagor shall pay all taxes of every kind and nature (including real and personal property), all general and special assessments, water and sewer rents and charges, and all levies, permits, inspection and license fees and other public charges now or hereafter levied or assessed against the Mortgaged Property as liens or assessments (hereinafter individually called a "Tax" and collectively the "Taxes") as the same shall become due and payable from time to time and before interest or penalties accrue thereon; provided, however, that Mortgagor shall not be required to pay any Tax to the extent that nonpayment thereof is permitted while the validity thereof is being contested, so long as (a) Mortgagor notifies Mortgagee in writing of its intention to contest the validity thereof, (b) the validity thereof is being contested in good faith by Mortgagor and (c) Mortgagor deposits with Mortgagee if Mortgagee so requests an amount deemed sufficient to make such payment if the contest is unsuccessful. Notwithstanding the foregoing, Mortgagor shall under no circumstances permit the Mortgaged Property to be sold or advertised for sale for nonpayment of any Tax. Mortgagor shall not apply for or claim any deduction from the taxable value of the Mortgaged Property because of the existence of the Note or this Mortgage and Security Agreement. Subject to Mortgagor's right to contest any Tax as hereinabove provided, Mortgagor shall deliver to Mortgagee receipts evidencing the payment of such Tax on or before the last day on which any Tax may be paid without interest or penalties or as soon thereafter as such receipts are available.

4.2.  Upon the request by Mortgagee, Mortgagor will pay to Mortgagee contemporaneously with each monthly payment of principal and interest, a sum equal to one twelfth (1/12th) of the real estate taxes so imposed and charged against the Mortgaged Premises as to enable Mortgagee to pay the same at least sixty (60) days before they become due. Amounts so paid shall be deemed not to be trust funds but may at

the option of the Mortgagee be commingled with general funds of Mortgagee. No interest shall be paid on such amounts. If, pursuant to any provision of this Mortgage, the whole amount of the principal debt remaining or any installment of interest, principal or principal and interest becomes due and payable prior to its originally scheduled maturity, Mortgagee shall have the right, at its election, to apply any amounts paid to Mortgagee under this section, against all or any part of the indebtedness secured by this Mortgage and any interest on said indebtedness. If the real estate taxes required to be escrowed pursuant to this section shall exceed the estimated amount and the amounts paid into escrow under this section., Mortgagor shall on demand, pay to Mortgagee the deficiency. Mortgagor will furnish to Mortgagee tax bills in sufficient time to enable Mortgagee to pay such taxes and premiums, before interest and penalties begin to accrue.

      5.    **Insurance.**

      5.1. Mortgagor shall, from and after the date hereof and at all times while this Mortgage is in force or the Note remains outstanding, maintain at Mortgagor's expense insurance in amounts, with deductibles and with companies satisfactory to Mortgagee. Without limiting the generality of the foregoing, Mortgagor shall maintain the following minimum coverages, unless otherwise agreed to in writing by Mortgagee;

      (1)    Fire, Extended Coverage and Vandalism insurance in an amount equal to the full replacement cost of the building on the Real Estate;

      (2)    Comprehensive general liability insurance covering all operations of Mortgagor and with a combined single limit of not less than $1,000,000. per occurrence for bodily injury (including death) and property damage;

      (3)    If the Mortgaged Premises is in an area designated by the Secretary of Housing and Urban Development as having special flood hazards, flood insurance on the improvements on the Mortgaged Premises and any and all personal property used or to be used in connection therewith, up to the maximum limits of insurance available under the National Flood Insurance Program as authorized by the Flood Disaster Protection Act of 1973;

      (4)    Such other insurance and in such amounts as may from time to time be required by Mortgagee.

      5.2.    Upon execution hereof, Mortgagor shall furnish to Mortgagee duplicate copies of such policies of insurance or, if acceptable to Mortgagee, certificates of Mortgagee's insurance agent certifying to the insurance required and including photocopies of all policies certified by such agent to be true and correct , in each case specifying the expiration date. Not less than twenty (20) days prior to the expiration of any such coverage, Mortgagor shall deliver to Mortgagee a duplicate policy or certificate evidencing the renewal of such coverage and the payment of all premiums,

      5.3.    Each insurance policy shall name Mortgagee as an additional insured party and shall

ISLAND VIEW CROSSING II, L.P.     **Mortgage and Security Agreement Confession**      6

provide that all proceeds payable thereunder shall be paid to Mortgagee as loss payee. All policies shall be issued by companies acceptable to Mortgagee.

5.4.    Each insurance policy shall be on a non-reporting form basis and shall contain a provision (1) requiring the insured to notify Mortgagee, in writing and at least thirty (30) days in advance, of any cancellation or material change in the policy; (2) stating that any loss otherwise payable thereunder shall be payable to Mortgagee notwithstanding any act or neglect of the insured and notwithstanding the occupation or use of the Mortgaged Premises for purposes more hazardous than permitted by the terms of such policy, any change in title to or ownership of the Mortgaged Premises, or any provision of the policy relieving the insurer thereunder of liability for any loss by reason of the existence of other policies of insurance covering the Mortgaged Premises against the peril involved, whether or not collectible; and (3) excluding Lender from the operation of any coinsurance clause.

5.5.    If the insurance, or any part thereof, shall expire, or be withdrawn, or become void or unsafe, in the opinion of Mortgagee, by reason of Mortgagor's breach of any condition thereof, or by reason of the failure of any company in which the insurance shall be carried, or if for any reason whatsoever the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall place new insurance on the Mortgaged Premises satisfactory to Mortgagee.

5.6.    In the event of loss to all or any portion of the Mortgaged Premises, Mortgagor shall give immediate written and oral notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor, provided, however, that any adjustment of proof of loss shall require the prior written consent of Mortgagee, Each insurance company concerned is hereby authorized and directed to make payment under such insurance, including return of unearned premiums, to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact to endorse any draft thereof, which appointment, being for security, is coupled with an interest and irrevocable.

5.7.    All policies of insurance contemplated in this Section 5, and all renewals thereof, are hereby assigned to Mortgagee as additional security for payment of the indebtedness hereby secured and Mortgagor hereby agrees that, if an Event of Default hereunder shall have occurred and be continuing, any amounts available thereunder upon cancellation or termination of any of such policies or renewals, whether in the form of return of premiums or otherwise, shall be payable to Mortgagee as assignee thereof. If Mortgagee becomes the owner of the Mortgaged Premises, or any part thereof, by, foreclosure or otherwise, such policies, including all right, title and interest of Mortgagor thereunder, shall become the absolute property of Mortgagee,

5.8.    The proceeds of any insurance shall be applied by the Mortgagor to restore or repair the damaged property according to plans and specifications approved by Mortgagee unless Mortgagee, after consultation with Mortgagor, decides that there are not sufficient funds to restore the Mortgaged Premises, and in the latter event such insurance proceeds shall be applied to reduce the indebtedness secured hereby, and any permitted repair (or restoration shall be undertaken in accordance with the following conditions:

ISLAND VIEW CROSSING II, L.P.    Mortgage and Security Agreement Confession    7

(i)    prior to commencement of restoration, if the cost to restore is anticipated to exceed $2,500., the contracts, contractors, plans and specifications for the restoration shall have been approved in advance by Mortgagee, and Mortgagee shall be provided with proof acceptable to Mortgagee of the effective filing of a waiver of mechanics' Liens so as to prevent such liens from attaching to the Mortgaged Premises;

(ii)    the net proceeds of such insurance or condemnation award (the"Restoration Fund") shall be deposited with Mortgagee, and any interest earned on such deposited funds shall be a part of and follow the Restoration Fund;

(iii)    at the time of any disbursement from the Restoration Fund, Mortgagor shall not be in default hereunder, no mechanics' or materialmen's liens shall have been filed and remain undischarged, and a bring down of title insurance satisfactory to Mortgagee shall be delivered to Mortgagee;

(iv)    disbursements from the Restoration Fund shall be made by Mortgagee from time to time in an amount not exceeding the cost of the work completed since the last disbursement, upon receipt by Mortgagee of satisfactory evidence of the stage of completion and of performance of the work in a good and workmanlike manner in accordance with the contracts, plans and specifications;

(v)    Mortgagee may retain ten (10%) percent of all requests for disbursements from the Restoration Fund as retainage until the restoration is fully completed;

(vi)    Mortgagee may impose such additional reasonable conditions and requirements with respect to such restoration as are customarily imposed by mortgagees on properties comparable to the Mortgaged Premises;

(vii)    if the estimated cost of restoration, as determined by Mortgagee in its sole reasonable discretion from time to time, exceeds the net amount of insurance proceeds or condemnation proceeds awarded for the cost of such restoration and deposited in the Restoration fund, the amount of such excess shall be paid promptly (but in no event later than thirty (30) days after notification by Mortgagee) by Mortgagor to Mortgagee to be added to the Restoration Fund, and all insurance or condemnation proceeds, if any, remaining in the Restoration Fund after completion of repairs or restoration shall be applied by Mortgagee to the reduction (of the indebtedness secured hereby; and,

(viii)    with respect to the proceeds of any business interruption insurance carried with respect to the Mortgaged Premises, Mortgagee may retain and apply such proceeds to reduce the indebtedness hereby secured. If Mortgagee receives proceeds of business interruption insurance in excess of those to be applied for the current month, Mortgagee may retain such additional proceeds in escrow, for the account of Mortgagor, and so apply such proceeds on a monthly basis. However, any such proceeds not needed to be applied to keep Mortgagor current and not in default during the reasonably estimated period of time when the revenues from the operation (of the Mortgaged Premises will be inadequate to provide

ISLAND VIEW CROSSING II, L.P.    Mortgage and Security Agreement Confession    8

Mortgagor with sufficient funds with which to pay Mortgagee the amount falling due each month, shall be paid over to Mortgagor.

**6.    Waste; Maintenance; Alterations; Compliance.** Mortgagor (1) shall abstain from and shall not permit the commission of waste in or about the Mortgaged Premises; (2) shall maintain the Mortgaged Premises in good order and condition and, except with respect to any undeveloped portion thereof, in a rentable and tenantable state of repair; (3) shall make or cause to be made, as and when necessary, and in accordance with the provisions of this Mortgage all repairs and replacements, structural and non-structural, exterior and interior, ordinary and extraordinary, foreseen and unforeseen, whether or not the same may be necessary by reason of fire or other casualty and whether or not insurance proceeds are available therefor; (4) shall not remove or demolish the buildings or other improvements now or hereafter erected upon the Real Estate, nor alter the design or structural character of any building or other improvement now or hereafter erected thereon so as to diminish the value thereof, unless Mortgagee shall first consent thereto in writing; and (5) shall comply with all federal, state, county, township and other governmental or quasi-governmental laws, ordinances, regulations, covenants, conditions, orders, licenses, permits, approvals and restrictions affecting the Mortgaged Premises (except to the extent Mortgagor contests any of the same in accordance with Section 2 hereof).

**7. Leases.**

7.1.    Mortgagor shall timely perform all of its obligations under the terms and conditions of any leases affecting the Mortgaged Premises and shall not accept rent therefor in advance for a period of more than one (1) month.

7.2.    Mortgagor represents that there are no leases or agreements to lease all or any part of the Real Estate now in effect, except those specifically set forth in, and assigned to Mortgagee by, the Assignment of Rents and Leases. Mortgagor agrees that, further to evidence and reflect the assignment of leases granted herein, Mortgagor shall execute, acknowledge and deliver to Mortgagee assignments of all existing and future leases of all or any portion of the Real Estate in form and substance satisfactory to Mortgagee and shall at the request of Mortgagee, at Mortgagor's expense, record such leases or memoranda thereof, and all assignments thereof,

7.3.    There is no assignment or pledge of any rents, issues and profits of or from the Mortgaged Premises now in effect, except pursuant to the Assignment of Rents and Leases. Mortgagor shall not make any assignment or pledge thereof to anyone other than Mortgagee until the indebtedness secured hereby is fully paid.

**8.    Declaration of No Set-Off.** If requested at any time by Mortgagee, Mortgagor shall promptly (and in any event within ten (10) days after notice) furnish Mortgagee or Mortgagee's designee with a Declaration of No Set-Off, in form and substance satisfactory to Mortgagee or any such designee, certifying, in a writing duly acknowledged, the amount of principal, interest and other charges then owing under the Loan Documents, and whether there are any set-off or defenses against the same, and, if so, the nature thereof.

**9.** **Inspection.** Mortgagee and any persons authorized by Mortgagee shall have the right at any time, upon notice to Mortgagor, to enter upon the Mortgaged Premises during normal business hours to inspect and photograph its condition and state of repair,

**10.** **Required Notices.**
10.1. Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following: (1) a fire or other casualty causing damage to the Mortgaged Premises; (2) receipt of notice of eminent domain proceedings or condemnation of all or any portion of the Real Estate; (3) receipt of notice from any governmental authority relating to the structure, use, operation or occupancy of the Mortgaged Premises; (4) substantial change in the occupancy, operation or use of any portion of the Mortgaged Premises; (5) receipt of any notice of the imposition of, or of threatened or actual execution on, any lien on, or security interest in, the Mortgaged Premises; (6) commencement of any litigation or notice of any threat of litigation affecting the Mortgaged Premises; or (7) receipt of any notice from any tenant of all or any portion of the Mortgaged Premises alleging a default, failure to perform or any right to terminate its lease or to set-off rents, or terminating its lease and setting-off any rents.

**11. No Transfer: No Other Liens; Release From Lien.**
11.1. Without the prior written consent of Mortgagee, Mortgagor shall abstain from and shall not cause or permit any conveyance, transfer or other disposition of title to, or an equitable interest in, the Mortgaged Premises or any part thereof (other than by execution on the Note or foreclosure under this Mortgage) voluntarily or by operation of law or any agreement to do any of the foregoing (including but not limited to an installment sale contract), If Mortgagor is a corporation, the transfer of any stock of Mortgagor shall be deemed to violate this prohibition on transfers; if Mortgagor is a partnership, a transfer of any partnership interest in excess of five (5%) percent of the total interests in the Partnership shall be deemed to violate this prohibition on transfer.

11.2. Without the prior written consent of Mortgagee, Mortgagor shall not lease any personal property, as lessee, which is now or hereafter intended to be a part of the Mortgaged Premises or is necessary for the operation of Mortgagor's business or the Mortgaged Premises, or create or cause or permit to exist any lien on, or security interest in the Mortgaged Premises, including any furniture, fixtures, appliances, equipment, or other items of personal property which are intended to be or become part of the Mortgaged Premises.

11.3. Mortgagor shall not, without the prior written consent of Mortgagee, create or cause or permit to exist (voluntarily or involuntarily) any lien (other than the lien of this Mortgage), encumbrance or charge on, or security interest in, all or any part of the Mortgaged Premises, excepting only the Permitted Exceptions and real estate taxes which are not yet due and payable.  If any such lien or encumbrance is filed or entered, Mortgagor shall have it removed of record within fifteen (15) days after it is filed or entered by either paying it, having it bonded in a manner which removes it of record or otherwise having it removed of record. By placing or accepting a mortgage, lien or encumbrance of any type, whether voluntary or involuntary, against the Mortgaged Premises, the holder thereof shall be deemed to have agreed, without any further act or

documentation being required, that its mortgage, lien, or encumbrance shall be subordinate in lien priority to this Mortgage and to any future amendments, consolidations or extensions to this Mortgage (including, without limitation, amendments which increase the interest rate on the Note, provide for future advances secured by this Mortgage or provide for the release of portions of the Mortgaged Premises with or without consideration).

11.4.    The holder of any subordinate mortgage or other lien, whether or not consented to by Mortgagee, expressly agrees by acceptance of such subordinate mortgage or other lien that it waives and relinquishes any rights which it may have, whether under a legal theory of marshaling of assets or any other theory at law or in equity, to restrain Mortgagee from, or recover damages from Mortgagee as a result of Mortgagee's exercising its various remedies hereunder and under any other documents or instruments evidencing or securing the indebtedness secured hereby in such order and with such timing as Mortgagee shall deem appropriate in its sole and absolute discretion,

11.5.    Mortgagee may, at any time or from time to time, renew, extend or increase the amount of this Mortgage, or alter or modify the terms of this Mortgage or the Note in any way, or waive any of the terms, covenants or conditions hereof or of the Note in whole or in part and may release any portion of the Mortgaged Premises or any other security, and grant such extensions and indulgences in relation to the indebtedness secured hereby as the Mortgagee may determine, without the consent of any junior lien or encumbrance and without any obligation to give notice of any kind thereto and without in any manner affecting the priority or the lien hereof on all or any part of the Mortgaged Premises.

11.6.    Any violation of any of the foregoing limitations, at the option of Mortgagee, shall be deemed an Event of Default hereunder.

12.    **Cure by Mortgagee.**  If Mortgagor at any time fails to pay any claim, lien or encumbrance which shall be prior to this Mortgage, or to pay when due any tax or assessment or any insurance premium, or to keep the Mortgaged Premises in repair, or to replace or restore as required thereby, or shall commit or permit waste, or if there be commenced any action or proceeding affecting the Mortgaged Premises or the title thereto, Mortgagee, at its option, may pay such claim, lien, encumbrance, tax, assessment or premium, with right of subrogation thereunder, may procure such abstracts or other evidence of title as it deems necessary, may make such repairs, replacements or restorations and take such steps as it deems advisable to prevent or cure such waste, and may appear in any such action therein as Mortgagee deems advisable, and for any of such purposes Mortgagee may advance such sums of money as it deems necessary, Mortgagor shall pay to Mortgagee immediately and without (demand all sums of money advanced by Mortgagee pursuant to this section, together with interest on each advance at the Default Rate, as defined in the Note, and all such sums and interest thereon shall be secured hereby.

13.    **Change in Laws.**  In the event of the passage, after the date of this Mortgage, of any law deducting from the value of lands, for the purpose of taxation, any lien thereon, or imposing upon Mortgagee the obligation to pay the whole, or any part, of the taxes, assessments, charges or liens herein required to be paid by Mortgagor, the entire unpaid balance of the indebtedness secured by this Mortgage shall, at the option

of Mortgagee and after sixty (60) days notice to Mortgagor, become due and payable; provided, however, that if, in the opinion of Mortgagee's counsel, it is lawful for Mortgagor to pay such taxes, assessments, charges (or liens, or to reimburse Mortgagee therefor, and Mortgagor lawfully makes payment thereof or reimburses Mortgagee therefor, then there shall be no such acceleration of the time for payment of the unpaid balance of the indebtedness secured hereby.

14.    **Retention of Counsel.** If Mortgagee retains the services of counsel by reason of a good faith claim of an Event of Default hereunder or under the Loan Documents, or on account of any matter involving Mortgagor's title to the Mortgaged Premises or the security interest intended to be granted hereby, including, without limitation, any condemnation proceedings, bankruptcy proceedings, or proceedings involving defects in title which are not covered by Mortgagee's title insurance policy, all costs of suit and reasonable attorneys' fees shall forthwith become due and payable and shall be secured hereby, If Mortgagee shall institute legal proceedings to foreclose this Mortgage or enter judgment on the Note, Mortgagor shall pay all expenses, including attorneys' fees as herein provided and court costs, of Mortgagee in connection with all such proceedings, whether or not otherwise legally chargeable to Mortgagor, together with interest at the Default Rate, as defined in the Note, until actual payment is made of the full amount due Mortgagee, and all such sums shall be secured hereby.

15.    **Events of Default.** Each of the following shall constitute an event of default hereunder (an "Event of Default"):

15.1.    the failure of Mortgagor to pay within fifteen (15) days of when due, any sum required to be paid under any of the Loan Documents;

15.2.    the default by Mortgagor in connection with any other obligation, covenant, agreement, undertaking or provision imposed upon it by this Mortgage or any of the Loan Documents, which default remains uncured for a period of thirty (30) days after notice of such default from Mortgagee to Mortgagor.

15.3.    the occurrence of a material default or an Event of Default by Mortgagor, as landlord, under any leases affecting the Mortgaged Premises as therein provided;

15.4.    the occurrence of a default or an Event of Default under any other obligation secured by the Mortgaged Premises or any part thereof; or

15.5.    if, by order of a court of competent jurisdiction, a receiver or liquidator or trustee of Mortgagor or any surety for the indebtedness secured hereby, or of the Mortgaged Premises or of any of the property of Mortgagor or any surety, shall be appointed and shall not have been discharged within forty five (45) consecutive days thereafter, or if by decree of a court of competent jurisdiction Mortgagor or such surety shall be adjudicated a debtor or insolvent or the Mortgaged Premises or any of Mortgagor's or such surety's property shall have been sequestered, and such decree shall have continued undischarged and unstayed for forty five (45) consecutive days after the entry thereof, or if any proceeding under the Federal Bankruptcy

Code, Title 11, United States Code (including Chapters 7, 11 or 13 thereof, or any amendment thereto or successor thereof) or any similar statute applicable to Mortgagor or any surety (including state insolvency statutes), as now or hereafter in effect, shall be instituted against Mortgagor or such surety and shall not be dismissed within forty five (45) consecutive days after such filing, or if Mortgagor or such surety shall institute any such proceeding or shall consent to the institution of any such proceeding against it under any such law, or if Mortgagor or such surety shall make any assignment for the benefit of any of its creditors (or shall admit in writing any inability to pay debts generally as they become due or shall consent to the appointment of a receiver or liquidator or trustee for Mortgagor or such surety or for the Mortgaged Premises or any of Mortgagor's or such surety's property,

**16. Remedies.**

16.1.    Upon the occurrence of any Event of Default, and with regard to the Event of Default specified in paragraphs 15.3, and 15.4, after the expiration of thirty (30) days prior written notice and the Event of Default then remaining uncured, the entire unpaid balance of the principal, the accrued interest and all other sums secured by this Mortgage shall become immediately due and payable, at the option of Mortgagee, without further notice or demand.

16.2.    When the entire indebtedness shall become due and payable, either because of maturity or because of the occurrence of any Event of Default, or otherwise, then forthwith:

(1)    **Foreclosure**. Mortgagee may institute any action of mortgage Foreclosure against the Mortgaged Premises, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the Interest Rate defined in the Note to the date of default, together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including all sums which may have been loaned by Mortgagee to Mortgagor after the date of this Mortgage, and all sums which may have been advanced by Mortgagee for taxes, payments on prior liens, insurance, or repairs to the Mortgaged Premises, all costs of suit, together with interest at the Default Rate defined in the Note on any judgment obtained by Mortgagee from and after the date of any Sheriff or other judicial sale until actual payment is made of the full amount due Mortgagee, and reasonable attorneys' fee; or

(2)    **Possession; Confession of Judgment**.    Mortgagee may enter into possession of the Mortgaged Premises, with or without legal action, and by force if necessary; collect therefrom all rentals (which term shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expense, apply the net rentals to any one or more of the following items in such manner and in such order of priority as Mortgagee, in Mortgagee's sole discretion, may elect the payment of any sums dues under any prior lien, taxes, water and sewer rents, charges and claims, insurance premiums and all other carrying charges, and to the maintenance, repair or restoration of the Mortgaged Premises, and on account and in reduction of the principal and interest, or both, hereby secured; and for that purpose Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights

ISLAND VIEW CROSSING II, L.P.    Mortgage and Security Agreement Confession    13

to use and occupation of the Mortgaged Premises hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals, FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PREMISES FOLLOWING ANY DEFAULT HEREUNDER OR UNDER THE NOTE, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR. TO SIGN AN AGREEMENT FOR ENTERING IN ANY COMPETENT COURT AN ACTION IN EJECTMENT FOR POSSESSION OF THE MORTGAGED PREMISES AND TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN FAVOR OF MORTGAGEE, FOR RECOVERY BY MORTGAGEE OF POSSESSION THEREOF, FOR WHICH THIS MORTGAGE OR A COPY HEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT: AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE MORTGAGED PREMISES, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. If for any reason after such action has been commenced it shall be discontinued or suspended, or possession of the Mortgaged Premises shall remain in or be restored to Mortgagor, Mortgagee shall have the right for the same default or any subsequent default to bring an action in ejectment and confess judgment therein before or after the institution of proceedings to foreclose this Mortgage or to enforce the Note, or after entry of judgment therein or on the Note, or after a sheriff's sale or judicial sale or other foreclosure sale of the Mortgaged Premises in which Mortgagee is the successful bidder, it being the understanding of the parties that the authorization to pursue such proceedings for obtaining possession; and confession of judgment therein is an essential part of the remedies for enforcement of the Mortgage and shall survive any execution sale to Mortgagee.

16.3.    Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage, as they become due, without regard to whether or not the principal indebtedness or any other sums secured by the Note and this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of Mortgage foreclosure, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

16.4.    Any real estate sold pursuant to any writ of execution issued on a judgment obtained by virtue of the Note or this Mortgage, or pursuant to any other judicial proceedings under the Mortgage, may be sold in one parcel, as an entirety, or in such parcels, and in such manner or order as Mortgagee, in its sole discretion, may elect.

16.5.    Mortgagee shall have the right to set-off all or any part of any amount due by Mortgagor to Mortgagee under the Note, this Mortgage or otherwise, against any indebtedness, liabilities or obligations owing by Mortgagee for any reason and in any capacity to Mortgagor, including any obligation to disburse to Mortgagor or its designee any funds or other property on deposit with or otherwise in the possession, control or custody of Mortgagee.

ISLAND VIEW CROSSING II, L.P.    **Mortgage and Security Agreement Confession**    14

16.6.    Upon or at any time after the filing of an action to foreclose this Mortgage, the court in which such action is filed may, at the request of Mortgagee, appoint a receiver of the Mortgaged Premises. Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of Mortgagor at the time of application for such receiver and without regard to the then value of the Mortgaged Premises and Mortgagee hereunder or any agent of Mortgagee may be appointed as such receiver. Such receiver shall have the power to perform all of the acts permitted pursuant to Section 16.2 (2) above and such other powers which may be necessary or are customarily in such cases for the protection, possession, control, management and operation of the Mortgaged Premises during such period.

**17.    Rights and Remedies Cumulative.**

17.1.    The rights and remedies of Mortgagee as provided in this Mortgage, in the Note and in the warrants attached thereto or contained therein shall be cumulative and concurrent; may be pursued separately, successively or together against the Mortgaged Premises, at the sole discretion of Mortgagee, and may be exercised as often as occasion therefor shall arise.  The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

17.2.    Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose on this Mortgage or otherwise enforce any provisions of the Mortgage or the Note, by reason of the release, regardless of consideration, of all or any part of the security held for the indebtedness secured by this Mortgage, or by reason of any agreement or stipulation between any subsequent owner of the Mortgaged Premises and Mortgagee extending the time of payment or modifying the terms of the Mortgage or Note without first having obtained the consent of Mortgagor or such other person; and in the latter event Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee.

17.3.    Mortgagee may release, regardless of consideration, any part of the security held for the indebtedness secured by this Mortgage without, as to the remainder of the security, in any way impairing or affecting the lien of this Mortgage or its priority over any subordinate lien.

17.4.    For payment of the indebtedness secured hereby, Mortgagee may resort to any other security therefor held by Mortgagee in such order and manner as Mortgagee may elect.

17.5.    The receipt by Mortgagee of any sums from Mortgagor after the date on which Mortgagee elects to accelerate the indebtedness secured hereby by reason of it default hereunder or under the Note shall not constitute a cure or waiver of such default or a reinstatement of the Note or Mortgage unless Mortgagee expressly agrees, by written notice to Mortgagor, that such payment shall be accepted as a cure or waiver of the default.

18. <u>Possession by Mortgagee</u>. If Mortgagee shall take possession of the Mortgaged Premises as provided herein, Mortgagee may do all or any of the following (provided that nothing herein contained shall obligate Mortgagee to do any of the same): (1) hold, manage, operate, lease and sublease the Mortgaged Premises, to Mortgagor or any other person or persons, on such terms and for such periods of time as Mortgagee may deem proper, and the provisions of any lease or sublease made by Mortgagee pursuant hereto shall be valid and binding upon Mortgagor notwithstanding the fact that Mortgagee's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of any such lease; (2) make such alterations, additions, improvements, renovations, repairs and replacements to the Mortgaged Premises as Mortgagee may deem proper; (3) demolish any part or all of the buildings, structures or other improvements on the Real Estate which in the judgment of Mortgagee may be in unsafe condition and dangerous to life or property; (4) remodel such buildings, structures or other improvements so as to make them available in whole or in part for any business, dwelling multiple dwelling or other purposes; and (5) collect the rents, issues and profits arising from the Mortgaged Premises, both past due and thereafter becoming due, and apply the same, in order of priority as Mortgagee may determine, to the payment of all charges and commissions incidental to the collection of rents and the management of the Mortgaged Premises and all other sums or charges required to be paid by Mortgagor hereunder or under the Note. All moneys advanced by Mortgagee for the purposes aforesaid and not repaid out of the rents collected shall immediately and without demand be repaid by Mortgagor to Mortgagee, together with interest thereon at the Default Rate set forth in the Note, and shall be added to the principal indebtedness hereby secured, The taking of possession and collection of rents by Mortgagee as aforesaid shall not be construed to be an affirmation of any lease, or any part thereof, and Mortgagee or any other purchaser at any foreclosure sale may (if otherwise entitled so to do) exercise the right to terminate any lease as though such taking of possession and collection of rents had not occurred.

19. <u>Waivers</u>. The granting of an extension or extensions of time by Mortgagee with respect to the performance of any provision of this Mortgage or the Loan Documents on the part of Mortgagor to be performed, or the taking of any additional security, or the waiver by Mortgagee or failure by Mortgagee to enforce any provision of this Mortgage or the Loan Documents, or to declare a default with respect thereto, shall not operate as a waiver of any subsequent default or defaults or affect the right of Mortgagee thereafter, to insist upon strict performance by Mortgagor of the terms hereof or to exercise all rights, powers or remedies set forth herein and therein.

20. <u>Condemnation</u>.
20.1. Mortgagee shall be entitled to receive all sums which have been or may be awarded Mortgagor for the taking or condemnation of the Mortgaged Premises or any part thereof for any public or quasi-public use or purpose, and any sums which may be awarded Mortgagor for damages caused by public works or construction on or near the Mortgaged Premises. All such proceeds and awards are hereby assigned to Mortgagee, and Mortgagor, upon request by Mortgagee, agrees to make, execute and deliver any additional assignments or documents which may be necessary from time to time to enable Mortgagee, at its option, to collect and receipt of the same, Mortgagee shall have the right to retain and apply all such proceeds and awards, at its election, to reduction of the indebtedness secured hereby.

20.2.  If the amount of the initial award of damages for the taking or condemnation is insufficient to pay in full the indebtedness secured hereby with interest and other appropriate charges and other sums secured hereby, Mortgagee shall have the right to prosecute to final determination or settlement an appeal or other appropriate proceedings in the name of Mortgagee or Mortgagor, for which Mortgagee is hereby appointed attorney-in-fact for Mortgagor, which appointment, being for security, is coupled with an interest and is irrevocable.  In that event, the expenses of the proceeding, including attorneys' fees as aforesaid, shall be paid first out of the proceeds, and only the excess, if any, paid to Mortgagee shall be credited against the amounts due under the Note and this Mortgage.

20.3.  Nothing herein shall limit the rights otherwise available to Mortgagee, at law or in equity, including the right to intervene as a party to any condemnation proceeding; and Mortgagee is hereby expressly given the right to intervene as a party to, and otherwise participate in, any such proceeding, to engage counsel on its behalf, and to add the reasonable attorneys' fees of any such counsel to the amounts secured hereby.

21.    **Security Agreement.**

21.1.    This Mortgage constitutes a security agreement under the Pennsylvania Uniform Commercial Code, and Mortgagor hereby grants to Mortgagee a security interest in all the property of the Mortgagor (and the proceeds thereof) included in the Mortgaged Premises which might otherwise be deemed "personal property" and the proceeds thereof (the "Collateral"), Mortgagor shall execute, deliver, file and refile any financing statements, continuation statements, or other security agreements Mortgagee may require from time to time to confirm the lien of this Mortgage with respect to such property.   Without limiting the generality of the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver and file such continuation statements for and on behalf of Mortgagor, which appointment, being for security, is coupled with an interest and irrevocable,

21.2.    In addition to any other remedies granted in this Mortgage, Mortgagee may, upon the occurrence of an Event of Default, and after the expiration of any applicable notice and cure period, proceed under the Uniform Commercial Code as to all or any, part of the Collateral and shall have and may exercise, with respect to the Collateral, all rights, remedies and powers of secured party under the Uniform Commercial Code, including, without limitation, the right and power to sell at public cm private sale or sales, or otherwise dispose of, lease or utilize the Collateral or any parts thereof in any manner authorized or permitted under the Uniform Commercial Code after default by debtor, and to apply the proceeds thereof in payment of any costs and expenses and attorney's fees and legal expenses thereby incurred by the Mortgagee, and to the payment of indebtedness secured by this Mortgage in such order and manner as the Mortgagee may elect.

21.3.    Among the rights Mortgagee will have in the event of such default, and without limitation of the foregoing, Mortgagee may take possession of the Collateral and enter upon any premises where the same may be situated for such purpose without being guilty of trespassing and without

liability for damages thereby, and take any action deemed necessary or appropriate or desirable by Mortgagee, at its option, to repair, refurbish or otherwise prepare the Collateral for sale, lease or other use or disposition as herein authorized.

21.4.    To the extent permitted by law, Mortgagor expressly waives any notice of sale or other disposition of the Collateral and any other rights or remedies of a, debtor or formalities prescribed by law relative to a sale or disposition of the Collateral or exercise of any other right or remedy of Mortgagee existing after default of Mortgagor hereunder; and to the extent any such notice is required and cannot be waived, Mortgagee agrees that if such notice is mailed, postage prepaid, to Mortgagor at its address shown above, at least ten (10) days before the time of sale or disposition, such notice shall be deemed reasonable and shall fully satisfy any requirement for the giving of such notice, Upon the occurrence of an Event of Default, and after the expiration of any applicable notice and cure period, Mortgagee shall have the right, at its option, to transfer at any time to itself or its nominee, the Collateral or any part thereof, and to receive the monies, income, proceeds or benefits attributable or accruing thereto and to hold the same as security for the indebtedness or to apply it on the principal or interest and other amounts owing on any of the indebtedness, in such order and manner as Mortgagee may elect. All rights to marshalling of assets of Mortgagor, including any such right with respect to the Collateral, are hereby waived.

**22.    Further Assurances.** Mortgagor shall execute and deliver such further instruments and perform such further acts as may be reasonably requested by Mortgagee from time to time to confirm the provisions of this Mortgage or the Note, to carry out more effectively the purposes of this Mortgage or the Loan Documents, or to confirm the priority of the lien created by this Mortgage on any property, rights or interests encumbered or intended to be encumbered by the lien of this Mortgage or the other documents securing the Note.

**23.    No Offset.** All sums payable by Mortgagor herein shall be paid without notice, demand, counterclaim, set off, deduction or defense, without abatement, suspension, deferment, diminution, or reduction, and the obligation and liabilities of Mortgagor hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of (1) any damage to or destruction of or any condemnation or similar taking of the Mortgaged Premises or any part thereof; (2) any restriction or prevention of or interference with any use of the Mortgaged Premises or any part thereof; (3) any title defect or encumbrance or any eviction from the Mortgaged Premises or any part thereof by title, paramount or otherwise; (4) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Mortgagee, or any action taken with respect to this Mortgage by any trustee or receiver of Mortgagee or by any court in any such proceeding; (5) any claim which Mortgagor has or might have against Mortgagee; (6) any default or failure on the part of Mortgagee to conform or comply with any of the terms hereof or any other granted with Mortgagor; or (7) any other occurrences whatsoever, whether or not Mortgagor shall have notice or knowledge of any of the foregoing. Mortgagor waives all rights now and hereafter (conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any sum secured hereby and payable by Mortgagor.

ISLAND VIEW CROSSING II, L.P.      Mortgage and Security Agreement Confession                    18

## 24.  Miscellaneous Provisions.

24.1.  **Mortgagee as Party to Litigation**.  If Mortgagee shall become a party, as plaintiff or defendant, to any suit or legal proceeding brought by any third party affecting the lien hereby created on the Mortgaged Premises or in any way involving Mortgagee on account of its position as Mortgagee under this Mortgage, as payee under the Note or as assignee under the Assignment of Rents and Leases or any other assignment or Loan Document, Mortgagor shall indemnify, defend, and hold harmless Mortgagee from and against all liability by reason of such litigation, including reasonable attorney's fees and expenses incurred by Mortgagee in any such litigation, whether or not any such litigation is prosecuted to judgment, Mortgagor agrees to pay to Mortgagee on demand its costs, expenses and attorneys' fees as aforesaid in any such suit or proceeding.

24.2.  **Stamps or Taxes on Mortgage or Notes.**  Mortgagor agrees to pay the cost of any revenue, tax or other stamps now or hereafter required by law at any time to be affixed to this Mortgage or the Note or any of the Loan Documents, or any tax directly or indirectly on Mortgagee with respect to the Mortgaged Premises, the value of Mortgagor's equity therein, or the indebtedness evidenced by the Note or secured by this Mortgage, but excluding any tax on the income of Mortgagee.

24.3.  **Construction of Terms**.  The word "Mortgagor" whenever used herein is intended to and shall be construed to include their heirs, executors, administrators, successors and assigns and the word "Mortgagee" whenever used herein is intended to and shall be construed to include its successors and assigns.

24.4.  **Binding Obligation.**  All covenants, agreements, authorizations, waivers, releases, rights, representations and warranties contained in this Mortgage made or given by or on behalf of Mortgagor shall be binding upon Mortgagor's successors in title or interest and Mortgagor's heirs, executors, administrators, successors and assigns, whether so expressed or not, and all covenants, agreements, authorizations, waivers, releases, rights, representations and warranties contained herein shall inure to the benefit of Mortgagee and its successors and assigns.

24.5.  **Covenant Running with the Land.**  Any act or agreement to be done or performed by Mortgagor shall be construed as a covenant running with the land and shall be binding upon Mortgagor and its heirs, executors, successors and assigns as if they personally made such agreement.

24.6.  **Captions.**  The captions preceding the text of the sections or subsections of this Mortgage are inserted for convenience of reference only and shall not constitute a part of this Mortgage, nor shall they in any way affect its meaning, construction or effect.

24.7.  **Partial Invalidity.**  The invalidity or unenforceability of a portion of this Mortgage will not affect the validity or enforceability of the remainder hereof.

24.8.  **Governing Law.**  This Mortgage shall be governed by and construed in accordance

**ISLAND VIEW CROSSING II, L.P.**     **Mortgage and Security Agreement Confession**     19

with the laws of the Commonwealth of Pennsylvania.

24.9.   **Modifications.**  Neither this Mortgage nor the Note, or any of the Loan Documents may be supplemented, extended or otherwise modified except by agreement in writing between Mortgagee and Mortgagor.

## DEFEASANCE

If Mortgagor shall and does pay to Mortgagee the full principal amount of the indebtedness secured hereby, together with all interest accrued thereon, and keeps all the other covenants and agreements contained herein and in the Note and other Loan Documents, all in the manner and at the times set forth herein or in the Note and other Loan Documents, and if Mortgagor shall also pay all satisfaction costs, including, but not limited to, reasonable attorneys' fees and the cost of recording a satisfaction piece and, if appropriate, a power-of-attorney to satisfy this Mortgage, then and from thenceforth this Mortgage and the estate hereby created, granted, transferred and assigned shall cease and become void.

**IN WITNESS WHEREOF**, Mortgagor has caused this Mortgage to be duly executed and delivered on the date first above written.

MORTGAGOR:
**ISLAND VIEW CROSSING II, L.P., A
PA Limited Partnership**
By: **Island View Properties, Inc., it
General Partner**

By: ............................................................
/Renato J/ Gualtieri
President

COMMONWEALTH OF PENNSYLVANIA:
COUNTY OF PHILADELPHIA:

On this, the __20th__ day of __September, 2013__, before me, the undersigned notary public, personally appeared _Renato J.  Gualtieri_  who acknowledged himself to be the **President** of _Island View Properties, Inc.,_ a

Pennsylvania Corporation, the General Partner of Island View Crossing II, L.P., a PA Limited Partnership, and that he as such **President** of the Corporation, being authorized to do so, executed the foregoing Mortgage and Security Agreement for the purposes therein contained, by signing the name of the Limited Partnership by himself as such **President** of its General Partner.

Notary Public

My Commission Expires:.................................

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Kimberly Anne Jowett, Notary Public
Langhorne Boro, Bucks County
My commission expires Sept. 26, 2013
Member, Pennsylvania Association of Notaries

I certify that the address of the within Mortgagee is: 1834 W. Oregon Avenue, Philadelphia, PA 19145

On behalf of the within Mortgagee

ISLAND VIEW CROSSING II, L.P.        Mortgage and Security Agreement Confession                    21

## EXHIBIT "A"

### LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of land, situate in Bristol Borough, Bucks County, Pennsylvania described according to Plan of Subdivision dated March 29, 2000, revised May 1, 2000 and recorded in Plan Book 300 Page 96, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Radcliffe Street (SR 2002), a corner of Lot No. 2 on said Plan; thence extending from said point of beginning along said Lot No. 2, South 54 degrees 04 minutes 10 seconds East 694.13 feet to a point in line of the Delaware River; thence extending along the same, the two following courses and distances: (1) South 21 degrees 17 minutes 52 seconds West 27188 feet; and (2) South 33 degrees 23 minutes 27 seconds West 718.45 feet to a point, a corner of lands now or late of Bucks County Redevelopment Authority; thence extending along the same, the three following courses an distances, viz; (1) North 54 degrees 04 minutes 50 seconds West 450.19 feet; (2) South 35 degrees 55 minutes 10 seconds West 36.63 feet; and (3) North 54 degrees 04 minutes 10 seconds West 344.47 feet to a point on the Southeasterly side of Radcliffe Street, aforesaid; thence extending along the same, North 35 degrees 55 minutes 50 seconds East 1017.52 feet to the first mentioned point and place of beginning.

BEING Lot No. 1 on said Plan
(Lot 119, Radcliffe Street, Bristol, PA 19007)

BEING Tax Parcel No. 4-027-119

BEING the same premises which Redevelopment Authority of the County of Bucks by Deed dated June 5, 2003 and recorded August 25, 2003 in the Office of the Recorder of Deeds in and for the County of Bucks, Pennsylvania in Book 3537, Page 23, granted and conveyed unto Island View Crossing II, LP, in fee

CORRECTIVE DEED from Redevelopment Authority of the County of Bucks dated October 17, 2006 and recorded November 9 2006 in the Office of the Recorder of Deeds in and for the County of Bucks, Pennsylvania, in Book 5172, Page 342, granted and conveyed unto Island View Crossing II, LP, in fee

**UNDER AND SUBJECT** to the lien of a certain first mortgage from Redevelopment Authority of Bucks County dated June 13, 2003 and recorded on August 25, 2003 in Mortgage Book 3537 at Page 792 in the principal amount of $2,500,000.00 as reduced by payments on account.

ANY DEFAULT IN ANY MORTGAGE which is a lien senior to the lien of this Mortgage shall be considered a default under this Mortgage