# Exhibit "F"

## DEVELOPMENT CONSTRUCTION LOAN AGREEMENT

**THIS DEVELOPMENT CONSTRUCTION LOAN AGREEMENT** (the "Agreement") is made this __26th__ day of __November , 2014__ by and between **Island View Crossing , L.P.** a PA Limited Partnership with address at One South State Street, Newtown, PA 18940 (the "Borrower") and **Prudential Savings Bank** with address at 1834 W. Oregon Avenue, Philadelphia, PA 19145-4725 (the "Bank").

### BACKGROUND

Borrower is now the owner in fee simple of a certain lot or piece of ground situate and known as **1600 Radcliff Street, Bristol Borough, Bucks County, Pennsylvania (Tax Parcel No. 4-27-119)** as more particularly described in Exhibit "A" attached hereto and made a part hereof (the "Real Property"). Borrower desires and intends to construct or cause to be constructed on the Real Property within the time hereinafter set forth in three phases Site Improvements (the "Improvements") in accordance with certain Plans and Specifications, copies of which have been signed by Borrower for identification purposes and deposited with the Bank (Phase One), the Plans and Specifications are made a part of this Agreement. In Phase Two, Borrower intends to construct seventy three (73) single family dwellings (the "Houses and the Condominium and the Condominium") and in Phase Three, Ninety Six (96) Condominium Units (the "Condominium"), all as more fully set forth on the Island View Crossing II, L.P. proposed Residential Development Phasing Plan Exhibit dated March 13, 2014 prepared by Bohler Engineering (the "Plan"), the Houses and the Condominium and the Condominium and the Condominiums are to be constructed in accordance with certain Plans and Specifications, copies of which have been signed by Borrower and deposited with the Bank, the Houses and the Condominium and the Condominium to be in a Planned Unit Community created pursuant to the PA Uniform Planned Community Act to be known as "Island View." Borrower desires to borrow from the Bank and Bank , subject to the terms and conditions set forth herein is prepared to lend to Borrower certain sums of money as more particularly described herein to finance the cost of construction of the Improvements, the Houses and the Condominium and certain other costs and expenses.

**NOW, THEREFORE**, in consideration of the premises, and of the mutual promises and undertakings of the parties set forth herein, and as an inducement for Bank to advance sums to Borrower, and with the intention of being legally bound hereby, the parties hereto agree as follows:

### SECTION 1. THE LOAN

**1.1 <u>Amount and Term:</u>** Bank shall lend to Borrower and Borrower shall borrow from Bank up to the aggregate sum of **Five Million Five Hundred Forty One Thousand Four Hundred Sixty Eight ($5,541,468.00) Dollars** (the "Loan") according to the terms and conditions set forth herein. The proceeds of the Loan shall be advanced from time to time by the Bank solely towards the direct costs associated with the actual construction of the Site Improvements and the Houses and the Condominium and certain other project costs in accordance with and subject to the terms and conditions set forth herein. Advances under the Loan shall be limited to, and shall not exceed, the amount budgeted for each category as set forth on Exhibit "B". The Loan proceeds

shall be advanced in portions from time to time by the Bank for sixty (60) months from the date of this Agreement (the "Due Date"). Provided that Borrower not be in default of any of the covenants, conditions and terms of this Agreement, the Due Date, at the request of Borrower, may be extended for one additional period of six (6) months upon payment by Borrower of a fee for the extension of the Due Date of one half (.50%) percent of the outstanding balance of the loan, Borrower to pay all costs of preparation and recording of the extension agreement including Bank's attorney's fees. Borrower shall fund from other sources all construction costs for the Site Improvements and the Houses and the Condominium in excess of the loan amount.

**1.2** **Interest and Payment.** Advances under this Agreement shall bear interest and shall be repaid as provided in the Note (as hereafter defined), as such Note may be amended from time to time upon the mutual consent of the parties thereto.

**1.3** **Loan Fee.** At closing on the purchase of the Real Property, Borrower shall pay to Bank a closing fee of Fifty Five Thousand Four Hundred Fourteen Dollars and Sixty Eight cents ($55,414.68) Dollars. In addition, Borrower shall reimburse Bank for all expenses it incurred in underwriting the loan, including, but not limited to appraisal fees, credit report fees, legal fees incurred in connection with drafting the commitment, all of the above being considered as earned in full at closing of the loan. Such fees shall be in addition to the interest and other amounts which Borrower is required to pay under the Loan Documents (as hereafter defined).

**1.4** **Loan Documents.**

(a) Note. Borrower's obligation to repay the Loan shall be evidenced by Note of even date herewith of Borrower, Island View Properties, Inc., its General Partner and Renato J. Gualtieri in the principal amount of Five Million Five Hundred Forty One Thousand Four Hundred Sixty Eight ($5,541,468.00 Dollars (the "Note") providing for the payment of principal, together with interest thereon at the rate set forth therein, in such installments, at such times and according to such terms as set forth therein.

(b) Security for Note. The Note and all of the obligations of Borrower and all other parties thereunder and hereunder shall be and are secured by the following, which Borrower shall execute and deliver to Bank or cause to be executed and delivered to Bank, as the case may be, and as applicable:

(i) A second lien priority Open-End Mortgage and Security Agreement under and subject to the lien of a certain first mortgage to the Redevelopment Authority of Bucks County securing an aggregate amount of Five Million Five Hundred Forty One Thousand Four Hundred Sixty Eight ($5,541,468.00) Dollars ("Mortgage") covering the Real Property, the Improvements, the Houses and the Condominium and all building materials, furniture, furnishings, appliances, plumbing heating, ventilating and air-conditioning systems, fixtures, machinery, equipment, contracts, permits, books, records, and personal property necessary or incidental to the construction or general operation and maintenance of the Real Property, the Improvements, the Houses and the Condominium and all renewals and replacements thereof or additions thereto (collectively, the "Mortgaged Property"). Pursuant to such Mortgage, Borrower shall grant to Bank, inter alia, a first priority security interest and lien which with the recording of the financing

statements referred to in Subsection 1.4 (b) (ii) below shall constitute a perfected security interest in all such building materials, contracts, permits, EDUs, furniture, furnishings, appliances, plumbing, heating, ventilating, and air-conditioning systems, fixtures, machinery, equipment, books, records and personal property owned or hereafter acquired by Borrower and used or useful in connection with the Mortgage Property and/or the Improvements and Houses and the Condominium and the cash and non-cash proceeds thereof.

(ii)   Two (2) UCC-1 Financing Statements from Borrower to Bank evidencing the security interests referred to in Subsection 1.4 (b) (I) above, to be filed with the Office of the Recorder of Deeds of Bucks County, and the Secretary of State of the Commonwealth of Pennsylvania.

(iii)   A first lien priority assignment of and security interests in all of Borrower's rights under all existing or future leases or agreements of sale of the Mortgaged Property or any portion thereof (including deposit monies thereunder) and the proceeds thereof.

(iv)   A first lien priority assignment of all of Borrower's right, title and interest in and to all agreements for the furnishing of labor and/or materials in connection with the construction of the Improvements, the Houses and the Condominium, including, without limitation, all Agreements between the Borrower and the Contractors (collectively, the "Construction Agreements").

(v)   A first lien priority assignment of all of the Borrower's right, title and interest in and to all agreements for the furnishing of architectural and/or design services in connection with the development and construction of the Improvements, the Houses and the Condominium.

(vi)   A first lien priority assignment of all of Borrower's right, title and interest in and to all licenses, permits, approvals, authorizations, consents and other agreements and orders pertaining to the Mortgaged Property or relating to the construction of the Improvements, in and to all deposits, letters of credit or other property pledged or delivered pursuant thereto and all sewer capacity and sewer hookup rights with respect to the Mortgaged Property.

(vii)   A first lien priority assignment of all of Borrower's right, title and interest in and to the Plans and Specifications and all other agreements in any way affecting or relating to the construction of the Improvements and the house or the operation and use of the Real Property.

(viii)   A first priority lien and security interest in all deposits, funds, collateral, documents or agreements granted, pledged or assigned to or held by the Bank, in any capacity, whether directly or indirectly as security for any existing or future indebtedness of any kind, whether direct or indirect secured or unsecured, of the Borrower and/or any Co-Borrower, to the Bank or pursuant to any Loan or indebtedness in which the Bank is a participating lender to Borrower.

(ix)   A lien and security interest in all deposits, funds, collateral, documents or agreements granted, pledged or assigned to or held by Bank, in any capacity, whether directly or indirectly, as security for any existing or future indebtedness of any kind, whether direct or indirect, secured or unsecured, of Borrower and/or any, Co-Borrowers, to Bank or pursuant to any Loan or indebtedness in which Bank is a participating lender and in all other assets of Borrower or Co-

Borrowers in which Bank now has or may at any time hereafter obtain a line, mortgage or security interest for any reason.

        (x) The assignment by AmeriCorp Homes, Inc. as owner of a certain $3,000,000.00 Term Life Insurance Policy No. 206127247 US issued by Met Life Investors, USA Insurance Company on the life of Renato J. Gualtieri.

        (c)    <u>Additional Documents; Filing Fees</u>.  Borrower shall execute and delivery such additional documents, instruments, agreements, guaranties, assignments or security as the Bank shall require in order to perfect Bank's interest in any of the foregoing property on which Bank deems necessary to adequately secure the Loans.  This Agreement, the Note and all of the documents and instruments referred to in Subsection 1.4 (b) above and all documents collateral thereto (all of which, together with this Agreement, are herein collectively referred to as the "Loan Documents") shall be in form and substance satisfactory to Bank and Bank's counsel, and all necessary filing and recording fees with respect thereto shall be paid by Borrower.

## 1.5    <u>Partial Releases.</u>

        (A)  At Borrower's cost and expense, Bank agrees to execute, from time to time, a release of mortgage, in form and substance acceptable to Bank in its sole discretion, of any or all Houses and the Condominium comprising the Real Property upon the written request of Borrower, provided that: (a) no event of default shall exist hereunder or under any of the Loan Documents; (b) the remaining unreleased portion of the Real Property complies with all representations and warranties of Borrower contained herein or in any of the Loan Documents; (c) on the sale and settlement of each House, Borrower pay the Bank One Hundred Sixty Thousand Five Hundred ($160,500.00) Dollars, Thirty Thousand Five Hundred ($30,500.00) of which shall be applied by the Bank  in reduction of advances by the Bank to the Borrower for Site Improvement costs, One Hundred Thirty Thousand ($130,000.00) Dollars  in reduction of advances by the Bank to the Borrower for the construction of the Houses and on the sale and settlement of each Condominium unit One Hundred Thirty Thousand Five Hundred ($130,500.00) Dollars, Thirty Five Thousand ($35,000.00) Dollars of which shall be applied by the Bank in reduction of advances to the Borrower for Site Improvement costs and One Hundred Thousand ($100,000.00) Dollars in reduction of advances for the construction of the Condominium unit to be released from the lien (d) on the sale and settlement of the last Condominium all unpaid principal, interest and any other unpaid Bank costs and charges; (e) all costs incident to the preparation and recording of the release documents shall be paid by Borrower; (f) Bank shall have approved the agreement of sale, and the settlement sheet executed and delivered in respect of the sale of any such House and Condominium and (g) Borrower shall give Bank at least ten (10) days notice of the settlement of the sale of the House or Condominium to be released.

        (B) In addition to the payments required by Subsection (A) above, on the settlement on the sale of each of the first 25 houses, the Borrower shall pay LAVA Financial Twenty Five Thousand ($25,000.000) Dollars, on the sale of each of the first 128 houses and Condominium units, the Borrower shall pay the Bank Ten Thousand ($10,000.00) Dollars in reduction of a certain $1,400,000.00) Dollar mortgage loan by the Bank to Island View, L.P. which is subordinated to the loan which is the subject of this Agreement.  Upon settlement on the sale of each of the 21st house and/or Condominium to the 128th, the Borrower shall pay the Bank Thirty Five Thousand

($35,000.00) Dollars in reduction of a certain mortgage loan known as Steeple Run. On settlement on the sale of each of the 21st house and/or Condominium to the 169th, Borrower shall pay the Bank Ten Thousand ($10,000.00) Dollars in reduction of a certain mortgage loan known as Calnshire Estates and on settlement on the sale of each of the 69th house and/or Condominium unit to the 169th, the Borrower shall pay Ten Thousand ($10,000.00) on account of certain past due accounts payable. On settlement on the sale of each of the 21st house and/or Condominium unit to the 169th, Borrower shall deposit with the Bank Ten Thousand ($10,000.00) Dollars to replenish the Interest Reserve.

(C) In addition to the payments required by Subsections A and B above, upon settlement on the sale of each of the 21st house and/or Condominium to the 169th, Borrower shall pay the Authority Twelve Thousand Three Hundred Fifty ($12,350.00) Dollars for release of the house and/or Condominium unit from the lien of the Authority's mortgage.

**1.6    Use of Loan Proceeds, Re-Advances.** Up to Eighty Five Thousand ($85,000.00) of the loan proceeds shall be released by the Bank to the Borrower to be used by the Borrower for payment of closing costs, including fees for title insurance, attorney's filing fees and other settlement expenses. Five Hundred Thousand ($500,00.00) Dollars for interest reserve, Three Million Three Hundred Ninety Six Thousand Four Hundred Sixty Eight ($3,396,468.00) Dollars to pay for the cost of construction of Site Improvements will be retained by the Bank and disbursed to the Borrower during construction. One Million Five Hundred Sixty Thousand ($1,560,000.00) Dollars will be retained by the Bank and disbursed to Borrower to pay for the costs of construction of Houses or Condominiums, no more than One Hundred Thirty Thousand ($130,000.00) Dollars to be advanced by the Bank for the cost of construction of any one House and One Million Five Hundred Ninety Thousand One Hundred Fifty ($1,590,150.00) Dollars for the construction of any one of the six, sixteen (16) unit Condominium buildings. As each House is sold, settled and released from the lien of the Mortgage as set forth in Section 1.5 above, the Bank will re-advance up to One Hundred Thirty Thousand ($130,000.00) Dollars per House in stages a set forth on Exhibit "C" for the construction of an additional House provided that at no time the total advances by the Bank for the cost of construction of the Houses and Site Improvements exceed $5,541,468.00. The Bank will also re-advance up to One Million Six Hundred Thousand ($1,600,000) Dollars for construction of each of the six Condominium buildings in stages.

## SECTION 2. BORROWER'S REPRESENTATIONS AND WARRANTIES

Borrower hereby represents and warrants to Bank (which representations and warranties shall survive until the Loan has been paid and satisfied in full and the Loan Documents have been terminated) that:

**2.1    Valid Organization.** Borrower is a Pennsylvania Limited Partnership whose general partner is Island View Properties, Inc. and whose limited partner is Renato J. Gualtieri. Both the Limited Partnership and the General Partner are duly formed, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania and have full power and authority to carry on their business as it is now being conducted. Borrower has full power and authority to own, operate and develop the Real Property in the Commonwealth of Pennsylvania. True and correct copies of Borrower's Certificate of Limited Partnership and Partnership, and Articles of

Incorporation of Corporate General Partner have been certified by Borrower and delivered to Bank, and the same are in full force and effect as of the date of this Agreement.

**2.2      Title to Real Property.** Borrower has or will at closing have good and marketable title to an indefeasible fee simple estate in the Real Property, subject to no lien, charge or encumbrance except as existing in favor of Bank with respect to the Mortgage (as defined hereinbelow) except for a certain Two Million Five Hundred Thousand ($2,500,000.00) Dollar Mortgage in favor of the Redevelopment Authority of Bucks County (the "Authority") subordinated to the Bank's loan in accordance with a certain Cross Subordination Agreement and certain Collateral Mortgages in favor of the Bank which are additional security for a loan by the Bank to Steeple Run, L.P. and Calnshire Estates, LLC respectively and such as are listed as exceptions to title or exclusions from coverage in the title insurance policy being issued by Attleboro Abstract Company, as agent for Chicago Title Insurance Company ("Title Company") to Bank concurrently with the recording of the Mortgage.

**2.3      Power and Authority; Authorization; Enforceability.** Borrower, and Co-Borrowers have full power, authority and legal right to execute, deliver and comply with each of the Loan Documents and any other documents or instruments relating to the Loan to be executed. All actions of Borrower and the Co-Borrowers and all other authorizations necessary or appropriate for the execution and delivery of and compliance with the Loan Documents, and such other documents and instruments have been taken or obtained. The Loan Documents and such other documents and instruments shall constitute the valid and legally binding obligations of Borrower and Co-Borrowers enforceable against them in accordance with their respective terms.

**2.4      Governmental Approval of Loan Documents.** No consent, approval or other authorization of or by any court, administrative agency or other governmental authority is required in connection with Borrower's and/or any Co-Borrowers' execution and delivery of or compliance with any of the Loan Documents or any other document or instrument relating to the Loans.

**2.5      Conflict; Breach.** Neither Borrower's nor any Co-Borrowers' execution and delivery of and compliance with the Loan Documents and any other documents and instruments relating to the Loan will conflict with or result in a breach of; (a) any applicable law, judgment, order, writ, injunction, decree, rule or regulation of any court, administrative agency or other governmental authority; or (b) the Limited Partnership Agreements of Island View Crossing II, L.P.; or (c) any agreement or other document or instrument to which Borrower or any Co-Borrower is a party or by which any of them are bound, and such action by Borrower and Co-Borrower will not result in the creation or imposition of any lien, charge or encumbrance upon any property of Borrower or any Co-Borrower in favor of anyone other than Bank.

**2.6      Litigation.** There is no action, suit or proceeding pending or threatened against or affecting the Real Property, Borrower or any Co-Borrower before or by any court, administrative agency or other governmental authority, or which brings into question the validity of the transactions contemplated hereby.

**2.7      Financial Statements:** All financial statements of Borrower and Co-Borrowers which have been furnished to Bank fairly and accurately reflect the financial condition of the

Borrower and each Co-Borrower, as the case may be, as of and for the time periods set forth therein, and there has been no material adverse change in the financial condition of Borrower or such Co-Borrowers since the latest dates thereof.

**2.8    Tax Returns.**  Any and all federal, state and local income tax returns required to have been filed by Borrower and each Co-Borrower have been filed, and all taxes reflected upon any such tax returns, all past due taxes, interest and penalties and all estimated payments required to be paid have been paid.   Such tax returns are complete and accurate in all respects.

**2.9    Title to Personal Property.**  All personal property with respect to which Borrower has granted to Bank a security interest pursuant to any of the Loan Documents is owned by Borrower free and clear of all liens, encumbrances and security interests except those in favor of Bank.

**2.10   Governmental Approval of Construction of Improvements.**   All necessary approvals from governmental or quasi-governmental authorities having jurisdiction over the Real Property and the construction of the Improvements including, but not limited to, street openings or closings, zoning or use permits, variances (or special exceptions, zoning reclassifications, foundation permits, sewer permits, building permits, subdivision approvals, earth moving permits, environmental permits and approvals, historic certifications and approvals of fire underwriters, have been obtained, are in full force and effect, are final and the time for appeal from the granting of all such permits and approvals has run with no appeal having been taken therefrom.  The current and proposed use of the Real Property and Improvements complies with all subdivision, zoning, building, environmental and other applicable laws, ordinances, rules and regulations.   The subdivision agreement with Bristol Borough, all other governmental agencies having  jurisdiction and the agreement with Aqua PA are in full force and effect and Borrower is not in default or violation of any of the provisions of the said agreements.

**2.11    Utility Services.**  All utility services, including water, electric, gas and telephone, and all storm and sanitary sewer drainage facilities are available on or at the boundary of the Real Property or will be available as part of the construction of the Improvements for use by Borrower at competitive rates and are of sufficient capacity to adequately serve the Improvements, or Borrower has binding written agreements for the provision of all of such utilities in form and content satisfactory to Bank.

**2.12    Contracts.**  Neither Borrower nor the General Contractor has executed or is a party to any contract or agreement of any kind which could give rise to a right by the other party thereto to acquire a lien against the Real Property or the Improvements, The contract with the General Contractor is in full force and effect and neither Borrower nor any other party thereto is in default thereunder.

**2.13   Plans and Specifications.** The Plans and Specifications are identical in all respects to those on which were based all approvals from governmental and quasi-governmental authorities having jurisdiction over the Real Property and construction of the Improvements.

**2.14   Schedule of Site Improvement Costs.** Exhibit "B" and Exhibit "C" attached hereto

and made a part hereof represents, inter alia: (i) the amounts which will be due from Borrower to subcontractors and materialmen in connection with each and every category of work represented by the services and materials to be supplied; and (ii) the total cost of the Site Improvements including demolition, architect and engineering costs, interest reserves, administrative and legal costs and labor and management costs and (iii) the cost of construction of each house and each condominium.

**2.15. Bankruptcy; Insolvency.** Neither Borrower, nor any Co-Borrower, as the case may be, has applied for or consented to the appointment of a receiver, trustee or liquidator for, as the case may be, itself or themselves or any of its or their property, admitted in writing its or their inability to pay its or their debts as they mature, made a general assignment for the benefit of creditors, been adjudicated a bankruptcy or insolvent or filed a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a petition filed against it or them in any proceeding under any such law, and no action has been taken by it or them for the purpose of effecting any of the foregoing, No order, judgment or decree has been entered by any court of competent jurisdiction approving a petition seeking reorganization of all or a substantial part of the assets of Borrower or any Co-Borrower or appointing a receiver, sequestrator, trustee or liquidator or any of its or their property.

**2.16 Agreements of Sale.** Exhibit "D" attached hereto is an accurate and complete list identifying all agreements of sale currently executed and in effect for any of the Houses and the Condominium (the "Existing Agreements of Sale") setting forth: (a) the buyer's name and address; (b) the date of the agreement of sale; (c) the house identification; (d) the purchase price (e) the deposit amount; and (f) the completion date for the house. Borrower has delivered to Bank copies of all Existing Agreements of Sale, together with all amendments and modifications thereto,

**2.17 Licenses.** Borrower and its employees, servants and agents have all licenses, registrations and other authority as may be necessary to enable them to perform all services and business which they have agreed to perform in any state, municipality or other jurisdiction.

**2.18 General Contractor.** Borrower has or will engage AMCORP IVC ("AMCORP") as the general contractor for construction of the Improvements and Houses and the Condominium on the Real Property, all other contractors to be subcontractors of AMCORP. The agreement between Borrower and AMCORP shall be assigned to Bank and shall provide that in the event of default by Borrower, the general contractor, if requested by the Bank, shall continue with the construction, the price for completion being equal to the undistributed portion of the construction funds designated for the improvements and the Houses and the Condominium.

## SECTION 3. BORROWER'S COVENANTS

Borrower hereby covenants and agrees that, until the Loan has been paid and satisfied in full and the Loan Documents have been terminated:

**3.1 Commencement and Completion of Construction.** Borrower shall commence the

demolition and construction of the Improvements in accordance with the Plans and Specifications promptly but in any event no later than thirty (30) days after the execution of this Agreement and shall proceed diligently, employing sufficient workmen and supply sufficient materials for that purpose, so that construction of the Improvements (except Houses and the Condominium not commenced) shall be completed and ready for occupancy by no later than the earlier of (a) the date of completion set forth in the applicable Agreement of Sale, or (b) the Due Date ("Completion Date"), which Completion Date is of the essence of this Agreement.   For purposes of this Agreement, construction of the Improvements and the Houses and the Condominium shall be deemed completed only when: (i) (A) the physical construction of the Site Improvements has been completed in strict accordance with the Plans and Specifications, as the same may have been amended and supplemented from time to time with the written approval of Bank and any governmental authorities having jurisdiction; (B) all utilities serving the Real Property have been connected and are operating; and (C) the Houses and the Condominium are ready for occupancy for the purposes for which designed; (ii) a final certificate of occupancy (or its equivalent) shall have been issued for the Houses and the Condominium by the Borough of Bristol; (iii) certificates of inspection and approval shall have been issued by all insurance bureaus and governmental authorities whose certificates or approvals are required for Borrower to operate the improvements for the purposes for which designed; (iv) Bank shall have received a satisfactory as-built survey; (v) Bank shall have completed an inspection of the Site Improvements and/or the Houses and the Condominium showing construction satisfactory to it; and (vii) Bank shall have received releases executed by each Contractor, subcontractor, materialman and other persons performing work on the Site Improvements and the Houses and the Condominium, in form and content satisfactory to Bank, at its sole discretion.

   **3.2  Construction in Accordance with Plans and Specifications and with Applicable Laws.**  The construction of the Site Improvements and the Houses and the Condominium shall be performed substantially in accordance with the Plans and Specifications; with all applicable statutes, laws and ordinances; with the rules, regulations and requirements of all boards, agencies and departments, governmental or otherwise, all utility companies having jurisdiction over the Mortgaged Property or the Improvements, and with all directions, rules and regulations of any fire marshal, health officer, building inspector or other officer of every governmental agency nor or hereafter acquiring jurisdiction; with requirements of fire underwriters; and with all of the requirements set forth in any permanent Loan commitment. The Plans and Specifications shall not be amended without the prior written consent of Bank and such other persons or entities as Bank shall request.

   **3.3  Contracts.**  Borrower shall furnish to Bank copies of all contracts or agreements which Borrower will enter into with all Contractors prior to execution of such contracts or agreements, The agreements with the Contractors are subject to the approval of Bank as to form and content. Each of such agreements shall be modified as Bank shall request and shall be assigned to Bank by assignment in form and substance approved by Bank. Each of such agreements shall contain covenants or stipulations on the part of the Contractor thereunder, in form satisfactory to Bank: (a) waiving the right of each such Contractor and all subcontractors, laborers, materialmen and other parties claiming under or through them to file and maintain any mechanics' lien, Notice of Intention (or claim against the Real Property or Improvements;   (b) that the agreement shall remain in full force and effect notwithstanding the occurrence of an event of default hereunder;

and (c) that in the event of default by Borrower the contractor shall complete the work in accordance with the original contract for the then undistributed portion of the escrow fund set forth in Exhibit "C" to be paid out from time to time.

**3.4  Removal of Nonconforming Materials.**  Borrower shall remove or cause to be removed from the Real Property all portions of the Improvements and all materials which fail to substantially conform with the Plans and Specifications, and Borrower shall replace at its own expense all portions of the Improvements and other materials damaged by such removal.

**3.5  Maintenance of Construction Site.**  Borrower shall cause the Real Property and the Improvements to be kept in good condition and repair, maintain the same in a clean and orderly manner, make all necessary replacements and operate the same properly, efficiently and in compliance with all pertinent laws and regulations respecting health, safety and the conduct of similar operations, and maintain such insurance coverage as the Bank may require with respect to the Real Property, Improvements and the construction thereof.

**3.6  Compliance: As-Built Survey.**  The Improvements when erected shall not violate any applicable public or private restrictions.  Borrower shall deliver to Bank, upon completion of the pouring of the foundation of the Houses and the Condominium, a certification by a registered engineer showing that the foundation lies entirely within the property lines of the lot on which the house is to be erected and within all applicable building set back lines, and that the foundation does not encroach upon any easements or rights of way.

**3.7  Certificate of Occupancy.**  On or before the completion date under each Acceptable Agreement, Borrower shall deliver to the Bank a final certificate of occupancy (or its equivalent) issued by the governmental authority having jurisdiction over the Real Property and Improvements which confirms that construction of the applicable house has been completed in accordance with all applicable requirements.

**3.8  Amendments of Documents**.  Borrower shall not amend or permit to be amended the Plans and Specifications, any agreements with the Contractors, any agreements with any utilities or any other document or instrument referred to in any of the Loan Documents without in each case obtaining the prior written approval of the Bank, which consent will not be unreasonably withheld.

**3.9  Contractors.**  Borrower shall not enter into an agreement with, retain the services of, or continue to employ any contractor, subcontractor or materialmen who may be objectionable to the Bank.

**3.10  Leases, Agreements of Sale.**

(a)        Borrower shall not lease or agree to sell any portion of the Real Property or Improvements without the prior written approval of Bank as to the form and content of such lease or agreement of sale, including, without limitation, the term and rental for any lease and the sale price for any agreement of sale which consent shall not be unreasonably withheld and will be based, inter alia, on the Bank's interest in maintaining the value of unsold Houses and the Condominium and the Condominium so that upon release of the final house to be sold, the loan

will be paid in full.

(b)        Borrower shall furnish to Bank a complete list of all leases and agreements of sale of the Real Property or the Improvements in such reasonable detail as may be requested by Bank. Borrower shall deliver to Bank executed or certified copies of all leases and agreements of sale together with copies of correspondence and memoranda between Borrower and tenants or purchasers thereunder setting forth the contractual arrangements between them.   Borrower warrants and represents to Bank that neither the Real Property nor the Improvements are subject to any lease, rental agreement or agreement of sale as of the date hereof, except as disclosed to and approved by Bank in writing.

(c)        In the event of default under this Agreement or under any of the Loan Documents, Bank may effect new leases or agreements of sale, cancel or surrender existing leases or agreements of sale, alter and amend the terms of and renew existing leases or agreements of sale, evict tenants and make concessions to tenants or purchasers, and Bank may apply any rents and other amounts collected to delinquencies of interest and principal and any other amounts evidenced by the Note or secured by the Mortgage, and pay any and all charges, costs and expenses of management, operation and maintenance of the Real Property.  Without limiting the generality of the foregoing, Bank may pay for repairs and upkeep and for the operation, protection and preservation of the Real Property or the Improvements, wages, and payroll taxes and other management costs and expenses (including payments in this regard to itself), real estate taxes and assessments, water, sewer and similar charges, insurance and workmen's compensation premiums, ground rents, real estate commissions, attorneys' fees and costs and court costs.  Bank may make the foregoing application and payments, or make some and omit others, in any order as it sees fit. All of the foregoing powers herein granted to Bank shall be liberally construed.  Bank need not expend its own funds in the exercise of such powers, but if it does, such amounts shall be considered as obligatory advances for and on behalf of Borrower secured by this Agreement and the Loan Documents.  Any amounts so advanced shall bear interest at the rate to be applied under the Notes after an Event of Default.

(d)        Borrower agrees to faithfully observe and perform all of the obligations and agreements imposed upon it as lessor under any lease or as seller under any agreement of sale and Bank will not be deemed in any manner to have assumed the same, Borrower agrees to indemnify and to hold harmless Bank of, from and against any and all liability, loss or damage which it may or might incur by reason of any claims or demands against it based on its alleged assumption of Borrower's duty and obligation to perform and discharge the terms, covenants and agreements in any such lease or agreement of sale.

(e)        Nothing herein contained shall be construed as making Bank a mortgagee in possession, or as constituting a waiver or suspension by Bank of its right to enforce payment of the debt under the terms of the Note and the Mortgage.

**3.11   Additional Financing.**  The Borrower shall not be permitted to obtain any other loans or other financing, whether or not secured by an encumbrance, lien, mortgage, security interest or other interest in the Mortgaged Property or the other Collateral, without the Bank's prior written consent, which consent the Bank reserves the right to withhold in its sole discretion.

**3.12    Status of Title to Property**.  Except for leases or agreements of sale approved by the Bank in accordance with the terms of Section 3.10 above, Borrower shall not offer for sale, sell or otherwise transfer control or ownership of the Real Property, the Improvements or any part thereof, directly or indirectly, voluntarily or involuntarily, except in accordance with the terms hereof and without the Bank's prior written consent, which consent the Bank reserves the right to withhold in its sole discretion, Borrower shall not create or permit to exist any assignment, pledge, lien, encumbrance or security interest in favor of any third party with respect to the Real Property, Improvements or any item of property, whether or not a fixture, installed on the Real Property or stored thereat without the Bank's prior written consent, which consent the Bank reserves the right to withhold in its sole discretion. Borrower shall keep all such property free from any such lien or security interest other than those created in favor of the Bank and liens for taxes not yet due and payable. In general, Borrower shall keep the title to the Real Property and the Improvements free of any matter which would, at the time of completion of the Improvements, prevent any title insurance company from certifying the lien of any mortgage to be executed in favor of a permanent lender or other mortgagee in substitution for or in payment of the Loan, as other than a good and valid first lien upon the Real Property and the Improvements.

**3.13    Mechanic's Liens and Other Encumbrances.**  Borrower shall fully pay and discharge all claims for work done and materials and services furnished and shall take all other steps to forestall the assertion of claims or liens therefor against the Improvements, Mortgaged Property or other Collateral.   Borrower shall pay or discharge any mechanics' liens or other encumbrances which may be filed or recorded against the Real Property or Improvements within ten (10) days after they receive notice thereof, from the Bank or otherwise.  In the event that Borrower shall fail to pay or discharge any such mechanics' lien or other encumbrance, the Bank, in addition to such other rights as may be available to it, may pay and discharge such mechanics' lien or other encumbrance or deposit in escrow an amount sufficient to do so, and the amount so paid or deposited shall be treated as an advance of the Loans from the Bank to Borrower. Borrower shall not permit any materials, appliances or other property delivered to the Real Property for the purpose of being incorporated in the construction or used in the Improvements to be subject to any security interests, liens or other encumbrances, except as agreed to by Bank in writing, Borrower shall fully pay and discharge all proper claims for labor done and material and services furnished and shall take all other steps to forestall the assertion of claims of liens against the Improvements or the Real Property.

**3.14    Financial Statements.**
(a)    Borrower's Annual Statements, Borrower shall furnish or cause to be furnished to Bank within ninety (90) days after the end of each fiscal year its annual financial statements for such fiscal year.   All such financial statements (i) shall be prepared by independent certified public accountants on a review basis, (ii) shall be prepared in accordance with generally accepted accounting principles ("GAAP") consistently applied, (iii) shall be in a form satisfactory to Bank, and (iv) shall be certified by the Chief Financial Officer of Borrower.

(b)    Co-Borrowers' Annual Statements.   Each Co-Borrower shall furnish to Bank on or before June 1 of each year annual financial statements of such Co-Borrower and of each entity (other than Borrower) in Co-Borrowers  have a controlling interest in form and in content acceptable to the Bank and certified by such Co-Borrower to be true, correct and complete, Such

financial statements shall contain, without limitation, a statement showing all contingent liabilities of each Co-Borrower and entity.

　　　(c)　　Other Financial Information. Borrower shall also deliver or cause to be delivered to Bank such other information related to the financial condition of Borrower or any Co-Borrower or the Mortgaged Property as Bank may require from time to time, in form and substance satisfactory to Bank.

**3.15　Tax Returns.** Borrower and Co-Borrowers shall furnish or cause to be furnished to Bank at or prior to execution and delivery of this Agreement, copies of Borrower's and Co-Borrowers' 2013 income tax returns, each of which shall be certified by the preparer as true, correct and complete copies of such returns actually filed, and shall furnish or cause to be furnished to Bank within ten (10) days after the applicable filing date or any extension thereof (provided that the Borrower or the applicable Co-Borrower shall have timely filed a request for extension for the filing of such return and a copy of such request was delivered to Bank within ten (10) days after the filing thereof), copies of Borrower's and each Co-Borrower's income tax returns for each calendar year of the loan term, all of which returns shall be certified by the preparer as true, correct and complete copies of such returns as actually filed.

**3.16　Books and Records.** Borrower shall keep complete and accurate books and records in accordance with generally accepted accounting principles consistently applied, Borrower shall furnish to the Bank all such written information relating to its affairs as may be requested by the Bank from time to time.

**3.17　Audit.** Bank shall have the right at any time and from time to time to audit the books and records of Borrower, the Co-Borrowers and Contractor. Borrower, the Co-Borrowers and the Contractor shall be obligated to make available for any such audit all books, records and other information that Bank may request for such purpose and to cooperate fully with Bank in connection therewith.

**3.18　Use of Proceeds.** Borrower shall use the Loan proceeds solely for the payment of costs itemized in Exhibit "B" for the specific site improvements, house construction costs and condominium construction costs detailed in Exhibit "C", as the same may be amended from time to time with the prior written consent of Bank or with the consent of the Bank, to pay off any mortgage or other lien which, if not paid off, could or would be a lien senior to the lien of the Bank's mortgage.

**3.19　Changed Circumstances.** Borrower shall promptly notify Bank of any change in any fact or circumstance represented or warranted by Borrower herein and in any other documents furnished to Bank in connection with this Agreement.

**3.20　Bank's Costs.** Borrower shall pay or reimburse Bank for all costs and expenses, including, without limitation, all costs incurred by Bank in engaging and maintaining the services of any consulting architect until completion of the Improvements and all attorneys' fees and costs and fees and costs of any accountant, consultants, engineers, surveyors or architects as hereafter provided, incurred by Bank in connection with the preparation, review, modification and

enforcement of the Loan Documents and the administration and collection of the Loan.

**3.21 Evidence of Payment of Premiums.** All premiums and other charges relating to all insurance required hereunder shall be paid by Borrower for such periods as Bank may require and evidence thereof shall be delivered to Bank promptly upon payment of such premiums and charges.

**3.22 Other Businesses.** Borrower shall not engage in any other business, venture or undertaking except for businesses, ventures or undertakings similar in nature to those in which Borrower is presently engaged.

**3.23 Guarantees.** Without the express prior written consent of Bank, neither Borrower nor Co-Borrowers shall assume, guarantee, endorse or otherwise become contingently liable upon, or responsible for, any obligations of others, except to endorse checks or drafts in the ordinary course of business.

**3.24 Escrow Deposits.** Borrower shall deposit with Bank, in an escrow account, all monies collected as security or escrow deposits unless prohibited by law.

**3.25 Sale or Issuance of Ownership Interests.** No shares in Borrower, nor AMCORP shall be issued, sold, transferred, assigned or encumbered without the prior written consent of Bank, which consent Bank reserves the right to withhold in its sole discretion.

**3.26 Distributions.** In the event that Borrower is other than an "S" corporation, no dividends or distributions shall be paid or declared by Borrower on account of any of its shares or ownership interests without Bank's prior consent.

**3.27 Declarations, Easements and Restrictions.** All declarations, easements and restrictions in any way affecting the Real Property or Improvements to be recorded in respect of the Real Property, shall be subject to prior written approval and consent of Bank. Borrower hereby agrees to provide Bank with copies of any proposed declarations, easements or restrictions at least twenty (20) days prior to the anticipated date of execution and filing of such declarations, easements or restrictions.

**3.28 Compliance with Laws and Agreements.** Borrower shall comply with all federal, state and local statutes, regulations and agreements applicable to the Real Property and/or the construction of the Improvements. Borrower shall comply with all contracts, leases, agreements and restrictions pertaining to the Real Property and/or the Improvements.

**3.29 Publicity Signs.** Subject to the applicable zoning ordinances, Bank may, at its option, publicize its participation in the financing of the Improvements by means and media determined by Bank in its sole discretion. If the Borrower or any other party connected with the project should erect a sign advertising the project, the name of the Bank, as the construction lender, shall be prominently displayed on the sign. In the absence of the sign advertising the development, the Bank may erect its own sign which will provide information as to the source of construction financing. Further, Borrower agrees to identify Bank as the party providing the financing for the construction of the Improvements in any publicity issued by Borrower regarding the Mortgaged

Property.

**3.30  Permanent Mortgages on Houses and the Condominium.**  Borrower will not make the sale of individual Houses and the Condominium contingent upon the Buyer obtaining financing from any particular source; however, should the Buyer ask the Borrower for a recommendation of a mortgage lender, Borrower shall inform the Buyer that Prudential Savings Bank is familiar with the project and is providing financing to home buyers who purchases homes in this particular project.

**3.31  Insurance.**  Borrower shall at all times maintain or cause to be maintained such insurance coverage as Bank may from time to time require.  Such insurance policies shall be in such amounts and shall be issued by companies satisfactory to Bank and shall contain the agreement of the insurer to give Bank not less than thirty (30) days written notice prior to cancellation or material change in coverage and confirmation that no cancellation or change in coverage made in the absence of such notice shall be effective as to Bank.  With respect to all casualty loss insurance for the Mortgaged Property, Bank shall be named as insured mortgagee with a standard mortgagee's endorsement and with respect to liability insurance, Bank shall be named as an additional insured, Borrower shall not take out any insurance with respect to the Mortgaged Property without having Bank named as insured mortgagee (or additional insured, as applicable).  The proceeds of any insurance shall be applied by Bank as provided in the Mortgage.

Borrower shall deliver to Bank the insurance policies (or, if permitted by Bank, certificates of insurance) evidencing such required insurance coverage and any renewals thereof at least thirty (30) days prior to expiration of any such policies together with evidence of the payment of the premium therefore.

**3.32  Environmental.**  To the best of Borrower's knowledge, the Real Property is not in violation of any Federal, State or local law, ordinance or regulations relating to industrial hygiene or to the environmental conditions on same, Hazardous materials shall include but shall not be limited to substances defined as "hazardous substances" in the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended; the Hazardous Materials Transportation Act of 1975; the Resource Conservation and Recovery Act of 1976; and those substances defined as "hazardous waste" or "hazardous substances" by the laws, ordinances or regulations adopted pursuant thereto of the state, county or any subdivision thereof where the mortgaged premises are situate, Borrower shall indemnify and hold the Bank harmless from and against any and all claims, losses, damages, liabilities and enforcement actions of any kind and all costs and expenses incurred in connection therewith, including, but not limited to, attorney's fees and expenses arising directly or indirectly out of any failure of Borrower to comply with the provisions of this paragraph.

## SECTION 4. CONDITIONS PRECEDENT

The obligations of Bank to make the initial advance of the proceeds of the Loan and to make each subsequent advance thereof is subject to the satisfaction of the following conditions precedent at the time of each such advance:

**4.1  Representations and Warranties**.  Each and all of the representations and warranties set forth in Section 2 hereof shall be true and correct in all respects, as though separately and independently made on and as of the date of each such advance.

**4.2  Covenants**.  Each and all of the covenants set forth in Section 3 hereof shall have been performed and complied with in all respects.

**4.3  No Default**.  There shall be no Event of Default in existence under any of the Loan Documents.

**4.4  Fees, Charges, Premiums**.  Borrower shall have paid for all premiums on insurance policies and bonds, all recording and conveyancing costs assessed against Borrower (including, without limitation, transfer taxes and title insurance premiums), all fees of Bank and the legal fees and disbursements of the Bank's counsel in connection with the Loans.

**4.5  Delivery of Loan Documents**.  The Loan Documents shall have been duly executed on behalf of Borrower and Co-Borrowers and titleholder) of real property subject to the Collateral Mortgage and delivered to Bank and, where applicable, shall have been recorded or filed in the appropriate public office.

**4.6  Delivery of Other Documents**.  The following documents shall have been delivered by or on behalf of Borrower to Bank:

(a)    Survey.  Two (2) copies of a current survey of the Real Property, certified to and acceptable to Bank and the Title Company bearing the stamp of a registered surveyor showing the distance to the nearest intersection and the location of all present and proposed improvements (including the Improvements), driveways, fences, utility lines, easements (recorded and unrecorded), rights-of-way, restrictions, encroachments (if any) building setback lines, parking, ingress, egress and driveways, together with a metes and bounds description of the Real Property corresponding to such survey and a surveyor's certificate acceptable to the Bank and the Title Company, which survey shall be paid for by Borrower.

(b)    Plans and Specifications.  Two (2) copies of a set of the final Plans and Specifications acceptable to Bank, marked "approved" by all appropriate governmental agencies and initialed by Borrower and any other party requested by Bank, which Plans and Specifications shall not be changed or amended without the prior written consent of Bank.

(c)    Project Cost Breakdown.  A copy of Borrower's final Schedule of Site Development Costs acceptable to Bank which shall be initialed by Borrower.  As a condition of advances for construction of a House or a Condominium, Borrower's final Schedule of House Costs and Condominium Costs  acceptable to Bank which shall be initialed by Borrower.  Such Schedule of Site Development Costs and Schedule of House Costs and Condominium Costs shall be subject to Bank's approval in all respects, and as to each subsequent advance, shall include budgetary information on a current basis in the same format.

(d)    Permits and Approvals.  Copies of all approvals, permits and/or authorizations of all

boards, agencies and departments, governmental or otherwise, having jurisdiction over the development, construction or use of the Improvements and Real Property, including, without limitation, zoning boards, environmental agencies, boards and departments and water and sewer authorities necessary for the construction of and the hookup to utilities; subdivision agreements, site plans, escrow agreements and bonds; approvals and/or contracts from or with all appropriate utility companies furnishing utilities to the development, construction or use of the Improvements and Real Property, including, without limitation, water, sanitary sewer, electric, gas and/or oil; such satisfactory evidence of the hookup and availability and adequacy of the aforesaid utilities as Bank shall require; and such satisfactory evidence that construction in accordance with the Plans and Specifications is authorized by such permits and approvals. All such permits and approvals shall be in full force and effect and the time for appeal from the granting thereof shall have run with no appeal having been taken therefrom

(e)    Title Insurance.  A marked-up title report of the Title Company, representing its commitment to issue in favor of Bank, but at the expense of Borrower, a standard ALTA form mortgage title insurance policy, insuring the lien of the Mortgage as a valid second lien on the Real Property and a valid perfected first security interest on the Improvements, including but not limited to all easements and appurtenances thereto, free and clear of all liens (including possible mechanics' and materialmen's liens, filed or unfiled, arising out of the construction of the Improvements) and encumbrances and subject only to such other objections and exceptions as Bank may approve in writing. Each and every advance made by Bank hereunder shall be fully covered at all times by such title insurance policy.

(f)    Property, Liability and Other Insurance. Evidence of such insurance as Bank may require, covering any loss, damage or defect to the Real Property and the Improvements or to persons or other property in, on or about the Real Property and the Improvements during the period of construction and thereafter, including, but not limited to:

(i)    A certificate to the effect that Borrower and AMCORP  have procured insurance policies covering workmen's compensation, contingent liability and public liability, protecting Borrower and the Bank against any liability for loss or damage to persons or property in any way occurring during the process of the construction of the Improvements or in any way arising therefrom, including, without limitation all Contractors, The workmen's compensation insurance shall cover Borrower's full statutory liability as employer without limit, and the contingent liability and public liability insurance shall be with a company and in amounts satisfactory to Bank, The aforesaid certificate shall contain the agreement of the insurer to give not less than thirty (30) days notice to Bank prior to cancellation of such policies or material change in the coverage thereof, and confirmation that no cancellation or change made in the absence of such notice shall be effective as to Bank.

(ii)    An original paid up policy of builder's risk insurance with extended coverage (with a standard mortgagee clause in favor of Bank), in an amount equal to the full insurable value of the real and personal property subject to the Mortgage and with a company satisfactory to Bank, and containing a provision allowing the insured to complete the work provided for hereunder and in the contracts for construction of the Improvements and covering the building materials on the Real Property during construction.

(iii)  An original policy of flood insurance to the extent required by any applicable federal, state or local law, including, without limitation, the Flood Disaster Protection Act of 1973 (P.L. 93-234), or in the alternative, a certification in form and content acceptable to Bank that the Real Property is not located in a flood hazard area identified by the United States Department of Housing and Urban Development.

(iv)  All policies, certificates and endorsements required in this Agreement shall be issued to: Prudential Savings Bank, 1834 W.  Oregon Avenue, Philadelphia, PA 19145-4725. Attention: Salvatore Fratanduono, Sr. Vice President/CLO, receipt of any policies or certificates of insurance shall not bar Bank from requiring other or additional insurance which the Bank reasonably requires due to changed circumstances.

(g)  Other Insurance.  Evidence, in form and substance acceptable to Bank, that all assets of Borrower and the General Contractor are adequately insured and Bank has been named as loss payee on all policies of insurance covering assets in which Bank has a security interest.

(h)  Construction Contracts and Costs.  An executed copy of the contract with the General Contractor providing for the construction of the Site  Improvements and the Houses and the Condominium  in a good and workmanlike manner and in strict accordance with the Plans and Specifications, This contract must be satisfactory in form and substance to Bank, and Bank's approval thereof is specifically conditioned upon the total contract price therein not exceeding the fair and reasonable cost of the work to be performed thereunder. This contract shall be collaterally assigned to Bank by a document in form and substance satisfactory to Bank, and the Contractor and all subcontractors shall consent in writing to such assignment.

Borrower shall cause the General Contractor to supply a list of all subcontractors it has engaged or intends to engage in connection with the construction of the Improvements, and the Houses and the Condominium, together with fully executed copies of the agreements with such subcontractors.

(i)  Certification.  A written certification of Borrower in form and substance satisfactory to Bank (and if requested by Bank, written acknowledgments of each Contractor and/or Material supplier specified by the Bank), stating that: (i) in the event of a default under any of the Loan Documents Bank is authorized to use the Plans and Specifications without cost to it; and (ii) each Subcontractor and/or supplier shall upon the occurrence of an event of default continue to perform under its contract on behalf of Bank or its designee without any cost increase over the sum set forth in such contract in the event Bank or such designee takes possession of the Real Property or takes over construction of the Improvements and/or Houses and the Condominium as a result of a foreclosure, acceptance of a deed in lieu of foreclosure, or otherwise.

(j)  Product Manufacturer Warranties.  Copy of all product, manufacturer and other warranties, guarantees and service agreements acquired by Borrower in connection with the construction of the Improvements and the Houses and the Condominium, together with all manuals, instructions and related documents regarding the ownership, use or operation of the same.  Borrower's right, title and interest in and to any and all of such warranties, guarantees and agreements, whether express or implied, shall be collaterally assigned to Bank by document in form

and substance satisfactory to Bank.

(k)    Releases and Waivers of Liens. **[INTENTIONALLY OMITTED]**

(1)    Opinion of Counsel. **[INTENTIONALLY OMITTED]**

(m)    Financial Statements. True and correct copies of Borrower's and each Co-Borrower's current and annual financial statements as prepared in accordance with generally accepted accounting principles consistently applied, in a form and content satisfactory to Bank, and true and correct copies of Borrower's and each Co-Borrower's most recent tax returns, as filed.

(n)    Formation Documents.  A certified copy of Borrower's Certificate of Limited Partnership and Partnership Agreement,  as well as resolutions authorizing the borrowing.

(o)    Good Standing Certificates.  If required by the Bank, a certificate issued by the Department of State of the Commonwealth of Pennsylvania certifying that Borrower exists and is in good standing under the laws of such jurisdiction.

(p) Borrower shall have deposited Seven Hundred Fifty Thousand ($750,000.00) Dollars into an account with the Bank, withdrawals from which shall be to and used to make monthly payments on the Authority's first mortgage and such other uses to which the Bank, in its sole discretion, shall agree.

**4.7  Fees, Charges and Premiums.** Borrower shall have paid for: (i) all premiums on insurance policies; (ii) all recording and conveyancing costs assessed against Borrower (including, without limitation, transfer taxes and title insurance premiums); (iii) Bank's fees; and (iv) all expenses incurred by Bank in connection with making the Loan, including without limitation, counsel fees and disbursements, appraisal and inspection expenses.

**4.8  No Material Adverse Change.**  There shall be no material adverse change in the financial or operating condition of Borrower or any Co-Borrower or any material adverse change in the value of the Real Property or any other collateral securing the Loan, other than increased liability for sums advanced hereunder or in the costs of construction.

## SECTION 5. DISBURSEMENTS: ADVANCES OF THE LOAN

**5.1 Deposits and Disbursements of Required Equity Contribution** If at any time or from time to time during the term of the Loan it is determined by Bank in its sole discretion that the total cost to complete the Site  Improvements and construct the Houses and the Condominium, including, without limitation, all amounts due and payable to third parties and those amounts due for interest reserves, management, labor and administrative costs and architect, engineering and legal fees, exceeds the proceeds of the Loan yet to be disbursed by Bank, then Borrower shall immediately deposit with Bank an amount equal to such difference and such amount shall be disbursed prior to any further advances of the Loan.  Borrower shall notify Bank in writing immediately upon determining any increase in the construction costs, which notice shall be

accompanied by an amount equal to such increase in the construction costs.

**5.2. Submission of Applications; Additional Representations.** Prior to the disbursement of any funds under the Loan for the construction of a House or a Condominium, and in addition to all other requirements herein, Borrower shall deliver to Bank; (i) copies of all required building permits for the construction of each such House or Condominium, (ii) copies of the Plans and Specifications for each, and (iii) the line item breakdown for each. All disbursements of advances of the Loan shall be made by Bank in accordance with a schedule of payments fixed by the Bank, a copy of which is attached hereto as Exhibits "B" and "C". Such disbursements and advances shall be made as the construction progresses upon written applications for payment in form and content satisfactory to Bank ("Applications") by Borrower. Applications shall be submitted only for work completed and materials, free of any lien, encumbrance or security interest, physically, incorporated into the construction of the Improvements, and Borrower shall not submit applications for materials that are not incorporated into the work even if such materials are stored on the Real Property or for deposits on any items not incorporated into completed work. Each Application (other than an Application for a final draw with respect to any House or Condominium, as thus submitted, shall be accompanied by Borrower's Certificate attached hereto as Exhibit "E" and shall:

(a)     automatically constitute a representation and certification by Borrower that; (i) the work done and materials supplied to date are in strict accordance with the Plans and Specifications; (ii) the work and materials for which payment is requested have been physically incorporated into the construction of the Improvements or suitably stored on the Real Property with Bank's prior approval; (iii) the value is as stated; (iv) with respect to each category of work for which payment is being sought, the amount of such payment together with all prior payments for such category represents a percentage of the total payments to be made for such category as shown on the Schedule of Costs, which is no greater than the percentage of total work for such category which has been performed as of the date of the Application; (v) all work has been done in a good and workmanlike manner and the work and materials conform with all applicable laws, ordinances, rules, regulations, restrictions and building codes of the governmental authorities having jurisdiction of the Real Property and/or Improvements; (vi) all necessary certificates licenses and permits required to be obtained from any board, agency or department, governmental or otherwise, for the work to date have been obtained; (vii) the undisbursed balance of the Loans is sufficient to complete construction of the in accordance with the Plans and Specifications; and (viii) the work is proceeding satisfactorily and on schedule; and,

(b)     automatically constitute a further representation and certification by Borrower that; (i) payment for the work and materials described in such Application has been made or will be made with the proceeds of the disbursements or advances for which the Application was submitted; (ii) no event has occurred which is or with the passage of time or giving of notice or both would become an Event of Default under any of the Loan Documents; (iii) each and all of the representations and warranties set forth in this Agreement continue to be true; and (iv) all prior bills applicable to the Improvements have been paid in full. Bank reserves the right to approve the form and content of each Application and to verify the representations therein by an inspection of the Real Property and Improvements.

(c)     Environmental Audit. A Phase I environmental audit by an environmental engineer

satisfactory to Bank showing that the Real Property is not in violation of any federal, state or local environmental law or regulation and that the said property is otherwise not contaminated by hazardous substances and, if requested by Bank, satisfactory review of such environmental audit and circumstances by am engineer or other environmental specialist retained by Bank, the cost of which shall be borne by Borrower and any other tests, and inquiries deemed necessary or appropriate by Bank, such that Bank shall, in its sole and absolute judgment, have conducted all inquiry which it deems appropriate in order to successfully assert an innocent landowner defense under The Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and any and all similar state and local statutes, laws, rules and regulations.

**5.3  Procedure for Making Disbursements and Advances; Holdback.**  To the extent required by any contract between Borrower and any other party, such Applications will be subject to holdbacks in the amounts as set forth in such agreement.  On or about three (3) business days after receipt of an Application, Bank will disburse or advance the amount requested; provided that after inspection and review Bank has verified those representations and certifications required to be set forth in the Application pursuant to Subsection 5.2 hereof, provided, further, that all other conditions precedent to such disbursements and advances set forth in this Agreement have been satisfied.  Provided that no Event of Default exists, Lender shall advance the remaining holdback amount, if any, of all sums requested on the Completion Date and upon: (a) Borrower's certification of completion of all Improvements and construction of the Improvements in accordance with the Plans and Specifications; (b) a satisfactory "as built" survey; (c.) the issuance of all final governmental and utility company approvals; (d) receipt of all releases of liens executed by all mechanics and materialmen who have provided materials and/or services in connection with the Improvements; (e) the acceptance of the construction as completed by Borrower, Bank and any such municipal authority; and (f) the acceptance by the Borough of Bristol of all Site Improvements required to be completed on the Real Property.

**5.4  Limitation on Advances.**  In no event shall Bank have an obligation to make any advances on the Loan; (i) after the Completion date; (ii) if the unadvanced balance of the Loan would be insufficient to complete construction of the Improvements in accordance with the Plans and Specifications, unless Borrower has deposited with Bank such additional funds as are required to complete the same; (iii) if there exists and Event of Default under any of the Loan Documents or an event or state of affairs which with the passage of time or the giving of notice or both could constitute an Event of Default hereunder or thereunder; or (iv) if Borrower fails to satisfy all of the conditions described in Section 4 hereof.  Any undisbursed proceeds of the Loan remaining after Due Date shall cease to be available for the payment of any Improvements or otherwise.

**5.5  Payor: Payees.**  All disbursements and advances shall be made by check jointly payable to Borrower and the General Contractor or other appropriate credit transfer: (i) and shall be disbursed to Borrower in the case of that portion of the proceeds of the Loan representing reimbursement of costs previously incurred by Borrower; (ii) in the sole discretion of Bank, to the order of any subcontractor, materialmen or any other person entitled thereto in the amount due them on account of work performed and/or materials furnished in connection with the construction of the Improvements and the Houses and the Condominium; (iii) to governmental bodies pursuant to agreements securing obligations of Borrower with such entities; or (iv) to Bank in respect of the proceeds of the Loan representing the Interest Reserve (as hereinafter defined) or fees.  All

payments to persons other than Borrower shall be deemed made for the use and benefit of Borrower with the same force and effect as if disbursed or advanced directly to Borrower. It is understood that this provision shall not create any priority of contract or trustee, beneficiary or guarantor relationship of any kind between said parties and Bank. Advances will be made no more frequently than bi-weekly.

**5.6   Set Asides; Escrows.** Borrower hereby agrees that any set aside and/or escrow required to be established by Borrower under any agreements with governmental authorities for the completion of site improvements, shall reduce availability of funds under the Loan by an aggregate amount equal to the face amount of each such set aside.   In addition, Bank shall have no obligation to advance such sums unless and until Bank shall have received written authorization from the applicable governmental authority confirming completion of the site improvements or the applicable portion thereof in accordance with the Plans and Specifications.   Any sums actually required to be set aside or held in escrow by Bank and any advances under any set aside or escrow agreement shall constitute advances under the Note and shall bear interest at the applicable rates thereunder.

**5.7   Interest Reserve.**

(a)   The portion of the Loan proceeds allocated and reserved for the payment of interest installments and referred to as the "Interest Reserve" shall be withheld from disbursement at closing and may be disbursed from time to time by Bank for the account of Borrower for the payment of the interest due on the Loan automatically as the same shall become due and payable, without authorization from Borrower, Disbursement of such interest reserve shall be subject to the provisions of Section 1.1 hereof. No interest shall accrue upon any portion of the Interest Reserve until Bank actually disburses such portion thereof which shall represent the then due and payable monthly interest installment on the Loan, whereupon the sum so disbursed shall be added to the outstanding principal balance of the Loan and shall bear interest as provided for in the Note. Bank, in its sole discretion, may elect to apply Interest Reserve in reduction of the loan balance.

(b)   Upon the occurrence of an Event of Default under any of the Loan Documents, Bank shall have the right but not the obligation to continue to disburse such monthly interest installments from the Interest Reserve notwithstanding any limitation or condition on the availability of proceeds of the Interest Reserve.

(c)   In the event: (i) the Interest Reserve is depleted; (ii) Bank in its sole determination deems that the remaining Interest Reserve is insufficient to pay in full the then due and payable monthly installments or any portion thereof; or (iii) an Event of Default under the Loan Documents occurs and Bank determines not  to make any further advances under the Loan, including the Interest Reserve, then Bank may elect, at its option, to no longer be required to make disbursements from the Interest Reserve, and thereafter, upon five (5) business days written notice from Bank, Borrower shall commence to pay monthly interest installments on the then outstanding principal balance of the Loan directly to Bank.

(d)   Establishment of an Interest Reserve shall in no way relieve the Borrower of its obligations to pay interest as set forth in the Note.

**5.8 Variance of Procedure.** In the event that Borrower requests and Bank agrees, or Bank elects to vary the procedures set forth above, all such advances shall be deemed to have been made pursuant to an obligation under this Agreement.

**5.9 Maximum Rate of Interest on Loan.** Notwithstanding anything to the contrary contained herein or in any other document executed in connection with the Loan, the effective rate of interest on the Loan shall not exceed the maximum effective rate of interest permitted by applicable law or regulation, Borrower hereby agrees to give Bank prior written notice in the event any interest payment made to Bank with respect to the Loan will cause the total interest payments collected in any one year to be usurious under applicable law, and Bank hereby agrees not to collect knowingly any interest from Borrower in the form of fees or otherwise which will render this Loan usurious. In the event that such interest would be usurious in Bank's opinion, Bank reserves the right to reduce the interest payable by Borrower, This provision shall survive closing hereunder and the repayment of the Loan.

## SECTION 6. INSPECTION

**6.1 Inspection Facilities.** Borrower agrees to cooperate with Bank and its authorized representatives to provide adequate facilities at all times for inspection of the construction work by Bank and other authorized representatives of Bank, and agrees that full and free access to the Real Property and the Improvements and to Borrower's books and records shall be afforded to such authorized persons as may be designated, from time to time, by Bank. Borrower shall pay Three Hundred Fifty ($350.00) Dollars for each inspection of the construction of the Site Improvements and/or Houses and the Condominium.

**6.2 Construction Superintendent or Inspector.** Bank may at any time place upon the Real Property a superintendent, inspector, architect or engineer ("Consulting Architect") who shall inspect the content of the Improvements and shall require that the Improvements be constructed substantially in accordance with the Plans and Specifications. If such superintendent or inspector is placed upon the job at any time, such Consulting Architect shall be paid a reasonable amount specified by Bank which shall be deemed to be advanced under the Loan for the benefit of Borrower. Borrower agrees to reimburse Bank immediately upon demand for such sums and repayment thereof by Borrower shall be secured by the Loan Documents.

**6.3 No Representation or Warranty by Bank.** Although Bank and its agents may inspect the Plans and Specifications, the Schedule of Site Improvement Costs, the Schedule of House Costs, and Condominium Costs, the course of construction and other matters pertaining to the construction of the Improvements, such inspections are solely for the protection of Bank, as lender, and Borrower hereby confirms that Bank is not making and will not be deemed to make any representations or warranties as to any matters pertaining to the Improvements by reason of such inspections.

## SECTION 7. LIMITATION OF BANK'S LIABILITY

**7.1 Bank's Liability to Borrower.** Borrower has selected the General Contractor, the subcontractors and all other furnishing services or materials to or for the construction of the

Improvements and/or Houses and the Condominium and Bank has not had and shall not have any responsibility whatsoever for its selection or for the quality of their materials or workmanship, it being understood and agreed that Bank's sole function is that of lender and the only consideration passing from Bank to Borrower is the proceeds of the Loan in accordance with and subject to the terms of this Agreement. Neither Borrower, any Co-Borrower nor any other person shall have any right to rely on any procedures required by Bank herein, such procedures being solely for the protection of Bank as lender.

**7.2  Bank's Liability to Third Parties.**  The rights and benefits of this Agreement shall not inure to the benefit of any third party.  Notwithstanding anything to the contrary contained in this Agreement or in any of the other Loan Documents, or any conduct or course of conduct by Borrower or Bank or their respective affiliates, agents or employees, neither this Agreement nor any of the Loan Documents shall be construed as creating any rights, claims or causes of action against Bank in favor of the Contractors or any other persons furnishing services or materials to or for the construction of the Improvements, or their respective creditors or any other person or entity other than Borrower, Without limiting the generality of  the foregoing, disbursements or advances made directly to the General Contractor or any other contractor, subcontractor, laborer, materialman or any third parties pursuant to this Agreement shall not be deemed a recognition by Bank of a third party beneficiary status for any such person or entity.

## SECTION 8. INDEMNITY

Borrower, for itself, and all those claiming under or through it, agrees to protect, indemnify, defend and hold harmless Bank, its directors, officers, employees and attorneys, agents and representatives from and against any and all liability, expense, or damage of any kind or nature and from any suits, claims or demands, including legal fees and expenses, arising out of this Agreement or the Loan Documents or in connection therewith including, without limitation, claims in any way related to hazardous wastes on the Real Property or environmental contamination of the Real Property, claims for brokerage and finder's fees in connection with the Loans, disputes among Borrower and the Contractors or any subcontractor, materialman or supplier, or between Borrower, the Contractors or any subcontractor and any municipal or public authority, or on account of any act or omission to act or negligence of Bank, except for claims arising under this Agreement (or the Loan Documents resulting directly from Bank's gross negligence or willful misconduct, This obligation specifically shall survive the completion of construction of the Improvements and the repayment of the Loan.

## SECTION 9. DEFAULTS

**9.1  Events of Default.**  The occurrence of any one or more of the following events all, at the sole option of Bank, constitute an event of default hereunder:

(a)  Borrower shall fail to pay within fifteen (15) days after the date when due any payment of interest or principal or any other sums as provided hereunder, or under any or all of the Loan Documents.

(b)  Borrower shall fail to observe and perform any of the covenants or

agreements on its part to be observed and performed under this Agreement, any or all of the Loan Documents, and such failure shall continue beyond thirty (30) days following written notice from Bank to Borrower of such failure.

(c)   Any representation or warranty of Borrower in this Agreement, in any of the other Loan Documents or otherwise made to Bank proves to be false or misleading in any material respect.

(d)   Any uncured Event of Default shall occur under any of the other Loan Documents.

(e)   Borrower, or any Co-Borrower, as the case may be, shall apply for or consent to the appointment of a receiver, trustee, or liquidator of itself or themselves or any of its or their property, admit in writing its or their inability to pay its or their debts as they mature, make a general assignment for the benefit of creditors, be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt dissolution or liquidation, law or statute, or an answer admitting the material allegations of a petition filed against them in any proceeding under any such law, or if action shall be taken by Borrower or any Co-Borrower for the purpose of effecting any of the foregoing.

(f)   Any order, judgment or decree shall be entered by any court of competent jurisdiction, approving a petition filed by any third party seeking reorganization of Borrower, any Co-Borrower of all or a substantial part of the assets of Borrower or any Co-Borrower, or appointing a receiver, sequestrator, trustee or liquidator of Borrower, any Co-Borrower or any of its or their property, and such order, judgment or decrees shall continue unstayed and in effect for any period of forty five (45) days.

(g)   Any of the Contractors, subcontractors or materialmen shall default under their contracts, which default Bank in its reasonable discretion deems to be substantial, and Borrower, upon ten (10) days notice from Bank, shall fail to exercise any resulting right or remedy to which it is entitled thereunder or replace such person or contractor on similar terms.

(h)   The Improvements or any material portion thereof shall be materially injured or destroyed by fire or other casualty, which injury or destruction is not fully covered by insurance.

(i)   Borrower fails to commence compliance with any requirements of governmental or quasi-governmental authorities having jurisdiction over the Real Property or Improvements within ten (10) days after notice of such requirement has been given to Borrower.

(j)   Any permit, license or approval necessary for the construction of the Improvements shall be revoked or modified or shall expire.

(k)  If construction of the Improvements is not commenced as required under Section 3.1, or is delayed or suspended for a period in excess of ten (10) days, subject to force majeure or is not prosecuted diligently after commencement thereof with such force of workers and materials as shall be satisfactory to Bank at any time during the progress of construction, or if construction of the Improvements is not completed as herein provided.

(l)  If any assets of Borrower or the Improvements on the Real Property are subject to attachment, execution or other judicial seizure or enforcement, the enforcement of which has not been stayed by appropriate legal process.

(m)  If any person obtains an order or decree in any court of competent jurisdiction enjoining the construction of the Improvements, or enjoining or prohibiting Borrower or Bank from performing this Agreement.

(n)  If an Event of Default occurs under any other agreement between Borrower and Bank or any Co-Borrower and Bank.

(o)  If there shall occur any material adverse change in the financial condition of Borrower (other than liability for advances under this Agreement) or any Co-Borrower or any material adverse change in the value of the Real Property, the Improvements or any other collateral securing the Loan.

(p)  If a judgment shall be entered against Borrower, or any Co-Borrower in any way materially adversely affecting Borrower's or such Co-Borrower's ability to perform its or their respective obligations owed to Bank.

(q)  The dissolution or liquidation of Borrower, or the liquidation or death of any Co-Borrower.

(r) The Real Property and/or the proposed construction or use of the Improvements shall fail to comply with any applicable zoning law or requirement.

(s)  Except as expressly permitted by Bank, Borrower or Co-Borrowers shall voluntarily, involuntarily or by, operation of law, sell, assign, transfer, convey, pledge, mortgage or encumber any or all of the Mortgaged Property or other collateral for the Loan or any interest therein, without the prior written consent of Bank.

(t)  Failure of Borrower to perform any of its obligations or covenants under any agreement or undertaking with Bristol Borough or with the request of the first mortgage to the Redevelopment Authority of Bucks County.

**9.2  Acceleration and Remedies.**  Upon the occurrence of any Event of Default hereunder, in addition to any other rights or remedies available to it hereunder or under any other Loan Document or at law or in equity, Bank may exercise any or all of the following rights and remedies as it may deem necessary or appropriate:

(a)     Terminate the Loan.

(b)     Declare the outstanding principal balance of the Loan, together with all accrued and unpaid interest thereon and all other sums due hereunder or under any of the other Loan Documents, to be immediately due and payable in full.

(c)     Cease making any further disbursements or advances hereunder.

(d)     Enter upon the Real Property and construct, equip and complete the Improvements in accordance with the Plans and Specifications with such changes as Bank may from time to time in its sole discretion deem appropriate, all at the risk, cost and expense of Borrower, Bank shall have the right at any and all times to discontinue any work commenced by it in respect to the Improvements or to change any course of action undertaken by it and shall not be bound by any limitations or requirements of time whether set forth herein or otherwise.  Bank shall have the right to assume any contract made by Borrower in any way relating to the Improvements and to take over and use all or any part of the labor, materials, supplies, other personal property and equipment contracted for by Borrower, whether or not previously contracted for by Borrower, and whether or not previously incorporated into the Improvements, all in the sole discretion of Bank. In connection with any construction of the Improvements undertaken by Bank pursuant to the provisions of this section, Bank may: (i) engage builders, contractors, architects, engineers and others for the purpose of furnishing labor, materials and equipment in connection with any construction or equipping of the Improvements; (ii) pay, settle or compromise all bills or claims which may become liens against the Real Property and/or the Improvements, or which have been or may be incurred in any manner in connection with the construction, completion and equipping of the Improvements or for the discharge of liens, encumbrances or defects in the title of Real Property or the Improvements; and (iii) take such action or refrain from acting under this Agreement as Bank in its sole discretion may determine from time to time without any limitation whatsoever, Borrower shall be liable to Bank for all sums paid or incurred for the construction, completion and equipping of the Improvements, whether paid or incurred pursuant to the provisions of this section or otherwise, and all payments made or liabilities incurred by Bank under this Agreement of any kind whatsoever shall be paid by Borrower to Bank upon demand with interest to the date of payment to Bank at the rate to be applied under the Notes after an event of default. All of the foregoing, including interest, shall be deemed and shall constitute advances under this Agreement and shall be evidenced and secured by the Loan Documents. For the purpose of carrying out the provisions and exercising the rights, powers and privileges granted by this section, Borrower hereby irrevocably constitutes and appoints Bank its true and lawful attorney-in-fact to execute, acknowledge and deliver any instruments and do and perform any acts such as are referred to in this section in the name and on behalf of Borrower.   Anything herein to the contrary notwithstanding, it is specifically understood and agreed that all funds furnished by Bank and employed in performance of the obligations of Borrower under this Agreement shall be deemed advanced by Bank under an obligation to do so, regardless of the identity of the person or persons to whom such funds are furnished.  Funds advanced by Bank in the reasonable exercise of its judgment that the same are needed to complete the Improvements or to protect its security are to be deemed obligatory advances hereunder and are to be added to the total indebtedness secured by the Loan Documents and said indebtedness shall be increased accordingly.

(e)    Set off all property of Borrower now or hereafter at any time in its possession in any capacity whatsoever including, but not limited to, any balance or share of any deposit, trust or agency account, as to all of which property Borrower hereby grants Bank a lien and security interest.

(f)    Effect new leases or agreements of sale, cancel or surrender existing leases or agreements of sale and take any and all other actions described in Section 3.10 hereof.

**9.3    Remedies Cumulative, Etc.**

(a)    No right or remedy conferred upon or reserved to Bank under any of the Loan Documents, or with respect to any guaranty of payment of the Loan or of performance of any of Borrower's obligations under any of the Loan Documents or any collateral securing the payment of the Loan under any of the Loan Documents ("Collateral"), or now or hereafter existing at law or in equity or by statute or any other such legislative enactment, is intended to be or shall be deemed exclusive of any other such right or remedy, and each and every such right or remedy shall be cumulative and concurrent, and shall be in addition to every other such right or remedy, and may be pursued singly, concurrently, successively or otherwise, at the sole discretion of Bank, and shall not be exhausted by any one exercise thereof but may be exercised as often as occasion therefore shall occur.  No act of Bank shall be deemed or construed as an election to proceed under any one such right or remedy to the exclusion of any other such right or remedy; furthermore, each such right or remedy of Bank shall be separate, distinct and cumulative and none shall be given effect to the exclusion of any other, The failure to exercise or any delay in exercising any such right or remedy, or the failure to insist upon strict performance of any term of any of the Loan Document, shall not be construed as a waiver or release of the same, or of any event of default thereunder, or of any obligation or liability of Borrower thereunder, Nothing herein however, shall be construed to prevent Bank from waiving any condition, obligation or default it should so elect.  In the event of such election by Bank, any waiver, in order to be effective, must be in writing and signed by Bank, and any such waiver shall be strictly limited in its effect to the condition, obligation or default specified therein and shall not extend to any subsequent condition, obligation or default or impair any right of Bank with respect thereto.

(b)    The recovery of any judgment by Bank and/or the levy of execution under any judgment shall not affect in any manner or to any extent liens or other security interests in any Collateral, or any rights, remedies, or powers of Bank under any of the Loan Documents or with respect to any guaranty or any Collateral, but such liens and security interests, and such rights, remedies and powers of the Bank shall continue unimpaired as before.  Further, the entry of any judgment by Bank shall not affect in any way the interest rate payable under any of the Loan Documents on any amounts due to Bank, but interest shall continue to accrue on such amounts at the Default Rate specified in the Note.

(c)    Borrower hereby waives presentment, demand, notice of nonpayment, protest, notice of protest, or other notice of dishonor, and any and all other notices in connection with any default in the payment of, or any enforcement of the payment of, the Loan.  Borrower further waives and releases all procedural errors, defects and imperfections in any proceedings instituted by Bank under the terms of any of the Loan Documents or with respect to any guaranty or any collateral.

(d) Borrower agrees that Bank may release, compromise, forbear with respect to, waive, suspend, extend or renew any of the terms of the Loan Documents or any guaranty (and Borrower hereby waives any notice of any of the foregoing), and that the Loan Documents or any guaranty may be amended, supplemented or modified by Bank and the other signatory parties and that Bank may resort to any guaranty and any collateral in such order and manner as it may think fit, or accept the assignment, substitution, exchange or pledge of any other collateral or guaranty in place of, or release of such consideration, or none, as it may require, all or any portion of any collateral or any guaranty, without in any way affecting the validity of any liens over or other security interest in the remainder of any such collateral (or the priority thereof or the position of any subordinate holder of any lien or other security interest with respect thereof), or any rights which it may have with respect thereof, or any rights which it may have with respect to any other guaranty; and any action taken by Bank pursuant to the foregoing shall in no way be construed as a waiver or release of any right or remedy of Bank, or of any event of default, or any liability or obligation of Borrower under any of the Loan Documents.

**9.4  Cost and Expenses.**    Borrower shall pay upon demand all costs and expenses (including all amounts paid to attorneys, accountants, real estate brokers and other advisors employed by Bank and/or to any contractors for labor and materials), incurred by Bank in the exercise of any of its rights, remedies, or powers under any of the Loan Documents or with respect to any guaranty or any Collateral, or to preserve or protect the Collateral and any amount thereof not paid promptly following demand therefor with interest thereon at the rate specified in the Note from the date of such demand, shall become part of the Loan and shall be secured by the Loan Documents and all other Collateral, In connection with and as part of the foregoing, in the event that any of the Loan Documents is placed in the hands of an attorney for the collection of any sum payable thereunder, Borrower agrees to pay all reasonable attorneys' fees for the collection of the amount being claimed under such Loan Document, as well as all costs, disbursements and allowances provided by law, the payment of which sums shall be secured by the Loan Documents and all other Collateral.  Borrower shall pay all marketing and selling costs and commissions and taxes related to sales of Houses and the Condominium.

**9.5  Jurisdiction; Venue.**  Borrower agrees that any action or proceeding against it to enforce the Loan may only be commenced in state or federal court in any county in the Commonwealth of Pennsylvania, and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and shall confer personal jurisdiction if served by registered or certified mail in accordance with the notice provisions set forth herein.

**9.6  Waiver of Subrogation.**  Borrower and each Co-Borrower hereby waive any right to subrogation, reimbursement, contribution or indemnity from Borrower or any other Co-Borrower in connection with any of the Borrower's obligations hereunder.

## SECTION 10. MISCELLANEOUS

**10.1  Time of the Essence.** All dates and times for the performance of Borrower's and Guarantor's obligations set forth herein and in the Loan Documents shall be deemed to be of the essence of this Agreement.

**10.2  Broker's and Finder's Fees.** Borrower represents and warrants that it has not dealt with or through any broker or other intermediary in connection with the Loan and agrees to indemnify, defend and hold Bank harmless from and against any loss, liability or damage (including attorneys' fees and expenses) arising from any claim for a broker's fee or finder's fee in connection with the Loan, Borrower further agrees to pay all costs and fees of the brokers and shall deliver to Bank prior to Closing proof of such payments in form acceptable to Bank.

**10.3  Successors and Assigns.**  This Agreement inures to the benefit of and binds the parties hereto and their respective successors and assigns, and the words "Borrower" and "Bank" whenever occurring herein shall be deemed to include such respective successors and assigns. However, Borrower shall not voluntarily, or by operation of law, assign or transfer any interest which it may have under this Agreement, in the proceeds of the Loan or convey the Real Property or the Improvements, or any part thereof, without the prior written approval of Bank.  Bank may assign or otherwise transfer the Loan and any or all of the Loan Documents to any other person, or seek and obtain participants) satisfactory to Bank for portions of the Loan.  In connection therewith, Bank shall have the right to deliver to any such assignee, transferee or participant any and all information regarding Borrower or the Loan Documents.  Such assignee, transferee or participant shall thereupon become vested with all of the benefits in respect thereof granted to Bank herein or otherwise.

**10.4  Notices.**  All notices, requests and demands to or upon the parties hereto shall be in writing and shall be deemed to have been duly given or made if delivered in person, immediately upon delivery; if by facsimile transmission, immediately upon sending and upon confirmation of all transmission; if by nationally recognized overnight courier service with instructions to deliver the next business day, one (1) business day after sending; and if by registered or certified mail, return receipt requested, five (5) days after mailing.  All notices, requests and demands upon the parties are to be given to the following addresses (or to such other  address as any Party may designate by notice in accordance with this Section):

**Borrower:**
> Island View Crossing II, L.P.
> One South State Street
> Newtown, PA 18940
> Attention: Renato J. Gualtieri


**Bank:**
> Prudential Savings Bank
> 1834 W. Oregon Avenue
> Philadelphia, PA 19145-4725
> ATTENTION:  Salvatore Fratanduono, Sr.  VP/CLO

**with copy to:**

> Jerome R. Balka, Esquire
> Two Penn Center, Suite 520

1500 John F. Kennedy Blvd.
Philadelphia, PA 19102-1756

**10.5  Definitions: Numbers and Gender.**  In the event Borrower consists of more than one person or entity, the obligations and liabilities hereunder of each of such persons and entities shall be joint and several, and the word "Borrower" shall mean all or some or any of them.  For purposes of this Agreement, the use of any gender shall be deemed to include all genders, The singular member shall include the plural, or the plural the singular, as the context may require.

**10.6  Conflicts Between Instruments.**  In the event of any conflict between the provisions of this Agreement and the provisions of any of the other Loan Documents, the provisions of this Agreement shall prevail.  This Agreement shall supersede the Commitment Letter.

**10.7  Captions.**  The captions or headings of the paragraphs of this Agreement are for convenience only and shall not control or affect the meaning or construction of any of the terms or provisions of this Agreement.

**10.8  Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

**10.9  Survival**.  The terms and conditions of this Agreement and all representations and warranties made by or on behalf of Borrower herein or in the Loan Documents shall survive completion of construction and repayment of the Loan.

**10.10  Modification, Waiver, Consent.**  Any modification or waiver of any provision of this Agreement, or any consent to any departure by Borrower therefrom, shall not be effective in any event unless the same is in writing and signed by Bank, in which event such modification, waiver or consent shall be effective only in the specific instance and for the specific purpose given.  Any notice to or demand on Borrower not specifically required of Bank hereunder shall not entitle Borrower to any other of further notice or demand in the same, similar or other circumstances unless specifically required hereunder.

**10.11  Severability.**  If any provision of this Agreement is prohibited by, or is unlawful or unenforceable under, any applicable law of any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof; provided, however, that any such prohibition in any jurisdiction shall not invalidate such provision in any other jurisdiction; and provided, further, that where the provision of any such applicable law may be waived, is hereby waived by Borrower to the full extent permitted by law to the end this Agreement shall be deemed to be a, valid and binding agreement in accordance with its terms.

**10.12  Counterparts.**  This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute only one agreement, It shall not be necessary, when making proof of this Agreement, to produce or account for more than one counterpart.

**IN WITNESS WHEREOF**, Borrower and Bank have executed this Agreements, under seal, on the date first set forth.

**ISLAND VIEW CROSSING II, L.P.**                    **PRUDENTIAL SAVINGS BANK**
**A PA Limited Partnership**
**By: ISLAND VIEW PROPERTIES, INC.**
    **Its General Partner**

by: _____                    by: _____
    Renato J.  Gualtieri, President                    Salvatore Fratanduono
                                  Senior VP/CLO

**The undersigned Co-Borrowers hereby consent to and agree to be bound by the terms, conditions and covenants applicable to the undersigned as set forth in the foregoing Development Construction Loan Agreement.**

**ISLAND VIEW PROPERTIES, INC.**
**A PA Corporation**

by: _____                    _____
    Renato J.  Gualtieri, President                    Renato J.  Gualtieri, Individually

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

**ALL THAT CERTAIN** lot or piece of land, situate in Bristol Borough, Bucks County, Pennsylvania described according to Plan of Subdivision dated March 29, 2000, revised May 1, 2000 and recorded in Plan Book 300 Page 96, as follows, to wit:

**BEGINNING** at a point on the Southeasterly side of Radcliffe Street (SR 2002), a corner of Lot No. 2 on said Plan; thence extending from said point of beginning along said Lot No. 2, South 54 degrees 04 minutes 10 seconds East 694.13 feet to a point in line of the Delaware River; thence extending along the same, the two following courses and distances: (1) South 21 degrees 17 minutes 52 seconds West 271.88 feet; and (2) South 33 degrees 23 minutes 27 seconds West 718.45 feet to a point, a corner of lands now or late of Bucks County Redevelopment Authority; thence extending along the same the three following courses and distances, viz: (1) North 54 degrees 04 minutes 50 seconds West 450.19 feet; (2) South 35 degrees 55 minutes 10 seconds West 36.63 feet; and (3) North 54 degrees 04 minutes 10 seconds West 344.47 feet to a point on the Southeasterly side of Radcliffe Street, aforesaid; thence extending along the same, North 35 degrees 55 minutes 50 seconds East 1017.52 feet to the first mentioned point and place of beginning.

**BEING** Lot No. 1 on said Plan.

**BEING** Tax Parcel  No. 4-027-119.

BEING THE SAME PREMISES which the Redevelopment Authority of the County of Bucks, by Deed dated June 5, 2003 and recorded on August 25, 2003 in the Office of the Recorder of deeds in and for the County of Bucks, Pennsylvania in Book 3537 at Page 234 et seq granted and conveyed unto Island View Crossing II, L.P., in fee.

**EXHIBIT "B"**

**USE OF LOAN PROCEEDS**

<u>To Be Disbursed at Settlement</u>
Closing costs, including fees for title
insurance, attorney's fees, filing
fees, etc.                                                                 $   85,000.00

To Be Retained by Bank and Disbursed
<u>During Construction</u>
Site Improvements (Phase One)                              $3,396,468.00

Interest and Reserve                                               $   500,000.00


Construction of Houses (Phase Two)


Construction of Condominium (Phase Three)             $1,560,000.00
                    **TOTAL**                                         **$5,541,468.00**

# EXHIBIT "C"

## SITE, HOUSE AND CONDOMINIUM  CONSTRUCTION STAGE ADVANCES

### *SEE SCHEDULES ATTACHED*

EXHIBIT "C-1"

## ISLAND VIEW CROSISNGII, LP
### BUCKS COUNTY
### PRUDENTIAL SAVINGS BANK
## DEVELOPMENT LOAN STRUCTURE

| | | Date : | 16-Oct-14 |
|---|---|---|---|
| **Land Acquisition:** | Island View Crossing | $0.00 | |
| | | $0.00 | |
| · Total Land Acquisition: | | | $0.00 |
| | | | |
| **Site Development:** | Bristol Borough | | |
| | Letter of Credit On-Site(Subdivision/Development Agreement | $1,863,116.61 | |
| | Letter of Credit Off-Site(Development Agreement) | $0.00 | |
| | 10% Contingencies | $186,811.66 | |
| Subtotal Letter of Credit: | | $2,043,928.27 | |
| | Cash Deposit (Pump and Haul Agreement\Misc) | $0.00 | |
| | Cash Deposit On-Site(Engineering Inspection\Legal Fees) | $46,462.92 | |
| | Other ( Parks & Recreation\Impact Fees) | $0.00 | |
| Subtotal Cash Deposit: | | $46,462.92 | |
| Total Site Development: | | | $2,090,381.19 |
| | | | |
| **Sewer Installation:** | Bristol Borough | | |
| | On-Site(Sewer Main Extension Agreement) Included Above | $0.00 | |
| | Off-Site( Pump Station ) Included Above | $0.00 | |
| | 10% Contingencies | $0.00 | |
| Subtotal Letter of Credit: | | $0.00 | |
| | Cash Deposit On-Site(E.D.U's-Sewer Service Agreement) | $0.00 | |
| | Cash Deposit On-Site(Engineering Inspection\Legal Fees) | $0.00 | |
| | Other-( Pump Station Reimbursement) | $0.00 | |
| | Debt Service Retirement Cost | $0.00 | |
| Subtotal Cash Deposit: | | $0.00 | |
| Total Sewer Installation: | | | $0.00 |
| | | | |
| **Water Installation:** | Aqua PA | | |
| | On-Site(Water Main Extension Agreement) | $293,446.50 | |
| | Off-Site(Water Main Extension Agreement) | $0.00 | |
| | 10% Contingencies | $0.00 | |
| Subtotal Letter of Credit: | | $293,446.50 | |
| | Cash Deposit On-Site( Water Tap in Fees) | $0.00 | |
| | Cash Deposit On-Site( Administration Value Added Fee) | $20,129.30 | |
| | Cash Deposit On-Site( CAC TAX ) | $5,727.00 | |
| | Water Meters | $0.00 | |
| Subtotal Cash Deposit: | | $25,856.30 | |
| Total Water Installation: | | | $319,288.80 |
| | | | |
| **Other Loan Components:** | | | |
| Zoning/Master Loan Fees: | | $000,000.00 | |
| Sub Surface Concrete Removal | | $480,000.00 | |
| Site Improvement Management Fee | | $420,000.00 | |
| Public Utility Fees\Trenching: | | $75,000.00 | |
| HOP Contribution | | $41,788.48 | |
| Total Other Loan Components: | | | $986,788.40 |
| | | | |
| **TOTAL** | | | $3,396,468.4D |
| | $3-Billion @ $130,000 | $0,000,000.00 | |
| | | $000 | |
| | | | $0,000,000.00 |
| | | | $0,000,000.00 |

Page 1

EXHIBIT "C-2"
**Average Hard Cost Budget**
**ISLAND VIEW**
**Draw Schedule**

PHASE TWO HOUSES

| | Unit Number | 1 | | |
|---|---|---|---|---|
| | Date Started | | | |
| | | Available | Amount Received | Cumulative Draws |
| **I.** | **Footings & Management** | **22,150** | | **0** |
| A. | Dig Foundation | 3,500 | | 0 |
| B. | Footings | 3,000 | | 0 |
| C. | Foundation Walls | 7,000 | | 0 |
| D. | Deck/Slab | 4,300 | | 0 |
| | Stage I Total | 39,950 | 0 | 0 |
| **II.** | **Framing** | | | |
| A. | First Floor Walls | 12,500 | | 0 |
| B. | Second Floor Walls | 12,500 | | 0 |
| C. | Roof Trusses and Sheathing | 5,000 | | 0 |
| D. | Windows Installed | 4,000 | | 0 |
| | Stage II Total | 34,000 | 0 | 0 |
| **III.** | **Second Floor & Utility, W & S Lines** | | | |
| A. | Basement Floor | 0 | | 0 |
| B. | Rough Plumbing | 7,000 | | 0 |
| C. | Rough Heating | 7,000 | | 0 |
| D. | Rough Electric | 5,000 | | 0 |
| E. | Roof | 4,000 | | 0 |
| | Stage III Total | 23,000 | 0 | 0 |
| **IV.** | **Furnace, Dumpster** | | | |
| A. | Siding | 5,200 | | 0 |
| B. | Frontal Veneer (Siding/Masonry) | 3,500 | | 0 |
| C. | Drywall | 9,000 | | 0 |
| D. | Trim and Paint | 4,500 | | 0 |
| E. | Tile and Vinyl | 1,500 | | 0 |
| F. | Kitchen and Vanities Installed | 4,500 | | 0 |
| | Stage IV Total | 28,200 | 0 | 0 |
| **V.** | **Final Paint, Finish Elec, Finish Plumb, Finish HVAC, Extras, Shelving** | | | |
| A. | Carpet Installed | 2,000 | | 0 |
| B. | Appliances Installed | 1,500 | | 0 |
| C. | Walks and Porches | 450 | | 0 |
| D. | Grading and Driveway | 750 | | 0 |
| E. | Cleanup of all Construction | 150 | | 0 |
| | Stage V Total | 4,850 | 0 | 0 |
| | Total | 130,000 | 0 | 0 |

EXHIBIT "C - 3"

### PHASE THREE
### HARD COST PROJECTION
### ISLAND VIEW CROSSING
16 UNIT - 5 STORY MID RISE CONDO BUILDING    $1,590,150.00

| DESCRIPTION | MODEL | DATE | BUDGET |
|---|---|---|---|
| Plot Plans | 16 Unit Building | 01-Mar-14 | $2,000.00 |
| Surveys | 16 Unit Building | 01-Mar-14 | $2,000.00 |
| Excavation-Basement | 16 Unit Building | 01-Mar-14 | $3,000.00 |
| Excavation-Footings | 16 Unit Building | 01-Mar-14 | $1,500.00 |
| Footings | 16 Unit Building | 01-Mar-14 | $50,000.00 |
| Crushed Stones | 16 Unit Building | 01-Mar-14 | $3,000.00 |
| Basement Walls | 16 Unit Building | 01-Mar-14 | $70,000.00 |
| Rough Grade\Backfill | 16 Unit Building | 01-Mar-14 | $1,500.00 |
| Cut Driveway\Stone | 16 Unit Building | 01-Mar-14 | $1,000.00 |
| Steel Beams | 16 Unit Building | 01-Mar-14 | $5,000.00 |
| Parking Garage Floor | 16 Unit Building | 01-Mar-14 | $10,000.00 |
| Frame Lumber | 16 Unit Building | 01-Mar-14 | $175,000.00 |
| Frame Labor | 16 Unit Building | 01-Mar-14 | $112,000.00 |
| Roof Trusses | 16 Unit Building | 01-Mar-14 | $25,000.00 |
| Stairs - Metal | 16 Unit Building | 01-Mar-14 | $7,500.00 |
| Stairs - Concrete Block Shaft | 16 Unit Building | 01-Mar-14 | $15,000.00 |
| Dumpster | 16 Unit Building | 01-Mar-14 | $8,000.00 |
| Roof Shingles | 16 Unit Building | 01-Mar-14 | $35,500.00 |
| Windows | 16 Unit Building | 01-Mar-14 | $21,250.00 |
| Exterior Doors\Locks | 16 Unit Building | 01-Mar-14 | $26,000.00 |
| Front Stoop - Balconies | 16 Unit Building | 01-Mar-14 | $16,000.00 |
| Exterior Decorative Trim | 16 Unit Building | 01-Mar-14 | $5,100.00 |
| Siding\Facias | 16 Unit Building | 01-Mar-14 | $10,000.00 |
| Rough Heat | 16 Unit Building | 01-Mar-14 | $64,000.00 |
| Rough Plumbing | 16 Unit Building | 01-Mar-14 | $64,000.00 |
| Rough Electric | 16 Unit Building | 01-Mar-14 | $48,000.00 |
| Insulation | 16 Unit Building | 01-Mar-14 | $32,000.00 |
| Drywall\Tape\Spackle | 16 Unit Building | 01-Mar-14 | $80,000.00 |
| Trench\Screen W&S | 16 Unit Building | 01-Mar-14 | $2,000.00 |
| Trench\Screen Utilities | 16 Unit Building | 01-Mar-14 | $2,000.00 |
| Water & Sewer Lines | 16 Unit Building | 01-Mar-14 | $12,000.00 |
| Furnance | 16 Unit Building | 01-Mar-14 | $32,000.00 |
| Frontal Veneer | 16 Unit Building | 01-Mar-14 | $35,000.00 |
| Trim & Interior Doors | 16 Unit Building | 01-Mar-14 | $32,000.00 |
| Railing-Exterior | 16 Unit Building | 01-Mar-14 | $8,000.00 |
| Finish Carpentry Labor | 16 Unit Building | 01-Mar-14 | $24,000.00 |
| Painting | 16 Unit Building | 01-Mar-14 | $40,000.00 |
| Med Cabs\Shower Door | 16 Unit Building | 01-Mar-14 | $10,400.00 |
| Shelving | 16 Unit Building | 01-Mar-14 | $8,000.00 |
| Tile\Labor\Masterbath | 16 Unit Building | 01-Mar-14 | $14,400.00 |
| Tile\Labor\Hallbath | 16 Unit Building | 01-Mar-14 | $0.00 |
| Vinyl Floors | 16 Unit Building | 01-Mar-14 | $19,200.00 |
| Hardwood Floors | 16 Unit Building | 01-Mar-14 | $1,500.00 |
| Finish Heat\AC Unit | 16 Unit Building | 01-Mar-14 | $16,000.00 |
| Cabinets\Vanities | 16 Unit Building | 01-Mar-14 | $48,000.00 |
| Appliances | 16 Unit Building | 01-Mar-14 | $16,000.00 |
| Hardware | 16 Unit Building | 01-Mar-14 | $5,600.00 |
| Cabinets\Vanities Install | 16 Unit Building | 01-Mar-14 | $12,000.00 |
| Plumbing Fixtures | 16 Unit Building | 01-Mar-14 | $12,000.00 |
| Finish Plumbing | 16 Unit Building | 01-Mar-14 | $48,000.00 |
| Electrical Fixtures | 16 Unit Building | 01-Mar-14 | $8,000.00 |
| Finish Electric | 16 Unit Building | 01-Mar-14 | $24,000.00 |
| Carpet Installation | 16 Unit Building | 01-Mar-14 | $32,000.00 |
| Shutters | 16 Unit Building | 01-Mar-14 | $9,000.00 |
| Sidewalk | 16 Unit Building | 01-Mar-14 | $3,500.00 |
| Driveway Paving | 16 Unit Building | 01-Mar-14 | $4,000.00 |
| Finish Grade\Seed | 16 Unit Building | 01-Mar-14 | $2,500.00 |
| Gutters\Downspouts | 16 Unit Building | 01-Mar-14 | $8,500.00 |
| Cleaning\Paint Touch Up | 16 Unit Building | 01-Mar-14 | $7,200.00 |
| Sprinklers | 16 Unit Building | 01-Mar-14 | $5,000.00 |
| Contingencies | 16 Unit Building | 01-Mar-14 | $64,000.00 |
| Elevator | 16 Unit Building | 01-Mar-14 | $50,000.00 |
| Halls - Common Areas Electric | 16 Unit Building | 01-Mar-14 | $15,000.00 |
| Halls - Common Areas Carpeting | 16 Unit Building | 01-Mar-14 | $5,000.00 |
| Halls - Common Areas Trim | 16 Unit Building | 01-Mar-14 | $5,000.00 |
| Halls - Common Areas Paint | 16 Unit Building | 01-Mar-14 | $4,000.00 |
| Halls - Common Areas Sprinklers | 16 Unit Building | 01-Mar-14 | $10,000.00 |
| Parking Garage - Electric | 16 Unit Building | 01-Mar-14 | $10,000.00 |
| Parking Garage - Paint - Striping | 16 Unit Building | 01-Mar-14 | $2,000.00 |
| Parking Garage - Sprinklers | 16 Unit Building | 01-Mar-14 | $18,000.00 |
| Fire Extinguishers - Egress Lighting | 16 Unit Building | 01-Mar-14 | $12,000.00 |

- 36

## EXHIBIT "D"

## EXISTING AGREEMENTS OF SALE

| LOT NUMBER | ADDRESS | AOS DATE | BUYER'S NAME | MODEL |
|---|---|---|---|---|
| 2 | 191 Island View Drive | 05/31/14 | Samira Ranganathan and Ranganathan Khandulana | Cambridge |
| 4 | 187 Island View Drive | 06/14/14 | O'Neill, Dawn | Bostonian |
| 5 | 185 Island View Drive | 07/03/14 | Hernandez, Jayson & Sarah | Cambridge |
| 8 | 179 Island View Drive | 06/24/14 | Mastridge, Benjamin | Bostonian |
| 9 | 177 Island View Drive | 05/25/14 | DelGrosso, Frank | Cambridge |
| 10 | 175 Island View Drive | 06/05/14 | Yacker, Judy & Nikki | Charleston |
| 11 | 173 Island View Drive | Pending | Carnivale, Bruce & Elisa | Bostonian |
| 13 | 169 Island View Drive | 06/28/14 | Clark, Jason & Jodi | Cambridge |
| 15 | 165 Island View Drive | 08/23/14 | Bridge, Peter & Jane | Cambridge |
| 25 | 145 Island View Drive | 04/04/11 | Silva, Joseph & Phyllis | Cambridge |
| 68 | 110 Island View Drive | 07/08/14 | Maychuk, Nancy | Cambridge |
| 69 | 108 Island View Drive | 07/07/14 | Schmitt, Harry & Judy | Cambridge |
| 70 | 106 Island View Drive | 07/08/14 | Donato, Joseph & Lynn | Cambridge |
| 71 | 104 Island View Drive | 07/08/14 | Donato, Joseph & Lynn | Cambridge |
| 72 | 102 Island View Drive | 07/10/14 | Ferry, Joseph & Kathleen | Cambridge |
| 73 | 100 Island View Drive | 0/11/14 | Conner, Alicia | Cambridge |

## FORM OF BORROWER'S CERTIFICATE

Island View Crossing II, LP ("Borrower") does hereby request an advance pursuant to the terms and conditions as specified in that certain Development Construction Loan Agreement between Borrower and Prudential Savings Bank, ("Bank") dated November 26, 2014 (the "Loan Agreement") and does hereby certify to Bank that:

1.    The undersigned is authorized to execute this certificate on behalf of Borrower.  All capitalized terms used herein shall have the meanings ascribed to them in the Loan Agreement.

2.    The work done and materials supplied to date are in strict accordance with the approved Plans and Specifications.

3.    The work and materials for which payment is requested have been physically incorporated into the construction of the Improvements or suitably stored on the Real Property with Bank's prior approval.

4.    The value of the work and materials for which payment is requested is as stated in such request.

5.    With respect to each category of work for which payment is being sought, the amount of such payment together with all prior payments for such category represents a percentage of the total payment to be made for such category as shown on the Schedule of Costs, which is no greater than the percentage of total work for such category which has been performed as of the date of the application for payment.

6.    All work to date has been done in a good and workmanlike manner and all work and materials conform with all applicable laws, ordinances, rules, regulations, restrictions and building codes of governmental authorities having jurisdiction of the Real property and the Improvements.

7.    All necessary certificates, licenses and permits required to be obtained from any board, agency or department, governmental or otherwise, for the work to date have been obtained.

8.    The undisbursed balance of the Loan allocated to construction costs is sufficient to complete the construction of the Improvements in accordance with the Plans and Specifications.

9.    The work is proceeding satisfactorily and on schedule.

10.    All prior bills applicable to the Improvements have been paid.

11.    There does not exist any uncured event of default under the Loan Agreement nor any event or state of affairs which with the passage of time or the giving of notice or both would constitute an event of default thereunder.

12.    There is not any uncured material adverse change in the financial or operating condition of Borrower or in the Real Property from that condition prevailing on the date of the Loan Agreement.

13.    The representations and warranties made by Borrower in the Loan Agreement are correct and true as of the date hereof.

14.    Payment for the work and materials described in the application for payment has been made or will be made with the proceeds of the disbursements or advances for which such application was submitted.

**IN WITNESS WHEREOF,** Borrower has caused this certification to be executed on the _____ day of ____ __, 20___.

**ISLAND VIEW CROSSING II, L.P.**
**A PA Limited Partnership**
**BY: ISLAND VIEW PROPERTIES, INC.**
**Its General Partner**

By:_____
Renato J.  Gualtieri, President