# Exhibit "H"

## BUCKS COUNTY RECORDER OF DEEDS
**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

Instrument Number - 2015001098
Recorded On 1/7/2015 At 12:38:43 PM                    * Total Pages - 29
* Instrument Type - MORTGAGE - CORPORATIONS
Invoice Number - 699745          User -  SMC
* Mortgagor - ISLAND VIEW CROSSING II L P
* Mortgagee - PRUDENTIAL SAV BK
* Customer - SIMPLIFILE LC E-RECORDING
* **FEES**

```
RECORDING FEES        $173.00
TOTAL PAID            $173.00
```

Bucks County UPI Certification
On January 7, 2015 By TF

### This is a certification page

## DO NOT DETACH

### This page is now part
### of this legal document.

Recorded
2nd

RETURN DOCUMENT TO:
ATTLEBORO ABSTRACT CO
117 E. MAPLE AVE
LANGHORNE, PA 19047

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

0FEE24

PREPARED BY:

Jerome R.  Balka, Esquire

Two Penn Center, Suite 520

1500 John F.  Kennedy Blvd.

Philadelphia, PA 19102-1756

RECORD & RETURN TO:

Attleboro Abstract Company

117 East Maple Avenue

Langhorne, PA 19047

UPI Number: 4-027-119

# MORTGAGE

MORTGAGOR:        ISLAND VIEW CROSSING II, L.P.

MORTGAGEE:        PRUDENTIAL SAVINGS BANK

1

## OPEN END MORTGAGE AND SECURITY AGREEMENT
**[THIS IS AN OPEN END MORTGAGE AND SECURITY
AGREEMENT AND SECURES FUTURE ADVANCES PURSUANT
TO 42 Pa.C.S, 8143 and 8144, ACT NO. 126 of 1990]**

**THIS OPEN END MORTGAGE AND SECURITY AGREEMENT** ("Mortgage") is made as of this **26th** day of **November, 2014** by and between **ISLAND VIEW CROSSING II, L.P.** a PA Limited Partnership ("Mortgagor") and **Prudential Savings Bank** ("Mortgagee").

### WITNESSETH:

**WHEREAS**, Mortgagor, in accordance with the terms of a certain Development Construction Loan Agreement of even date herewith by and between Mortgagee and Mortgagor (the "Loan Agreement") has agreed to make loan advances and readvances to Mortgagor up to a maximum amount of **Five Million Five Hundred Forty One Thousand Four Hundred Sixty Eight ($5,541,468.00) Dollars** and this Mortgage is given by Mortgagor to Mortgagee in consideration of and as security for all present and future advances as well as all of Mortgagor's obligations under the Loan Agreement, the lien of this Mortgage relating back to the date of this Mortgage with respect to all advances which are at anytime made to Mortgagor under the Loan Agreement and any renewals and extensions thereof; and,

**WHEREAS**, Mortgagor's obligation to repay the sums advanced under the Loan is evidenced by Mortgagor's Note of even date herewith in the original principal amount aforesaid, as the same may be amended, modified, supplemented, extended and/or renewed from time to time, (the "Note"), which Note, made payable to the Order of Mortgagee, if not sooner paid is due and payable on **November 1, 2019.** Hereinafter, the Loan Agreement, the Note, this Mortgage and all other documents executed and delivered in connection with or collateral to any of the foregoing may be referred to collectively as the "Loan Documents", and the terms and conditions thereof are incorporated herein by reference as though set forth herein in full; and,

**WHEREAS,** the balance of the sums due under Loan Documents from time to time outstanding and all interest, charges, fees and expenses due thereunder, together with the balance of all Future Advances (as hereinafter defined) from time to time outstanding, and all interest, charges, fees and expenses to be paid by Mortgagor as provided therein or in this Mortgage, and all other liabilities and obligations of Mortgagor to Mortgagee, present or future, direct, contingent, joint, several or individual, are hereinafter collectively referred to as the "Secured Indebtedness"; and,

**WHEREAS,** as security for payment of the Note, for the performance of its obligations under the other Loan Documents and as otherwise provided for herein, Mortgagor has agreed, inter alia, to grant to Mortgagee a mortgage lien against, and a security interest in, the Mortgaged Property (as hereinafter defined).

**NOW, THIS INDENTURE WITNESSETH** that Mortgagor, as an inducement for

Mortgagee to lend sums to Mortgagor pursuant to the Loan Agreement as well as in consideration of the Secured Indebtedness and to secure the payment and performance of the Note, the other Loan Documents and all Secured Indebtedness with interest as therein recited, the Future Advances and all other sums due or to become due thereunder, including, without limitation, payment of all sums, fees and charges described in the Loan Agreement, all according to the respective terms and conditions contained therein and in certain other agreements and instruments made and given by Mortgagor to Mortgagee in connection therewith, and as security for any and all past, present or future loans or advances that may be made by Mortgagee to Mortgagor, or to any third party upon the guaranty, surety, endorsement or other accommodations of Mortgagor, and for and in consideration of the further sum of One ($1.00) Dollar, paid by Mortgagee to Mortgagor at the execution and delivery hereof, receipt of which is hereby acknowledged, and intending to be legally bound, has granted, conveyed, bargained, sold, aliened, enfeoffed, released, confirmed, transferred, assigned, pledged and mortgaged, and by these presents does hereby grant, convey, bargain, sell, alien, enfeoff, release, confirm, transfer, assign, pledge and mortgage (and grant a security interest to the extent governed by the (Uniform Commercial Code) unto Mortgagee, its successors and assigns in:

**ALL THAT  CERTAIN** lot or parcel of ground lying and being located in Bristol Borough, Bucks County, Pennsylvania, as more fully described in Exhibit "A" attached hereto and made a part hereof (the "Premises").

**TOGETHER WITH** all of Mortgagor's right, title and interest now owned or hereafter acquired in:

(i) Site improvements, buildings, structures and improvements now or hereafter erected on the Premises, as well as all alterations, additions and improvements now or hereafter made thereto (collectively, the "Improvements");

(ii) Easements, rights of way, streets, alleys, passages, ways, water, watercourses, mineral rights, rights, liberties, privileges, tenements, hereditaments and the appurtenances thereunto belonging (collectively, the "Appurtenances");

(iii) Leases, subleases, agreements of sale, options, other agreements, and all reversions, remainders, rents, income, proceeds, issues, profits, fees, payments, grants, franchises, rights, liberties, concessions and privileges of whatever kind or character derived or arising from or received in connection with any leases, subleases, agreements of sale, options or other agreements, or derived or arising from or received in connection with all purposes for which the Premises, Improvements and Appurtenances might be employed, whether now existing or hereafter arising (collectively, the "Sales Proceeds");

(iv) Building materials, machinery, apparatus, equipment, fittings, fixtures and appliances of any nature whatsoever, and any other articles of personal property nor or hereafter located on, about, under or in the Premises or the Improvements at any time erected thereon, without regard

to whether the same may be affixed to the Premises or Improvements, at any time or from time to time and used, intended to be used or usable in connection with any present or future maintenance or operation of the Premises or the Improvements (collectively, the "Building Materials");

(v) Awards, decrees, condemnation or other proceeds and settlements made to or for the benefit of Mortgagor by reason of any damage to, destruction of or taking of the Premises or any part thereof or any Appurtenances, Improvements or any Building Materials, whether such award shall be made by reason of the exercise of the right of eminent domain or otherwise, or by any public or private authority, tribunal, corporation or other entity or by any natural person (collectively, the "Awards"); and,

(vi)    Contracts, licenses, permits, approvals, product and manufacturer warranties, guarantees and service agreements, including all manuals, policies, and other documents in connection with the same in favor of Mortgagor or by and between Mortgagor and any and all boards, agencies, departments, governmental or other parties of any kind, relating, directly or indirectly to the Premises or the Building- Materials, whether heretofore or hereafter issued, executed or delivered (collectively, the "Licenses").

All of the above mentioned Premises, Improvements, Appurtenances, Sales Proceeds, Building Materials, Awards, Licenses and all other property interests described hereinabove, together with the appurtenances thereto and all other property of whatever kind described in or covered by this Mortgage may be hereinafter referred to collectively as the "Mortgaged Property."

**TO HAVE AND TO HOLD** the Mortgaged Property hereby conveyed or mentioned and intended so to be, unto Mortgagee, its successors and assigns, to its or their own use, forever.

**PROVIDED HOWEVER,** that if Mortgagor shall promptly pay or cause to be paid to Mortgagee the Secured Indebtedness, and shall perform and comply with or cause to be performed and complied with all the other terms, conditions, agreements and provisions contained in the Loan Documents and any and all other instruments, documents, agreements or writings now or hereafter evidencing, securing or pertaining hereto or thereto, and any and all agreements entered into with respect to any Future Advances, all without fraud or delay or deduction or abatement of anything or for any reason, then this Mortgage and the estate hereby granted shall cease, terminate and become void.

**AND MORTGAGOR FURTHER WARRANTS, REPRESENTS, COVENANTS AND AGREES AS FOLLOWS:**

**1.    Warranty of Title.** (a) Mortgagor presently possesses an unencumbered good and marketable fee simple title to the Mortgaged Property, free from any liens, claims, encumbrances and/or restrictions, except for those title exceptions (if any) approved by Mortgagee in writing; (b) this Mortgage is and will remain a valid and enforceable second priority lien on the Mortgaged

Property subject only to the aforesaid title exceptions (if any); and (c) Mortgagee, subject to Mortgagor's right of possession prior to an Event of Default (as defined herein), shall quietly enjoy and possess the Mortgaged Property. Mortgagor shall preserve such title and the validity and priority of the lien hereof and shall forever warrant and defend the same unto Mortgagee against the claims of all persons and parties whatsoever.

2. **Security Agreement.** This Mortgage constitutes a security agreement under the Uniform Commercial Code as adopted and existing from time to time in the Commonwealth of Pennsylvania (the "Code") and Mortgagor hereby grants to Mortgagee a security interest in and lien upon all that property (and all cash and on cash proceeds thereof) included in the Mortgaged Property which might otherwise be deemed personal property covered by the Code (collectively, the "Personalty"), including all Fixtures (as defined in the Code) (and all cash and on cash proceeds thereof) located on or about the Mortgaged Property. Upon filing this Mortgage in the appropriate offices, this Mortgage shall also be effective as a Financing Statement filed in such offices with respect to such Personalty and Fixtures. Mortgagor shall execute, deliver, file and refile any Financing Statements, continuation statements or other security agreements Mortgagee may require from time to time to confirm the lien of this Mortgage with respect to such Personalty and/or Fixtures. Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor (which appointment is agreed to be coupled with an interest) to execute, deliver and file such instruments for and on behalf of Mortgagor. All costs of such filing and refiling shall be paid by Mortgagor. Mortgagor shall not change its principal place of business without giving Mortgagee at least thirty (30) days prior written notice thereof. To the extent permitted by law, Mortgagor and Mortgagee agree that the items set forth on the Financing Statements shall be treated as part of the Premises and Improvements regardless of the fact that such items are set forth in the Financing Statement. Such items are contained in the Financing Statements to create a security !interest in favor of Mortgagee in the event such items are determined to be Personalty or Fixtures. Notwithstanding any release of any or all of the property included in the Mortgaged Property which is deemed "real property", any proceedings to foreclose this Mortgage or its satisfaction of record, the terms hereof shall survive as a security agreement with respect to the security interest created hereby and referred to above until the repayment or satisfaction in full of all of the Secured Indebtedness.

3. **Future Advances.**
(a) This Mortgage shall further constitute security for all of the following (collectively, the "Future Advances"), together with interest thereon, whether or not Mortgagee is obligated to make any such Future Advance: (i) any and all future advances, readvances, loans, extensions of credit or other financial accommodations to or for the credit of Mortgagor or to third parties upon the surety, guaranty, endorsement or other accommodations of Mortgagor, regardless of the amount, the purpose of which such debt may be created and whether any reference is made to this Mortgage therein; (ii) any and all future obligations, indebtedness and/or liabilities of Mortgagor to Mortgagee hereafter incurred, due or owing under the provisions of the Note, the Loan Agreement, this Mortgage, any of the other Loan Documents or any of the other Secured Indebtedness; (iii) any and all obligations, costs or expenses assumed or incurred by Mortgagee

in connection with any Future Advances; (iv) all advances Mortgagee may make or become obligated to make for the protection of the security hereby given, including, without limitation, the unpaid balances of advances made with respect to the Mortgaged Property for the payment of taxes, assessments, maintenance, charges, insurance premiums and costs incurred for the protection of the Mortgaged Property or the lien of this Mortgage, and all expenses incurred by Mortgagee by reason of an Event of Default by Mortgagor hereunder; and (v) all advances Mortgagee may make to pay toward all or part of the cost of completing any erection, construction, alteration or repair of any part of the Mortgaged Property. With respect to each such advance or readvance, the lien of this Mortgage with respect thereto shall relate back to the date of this Mortgage, regardless of whether the maturity hereof or of the Note or any other Secured Indebtedness shall have been extended, regardless of whether this Mortgage shall have been modified, and regardless of whether there shall have been any modification of the Mortgaged Property or of any other property securing payment of the Secured Indebtedness. Without limiting the foregoing, this Mortgage secures all advances and readvances made by Mortgagee of any kind or nature described in 42 Pa C. S. §8144. This Mortgage is an Open End Mortgage as defined in Section 8143 "Open End Mortgages" of Title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, establishing the priority of advances made under certain mortgages, as amended by Senate Bill No, 693 (Session of 1989) effective December 12, 1990.

(b) If Mortgagor sends a written notice to Mortgagee which purports in any manner to limit the indebtedness secured by this Mortgage and to release the obligation of Mortgagee to make any additional advances to Mortgagor, such a notice shall be ineffective as to any future advances made: (i) to enable completion of the Improvements on the Mortgaged Property for which the loan secured hereby was originally made; (ii) to pay taxes, assessments, maintenance charges and insurance premiums; (iii) for costs incurred for the protection of the Mortgaged Property or the lien of this Mortgage; (iv) for expenses incurred by Mortgagee by reason of a default of Mortgagor under this Mortgage or under the Note or any of the Loan Documents; and (v) for any other costs incurred by Mortgagee to protect and preserve the Mortgaged Property, It is the intention of the parties hereto that any such advance made by Mortgagee after any such notice by Mortgagor shall be secured by the lien of this Mortgage on the Mortgaged Property.

**4. Payment of Obligation.** Mortgagor will pay when due the Secured Indebtedness, together with interest thereon, at the times and in the manner as provided in and by the Loan Documents and any and all agreements entered into with respect to any Secured Indebtedness.

**5. Compliance, and Terms.** Mortgagor will promptly and faithfully observe and perform all the terms, agreements, conditions, stipulations, covenants and provisions contained herein, in the Loan Documents and in any and all agreements entered into with respect to any Secured Indebtedness, shall commence, complete and pay for any and all construction which is commenced at any time on the Premises in accordance with the terms of the Loan Agreement, and shall timely perform all of its obligations and duties as seller under any agreement of sale now or hereafter in effect with respect to the Premises or any part thereof.

**6.  Taxes, Rents and Other Charges.**  Mortgagor will pay, prior to the time when interest or penalties commence to accrue thereon, all required monthly payments on the first mortgage, all taxes, sewer and water rents, other claims and charges, including charges in lieu of taxes, which may be levied, assessed or filed with respect to the Mortgaged Property or Mortgagor by any and all federal, state and local agencies, boards, bureaus and departments(collectively the "Governmental Authority").  Within thirty (30) days after the payment of each of the foregoing, Mortgagor will produce to Mortgagee receipts or other satisfactory evidence of such payment. However, if Mortgagor; (i) in good faith and by appropriate legal action shall contest the validity of any such item or the amount thereof after notice thereof to Mortgagee; (ii) shall have furnished and deposited security as required by Mortgagee; and (iii) shall have furnished assurance satisfactory to Mortgagee indemnifying it against any loss by reason of such contest, then Mortgagor shall not be required to pay the item (except for all real estate taxes which must be paid regardless of any challenge) or to produce the required receipts so long as the contest operates to prevent collections, does not jeopardize the lien of this Mortgage, is maintained and prosecuted with diligence and shall not have been terminated or discontinued adversely to Mortgagor. Mortgagor will not apply for or claim any deduction, by reason of this Mortgage, from the taxable value of all or any part of the Mortgaged Property.  No credit shall be claimed or allowed on the interest payable on the Notes by reason of any taxes or other charges paid.

**7.  Escrow Deposits.**  Without limiting the effect of Sections or 8 hereof, Mortgagor will deposit with Mortgagee monthly, if so requested by Mortgagee in writing; (i) a sum equal to one twelfth (1/12) of the annual taxes, sewer and water rents, and such other claims and charges as may be assessed or levied by any Governmental Authority on or against the Mortgagor or the Mortgaged Property, including charges in lieu of taxes; and (ii) such amounts as shall be necessary to create a fund adequate to pay the premiums con all insurance required herein prior to expiration of the current policies.  Unless otherwise required by law, Mortgagee shall have no obligation to pay interest to Mortgagor on such escrow deposits.  It is intended that not later than one month prior to the respective dates on which the premiums shall be due and payable and the real property taxes shall last be due and payable without interest or penalty, and provided no Event of Default shall have occurred and no event shall have occurred which, with the giving of notice or the passage of time or both would become an Event of Default, such sums shall be applied to the payment of the item or items in respect of which such amounts were deposited or, at Mortgagee's option, to the payment of such items in such order of priority as Mortgagee shall determine, as the same become due and payable, and Mortgagor shall make available to Mortgagee proper bills therefor.  If Mortgagor is required to have deposited such sums with Mortgagee and the amount then held by Mortgagee on deposit shall be insufficient to pay such premiums or taxes, Mortgagor, upon demand, shall pay to Mortgagee any amount necessary to makeup such deficiency.  If an Event of Default shall have occurred and remains uncured, Mortgagee may at its option apply the amounts then deposited with Mortgagee, or any part thereof, in payment of the unpaid sums secured by this Mortgage.  Nothing contained in this Section 7 shall be deemed to affect any right or remedy of Mortgagee under any other provisions of this Mortgage or of any statute or rule of law to pay any such items and to add the amount of the payment, with interest, as herein provided, to the principal sums secured of this Mortgage, and to require payment thereof on

demand. If, when making any assignment of this Mortgage, the then mortgagee shall pay over to its assignee the then balance of the deposits made by Mortgagor under this section, such assigning mortgagee shall have no further obligation to Mortgagor for the proper application of such deposits.

**8.  Insurance.** Mortgage shall keep the Mortgaged Property continuously insured to the extent of its full insurable value against fire, theft, explosion and all hazards included in "all risk coverage", and shall cause Mortgagee, its successors and assigns, as its interests may appear, to be named as "insured Mortgagee" thereunder pursuant to a standard mortgagee clause, upon terms and with companies satisfactory to Mortgagee.  Such coverage shall be in an amount satisfactory to Mortgagee, which amount shall be not less than an amount required to prevent the application of any co-insurance contribution requirement of such policy and shall not be less than the greater of the full face amount of the Secured Indebtedness, when fully funded, or the replacement value of the improvements.  Mortgagor shall deliver all policies of insurance to Mortgagee, which policies shall contain clauses providing for unconditional thirty (30) days written notice to Mortgagee prior to cancellation or material change in coverage.  Mortgagor shall maintain and deliver satisfactory evidence to Mortgagee that there are in effect policies of workman's compensation insurance, flood insurance (if required) and comprehensive general liability and property damage insurance against claims for personal injury, including, without limitation, injury or death to persons and damage or destruction to property in or about the Mortgaged Property, all in such amounts as Mortgagee may from time to time require, in such form and issued by companies acceptable to Mortgagee, and such other insurance as Mortgagee may from time to time require, which policies shall contain clauses providing for unconditional thirty (30) days written notice to Mortgagee prior to cancellation or material change in coverage. Mortgagor shall cause Mortgagee to be named as "additional insured" on all such policies of general liability insurance. Mortgagor shall pay as they shall become due all premiums for all insurance, and evidence thereof satisfactory to Mortgagee shall be delivered to Mortgagee within thirty (30) days of payment thereof.  Renewal policies, with premiums paid, shall be delivered to Mortgagee at least thirty (30) days before expiration of the old policies. Mortgagor shall not take out separate insurance concurrent inform or contributing in the event of loss with the insurance required to be maintained hereunder unless Mortgagee is included therein as a named insured with loss payable to Mortgagee under a non-contributory mortgagee clause satisfactory to Mortgagee.   Mortgagor shall immediately notify Mortgagee whenever any such separate insurance is taken out, specifying the insurer thereunder, and Mortgagor shall supply duplicate originals or certificates of such insurance to Mortgagee on demand.

If any required insurance or part thereof shall expire, be withdrawn, become void by breach of any condition thereof by Mortgagor, become void or unsafe by reason of the failure or impairment of the capital of any company in which said insurance may then be carried or if for any other reason whatsoever said insurance shall become unsatisfactory to Mortgagee to adequately insure the Mortgaged Property and/or Mortgagee's interests  therein, Mortgagor shall promptly proceed to effect new insurance on the Mortgaged Property in form, content, amount and from such insurers as shall be satisfactory to Mortgagee in its sole discretion.  In the event of loss,

Mortgagor will give immediate notice by mail to Mortgagee and Mortgagee may make proof of loss whether or not the same is made by Mortgagor, Mortgagor hereby directs any insurance company concerned to pay directly to Mortgagee any moneys that may become payable to Mortgagee or Mortgagor under any insurance policies maintained in connection with the Mortgaged Property, including return of unearned premiums, and Mortgagor appoints Mortgagee as attorney-in-fact which appointment is agreed to be coupled with an interest) to endorse any draft therefor. Mortgagee shall have the right to retain and apply the proceeds of any such insurance, at its election, to reduction of the Secured Indebtedness, in any order, manner or preference as Mortgagee, in its sole discretion, determines, or to restoration or repair of the property damaged, subject to such terms and conditions as Mortgagee may require.  No application of any insurance proceeds against the Secured Indebtedness shall release Mortgagor from its obligations hereunder or under the Note or the Loan Documents or postpone or delay any current or future payments of principal or interest becoming due under the Note until the Note and all interest and other sums, if any, due thereunder and hereunder are paid in full.  If requested by Mortgagee, Mortgagor shall, from time to time have the then replacement value and insurable value of the Improvements determined by the fire insurance underwriter on the Mortgaged Property, and Mortgagor will deliver such determination to Mortgagee.  Such policies of insurance and all renewals thereof are hereby assigned to Mortgagee as additional security for payment of the Secured Indebtedness and Mortgagor hereby agrees that any values available thereunder upon cancellation or termination of any of said policies or renewals, whether in the form of return of premiums or otherwise, shall be payable to Mortgagee as assignee thereof.  In the event of foreclosure of this Mortgage or other transfer of title to the Mortgaged Property in extinguishment of all or any part of the Secured Indebtedness, all right, title and interest of Mortgagor to any insurance policies then in force covering the Mortgaged Property shall pass to the transferee of the Mortgaged Property.

**9.  Maintenance of Mortgaged Property.**  Mortgagor: (a) shall keep and maintain the Mortgaged Property in good repair and order and shall make as and when necessary all repairs and replacements thereto; (b) shall not remove from the Premises or Improvements, the Building Equipment or any other property of any nature covered by the lien or security interest granted by this Mortgage; (c) shall not make, install or permit to be made or installed any alterations, additions or improvements of any nature to or in the Mortgaged Property that negatively affect the value of the Mortgaged Property or, except as permitted in the Loan Agreement, are structural in nature without obtaining the prior written consent of Mortgagee and without obtaining insurance thereon; (d) shall not permit the Mortgaged Property to become vacant, deserted, abandoned or unguarded; (e) shall not permit any lien or claim to be filed against the Mortgaged Property or any part thereof; and (f) shall not commit or suffer any waste of the Premises, Improvements or Building Equipment, or make any change in the use thereof which will in any way increase the risk of fire or other hazard or that may impair the security of this Mortgage.

**10.  Declaration of Amount Due and No Set-Off.**  Mortgagor shall, within five (5) days after request, furnish a written statement or declaration, duly acknowledged, of the amount due under the Loan Documents and whether any offsets or defenses exist thereto or against this Mortgage or any other such document (and specify the precise amount and nature of any such

offsets or defenses).

**11.  Inspection.** Mortgagor shall permit Mortgagee and/or its agents, at any time and from time to time, to enter upon the Mortgaged Property to inspect, photograph or appraise the Mortgaged Property for any purpose.

**12.  Compliance with Laws.** Mortgagor will comply with all laws, statutes, codes, ordinances, regulations, rules, resolutions, orders, agreements, covenants, conditions, contracts, declarations, easements, licenses and restrictions of any federal, state, municipal or other governmental or quasi-governmental authority or agency affecting the Premises, Improvements and Building Equipment and will not suffer or permit any violation thereof, The foregoing shall not preclude the right of Mortgagor to, in good faith, contest the enforcement of any of the foregoing provided that enforcement is stayed by the operation of such contest and Mortgagor deposits with Mortgagee, during the pendency of any such contest, security satisfactory to Mortgagee. Mortgagor shall, at its sole cost and expense, pay all licenses, fees and charges with respect to or applicable to the use, ownership, operation or management of the Mortgaged Property or any portion thereof.  Mortgagor will do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances, rights of way and other interests and rights in favor of, or constituting any portion of, the Mortgaged Property.

**13.  Environmental Representations, Covenants, Indemnity and Testing.**
         (a)      Representation.  Mortgagor hereby represents and warrants to Mortgagee that, except as described in that certain Environmental Certificate of even date herewith delivered to Mortgagee by Mortgagor (the "Environmental Certificate"), there are no Special Materials (hereinafter defined) presently located on or near the Mortgaged Property.  Mortgagor further represents and warrants to Mortgagee that, except for the activities and Special Materials described in the Environmental Certificate, the Mortgaged Property is not now being used nor, to the best of its knowledge, has it ever been used in the past for activities involving Special Materials, including, but not limited to, the use, generation, collection, storage, treatment or disposal of any Special Materials and, in particular, without limiting the generality of the foregoing, the Mortgaged Property is not now being used nor has it ever been used in the past for a landfill, surface impoundment or area for the treatment, storage or disposal of solid waste (including, without limitation, solid waste such as sludge).

         (b)      Notice of Violation, Mortgagor represents and warrants that it has not received any notices of the filing of any civil or criminal action or notices of any investigation or request for information by any governmental or quasi-governmental agency, authority, instrumentality or board relative to the condition of the Mortgaged Property.  Mortgagor shall notify the Mortgagee immediately upon receipt of any such notices or filings and, at such time, shall provide Mortgagee with copies of any and all such notices, filings, reports and related materials.

         (c)      Covenant Regarding Compliance.  Mortgagor will not place or permit to be placed any Special Materials (other than those, if any, specifically described in the Environmental

Certificate) on the Mortgaged Property. For all Special Materials at any time located on the Mortgaged Property, Mortgagor shall take or cause to be taken, at Mortgagor's sole expense, such actions as may be necessary to comply with all Environmental Requirements (hereinafter defined). If Mortgagor shall fail to take any such action, Mortgagee may make advances or payments towards performance or satisfaction of the same but shall be under no obligation to do so; and all sums so advanced or paid, including all sums advanced or paid by Mortgagee in connection with any judicial or administrative investigation or proceeding relating thereto, including, without limitation, attorney's fees, fines or other penalty payments, shall be at once repayable by Mortgagor and all sums so advanced or paid shall become a part of the Secured Indebtedness. Failure of Mortgagor to comply with all Environmental Requirements shall constitute and be an Event of Default.

(d)   Indemnity.   Mortgagor hereby agrees to indemnify and hold harmless Mortgagee, its parents, subsidiaries, successors and assigns, and any officer, director, shareholder, employee or agent of Mortgagee, from and against all loss, liability, damage, cost and expenses, including attorney's fees and costs, for failure of the Mortgaged Property to comply in all respects with the Environmental Requirements or a breach by Mortgagor of any representation, warranty, agreement or covenant in this Section 13.

(e)   Testing.   Mortgagor hereby irrevocably authorizes Mortgagee to conduct such tests, examinations or inspections of or upon the Mortgaged Property to confirm compliance with all Environmental Requirements. The cost and expense of such tests, examinations and inspections shall be the responsibility of Mortgagor, In the event Mortgagee pays such costs or expenses on behalf of the Mortgagor, such sums shall be at once repayable by Mortgagor and all sums so advanced or paid by Mortgagee shall become part of the Secured Indebtedness.

(f)   Survival.   The representations, warranties, agreements and covenants of Mortgagor contained in this Section 13 shall survive the. occurrence of any event whatsoever, including, but not limited to, payment in full of the Secured Indebtedness, the release, satisfaction or foreclosure of this Mortgage or the acceptance by the Mortgagee of a deed in lieu of foreclosure.

(g)   Definitions.   For purposes of this Section 13: (1) "Environmental Requirements" means any and all federal, state or local laws, statutes, ordinances, regulations or standards, administrative or court orders or decrees, and private agreements; and (2) "Special Materials" means any and all material that, under any Environmental Requirement, requires special handling in use, generation, collection, storage, treatment or disposal, or the payment of costs or similar economic loss associated with responding to the lawful directives of any court or agency of competent jurisdiction with respect to any such material. Without limiting the foregoing, Special Materials shall include any materials that violate any national or local contingency plan or the release or threatened release of which may violate or create liability under any of the Environmental Requirements, Special Materials shall also include, without limitation: (i) asbestos in any form; (ii) urea formaldehyde foam insulation; (iii) paint containing lead; and (iv) transformers or other equipment that contains dielectric fluid containing polychlorinated biphenyls

(commonly referred to as "PCBs").

**14.    Costs; Expenses and Indemnification.** In the event Mortgagee shall ever refer any or all of the Loan Documents or any agreements entered into with respect to any Secured Indebtedness to counsel because of any default thereunder, Mortgagor shall reimburse Mortgagee for any and all attorney's fees and costs incurred, If judgment shall be entered under the Note or any of the other Loan Documents or any agreements entered into with respect to any Secured Indebtedness, or foreclosure proceedings shall be commenced upon this Mortgage because of any such default, then all costs and expenses of suit, together with attorney's Fees for collection of five (5%) percent of the total amount due under the Note or any of the other Loan Documents or other agreements, but in no event less than Twenty Thousand ($20,000,00) Dollars shall be payable and recovered in addition to all principal, interest and other recoverable sums then due.  If Mortgagee shall become a party, either as plaintiff or defendant, to any suit or legal proceeding affecting the lien or security interests hereby created on or in the Mortgaged Property, Mortgagor shall pay to Mortgagee on demand its costs, expenses and attorneys' fees in such suit or proceeding. Mortgagor, for itself and all those claiming under or through it, agrees to protect, indemnify, defend and hold harmless Mortgagee, its directors, officers, shareholders, employees and attorneys from and against any and all liability, expense or damage oaf any kind or nature and from any suits, claims or demands, including legal fees and expenses arising out of this Mortgage or in connection therewith, including, without limitation, claims for brokerage or finder's fees, disputes between Mortgagor and any other person, including, without limitation, any contractors, subcontractors or materialmen, or any municipal or public authority, or any claims in any way related to any hazardous wastes on or environmental contamination of the Premises, or on account of any act or omission to act or negligence of Mortgagee. All of the obligations in this Section 14 shall survive satisfaction of this Mortgage.

**15.    No Transfer.** Except as provided in Section 16 hereinbelow, Mortgagor will not sell, exchange, convey, transfer or assign, and will not permit the sale, exchange, conveyance, transfer or assignment, voluntarily or by operation of law, of all or any interest in the Mortgaged Property, or any part thereof or interest therein, or any transfer or sale of partnership interests in Mortgagor, without the prior written consent of Mortgagee, which consent Mortgagee may withhold in its discretion.

**16.    Release of Individual House Lots Constructed on the Mortgaged Property.** Provided Mortgagor is not then in default hereunder or under any of the Loan Documents or any other agreements or instruments heretofore or hereafter executed collateral hereto or thereto, Mortgagee agrees to release from the lien of this Mortgage any or all individual houses and/or lots (individually, a "House") as well as all individual condominium units  comprising a portion of the Mortgaged Property and constructed pursuant to the terms of the Loan Agreement utilizing the loan proceeds provided by Mortgagee under the Note and the Loan Agreement, subject to satisfaction of all of the following conditions:

(a)  Mortgagor shall have provided Mortgagee at least ten (10) days prior written notice of

settlement of the sale of such House or Condominium Unit,

(b)  Mortgagor shall have completed all construction related to the House or Condominium Unit to be released and all appurtenant facilities and shall have furnished Mortgagee with evidence of such completion, which evidence shall be in form and content satisfactory to Mortgagee in its sole discretion.

(c)  Mortgagor shall have delivered to Mortgagee an executed  copy of the agreement of sale for such House or Condominium Unit, which agreement of sale shall be acceptable in form and content to Mortgagee.

(d)  Mortgagor shall receive at settlement of the sale of such House or Condominium Unit such sum as is set forth in paragraph 1.5 of the Loan Agreement.

(e)  The remaining unreleased portion of the Premises complies with all representations and warranties of Mortgagor contained in the Loan Documents.

(f)  Mortgagor shall pay all costs of Mortgagee in connection with the release of any House, including, without limitation, all costs and expenses of document preparation and recording fees.

**17.  Other Liens.** Mortgagor will not create, incur, assume or suffer to exist any mortgage, lien, charge, security interest or other encumbrance upon the Mortgaged Property, or any part thereof, without the prior written consent of Mortgagee, which consent Mortgagee may withhold in its sole discretion.

In the event that the Mortgaged property, or any part thereof, is now or hereafter subject to any other mortgage, lien, charge, security interest or other encumbrance, with respect to which Mortgagor shall have received Mortgagee's prior written consent as required herein (the "Approved Mortgage"):

(a)     Such Approved Mortgage shall be, and shall at all times remain, under and subject, secondary and subordinate in all respects to the lien of this Mortgage and to all renewals, extensions, modifications, rearrangements and release, including without limitation, increases in interest rate, future advances hereunder and all release provisions for portions of the Mortgaged Property, with or without consideration, without any obligation on Mortgagor's part to give notice of any kind.

(b)     Mortgagor will pay the principal, interest and all other sums due and payable with respect to such Approved Mortgage on or before the applicable due date, and will comply with all of the other terms, covenants and conditions thereof;

(c)     Upon request by Mortgagee, Mortgagor will produce to Mortgagee from time to time, a copy of the check or other evidence of payment in connection with the Approved Mortgage;

(d)     Mortgagor will not enter into any modification, amendment, agreement or arrangement, without the prior written consent of Mortgagee which consent Mortgagee may withhold in its sole discretion, pursuant to which Mortgagor is granted any forbearance or indulgence in the payment of any principal, interest or other sums due in accordance with the terms and provisions of the Approved Mortgage;

(e)     Upon request by Mortgagee, Mortgagor will obtain the written agreement of the holder, from time to time, of any Approved Mortgage, to send Mortgagee copies of all notices with respect thereto;

(f)     Mortgagor shall notify Mortgagee promptly of the receipt of any notice given by the holder of any Approved Mortgage and shall forward to Mortgagee a copy of such notice;

(g)     If applicable, Mortgagor shall deliver to the Recorder of Deeds of Bucks County for recording the written notice permitted by and in accordance with the provisions of 42 Pa.C.S.A. Section 8143 et seq (the "Open End Mortgage Act") to limit the indebtedness secured by the holder of the Approved Mortgage and to release the obligation of such holder to make further payments and Mortgagor shall serve et copy of such notice upon the holder of the Approved Mortgage more than three (3) days prior to the delivery of such notice to the Recorder, and with respect to the provisions of this subsection (f), Mortgagor irrevocably appoints Mortgagee as its attorney-in-fact (which appointment is agreed to be coupled with an interest) to execute and deliver on Mortgagor's behalf the notice referred to in this subsection (f); and,

(h)     Mortgagor acknowledges and agrees that Mortgagee has the right, pursuant to the Open End Mortgage Act, to deliver to the holder of the Approved Mortgage written notice of the existence of this Mortgage, which written notice otherwise complies with the provisions of the Open End Mortgage Act for the delivery of notice by subordinate lienholders.

**18. Condemnation.** Mortgagor shall notify Mortgagee promptly upon receiving any notice of commencement of any proceedings for the condemnation or other taking of any or all of the Mortgaged Property and shall permit Mortgagee to participate in such proceedings and to receive all proceeds payable to Mortgagor as an award or in settlement, up to the amount of the unpaid principal, accrued interest and any other sums secured hereby. No settlement for any damages sustained may be made by Mortgagor without Mortgagee's prior written approval, and Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor (which appointment is agreed to be coupled with an interest); (a) to collect and receive any such awards, damages, payments and compensation from the authorities making the same; (b) to give receipts and acquittances therefor; (c) to institute, appear in and prosecute any proceeding therefor in the event Mortgagor fails to take such action; and (d) to prosecute to final determination or settlement an appeal or other appropriate proceeding win the event that any initial award or settlement is insufficient to pay in full the Secured Indebtedness, Mortgagor shall execute such further assignments of condemnation awards as Mortgagee may required.   All sums collected by or paid to Mortgagee pursuant to any such assignment, net of any costs, including attorney's fees, incurred

by Mortgagee in collecting the same may be: (x) applied by Mortgagee, in such order of priority as Mortgagee shall determine, to the payment of accrued interest and principal, whether or not then due and payable, or to any other sums secured by this Mortgage (and receipt and application by Mortgagee of any proceeds less than the full amount of the then outstanding indebtedness of Mortgagor secured hereby shall not alter or modify Mortgagor's obligation to continue to pay all amounts specified in the Notes and the Loan Documents); or (y) paid or made available by Mortgagee to Mortgagor, on such terms as Mortgagee may specify, without Mortgagee thereby waiving or impairing any equity or lien, tender and by virtue of this Mortgage, as a result of any such taking, alteration of grade or other injury to or decrease in value of the Mortgaged Property. If, prior to the receipt by Mortgagee of said sums, the Mortgaged Property shall have been sold on foreclosure of this Mortgage, Mortgagee shall have the right, whether or not a deficiency judgment on the Secured Indebtedness shall have been sought, recovered or denied, to receive said sums to the extent of the Secured Indebtedness remaining unsatisfied after such sale, with interest thereon at the "Default Rate (if any) set forth in the Notes, and to receive costs and expenses, disbursements, including attorneys' fees and costs, incurred by Mortgagee in connection with the collection of said sums. Nothing herein shall limit the rights otherwise available to Mortgagee at law or in equity, including the right to intervene as a party to any condemnation proceeding.

**19. Leases; Agreements of Sale.** Mortgagor represents and warrants that there are no leases or agreements to lease, or agreements of sale for all or any part of the Mortgaged Property now in effect, other than agreements of sale in form and content acceptable. to Mortgagee, copies of which have been delivered to Mortgagee prior to execution and delivery of this Mortgage, Without the prior written consent of Mortgagee as to the form and content of any agreement of sale or any lease and the tenant thereunder, including, without limitation, the purchase price under any agreement of sale or the term and rental amount of any lease, which consent Mortgagee may withhold in its discretion, Mortgagor shall not sell or lease or permit anyone else to sell or lease any portion of the Mortgaged Property. Mortgagor hereby assigns to Mortgagee and grants to Mortgagee a security interest in and lien upon, as additional security for the Secured Indebtedness, any and all leases or agreements of sale entered into for any portion of the Mortgaged Property, whether now existing or hereafter created, together with all rentals or sale proceeds due and to become due thereunder and all rights and remedies provided therein for the collection of said rents or sale proceeds Mortgagee in no way assumes or will assume any of the obligations as landlord under any leases or as seller under any agreement of sale, and this assignment shall not release Mortgagor of its obligations as lessor or seller. Until such time as Mortgagee directs otherwise, Mortgagor or such other party as Mortgagor shall direct shall have the right to collect the rentals under said lease, Mortgagor shall perform (or cause to be performed) every obligation of the lessor or seller, as the case may be, and shall enforce every obligation of the lessee or buyer, as the case may be, under every lease or agreement of sale in connection with the Mortgaged Property. Mortgagor shall not modify, alter, waive or cancel any lease, agreement of sale or any part thereof, nor collect in advance more than one month's rent under any lease nor assign any lease or any such rents or the proceeds under any such agreement of sale, except in favor of Mortgagee, All leases and agreements of sale to which Mortgagee

consents shall be expressly subject and subordinate in all respects to the lien of this Mortgage. At Mortgagee's request, Mortgagor shall deliver or cause to be delivered to Mortgagee, assignments of specific leases together with subordination and/or attornment agreements and estoppel letters or certificates from any or all tenants of the Mortgaged property, and such assignments, subordination and/or attornment agreements, estoppel letters and certificates are to be in such form as Mortgagee may require.

Mortgagor shall furnish to Mortgagee from time to time as requested by Mortgagee, a complete list of all agreements of sale and leases for the Mortgaged Property or any portion thereof, in such detail as may be requested by Mortgagee. Mortgagor shall deliver to Mortgagee certified copies of all agreements of sale and leases together with copies of correspondence and memoranda between Mortgagor and purchasers and/or tenants or any successors thereunder setting forth the contractual arrangements between them.

**20. Right to Remedy.** In the event Mortgagor should fail to: (i) pay any taxes, water and sewer rents, assessments, charges, claims, costs, expenses or fees required to be paid under the terms of this Mortgage; (ii) maintain insurance as required herein; or (iii) make all necessary repairs to the Mortgaged Property as required herein, Mortgagee may advance sums on behalf of Mortgagor in payment of said taxes, water and sewer rents, assessments, charges, claims, costs, expenses, fees, insurance premiums and repairs without prejudice to the right of enforcement of the obligations under the Notes, the other Loan Documents or the Secured Indebtedness or the other remedies of Mortgagee as herein provided, by reason of the failure of Mortgagor to make payment of the same. Mortgagor hereby authorizes Mortgagee to make all such payments and repairs. All such sums so advanced by Mortgagee shall be added to and become a part of the Secured Indebtedness, and repayment thereof, together with interest thereon at the "Default Rate" (if any) specified in the Note from the dates of their respective expenditures, may be enforced by Mortgagee against Mortgagor at any time.

**21. Stamps and Taxes.** If at any time any Governmental Authority shall require internal revenue stamps on all or any part of the Loan Documents or the Secured Indebtedness, Mortgagor shall pay for same upon demand. If Mortgagor fails to make such payment within fifteen (15) days after demand for same, Mortgagee may pay for such stamps and add the amount so paid to the principal indebtedness secured by this Mortgage. If any law or ordinance adopted hereafter imposes a tax on Mortgagee with respect to the Mortgaged Property, the value of Mortgagor's equity therein, the amount of the indebtedness secured hereby or this Mortgage, Mortgagee shall have the right at its election, from time to time, to give Mortgagor sixty (60) days written notice to pay such indebtedness secured hereby, whereupon such indebtedness shall become immediately due, payable and collectible at the expiration of such period of sixty (60) days, without further notice or demand, However, if prior thereto, lawfully and without violation of usury laws, Mortgagor has paid any such tax in full as the same became due and payable, such notice shall be deemed to have been rescinded with respect to any right of Mortgagee hereunder arising by reason of the tax so paid.

**22.**    **Security Deposits.**  To the extent permitted by law, Mortgagor shall deposit with Mortgagee all moneys collected as security (or escrow) deposits or other deposits under any leases or agreements of sale for the Mortgaged Property or any part thereof and Mortgagee shall maintain the same in a non-interest-bearing account (to the extent permitted by law), Mortgagee shall hold said security deposits pursuant to the terms and conditions of the respective leases or agreements of sale.  To the extent not permitted under law to deposit the foregoing moneys with Mortgagee, Mortgagor will comply with all applicable laws relating to such security (or escrow) deposits.

**23.**    **Representations and Warranties.**  Mortgagor represents and warrants that:
(a)    Mortgagor has the requisite power to execute this Mortgage and the other Loan Documents and any agreements entered into in connection with any Secured Indebtedness and to perform its obligations hereunder and thereunder, and no consent, authorization or permit not obtained is required in connection with Mortgagor's execution, delivery or performance of any such agreements or obligations.

(b)    The transactions contemplated herein and in the other Loan Documents and all agreements entered into in connection with any Secured Indebtedness are and will in all respects be legal, valid and binding.

(c)    All information, reports, certificates, financial statements and data given by or on behalf of Mortgagor to Mortgagee with respect to any of the Mortgaged Property are accurate in all material respects necessary to make the information contained therein no misleading and are complete insofar as completeness may be necessary to give Mortgagee accurate knowledge of the subject matter.  There has been no material or adverse change in any condition or facts stated therein.

(d)    None of the Mortgaged Property has been damaged by fire or other casualty that has not now been fully restored.

(e)    No notice of taking of any of the Mortgaged Property by eminent domain or condemnation has been received by Mortgagor or its agents, servants or employees and neither Mortgagor nor its agents, servants or employees has knowledge that any such taking or condemnation is contemplated.

(f)    Mortgagor has heretofore given Mortgagee an original executed or true copy of all of the existing leases or agreements of sale relating to the Mortgaged Property, accompanied in each case by all related documents.

(g)    All approvals, consents, authorizations of or designations, declarations or filings with any federal, state or local regulatory bodies or any stockholder, creditor, trustee, landlord or other person or entity required in connection with the execution, delivery or performance by Mortgagor of this Mortgage have been obtained; all licenses, permits and registrations required in connection with the use, occupancy and maintenance of the Mortgaged

Property have been issued, are in full force and effect and all appeal periods applicable thereto have expired without appeal having been taken and the current and proposed uses of the Mortgaged Property comply with all applicable zoning laws and other statutes, ordinances, rules and regulations of all governmental authorities having jurisdiction.

## 24. Additional Covenants of Mortgage.

(a)      Mortgagor shall file all tax returns required to be filed by Mortgagor with the proper authorities, bureaus or departments and all taxes owing to the United States, any state(s) in which Mortgagor does business or the state in which the Mortgaged property is situate and any political subdivision thereof shall be paid when due and payable and before interest or penalties are due thereon.  At Mortgagee's request, Mortgagor will deliver to Mortgagee receipts showing payment of such taxes and within ten (10) days after receipt thereof by Mortgagor, Mortgagor will deliver to Mortgagee copies of all notices of deficiency or other notices pertaining to Mortgagor's tax liability, which may be issued by the Untied States, any state(s) in which Mortgagor does business, the state in which the Mortgaged property is situate and any political subdivision thereof.

(b)      Mortgagor shall keep in effect its existence in good standing under the laws of the Commonwealth of Pennsylvania and its right to own property and transact business therein during the term of this Mortgage.

(c)      Mortgagor, in accordance with the terms of the Loan Agreement, shall promptly commence and diligently complete any and all construction, alterations and renovations that are commenced at any time on the Mortgaged Property.

(d)      In addition to any notice requirements contained elsewhere in this Mortgage or any of the other Loan Documents, Mortgagor shall notify Mortgagee of the occurrence of any of the following:

(i)      A fire or other casualty causing damage to any portion of the Mortgaged Property;

(ii)      Receipt of notice of condemnation or intended condemnation of any portion of the Mortgaged Property;

(iii)      Receipt of notice from any governmental or quasi-governmental authority asserting that the present or proposed development, structure, use or occupancy of the Mortgaged Property constitutes a violation of or noncompliance with any applicable law, statute, code, ordinance, rule or regulation promulgated or enforced by such authority;

(iv)      Receipt of any default or acceleration notice from the holder of the Purchase Money Mortgage or of any lien or security interest in the Mortgaged Property;

(v)      Commencement of any material litigation affecting the Mortgaged

Property, Mortgagor or any guarantor of the Secured Indebtedness; or,

        (vi)     Receipt of any default or termination notice from any tenant of any portion of the Mortgaged Property or from any purchaser or prospective purchaser of all or any portion of the Mortgaged property or any Improvement now or hereafter constructed thereon.

    **25.**  **Events of Default.**    Each of the following shall constitute an event of default hereunder (an "Event of Default"):

        (a)     If there shall occur any Event of Default under the Loan Agreement or a default under any of the other Loan Documents.

        (b)     If Mortgagor shall fail to maintain and deliver to Mortgagee any and all policies of insurance herein required and such failure shall continue beyond ten (10) days after notice from Mortgagee to Mortgagor of such failure.

        (c)     If there shall occur an attachment, execution or other judicial seizure of any assets of Mortgagor or any guarantor of the Secured Indebtedness or of the Premises, Improvements, or Building Equipment.

        (d)     If Mortgagor shall fail to observe or perform any of the other terms, covenants or conditions of this Mortgage or any agreement entered into with respect to any Secured Indebtedness and such failure shall continue beyond ten (10) days after notice from Mortgagee to Mortgagor of such failure.

        (e)     If there shall occur an event of default under any other mortgage encumbering the Premises or any document collateral thereto or under any agreement of sale in respect of all or any portion of the Mortgaged Property.

        (f)     If there shall be any sale or transfer (whether voluntarily or by operation of law) of all or any part of the Mortgaged Property or an interest therein (other than as permitted pursuant to Section 16 hereinabove) or a transfer of any interest in Mortgagor without the prior written consent of Mortgagee, which consent Mortgagee may withhold in its sole and absolute discretion.

        (g)     If Mortgagee receives notice from the holder of any subordinate lien against the Mortgaged Property intended to terminate or limit the indebtedness secured by this Mortgage.

    Any Event of Default under this Mortgage shall constitute a default under any other mortgage from Mortgagor to Mortgagee and any other agreement between Mortgagor and Mortgagee.

    **26.**  **Remedies.** Upon the occurrence of an Event of Default, at the option of Mortgagee,

the whole principal sum and the interest thereon, and all other sums payable under the Note, this Mortgage, the Loan Agreement, the other Loan Documents or any agreement entered into with respect to any Future Advances or any other Secured Indebtedness or under any other loan documents or obligations of Mortgagor to Mortgagee, shall become immediately due and payable, In such event Mortgagee may forthwith and without demand exercise any one or more of the following rights and remedies in addition to any of the rights or remedies provided therein or herein, or in any other documents held as security for the Secured Indebtedness, or such rights and remedies otherwise available to Mortgagee at law or in equity, without further stay, any law, usage or custom to the contrary notwithstanding:

(a)    Foreclosure.    Mortgagee may institute an action to foreclose on this Mortgage against the Mortgaged Property by issuance of a complaint, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt evidenced by the Note, with interest at the rate stipulated in the Note to the date of the occurrence of an Event of Default, and thereafter at the Default Rate specified in the Note, together with all other sums due by Mortgagor in accordance with the provisions of the Note, this Mortgage and any of the other Loan Documents, including all sums which may have been loaned by Mortgagee to Mortgagor after the date of this Mortgage, and all sums which may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on other liens, insurance or repairs to the Mortgaged Property, completion of construction of improvements (including the Improvements), all costs of suit, together with interest at such rate on any judgment obtained by Mortgagee from and after the date of any Sheriff's sale until actual payment is made by the Sheriff of the full amount due Mortgagee, and reasonable attorney's fees and costs. Mortgagee may, at its election, foreclose only as to the sum past due with interest and costs, as above provided, without injury to this Mortgage or the displacement or impairment of the remainder of the lien hereof, and at such foreclosure sale the Mortgaged Property shall be sold subject to all remaining items of indebtedness; and Mortgagee may again foreclose, in the same manner, as often as there may be any sum past due. Any real estate sold pursuant to any writ of execution issued on a judgment obtained by virtue of the Note or this Mortgage, or pursuant to any other judicial proceedings under the Mortgage, may be sold in one parcel or as an entirety, or in such parcels, and in such manner or order as Mortgagee, in its sole discretion, may elect, to the extent permitted by law. Upon any such foreclosure sale, Mortgagee may bid for and purchase the Mortgaged Property and, upon compliance with the terms of sale, may hold, retain, possess and dispose of the Mortgaged Property in its own absolute right without further accountability, Mortgagee is hereby authorized, at its option, to conduct any such foreclosure sale subject to the rights of any tenants of the Mortgaged Property, and the failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted by Mortgagor to be, a defense to any proceedings instituted by Mortgagee to collect the sums secured hereby.

(b)    Possession. Mortgagee may enter into possession of the Mortgaged Property,

with or without legal action, collect therefrom all rentals (which term shall also include sums payable for use and occupation), issues and profits therefrom, and, after deducting all costs of collection and administration expense, apply the net rentals, issues and profits to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: payment of any sums due under any prior lien; payment of taxes, water and sewer rents, charges and claims insurance premiums and all other carrying charges; completion of construction of the Improvements and to the maintenance, repair or restoration of the Mortgaged property; and on account of, and in reduction of, the principal or interest, or both, or any other indebtedness of Mortgagor hereby secured. In and for that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupation of the Mortgaged Property heretofore or hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals and all sums due or to become due under any agreement to sell all or any portion of the Mortgaged property, as well as all rights and remedies provided in such agreements or at law or in equity for the collection of any sums due or to become due thereunder. If Mortgagee shall take possession of the Mortgaged Property, Mortgagee may (subject to the provisions of leases and agreements then in force in accordance with the terms and conditions of this Mortgage and the Loan Documents); (a) hold, manage, occupy, operate and lease the same to Mortgagor or any other person or persons, on such terms and for such periods of time as Mortgagee may deem proper, and the provisions of any lease made by Mortgagee pursuant hereto shall be valid and binding upon Mortgagor notwithstanding the fact that Mortgagee's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of such lease; (b) make such alterations, additions, improvements, renovations, repairs and replacements thereto as Mortgagee may deem proper; (d) demolish all or any portion of the improvements situated upon the Mortgaged property which in the judgment of Mortgagee may be in unsafe condition and dangerous to life and/or property; (d) remodel such improvements so as to make the same available in whole or in part for business purposes; and (e) retain not less than six (6%) percent of the rents, issues and profits collected from the Mortgaged Property in payment of the services of Mortgagee in relation to the Mortgaged property.  All moneys advanced by Mortgagee for the purposes aforesaid and not repaid out of the rents collected shall immediately and without demand be repaid by Mortgagor to Mortgagee, together with interest thereon at the Default rate set forth in the Note and shall be added to the Secured Indebtedness. The taking of possession and collection of rents by Mortgagee as aforesaid shall not be construed to be an affirmation of any lease of the Mortgaged Property or any part thereof, and Mortgagee or any other purchaser at any foreclosure sale may if otherwise entitled to do so, exercise the right to terminate any such lease as though such taking of possession and collection of rents had not occurred.  **FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PROPERTY UPON THE OCCURRENCE OF AN EVENT OF DEFAULT HEREUNDER OR UNDER THE NOTE OR ANY OF THE OTHER LOAN DOCUMENTS, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMS BY, UNDER OR THROUGH MORTGAGOR, TO SIGN AN AGREEMENT FOR ENTERING IN ANY COMPETENT COURT AN ACTION IN EJECTMENT FOR POSSESSION OF THE MORTGAGED PROPERTY AND TO**

APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING BY, UNDER OR THROUGH MORTGAGOR, IN FAVOR OF MORTGAGEE, FOR RECOVERY BY MORTGAGEE OF POSSESSION THEREOF, FOR WHICH THIS MORTGAGE, OR A COPY THEREOF, VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE MORTGAGED PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE MORTGAGED PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, MORTGAGEE SHALL HAVE THE RIGHT FOR THE SAME EVENT OF DEFAULT OR ANY SUBSEQUENT EVENT OF DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE MORTGAGED PROPERTY. MORTGAGEE MAY BRING AN ACTION IN EJECTMENT AND CONFESS JUDGMENT THEREIN BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT THEREIN OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OF THE MORTGAGED PROPERTY IN WHICH MORTGAGEE IS THE SUCCESSFUL BIDDER, IT BEING THE UNDERSTANDING OF THE PARTIES THAT THE AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR OBTAINING POSSESSION AND CONFESSION OF JUDGMENT THEREIN IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THE MORTGAGE AND THE NOTE, AND SHALL SURVIVE ANY EXECUTION SALE TO MORTGAGEE.

       (c)    Receiver. Mortgagee, without regard to the value or occupancy of the Mortgaged property or the solvency of Mortgagor, and with or without notice to Mortgagor, shall be absolutely entitled an a matter of right, if it so elects, to the appointment of a receiver to enter upon and take possession of the Mortgaged Property and to collect all rents, revenues, issues, income, products and profits thereof and apply the same as the court may direct, without any consideration of or for the value of the Mortgaged Property, or its depreciation from any cause whatsoever or the solvency or insolvency of Mortgagor or any other party liable to pay the Secured Indebtedness. Mortgagor hereby specifically waives the right to object to the appointment of a receiver as provided herein and hereby expressly consents that such appointment may be done without notice to Mortgagor, the receiver shall have all rights and powers permitted under the laws of the state where the Mortgaged Property is located and such other powers as the court making such appointment shall confer. The expenses, including receiver's fees, attorney's fees and costs and agent's compensation incurred pursuant to the powers herein contained shall be secured by this Mortgage. The right to enter and take possession of and to manage and operate the Mortgaged Property, and to collect the rents, issues and profits thereof, whether by a receiver or otherwise, shall be cumulative to any other right or remedy hereunder or afforded at law or in equity, and may be exercised concurrently therewith or independently thereof. Mortgagee shall be liable to account only for such rents, issues and profits as are actually received by Mortgagee. Notwithstanding the appointment of any receiver or other custodian Mortgagee shall be entitled as pledge to the possession and control of any cash, deposits or instruments at the time held by,

or payable or deliverable under the terms of this Mortgage to Mortgagee.

(d)     Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage, as they become due, without regard to whether or not the principal indebtedness or any other sums secured by the Note and this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of Mortgage Foreclosure, co any other action, for any Event of Default by Mortgagor existing at the time the earlier action was commenced.

(e)     Mortgagee shall have the power and authority to institute and maintain at any time and from time to time any suits and proceedings as Mortgagee may deem advisable: (i) to prevent any impairment of the Mortgaged Property by any acts which may be unlawful or to prevent any violation of this Mortgage; (ii) to preserve or protect its interest in the Mortgaged Property; and (iii) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to Mortgagee's interest.

(f)     Mortgagee may exercise each and every right available to it as a secured party under the Code.

(g)     Mortgagee may exercise each and every right granted to it hereunder, under any of the other Loan Documents, under any other documents in connection with any of the Secured Indebtedness, at law or in equity.

### 27. **Remedies Cumulative.**

(a)     The rights and remedies of Mortgagee as provided in this Mortgage, in the Note and in the other Loan Documents shall be cumulative and concurrent, may be pursued separately, successively or together against Mortgagor or against the Mortgaged Property, or both, at the sole discretion of Mortgagee, and may be exercised as often as occasion therefor shall arise. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

(b)     Any failure by Mortgagee to insist upon strict performance by Mortgagor of any of the terms and provisions of this Mortgage or of the Notes or any of the other Loan Documents shall not be deemed to be a waiver of any of the terms or provisions of the mortgage and/or the Note and/or any of the other Loan Documents, and Mortgagee shall have the right thereafter to insist upon strict performance by Mortgagor of any and all of such terms and provisions.

(c)     Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved of any such obligation by reason (of the failure of Mortgagee to comply with any request of

Mortgagor or of any other person so obligated to take action to foreclose on this Mortgage or otherwise (enforce an provisions of the Mortgage, the Note or any of the other Loan Documents, or by reason of the release, regardless of consideration, of all or any part of the security held for the Secured Indebtedness, or by reason of any agreement or stipulation between any subsequent owner of the Mortgaged Property and Mortgagee extending the time of payment or modifying the terms of this Mortgage, the Note or any of the other Loan Documents without first having obtained the consent of Mortgagor or such other person; and in the "latter event Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee. In the event Mortgagee: (a) releases, as aforesaid, any part of the security described herein or any person liable for any indebtedness secured hereby; (b) grants an extension of time on any payments of the indebtedness secured hereby; (c) takes other or additional security for the payment thereof; or (d) waives or fails to exercise any right granted herein or in the Note or any of the other Loan Documents, said act or omission shall not release Mortgagor, subsequent purchasers of the Mortgaged property or any part thereof under any covenant of this Mortgage or of the Note, nor preclude Mortgagee from exercising any right, power or privilege herein granted or intended to be granted in the event of the occurrence of any other Event of Default then existing or any subsequent Event of Default.

**28. No Release.** No extension or indulgence granted to Mortgagor, no alteration, change or modification hereof, of either of the Note or of any other Loan Document or any agreement entered into with respect to any Secured Indebtedness consented or agreed to by Mortgagee and no other act or omission of Mortgagee, including the taking of additional security or the release of any security, shall constitute a release of the lien and obligation of this mortgage or be interposed as a defense against the enforcement of this Mortgage, except for an act of Mortgagee that constitutes an express, effective release and satisfaction of the Secured Indebtedness.

**29.    Counsel Fees.** If Mortgagee becomes a party to any suit or proceeding affecting the Mortgaged Property or title thereto, the lien created by this Mortgage or mortgagee's interest therein, or if Mortgagee engages counsel to collect any of the indebtedness secured hereby or to modify, rearrange or document any work out or restructuring of, or to enforce performance of the agreements, conditions, covenants, provisions or stipulations of this Mortgage, the Note or any of the other Loan Documents, Mortgagee's costs, expenses and reasonable counsel fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor, on demand, with interest at the then effective rate set forth in the Note, and until paid they shall be deemed to be part of the indebtedness evidence by the Note and secured by this Mortgage.

**30.    Modification.** This Mortgage may not be changed orally or by any course of dealing between Mortgagor and Mortgagee, but only by an agreement in writing duly executed on behalf of the party against whom enforcement of any waiver, change, modification or discharge is sought.

**31. Further Assurances.** If at any time Mortgagee shall deem or shall be advised that

any further instruments, documents, acts or things are necessary or desirable to vest or confirm any right or remedy herein granted, Mortgagor will execute, acknowledge when appropriate and deliver any instrument or document and do or cause to be done any act or thing deemed necessary or desirable by Mortgagee for any such purposes.

**32.   Subrogation.** If any or all of the proceeds of the Note hereby secured or any other sums advanced by Mortgagee to or for the benefit of Mortgagor or to protect the security or priority of the lien hereof have been or are used to pay, extinguish, extend or renew any prior indebtedness, lien, security interest or other encumbrance against all or any part of the Mortgaged Property, then, to that extent, Mortgagee and the Secured Indebtedness and the lien of this Mortgage will be subrogated to all of the rights, claims, liens, titles and interest previously existing in favor of the holder of such prior indebtedness to secure the indebtedness so paid, extinguished, extended or renewed, and the former rights, claims, liens, titles and interest, if any, of the holder of such prior indebtedness shall not be deemed to be waived, but shall continue in full force and effect in favor of Mortgagee as cumulative security for payment of the Secured Indebtedness.

**33. Covenant Running with the Land.** Any act or agreement to be done or performed by Mortgagor shall be construed as a covenant running with the land and shall be binding upon Mortgagor and its successors and assigns as if they had personally made such agreement.

**34.   Notices.**  All notices, requests and demands to or upon the parties hereto shall be in writing and shall be deemed to have been duly given or made if delivered in person, immediately upon delivery; if by facsimile transmission, immediately upon sending and upon confirmation of all transmission; if by nationally recognized overnight courier service with instructions to deliver the next business day, one (1) business day after sending; and if by registered or certified mail, return receipt requested, five (5) days after mailing.  All notices, requests and demands upon the parties are to be given to the following addresses (or to such other  address as any Party may designate by notice in accordance with this Section):

> **If to Mortgagor:**
> Island View Crossing II, L.P.
> One South State Street
> Newtown, PA 18940
> Attention: Renato J. Gualtieri

> **If to Mortgagee:**
>  Prudential Savings Bank
>  1834 W. Oregon Avenue
>  Philadelphia, PA 19145-4725
>  Attention: Salvatore Fratanduono, Sr. VP/CLO

> **with copy to:**

Jerome R, Balka, Esquire
Two Penn Center, Suite 520
1500 John F. Kennedy Blvd.
Philadelphia, PA 19102-1756

**35.   Waivers**. To the extent permitted by law, Mortgagor hereby waives and releases: (i) all procedural errors, defects and imperfections in any proceedings instituted by Mortgagee under the terms of this Mortgage or any of the other Loan Documents or any other agreement entered into with respect to any Secured Indebtedness; (ii) all benefits that might accrue to Mortgagor by virtue of any present or future laws exempting the Mortgaged Property, or any other property, real or personal, or any part of the proceeds arising from any sale of any such property, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process or extension of time for payment or otherwise providing for any valuation, appraisal or exemption; (iii) all rights to inquisition of the Mortgaged Property, (iv) any requirement for bonds, security or sureties required by statute, court rule or otherwise; (v) all rights to claim or recover attorney's fees and costs in the event Mortgagor is successful in any action to remove or suspend a judgment entered by confession; and (vi) all provisions under any Act of Assembly of the Commonwealth of Pennsylvania now in effect or hereafter passed to relieve Mortgagor in any manner from the obligations hereby assumed or requiring the foreclosure and sale of the Mortgaged Property before the attachment (of or execution against other property, real or personal, of Mortgagor.

**36. Construction.** The use of the words "Mortgagor" or "Mortgagee" shall be deemed to include the successors and assigns of the party or parties, If there shall be more than one Mortgagor or party constituting the Mortgagor, the obligation of each shall be joint and several. The use of any gender shall include all genders. The singular number shall include the plural, or the plural the singular, as the context may require.

**37. Invalid Provisions Disregard.** If any term or provision of this Mortgage or the application thereof to any personal circumstances shall to any extent be invalid or unenforceable, the remainder of this Mortgage or the application of such terms or the provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby and each term and provision of this Mortgage shall be valid and be enforced to the fullest extent permitted by law.

**38.  Applicable Law.** This Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

**39.   Captions**. The captions appearing in this Mortgage are inserted solely for convenience of reference and shall not constitute a part of this Mortgage, nor shall they in any way affect its meaning, construction or affect.

**40.   Usury.** Nothing contained herein nor any transaction related hereto shall be

construed or shall so operate either presently or prospectively to require Mortgagor to pay interest at a rate greater than is now lawful in such case to contract for, but shall require payment of interest only to the extent of such lawful rate or to make any payments or do any act contrary to law, but if any laws or provisions herein contained shall otherwise so operate to invalidate this Mortgage in whole or in part, then such clauses and provisions only shall be held for naught as though not contained herein and the remainder of this Mortgage shall remain operative and in full force and effect.  Any interest paid in excess of the lawful rate shall be refunded or credited to Mortgagor as provided in the Notes or other instruments evidencing any additional credit.

**41.   No Beneficiaries.**  The rights and remedies of this Mortgage shall not inure to the benefit of any third party other than the successors or assignees of Mortgagee.

**IN WITNESS WHEREOF,** the undersigned has caused this Mortgage and Security Agreement to be duly executed, under seal, the day and year first above written.

**MORTGAGOR:**

**ISLAND VIEW CROSSING II, L.P.**
**A PA Limited Partnership**
**by: ISLAND VIEW PROPERTIES, INC.**
**Its General Partner**

By: _____
      Renato J. Gualtieri, President

COMMONWEALTH OF PENNSYLVANIA:
COUNTY OF PHILADELPHIA:

On this, the **26th** day of **November ,** **2014**, before me, the undersigned notary public, personally appeared **Renato J. Gualtieri** who acknowledged himself to be the President of **Island View Properties, Inc.**, a PA Corporation which is the General Partner of Island View Crossing II, L.P. and that he as such President of such company, being authorized to do so, executed the foregoing Mortgage and Security Agreement for the purposes therein contained, by signing the name of the corporation by himself as such President.

_____
**Notary Public**

My Commission Expires:.........................................

The address of the within named Mortgagee is:
**Prudential Savings Bank**
**1834 W. Oregon Avenue**
**Philadelphia, PA 19145**
By: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kimberly Anne Jowett, Notary Public
Langhorne Boro, Bucks County
My Commission Expires Sept. 26, 2017
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Island View Crossing II, L.P.            Open End Mortgage and Security Agreement 11/26/14            27

**EXHIBIT 'A'**
**LEGAL DESCRIPTION**

ALL THAT CERTAIN lot or piece of land, situate in Bristol Borough, Bucks County, Pennsylvania described according to Plan of Subdivision dated March 29, 2000, revised May 1, 2000 and recorded in Plan Book 300 Page 96, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Radcliffe Street (SR 2002), a corner of Lot No. 2 on said Plan; thence extending from said point of beginning along said Lot No. 2, South 54 degrees 04 minutes 10 seconds East 694.13 feet to a point in line of the Delaware River; thence extending along the same, the two following courses and distances: (1) South 21 degrees 17 minutes 52 seconds West 271.88 feet; and (2) South 33 degrees 23 minutes 27 seconds West 718.45 feet to a point, a corner of lands now or late of Bucks County Redevelopment Authority; thence extending along the same the three following courses and distances, viz: (1) North 54 degrees 04 minutes 50 seconds West 450.19 feet; (2) South 35 degrees 55 minutes 10 seconds West 36.63 feet; and (3) North 54 degrees 04 minutes 10 seconds West 344.47 feet to a point on the Southeasterly side of Radcliffe Street, aforesaid; thence extending along the same, North 35 degrees 55 minutes 50 seconds East 1017.52 feet to the first mentioned point and place of beginning.

BEING Lot No. 1 on said  Plan.  - Radcliffe Street, Bristol, PA 19007

BEING Tax Parcel No. 4-027-119.

BEING THE SAME PREMISES which Redevelopment Authority of the County of Bucks by Deed dated June 5, 2003 and recorded on August 25, 2003 in the Office of the Recorder of Deeds in and for the County of Bucks, Pennsylvania in Book 3537 at Page 234 et seq granted and conveyed unto Island View Crossing II, L.P., in fee.

**UNDER AND SUBJECT** to the lien of a certain first mortgage from Redevelopment Authority of Bucks County dated June 13, 2003 and recorded on August 25, 2003 in the Office of the Bucks County Recorder of Deeds  in Book 3537 at Page 792 et seq in the principal amount of $2,500,000.00 as reduced by payments on account.

**ANY DEFAULT IN ANY MORTGAGE** which is a lien senior to  the lien of this mortgage shall be considered a default under this mortgage.