Recording Requested By,
And After Recording, Return To:

OPEN-END MORTGAGE
AND ASSIGNMENT OF RENTS AND LEASES

This Mortgage secures Future Advances

THIS OPEN-END MORTGAGE AND ASSIGNMENT (this "Mortgage") is executed _____ 2018, by **ISLAND VIEW CROSSING II, L.P.**, a Pennsylvania limited partnership ("**Mortgagor**"), to ("**Mortgagee**").Capitalized terms used herein and unless otherwise defined will have the meanings set forth therefor in Construction Loan and Security Agreement by and between Mortgagor and Mortgagee dated even date herewith.

ARTICLE I. MORTGAGE

1.1  Grant. For the purposes and upon the terms and conditions in this Mortgage, Mortgagor irrevocably for good and valuable consideration, receipt of which is hereby acknowledged, mortgages, grants, conveys and assigns to Mortgagee, with the right of entry and possession, Mortgagor's right, title and interest in: (a) all real property located in Bucks County, Pennsylvania, and described on Exhibit A attached hereto; (b) all easements, rights-of-way and rights used in connection with or as a means of access to any portion of said real property; (c) all tenements, hereditaments and appurtenances and all the estates and rights of Mortgagor thereof and thereto; (d) all right, title and interest of Mortgagor, now owned or hereafter acquired, in and to any land lying within the right-of-way of any street, open or proposed, adjoining said real property, and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with said real property; (e) all buildings, improvements and landscaping now or hereafter erected or located on said real property; (f) all development rights, governmental or quasi-governmental licenses, permits or approvals, zoning rights and other similar rights or interests which relate to the development, use or operation of, or that benefit or are appurtenant to, said real property; (g) all mineral rights, oil and gas rights, air rights, water or water rights, including without limitation, all wells, canals, ditches and reservoirs of any nature and all rights thereto, appurtenant to or associated with said real property, whether decreed or undecreed, tributary or non-tributary, surface or underground, appropriated or unappropriated, and all shares of stock in any water, canal, ditch or reservoir company, and all well permits, water service contracts, drainage rights and other evidences of any such rights; and (h) all interest or estate which Mortgagor now has or may hereafter acquire in said real property and all additions and accretions thereto, and all awards or payments made for the taking of all or any portion of said real property by eminent domain or any proceeding or purchase in lieu thereof, or any damage to any portion of said real property (collectively, the "**Subject Property**"). The listing of specific rights or property shall not be interpreted as a limitation of general terms.

To have and to hold the Subject Property unto Mortgagee, its successors and assigns, forever and at all times until the entire Secured Obligations (as hereinafter defined) including, but not limited to, unpaid

principal amount of the Secured Obligations, and all other sums now or hereafter due Mortgagee under the terms hereof and thereof, is fully paid, together with all interest thereon, Mortgagor covenants, promises and agrees with Mortgagee as set forth herein.

PROVIDED ALWAYS, that if Mortgagor shall pay to Mortgagee all the Secured Obligations in accordance with their terms and conditions and shall keep, observe, perform and comply with all of the provisions of this Mortgage and the Secured Obligations to be kept, observed, performed or complied with by Mortgagor, then this Mortgage and the estate and interest hereby granted shall cease and have no further effect; and in such case, Mortgagee, on demand of and at the sole cost and expense of Mortgagor, shall promptly execute proper instruments in recordable form acknowledging satisfaction and discharge of this Mortgage and shall release or assign all of its right, title and interest of, in and to the Subject Property, including the assignment by Mortgagor of all of its right, title and interest in all current or future leases covering all or any part of the Subject Property and in the rents thereunder, and shall deliver to Mortgagor any other property then pledged to and held by Mortgagee pursuant to the terms of this Mortgage and the Secured Obligations, including all policies of title, fire and property damage insurance theretofore furnished or assigned to Mortgagee and any monies not theretofore applied by Mortgagee in accordance with the Secured Obligations.

1.2    Address. The address of the Subject Property (if known) is: 1600 Radcliff Street, Bristol Borough, Bucks County, Pennsylvania (Tax Parcel No. 4-27-119). Neither the failure to designate an address nor any inaccuracy in the address designated shall affect the validity or priority of the lien of this Mortgage on the Subject Property as described on Exhibit A. In the event of any conflict between the provisions of Exhibit A and said address, Exhibit A shall control.

## ARTICLE II. OBLIGATIONS SECURED

2.1    Obligations Secured. Mortgagor makes this grant and assignment for the purpose of securing the following obligations (each, a "**Secured Obligation**" and collectively, the "**Secured Obligations**"):

(a)    payment to Mortgagee of all sums at any time owing and performance of all other obligations arising under or in connection with that certain promissory note ("**Note**") dated as of the date hereof in the maximum principal amount of Four Million Seven Hundred Thousand Dollars (**$4,700,000.00**) with interest as provided therein, executed by Mortgagor and payable to Mortgagee or its order, together with the payment and performance of any other indebtedness or obligations incurred in connection with the credit accommodation evidenced by the Note, whether or not specifically referenced therein; and

(b)    payment and performance of all obligations of Mortgagor under this Mortgage, together with all advances, payments or other expenditures made by Mortgagee as or for the payment or performance of any such obligations of Mortgagor; and

(c)    payment and performance of all future advances and other obligations that the then record owner of the Subject Property may agree to pay and/or perform for the benefit of Mortgagee, when any such advance or other obligation is evidenced by a writing which recites that it is secured by this Mortgage; and

(d)    all modifications, extensions and renewals of any of the Secured Obligations (including without limitation, (i) modifications, extensions or renewals at a different rate of interest, or (ii) deferrals or accelerations of the required principal payment dates or interest payment dates or both, in whole or in part), however evidenced, whether or not any such modification, extension or renewal is evidenced by a new or additional promissory note or notes.

2.2    Obligations.  The term "**obligations**" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities heretofore, now or hereafter made, incurred or created, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, joint or several, including without limitation, all principal, interest, charges, including prepayment charges and late charges, and loan fees at any time accruing or assessed on any Secured Obligation.

2.3    Incorporation.  All terms of the Secured Obligations are incorporated herein by this reference.  All persons who may have or acquire an interest in the Subject Property are hereby deemed to have notice of the terms of the Secured Obligations and to have notice, if provided therein, that:  (a) the Note or any other Secured Obligation may permit borrowing, repayment and re-borrowing;  and (b) the rate of interest on one or more of the Secured Obligations may vary from time to time.

2.4    Open-End Mortgage.  This Mortgage is an Open-End Mortgage as defined in 42 Pa.C.S.A. § 8143(f) and, as such, is entitled to the benefits of Senate Bill 693, 1989 session of the General Assembly of Pennsylvania, as codified at 42 Pa.C.S.A. §8143 et seq.  The parties to this Mortgage intend that, in addition to the Secured Obligations and the obligations secured hereby, this Mortgage shall secure unpaid balances of loan advances made after this Mortgage is left for record with the Recorder's Office of Bucks County, Pennsylvania, whether such advances are made pursuant to an obligation of Mortgagee or otherwise.  The maximum amount of unpaid indebtedness of principal secured by this Mortgage (which shall consist of unpaid balances of loan advances made either before or after, or both before and after, this Mortgage is left for record), which may be outstanding at any time is twice the aggregate principal amount of Secured Obligations, plus accrued and unpaid interest thereon.  In addition to the Secured Obligations, this Mortgage secures unpaid balances of advances made, with respect to the Subject Property, for the payment of taxes, assessments, maintenance charges, insurance premiums or costs incurred for the protection of the Subject Property or the lien of this Mortgage, expenses including, but not limited to, costs and attorneys' fees, incurred by Mortgagee by reason of the occurrence of a Default by Mortgagor under this Mortgage or any of the other Loan Documents.

## ARTICLE III.  ASSIGNMENT OF RENTS

3.1    Assignment.  For the purposes and upon the terms and conditions set forth herein, Mortgagor irrevocably assigns to Mortgagee all of Mortgagor's right, title and interest in, to and under all leases, licenses, rental agreements and other agreements of any kind relating to the use or occupancy of any of the Subject Property, whether existing as of the date hereof or at any time hereafter entered into, together with all guarantees of and security for any tenant's or lessee's performance thereunder, and all amendments, extensions, renewals and modifications thereto (each, a "**Lease**" and collectively, the "**Leases**"), together with any and all other rents, issues and profits of the Subject Property (collectively, "**Rents**").  This assignment shall not impose upon Mortgagee any duty to produce Rents from the Subject Property, nor cause Mortgagee to be: (a) a "mortgagee in possession" for any purpose; (b) responsible for performing any of the obligations of the lessor or landlord under any Lease; or (c) responsible for any waste committed by any person or entity at any time in possession of the Subject Property or any part thereof, or for any dangerous or defective condition of the Subject Property, or for any negligence in the management, upkeep, repair or control of the Subject Property.  This is an absolute assignment, not an assignment for security only, and Mortgagee's right to Rents is not contingent upon and may be exercised without taking possession of the Subject Property.  Mortgagor agrees to execute and deliver to Mortgagee, within five (5) days of Mortgagee's written request, such additional documents as Mortgagee may reasonably request to further evidence the assignment to Mortgagee of any and all Leases and Rents.  Mortgagee, at Mortgagee's option and without notice, may notify any lessee or tenant of this assignment of the Leases and Rents.

3.2    Protection of Security.  To protect the security of this assignment, Mortgagor agrees:

(a)    At Mortgagor's sole cost and expense:  (i) to perform each obligation to be performed by the lessor or landlord under each Lease and to enforce or secure the performance of each obligation to be performed by the lessee or tenant under each Lease; (ii) not to modify any Lease in any material respect, nor accept surrender under or terminate the term of any Lease; (iii) not to anticipate the Rents under any Lease; and (iv) not to waive or release any lessee or tenant of or from any Lease obligations.  Mortgagor assigns to Mortgagee all of Mortgagor's right and power to modify the terms of any Lease, to accept a surrender under or terminate the term of or anticipate the Rents under any Lease, and to waive or release any lessee or tenant of or from any Lease obligations, and any attempt on the part of Mortgagor to exercise any such rights or powers without Mortgagee's prior written consent shall be a breach of the terms hereof.

(b)    At Mortgagor's sole cost and expense, to defend any action in any manner connected with any Lease or the obligations thereunder, and to pay all costs of Mortgagee, including reasonable attorneys' fees, in any such action in which Mortgagee may appear.

(c)    That, should Mortgagor fail to do any act required to be done by Mortgagor under a Lease, then Mortgagee, but without obligation to do so and without notice to Mortgagor and without releasing Mortgagor from any obligation hereunder, may make or do the same in such manner and to such extent as Mortgagee deems necessary to protect the security hereof, and, in exercising such powers, Mortgagee may employ attorneys and other agents, and Mortgagor shall pay necessary costs and reasonable attorneys' fees incurred by Mortgagee, or its agents, in the exercise of the powers granted herein. Mortgagor shall give prompt notice to Mortgagee of any default by any lessee or tenant under any Lease, and of any notice of default on the part of Mortgagor under any Lease received from a lessee or tenant thereunder, together with an accurate and complete copy thereof.

(d)    To pay to Mortgagee immediately upon demand all sums expended under the authority hereof, including reasonable attorneys' fees, together with interest thereon at the highest rate per annum payable under any Secured Obligation, and the same, at Mortgagee's option, may be added to any Secured Obligation and shall be secured hereby.

3.3    License.  Mortgagee confers upon Mortgagor a license ("**License**") to collect and retain the Rents as, but not before, they come due and payable, until the occurrence of any Default.  Upon the occurrence of any Default, the License shall be automatically revoked, and Mortgagee may, at Mortgagee's option and without notice, either in person or by agent, with or without bringing any action, or by a receiver to be appointed by a court:  (a) enter, take possession of, manage and operate the Subject Property or any part thereof; (b) make, cancel, enforce or modify any Lease; (c) obtain and evict tenants, fix or modify Rents, and do any acts which Mortgagee deems proper to protect the security hereof; and (d) either with or without taking possession of the Subject Property, in its own name, sue for or otherwise collect and receive all Rents, including those past due and unpaid, and apply the same in accordance with the provisions of this Mortgage.  The entering and taking possession of the Subject Property, the collection of Rents and the application thereof as aforesaid, shall not cure or waive any Default, nor waive, modify or affect any notice of default hereunder, nor invalidate any act done pursuant to any such notice.  The License shall not grant to Mortgagee the right to possession, except as provided in this Mortgage.

ARTICLE IV.  RIGHTS AND DUTIES OF THE PARTIES

4.1    Title.  Mortgagor warrants that, except as disclosed to Mortgagee prior to the date hereof in a writing which refers to this warranty, Mortgagor lawfully possesses and holds fee simple title to, or if permitted by Mortgagee in writing, a leasehold interest in, the Subject Property without limitation on the

right to encumber, as herein provided, and that this Mortgage is a valid lien on the Subject Property and all of Mortgagor's interest therein.

    4.2    <u>Taxes and Assessments</u>. Subject to the right, if any, of Mortgagor to contest payment of the following pursuant to any other agreement between Mortgagor and Mortgagee, Mortgagor shall pay prior to delinquency all taxes, assessments, levies and charges imposed: (a) by any public or quasi-public authority or utility company which are or which may become a lien upon or cause a loss in value of the Subject Property or any interest therein; or (b) by any public authority upon Mortgagee by reason of its interest in any Secured Obligation or in the Subject Property, or by reason of any payment made to Mortgagee pursuant to any Secured Obligation; provided however, that Mortgagor shall have no obligation to pay any income taxes of Mortgagee. Promptly upon request by Mortgagee, Mortgagor shall furnish to Mortgagee satisfactory evidence of the payment of all of the foregoing. Mortgagee is hereby authorized to request and receive from the responsible governmental and non-governmental personnel written statements with respect to the accrual and payment of any of the foregoing.

    4.3    <u>Performance of Secured Obligations</u>. Mortgagor shall promptly pay and perform each Secured Obligation when due.

    4.4    <u>Liens, Encumbrances and Charges</u>. Mortgagor shall immediately discharge any lien on the Subject Property not approved by Mortgagee in writing. Except as otherwise provided in any Secured Obligation or other agreement with Mortgagee, Mortgagor shall pay when due all obligations secured by or reducible to liens and encumbrances which shall now or hereafter encumber the Subject Property, whether senior or subordinate hereto, including without limitation, any mechanics' liens.

    4.5    <u>Insurance</u>. Mortgagor shall insure the Subject Property against loss or damage by fire and such other risks as Mortgagee shall from time to time require. Mortgagor shall carry commercial general liability insurance, flood insurance as required by applicable law and such other insurance as Mortgagee may reasonably require, including without limitation, terrorism, business interruption insurance or loss of rental value insurance. Mortgagor shall maintain all required insurance at Mortgagor's expense, under policies issued by companies and in form and substance satisfactory to Mortgagee. Mortgagee, by reason of accepting, rejecting, approving or obtaining insurance, shall not incur any liability for: (a) the existence, nonexistence, form or legal sufficiency thereof; (b) the solvency of any insurer; or (c) the payment of losses. All policies and certificates of insurance shall name Mortgagee as loss payee, and shall provide that the insurance cannot be terminated as to Mortgagee except upon a minimum of ten (10) days' prior written notice to Mortgagee. Immediately upon any request by Mortgagee, Mortgagor shall deliver to Mortgagee the original of all such policies or certificates, with receipts evidencing annual prepayment of the premiums.

    4.6    <u>Tax and Insurance Impounds</u>. At Mortgagee's option and upon its demand, Mortgagor shall, until all Secured Obligations have been paid in full, pay to Mortgagee monthly, annually or as otherwise directed by Mortgagee an amount estimated by Mortgagee to be equal to: (a) all taxes, assessments, levies and charges imposed by any public or quasi-public authority or utility company which are or may become a lien upon the Subject Property and will become due for the tax year during which such payment is so directed; and (b) premiums for fire, other hazard and mortgage insurance next due. If Mortgagee determines that amounts paid by Mortgagor are insufficient for the payment in full of such taxes, assessments, levies and/or insurance premiums, Mortgagee shall notify Mortgagor of the increased amount required for the payment thereof when due, and Mortgagor shall pay to Mortgagee such additional amount within thirty (30) days after notice from Mortgagee. All amounts so paid shall not bear interest, except to the extent and in the amount required by law. So long as there is no Default, Mortgagee shall apply said amounts to the payment of, or at Mortgagee's sole option release said funds to Mortgagor for application to and payment of, such taxes, assessments, levies, charges and insurance premiums. If a Default exists, Mortgagee at its sole option may apply all or any part of said amounts to

any Secured Obligation and/or to cure such Default, in which event Mortgagor shall be required to restore all amounts so applied, as well as to cure any Default not cured by such application. Mortgagor hereby grants and transfers to Mortgagee a security interest in all amounts so paid and held in Mortgagee's possession, and all proceeds thereof, to secure the payment and performance of each Secured Obligation. Upon assignment of this Mortgage, Mortgagee shall have the right to assign all amounts collected and in its possession to its assignee, whereupon Mortgagee shall be released from all liability with respect thereto. The existence of said impounds shall not limit Mortgagee's rights under any other provision of this Mortgage or any other agreement, statute or rule of law. Within ninety-five (95) days following full repayment of all Secured Obligations (other than as a consequence of a foreclosure or conveyance in lieu of foreclosure of the liens and security interests securing any Secured Obligation), or at such earlier time as Mortgagee in its discretion may elect, the balance of all amounts collected and in Mortgagee's possession shall be paid to Mortgagor, and no other party shall have any right of claim thereto.

    4.7    <u>Damages; Insurance and Condemnation Proceeds</u>.

    (a)    All awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation (or transfer in lieu thereof) for public or private use affecting the Subject Property; (ii) all other claims and awards for damages to or decrease in value of the Subject Property; (iii) all proceeds of any insurance policies payable by reason of loss sustained to the Subject Property; and (iv) all interest which may accrue on any of the foregoing, are all absolutely and irrevocably assigned to and shall be paid to Mortgagee. At the absolute discretion of Mortgagee, whether or not its security is or may be impaired, but subject to applicable law if any, and without regard to any requirement contained in any other Section hereof, Mortgagee may apply all or any of the proceeds it receives to its expenses in settling, prosecuting or defending any such claim and apply the balance to the Secured Obligations in any order, and release all or any part of the proceeds to Mortgagor upon any conditions Mortgagee may impose. Mortgagee may commence, appear in, defend or prosecute any assigned claim or action, and may adjust, compromise, settle and collect all claims and awards assigned to Mortgagee; provided however, that in no event shall Mortgagee be responsible for any failure to collect any claim or award, regardless of the cause of the failure.

    (b)    At its sole option, Mortgagee may permit insurance or condemnation proceeds held by Mortgagee to be used for repair or restoration but may impose any conditions on such use as Mortgagee deems necessary.

    4.8    <u>Maintenance and Preservation of Subject Property</u>. Subject to the provisions of any Secured Obligation, Mortgagor covenants:

    (a)    to keep the Subject Property in good condition and repair;

    (b)    to restore promptly and in good workmanlike manner any portion of the Subject Property which may be damaged or destroyed, unless Mortgagee requires that all of the insurance proceeds be used to reduce the Secured Obligations as provided in the Section hereof entitled <u>Damages; Insurance and Condemnation Proceeds</u>;

    (c)    to comply with and not to suffer violation of any or all of the following which govern acts or conditions on, or otherwise affect the Subject Property:  (i) laws, ordinances, regulations, standards and judicial and administrative rules and orders; (ii) covenants, conditions, restrictions and equitable servitudes, whether public or private; and (iii) requirements of insurance companies and any bureau or agency which establishes standards of insurability;

    (d)    not to commit or permit waste of the Subject Property; and

(e)    to do all other acts which from the character or use of the Subject Property may be reasonably necessary to maintain and preserve its value.

4.9    <u>Hazardous Substances; Environmental Provisions</u>.  Mortgagor represents and warrants to Mortgagee as follows:

(a)    Except as disclosed to Mortgagee in writing prior to the date hereof, the Subject Property is not and has not been a site for the use, generation, manufacture, storage, treatment, disposal, release or threatened release, transportation or presence of any substances which are "hazardous substances," "hazardous wastes," "hazardous materials" or "toxic substances" under the Hazardous Materials Laws, as defined below, and/or other applicable environmental laws, ordinances and regulations (collectively, the "Hazardous Materials").

(b)    The Subject Property is in compliance with all laws, ordinances and regulations relating to Hazardous Materials (collectively, the "Hazardous Materials Laws"), including without limitation, the Clean Air Act, the Federal Water Pollution Control Act, the Federal Resource Conservation and Recovery Act of 1976, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, the Superfund Amendments and Reauthorization Act of 1986, the Federal Toxic Substances Control Act and the Occupational Safety and Health Act, as any of the same may be amended, modified or supplemented from time to time, and any other applicable federal, state or local environmental laws, and any rules or regulations adopted pursuant to any of the foregoing.

(c)    There are no claims or actions pending or threatened against Mortgagor or the Subject Property by any governmental entity or agency, or any other person or entity, relating to any Hazardous Materials or pursuant to any Hazardous Materials Laws.

(d)    Mortgagor hereby agrees to defend, indemnify and hold harmless Mortgagee, its directors, officers, employees, agents, successors and assigns, from and against any and all losses, damages, liabilities, claims, actions, judgments, court costs and legal or other expenses (including without limitation, attorneys' fees and expenses) which Mortgagee may incur as a direct or indirect consequence of the use, generation, manufacture, storage, treatment, disposal, release or threatened release, transportation or presence of Hazardous Materials in, on, under or about the Subject Property.  Mortgagor shall pay to Mortgagee immediately upon demand any amounts owing under this indemnity, together with interest from the date of demand until paid in full at the highest rate of interest applicable to any Secured Obligation.  MORTGAGOR'S DUTY AND OBLIGATION TO DEFEND, INDEMNIFY AND HOLD HARMLESS MORTGAGEE SHALL SURVIVE THE CANCELLATION OF THE SECURED OBLIGATIONS AND THE RELEASE OR PARTIAL RELEASE OF THIS MORTGAGE.

(e)    Mortgagor shall immediately advise Mortgagee in writing upon Mortgagor's discovery of any occurrence or condition on the Subject Property, or on any real property adjoining or in the vicinity of the Subject Property, that does or could cause all or any part of the Subject Property to be contaminated with any Hazardous Materials or otherwise be in violation of any Hazardous Materials Laws, or cause the Subject Property to be subject to any restrictions on the ownership, occupancy, transferability or use thereof under any Hazardous Materials Laws.

4.10    <u>Protection of Security</u>.  Mortgagor shall, at Mortgagor's sole expense: (a) protect, preserve and defend the Subject Property and Mortgagor's title and right to possession of the Subject Property against all adverse claims; (b) if Mortgagor's interest in the Subject Property is a leasehold interest or estate, pay and perform in a timely manner all obligations to be paid and/or performed by the lessee or tenant under the lease or other agreement creating such leasehold interest or estate; and (c) protect, preserve and defend the security of this Mortgage and the rights and powers of Mortgagee under this

Mortgage against all adverse claims. Mortgagor shall give Mortgagee prompt notice in writing of the assertion of any claim, the filing of any action or proceeding, or the occurrence of any damage, condemnation offer or other action relating to or affecting the Subject Property and, if Mortgagor's interest in the Subject Property is a leasehold interest or estate, of any notice of default or demand for performance under the lease or other agreement pursuant to which such leasehold interest or estate was created or exists.

    4.11    <u>Powers and Duties of Mortgagee</u>. Mortgagee may, upon written request, without obligation to do so or liability therefor and without notice: (a) release all or any part of the Subject Property from the lien of this Mortgage; (b) consent to the making of any map or plat of the Subject Property; and (c) join in any grant of easement or declaration of covenants and restrictions with respect to the Subject Property, or any extension agreement or any agreement subordinating the lien or charge of this Mortgage. Mortgagee may from time to time apply to any court of competent jurisdiction for aid and direction in the exercise or enforcement of its rights and remedies available under this Mortgage, and may obtain orders or decrees directing, confirming or approving acts in the exercise or enforcement of said rights and remedies. Mortgagee has no obligation to notify any party of any pending sale or any action or proceeding (including, but not limited to, actions in which Mortgagor or Mortgagee shall be a party) unless held or commenced and maintained by Mortgagee under this Mortgage.

    4.12    <u>Compensation; Exculpation; Indemnification</u>.

    (a)    Mortgagor shall pay Mortgagee reasonable compensation for services rendered concerning this Mortgage, including without limitation, the providing of any statement of amounts owing under any Secured Obligation. Mortgagee shall not directly or indirectly be liable to Mortgagor or any other person as a consequence of: (i) the exercise of any rights, remedies or powers granted to Mortgagee in this Mortgage; (ii) the failure or refusal of Mortgagee to perform or discharge any obligation or liability of Mortgagor under this Mortgage or any Lease or other agreement related to the Subject Property; or (iii) any loss sustained by Mortgagor or any third party as a result of Mortgagee's failure to lease the Subject Property after any Default or from any other act or omission of Mortgagee in managing the Subject Property after any Default unless such loss is caused by the willful misconduct or gross negligence of Mortgagee; and no such liability shall be asserted or enforced against Mortgagee, and all such liability is hereby expressly waived and released by Mortgagor.

    (b)    Mortgagor shall indemnify Mortgagee against, and hold Mortgagee harmless from, any and all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, costs of evidence of title, costs of evidence of value, and other expenses which Mortgagee may suffer or incur: (i) by reason of this Mortgage; (ii) by reason of the performance of any act required or permitted hereunder or by law; (iii) as a result of any failure of Mortgagor to perform Mortgagor's obligations; or (iv) by reason of any alleged obligation or undertaking of Mortgagee to perform or discharge any of the representations, warranties, conditions, covenants or other obligations contained in any other document related to the Subject Property, including without limitation, the payment of any taxes, assessments, rents or other lease obligations, liens, encumbrances or other obligations of Mortgagor under this Mortgage. Mortgagor's duty to indemnify Mortgagee shall survive the payment, discharge or cancellation of the Secured Obligations and the release or satisfaction, in whole or in part, of this Mortgage.

    (c)    Mortgagor shall pay all indebtedness arising under this Section immediately upon demand by Mortgagee, together with interest thereon from the date of demand until paid in full at the highest rate per annum payable under any Secured Obligation. Mortgagee may, at its option, add any such indebtedness to any Secured Obligation.

4.13    Release of Mortgage. Mortgagee, without warranty, shall deliver for recording in the appropriate real property records a satisfaction or release of Mortgage for the Subject Property, or that portion thereof then covered hereby, from the lien of this Mortgage as set forth in Section 8 of the Loan Agreement, the terms of which are hereby incorporated herein by reference.

4.14    Subrogation. Mortgagee shall be subrogated to the lien of all encumbrances, whether or not released of record, paid in whole or in part by Mortgagee pursuant to this Mortgage or by the proceeds of any Secured Obligation.

ARTICLE V. DEFAULT PROVISIONS

5.1    Default. The occurrence of any of the following shall constitute a "**Default**" under this Mortgage: (a) Mortgagor shall fail to observe or perform any obligation or agreement contained herein; (b) any representation or warranty of Mortgagor herein shall prove to be incorrect, false or misleading in any material respect when made; or (c) any default in the payment or performance of any obligation, or any defined event of default, under any provisions of the Note or any other contract, instrument or document executed in connection with, or with respect to, any Secured Obligation.

5.2    Rights and Remedies. Upon the occurrence of any Default, and at any time thereafter, Mortgagee shall have all the following rights and remedies:

(a)    Subject to five (5) business days' prior written notice from Mortgagee to Mortgagor, to declare all Secured Obligations immediately due and payable in full.

(b)    Subject to five (5) business days' prior written notice from Mortgagee to Mortgagor, without releasing Mortgagor from any Secured Obligation and without becoming a mortgagee in possession, to cure any Default of Mortgagor and, in connection therewith: (i) to enter upon the Subject Property and to do such acts and things as Mortgagee deems necessary or desirable to protect the security of this Mortgage, including without limitation, to appear in and defend any action or proceeding purporting to affect the security of this Mortgage or the rights or powers of Mortgagee hereunder; (ii) to pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien which, in the judgment of Mortgagee, is senior in priority to this Mortgage, the judgment of Mortgagee being conclusive as between the parties hereto; (iii) to obtain, and to pay any premiums or charges with respect to, any insurance required to be carried hereunder; and (iv) to employ counsel, accountants, contractors and other appropriate persons to assist Mortgagee.

(c)    To commence and maintain an action or actions in any court of competent jurisdiction to foreclose this Mortgage or to take such other action as the law may allow, at law or in equity, for the enforcement and realizations of the mortgage security or any other security which is herein or elsewhere provided for, and proceed thereon to final judgment and execution thereon for the entire unpaid principal balance of the Secured Obligations, with interest, at the rates and pursuant to the methods of calculation specified in the Secured Obligations, together with all other sums secured by this Mortgage, all costs of suit, interest at the rates specified in the Secured Obligations on any judgment obtained by Mortgagee from and after the date of any Sheriff's Sale of the Subject Property (which may be sold, subject to all applicable laws, in one parcel or in such parcels, manner or order as Mortgagee shall elect) until actual payment is made by the Sheriff of the full amount due Mortgagee, and a reasonable attorneys' commission for collection, without further stay, any law, usage or custom to the contrary notwithstanding. For the purposes of any suit brought under this subsection, Mortgagor waives the defenses of laches and any applicable statute of limitations.

(d)    To commence and maintain an action or actions in any court of competent jurisdiction to foreclose this Mortgage or to obtain specific enforcement of the covenants of Mortgagor under this

-9-

Mortgage, and Mortgagor agrees that such covenants shall be specifically enforceable by injunction or any other appropriate equitable remedy.

(e) To take and possess all documents, books, records, papers and accounts of Mortgagor or the then owner of the Subject Property; to make or modify Leases of, and other agreements with respect to, the Subject Property upon such terms and conditions as Mortgagee deems proper; and to make repairs, alterations and improvements to the Subject Property deemed necessary, in Mortgagee's judgment, to protect or enhance the security hereof.

(f) To collect and receive all earnings, revenues, rents, issues, profits and income of the Subject Property and every part thereof, and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Subject Property or any part thereof, as well as just and reasonable compensation for the services of Mortgagee and for all attorneys, counsel, agents, clerks, servants and other employees properly engaged and employed by Mortgagee, Mortgagee shall apply the moneys arising as aforesaid, first, to the payment of the indebtedness evidenced by the Secured Obligations, whether on account of principal or interest or otherwise as Mortgagee, in its sole discretion may elect and second, to the payment of any other sums required to be paid by Mortgagor under this Mortgage or under any other Loan Document.

(g) Upon sale of the Subject Property at any judicial foreclosure, Mortgagee may credit bid (as determined by Mortgagee in its sole discretion) all or any portion of the Secured Obligations. In determining such credit bid, Mortgagee may, but is not obligated to, take into account all or any of the following: (i) appraisals of the Subject Property as such appraisals may be discounted or adjusted by Mortgagee in its sole underwriting discretion; (ii) expenses and costs incurred by Mortgagee with respect to the Subject Property prior to foreclosure; (iii) expenses and costs which Mortgagee anticipates will be incurred with respect to the Subject Property after foreclosure, but prior to resale, including without limitation, costs of structural reports and other due diligence, costs to carry the Subject Property prior to resale, costs of resale (e.g., commissions, attorneys' fees, and taxes), Hazardous Materials clean-up and monitoring, deferred maintenance, repair, refurbishment and retrofit, and costs of defending or settling litigation affecting the Subject Property; (iv) declining trends in real property values generally and with respect to properties similar to the Subject Property; (v) anticipated discounts upon resale of the Subject Property as a distressed or foreclosed property; (vi) the existence of additional collateral, if any, for the Secured Obligations; and (vii) such other factors or matters that Mortgagee deems appropriate. Mortgagor acknowledges and agrees that: (A) Mortgagee is not required to use any or all of the foregoing factors to determine the amount of its credit bid; (B) this Section does not impose upon Mortgagee any additional obligations that are not imposed by law at the time the credit bid is made; (C) the amount of Mortgagee's credit bid need not have any relation to any loan-to-value ratios specified in any agreement between Mortgagor and Mortgagee or previously discussed by Mortgagor and Mortgagee; and (D) Mortgagee's credit bid may be, at Mortgagee's sole discretion, higher or lower than any appraised value of the Subject Property.

(h) In the event that Mortgagee shall have the right to foreclose this Mortgage, Mortgagor authorizes Mortgagee at its option to foreclose this Mortgage subject to the rights of any tenants of the Subject Property, and the failure to make any such tenants parties to any such foreclosure proceeding and to foreclose their rights will not be asserted by Mortgagor as a defense to any proceeding instituted by Mortgagee to collect the Secured Obligations secured hereby or any deficiency remaining unpaid after the foreclosure sale of the Secured Obligations.

5.3    <u>Application of Foreclosure Sale Proceeds</u>. After deducting all costs, fees and expenses of sale, including costs of evidence of title and attorneys' fees in connection with a sale, all proceeds of any

foreclosure sale shall be applied first, to payment of all Secured Obligations (including without limitation, all sums expended by Mortgagee under the terms hereof and not then repaid, with accrued interest at the highest rate per annum payable under any Secured Obligation), in such order and amounts as Mortgagee in its sole discretion shall determine; and the remainder, if any, to the person or persons legally entitled thereto.

       5.4     Application of Other Sums. All Rents or other sums received by Mortgagee or any agent or receiver hereunder, less all costs and expenses incurred by Mortgagee or such agent or receiver, including reasonable attorneys' fees, shall be applied to payment of the Secured Obligations in such order as Mortgagee shall determine in its sole discretion; provided however, that Mortgagee shall have no liability for funds not actually received by Mortgagee.

       5.5     No Cure or Waiver. Neither Mortgagee's or any receiver's entry upon and taking possession of the Subject Property, nor any collection of Rents, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise of any other right or remedy by Mortgagee or any receiver shall impair the status of the security of this Mortgage, or cure or waive any breach, Default or notice of default under this Mortgage, or nullify the effect of any notice of default or sale (unless all Secured Obligations and any other sums then due hereunder have been paid in full and Mortgagor has cured all other Defaults), or prejudice Mortgagee in the exercise of any right or remedy, or be construed as an affirmation by Mortgagee of any tenancy, lease or option of the Subject Property or a subordination of the lien of this Mortgage.

       5.6     Costs, Expenses and Attorneys' Fees. Mortgagor agrees to pay to Mortgagee immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including court costs and reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Mortgagee's in-house counsel), expended or incurred by Mortgagee pursuant to this Article V, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Mortgagee or any other person) relating to Mortgagor or in any way affecting any of the Subject Property or Mortgagee's ability to exercise any of its rights or remedies with respect thereto. All of the foregoing shall be paid by Mortgagor with interest from the date of demand until paid in full at the highest rate per annum payable under any Secured Obligation.

       5.7     Remedies Cumulative; No Waiver. All rights, powers and remedies of Mortgagee hereunder are cumulative and are in addition to all rights, powers and remedies provided by law or in any other agreements between Mortgagor and Mortgagee. No delay, failure or discontinuance of Mortgagee in exercising any right, power or remedy hereunder shall affect or operate as a waiver of such right, power or remedy; nor shall any single or partial exercise of any such right, power or remedy preclude, waive or otherwise affect any other or further exercise thereof or the exercise of any other right, power or remedy.

       5.8 Release of Errors. Mortgagor hereby waives and releases (i) all errors, defects and imperfections in any proceedings instituted by Mortgagee under this Mortgage, (ii) all benefit that might accrue to Mortgagor by virtue of any present or future laws exempting the Subject Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment, (iii all benefits that might accrue to Mortgagor from requiring valuation or appraisement of any part of the Subject Property levied or sold on execution of any judgment recovered for the Secured Obligations, and (iii) all notices not herein elsewhere specifically required, of Mortgagor's default or of Mortgagee's exercise, or election to exercise, any option under this Mortgage. Mortgagor further agrees to waive the issuance and service of process and enter its voluntary appearance in any action, suit or proceeding brought in connection with any Default and if required by Mortgagee, to consent to the appointment of a receiver or receivers of the Subject Property and of all the earnings, revenues, rents, issues, profits and income thereof. Mortgagor

will not at any time insist upon, or plead, or in any manner whatever, claim or take any benefit or advantage of any right under any statute heretofore or hereafter enacted to redeem the property so sold, or any part thereof, and Mortgagor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted. Mortgagor, for itself and all who may claim under it, waives, to the extent that it lawfully may, all right to have the Subject Property marshaled upon any foreclosure hereof.

     5.9    <u>Continuing Lien</u>. No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Subject Property or upon any other property of Mortgagor shall affect in any matter or to any extent, the lien of this Mortgage upon the Subject Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

     5.10    <u>Judicial Sales</u>. In the event of any sale under this Mortgage by virtue of judicial proceedings, the Subject Property may be sold, subject to all applicable laws, in one parcel and as an entirety or in such parcels, manner or order as Mortgagee in its sole discretion may elect.

ARTICLE VI.  <u>MISCELLANEOUS PROVISIONS</u>

     6.1    <u>No Merger</u>. No merger shall occur as a result of Mortgagee's acquiring any other estate in, or any other lien on, the Subject Property unless Mortgagee specifically consents to a merger in writing.

     6.2    <u>Execution of Documents</u>. Mortgagor agrees, upon demand by Mortgagee, to execute any and all documents and instruments required to effectuate the provisions hereof.

     6.3    <u>Right of Inspection</u>. Mortgagee or its agents or employees may enter onto the Subject Property at any reasonable time for the purpose of inspecting the Subject Property and ascertaining Mortgagor's compliance with the terms hereof.

     6.4    <u>Notices</u>. All notices, requests and demands which Mortgagor or Mortgagee is required or may desire to give to the other party must be in writing, delivered to Mortgagee at the following address:

and to Mortgagor at its address set forth at the signature lines below, or at such other address as either party shall designate by written notice to the other party in accordance with the provisions hereof.

     6.5    <u>Successors; Assignment</u>. This Mortgage shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto. Mortgagee reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Mortgagee's rights and benefits under the Note, any and all other Secured Obligations and this Mortgage. In connection therewith, Mortgagee may disclose all documents and information which Mortgagee now has or hereafter acquires relating to the Subject Property, all or any of the Secured Obligations and/or Mortgagor and, as applicable, any partners, joint venturers or members of Mortgagor, whether furnished by any Mortgagor or otherwise.

     6.6    <u>Rules of Construction</u>. (a) When appropriate based on the identity of the parties or other circumstances, the masculine gender includes the feminine or neuter or both, and the singular number includes the plural; (b) the term "Subject Property" means all and any part of or interest in the Subject

Property; (c) all Section headings herein are for convenience of reference only, are not a part of this Mortgage, and shall be disregarded in the interpretation of any portion of this Mortgage; (d) if more than one person or entity has executed this Mortgage as "Mortgagor," the obligations of all such Mortgagors hereunder shall be joint and several; and (e) all terms of Exhibit A, and each other exhibit and/or rider attached hereto and recorded herewith, are hereby incorporated into this Mortgage by this reference.

6.7   Severability of Provisions. If any provision of this Mortgage shall be held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or any remaining provisions of this Mortgage.

6.8   Changes in Taxation. In the event of the passage after the date of this Mortgage of any law of the Commonwealth of Pennsylvania, deducting from the value of the Subject Property for the purpose of taxation any lien thereon, or changing in any way the laws now in force for the taxation of mortgages, or debts secured thereby, for state or local purposes, or the manner of the operation of any such taxes so as to affect the interest of Mortgagee, then and in such event, Mortgagor shall bear and pay the full amount of such taxes.

6.9   Governing Law. This Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

6.10.   Submission to Jurisdiction. Mortgagor and Mortgagee hereby consent to the exclusive jurisdiction of the United States Bankruptcy Court and all actions or proceedings relating to the Loan Documents or the transactions contemplated hereunder shall be litigated in such court; provided, however, in the event the Bankruptcy Case is dismissed Mortgagor hereby consents to the exclusive jurisdiction of any state or federal court located within the Commonwealth of Pennsylvania, and irrevocably agrees that, subject to the Mortgagee's election, all actions or proceedings relating to the Loan Documents or the transactions contemplated hereunder shall be litigated in such courts, and Mortgagor waives any objection which it may have based on lack of personal jurisdiction, improper venue or forum non conveniens to the conduct of any proceeding in any such court and waives personal service of any and all process upon it, and consents that all such service of process be made by mail or messenger directed to it at the address set forth in Section 6.4. Nothing contained in this Section 6.10. shall affect the right of Mortgagee to serve legal process in any other manner permitted by law or affect the right of Mortgagee to bring any action or proceeding against Mortgagor or its property in the courts of any other jurisdiction.

6.11   Carve-Out. Notwithstanding anything to the contrary contained in this Mortgage, the Construction Loan and Security Agreement or the Note, the liens and security interests granted to the Mortgagee and the Super-Priority Administrative Claim conferred upon the Mortgagee to secure the Loan shall all be subject and subordinate to the payment of the following expenses that have been incurred prior to an Event of Default (to the extent that there are not sufficient, unencumbered funds in the Debtor's estate to pay such amounts at the time payment is required to be made): (i) fees and expenses approved by the Bankruptcy Court for the Trustee and the Professional Persons retained and employed by the Trustee; (ii) the Trustee's commission pursuant to 11 U.S.C. §326 based on the Trustee's disbursements (the "**Trustee's Commission**"), (iii) fees required to be paid to the Clerk of the Bankruptcy Court; and (iv) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) (the amounts described in the preceding clauses (i), (ii) and (iii) are collectively called the "**Carve-Out**"); provided, however, that no proceeds of the Loan and no amounts received pursuant to the Carve-Out shall be used to pay any professional fees and expenses or any other costs incurred in connection with (1) commencing any claims, causes of actions or contested matters against the Mortgagee, including, without limitation, discovery proceedings subsequent to the commencement of any such claims or causes of action; (2) preventing, hindering or delaying performance or enforcement by Mortgagee of its rights or remedies

under the Order approving the Loan or any of the Loan Documents; or (3) challenging the Liens granted to Mortgagee to secure the Loan. The Carve-Out shall be reduced by the sum of (i) the amount of unencumbered funds in the Debtor's estate which are used to satisfy the unpaid allowed fees and expenses of the Trustee's Professional Persons and the Trustee's Commission, and (ii) payments paid by the Debtor's estate on account of the allowed professional fees and expenses of the Trustee's Professional Persons and the Trustee's Commission. The Mortgagee's Carve-Out obligations shall survive the termination or expiration of this Mortgage.

6.12 NO LIABILITY; NON-RECOURSE AS TO TRUSTEE. NOTWITHSTANDING ANYTHING OTHERWISE CONTAINED HEREIN, KEVIN O'HALLORAN IS ACTING SOLELY AS A TRUSTEE ON BEHALF OF MORTGAGOR UNDER THE BANKRUPTCY CASE AND MORTGAGEE'S RECOVERY UNDER THE NOTE, THE CONSTRUCTION LOAN AND SECURITY AGREEMENT AND/OR THIS MORTGAGE SHALL BE LIMITED TO THE ASSETS OF MORTGAGOR AND ITS ESTATE INCLUDING THIS MORTGAGED PROPERTY AND TRUSTEE WILL HAVE NO INDIVIDUAL LIABILITY TO MORTGAGEE UNDER THE NOTE, THE LOAN AGREEMENT AND/OR THIS MORTGAGE, OR FOR THE REPAYMENT OF THE LOAN.

6.13 Mortgage Priority. The Mortgagor owns the Subject Property. On June 30, 2017 (the "**Petition Date**"), the Mortgagor filed the Bankruptcy Case. Subsequent to the Petition Date, Kevin O'Halloran was elected as the Trustee for Mortgagor and has petitioned the Bankruptcy Court to approve the Loan and the Loan Documents, including this Mortgage. The Bankruptcy Court has entered a final order (the "**Final Order**") approving the Loan and the Loan Documents, including this Mortgage in the full amount of $4,700,000.00 and the priority of this Mortgage. The Final Order, a copy of which is affixed hereto as Exhibit "B" and made a part hereof, is in full force and effect. Per the provisions of the Final Order, this Mortgage is senior to the following pre-existing liens and encumbrances on the Subject Property:

(1) Collateral mortgage from Island View Crossing II, L.P. as Mortgagor to Prudential Saving Bank as Mortgagee in the amount of $3,911,250 dated September 20, 2011 and recorded on October 19, 2011 in Land Record Book 6838, Page 230 (Instrument No. 2011070888);

(2) Mortgage from Island View Crossing II, L.P. as Mortgagor to Prudential Saving Bank as Mortgagee in the amount of $1,400,000 dated September 22, 2013 and recorded on September 27, 2013, instrument number 2013080879;

(3) Collateral mortgage from Island View Crossing II, L.P. as Mortgagor to Prudential Saving Bank as Mortgagee in the amount of $5,136,000 dated May 30, 2014 and recorded on July 23, 2014, instrument number 2014038527;

(4) Open-End Mortgage and Security Agreement from Island View Crossing II, L.P. as Mortgagor to Prudential Saving Bank as Mortgagee in the amount of $5,541,468 dated November 26, 2014 and recorded on January 7, 2015 as instrument number 2015001098;

(5) Assignment of Rents and Leases and Agreements of Sale recorded as instrument number 2015001143 filed in conjunction with Open-End Mortgage and Security Agreement in the amount of $5,541,468 dated November 26, 2014 and recorded on January 7, 2015 as instrument number 2015001098;

(6) UCC-1 filed on September 27, 2013 in the Bucks County Recorder of Deeds Office as instrument number 2013080881 naming Island View Crossing, II, L.P. as Debtor and Prudential Savings Bank as Secured Party;

(7) UCC-1 filed on January 4, 2015 in the Bucks County Recorder of Deeds Office as instrument number 2015001161 naming Island View Crossing, II, L.P. as Debtor and Prudential Savings Bank as Secured Party;

(8) Judgment In favor of Monica Caione against Mortgagor, Americorp Homes and Island View Crossing II, Inc. filed on February 28, 2017 (No. 2016-04021) in the amount of $30,990.00;

(9) Judgment in favor of Samira Ranganathan and Khandulans Ranganathan against Mortgagor filed on June 19, 2017 (No. 2016-05724) in the amount of $49,980.00;

(10) Judgment in favor of Frank Del Grasso against Mortgagor, Island View Crossing II, Inc., Americorp Realty LLC, Americorp Homes LLC, and Americorp Real Estate Development LLC filed on March 23, 2017 (No. 2016-06685) in the amount of $27,250.00;

(11) Judgment entered in favor of Bohler Engineering PA, LLC against Mortgagor filed on January 5, 2017 (No. 2017-00032) in the amount of $48,853.63;

(12) Judgment entered in favor of McElderry Drywall, Inc. against Americorp Homes, Inc. and Mortgagor filed after the Petition Date on August 10, 2017 (No. 2016-06868) in the amount of $42,730.16; and

(13) Judgment entered in favor of the Borough of Bristol filed April 22, 2016 No. 2016-71251 in the amount of $56,239.22

{SIGNATURES APPEAR ON THE FOLLOWING PAGE}

IN WITNESS WHEREOF, Mortgagor, intending to be legally bound hereby, has executed this Mortgage as a sealed instrument as of the date first set forth above.

**ISLAND VIEW CROSSING II, L.P.,**
a Pennsylvania limited partnership

By:_____
Name:    Kevin O'Halloran
Title:    Trustee


COMMONWEALTH OF PENNSYLVANIA    :
                                : ss
COUNTY OF                       :

On this      day of March, 2017, before me, the undersigned officer, a Notary Public duly commissioned by the Commonwealth of Pennsylvania, personally appeared Kevin O'Halloran, known to me or proven to be the person(s) who executed the above instrument, and who acknowledged himself to be the Chapter 11 Trustee for Island View Crossing II, L.P., a Pennsylvania limited partnership, and that he, as such Trustee, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of said limited liability company by himself as such Sole Managing Member.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.


_____(SEAL)
Notary Public

## CERTIFICATE OF RESIDENCE

I hereby certify that the precise address of            Mortgagee, under the attached Open-End Mortgage and Assignment of Rents and Leases executed by Island View Crossing II, L.P., as Mortgagor, to Mortgagee, dated as of Month Day, 2018, is

_____
For
Mortgagee

EXHIBIT A
(Description of Property)

Exhibit A to Mortgage and Assignment of Rents and Leases executed by Island View Crossing II, L.P. as Mortgagor, to                    , as Mortgagee, dated as of Month Day, 2018.

Description of Property

Exhibit B is the Final Order