# EXHIBIT E

**Final Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | CHAPTER 11 |
| ISLAND VIEW CROSSING II, L.P. | BANKRUPTCY NO. 17-14454(ELF) |
| Debtor | |

**FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 364(c)(1)AND 364(d)(1) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001 AUTHORIZING (I) TRUSTEE TO OBTAIN SECURED POSTPETITION FINANCING, (II) TRUSTEE TO ENTER INTO THE LOAN DOCUMENTS; (III) GRANTING AN ALLOWED SUPER PRIORITY ADMINISTRATIVE EXPENSE CLAIM WITH PRIORITY OVER ANY AND ALL ADMINISTRATIVE EXPENSES OF THE KIND SPECIFIED IN BANKRUPTCY CODE SECTION 503(b) OR 507(b); (IV) GRANTING A LIEN ON ALL ASSETS OF THE DEBTOR'S ESTATE (EXCEPT FOR THE EXCLUDED ASSETS) SENIOR TO ALL OTHER LIENS (EXCEPT FOR THE PERMITTED LIENS) PURSUANT TO SECTION 364(d)(1) OF BANKRUPTCY CODE; (V) APPROVING THE RELEASE OF LIENS AGREEMENT BETWEEN THE TRUSTEE AND PRUDENTIAL BANK PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019; AND (VI) GRANTING RELATED RELIEF**

This matter coming to be heard on the Motion (the "Motion")[1] of Kevin O'Halloran, the Trustee ("Trustee") for Island View Crossing II, L.P. (the "Debtor" also referred to as "Borrower" under the Loan Documents) for entry of a final order authorizing (i) Trustee to obtain secured post-petition financing pursuant to §§105, 361, 364(c)(1) and 364(d)(1) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001; (ii) Trustee to enter into the loan documents; (iii) granting an allowed super priority administrative expense claim with priority over any and all administrative expenses of the kind specified in Bankruptcy Code Section 503(b) or 507(b); (iv) granting a lien on all assets of the estate (except for the Excluded Assets (as hereinafter defined) senior to all other liens (except for the Permitted Liens (as

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

hereinafter defined) pursuant to section 364(d)(1) of Bankruptcy Code; (v) approving the Release of Liens Agreement (as hereinafter defined) between the Trustee and Prudential Bank ("Prudential") pursuant to Federal Rule of Bankruptcy Procedure 9019. The Motion requests entry of a Final Order (a) authorizing the Trustee to obtain up to $4,700,000.00 of post-petition financing under a secured revolving loan facility (the "Loan") from BKRE Investments, LLC (the "Lender") on the terms and conditions set forth in this order (this "Order") and the Construction Loan Agreement (the "Loan Agreement"), the Promissory Note ("Note") and Open-End Mortgage and Security Agreement and Assignment of Rents ("Mortgage") (collectively, the "Loan Documents") (attached to the Motion as Exhibits "A", "B" and "C"; and (b) authorizing the Trustee to, as necessary, execute and enter into the Loan Documents or any related documents required to be delivered by or in connection with the Loan or the Loan Documents, and perform such other acts as may be required in connection with the Loan or the Loan Documents; authorizing and approving the relief requested in the Motion and (c) approving the Release of Liens Agreement; and

A final hearing having been held by this Court on September __, 2018 (the "Hearing"), and upon the record made by the Trustee at the Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Petition Date.* On June 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court").

2. *Appointment of Trustee.* On December 18, 2017, this Court entered an Order

2

directing the appointment of a Chapter 11 Trustee. On December 21, 2017, the United States Trustee filed an application for entry of an order approving the appointment of Christine C. Shubert as the interim Chapter 11 Trustee (the "Interim Trustee") which application was approved pursuant to an Order entered on the same day. A meeting of creditors commenced on January 11, 2018 which was continued and concluded on January 29, 2018 for the purpose of electing a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(b)(1) and Fed.R.Bankr.P. 2007.1. On January 30, 2018, the United States Trustee for Region 3 filed its Report of Undisputed Election which provided, inter alia, that the Trustee was elected to serve as the trustee in this bankruptcy proceeding. The Debtor is out of possession and the Trustee is in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. *Jurisdiction.* This Court has core jurisdiction over this case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. *Notice.* The Motion, and Notice of the Hearing was served by the Trustee, through his counsel via ECF transmission, e-mail, or first class mail upon (a) the Office of the United States Trustee, (b) counsel for the Lender, (c) counsel for Prudential, (d) counsel for RDA, (e) each creditor that is being primed or their counsel, (f) all applicable taxing authorities, including (i) the Internal Revenue Service; (ii) the Commonwealth of Pennsylvania, Department of Labor and Industry; (iii) the Commonwealth of Pennsylvania, Department of Revenue; (iv) counsel for the Bucks County Tax Claim Bureau; and (g) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In addition, notice of the Motion, the relief requested therein and the Hearing was served by first class mail, postage prepaid, upon all creditors listed on the Debtor's matrix mailing list in this Bankruptcy Case. Under the circumstances, the notice given

by the Trustee of the Motion, the relief requested therein, and the Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(c), and no further notice of the relief sought at the Hearing is necessary or required.

5. *Permitted Liens.* The liens securing (i) the Existing Real Estate Taxes, (ii) the liens created by the Existing Mortgages of the RDA and (iii) the encumbrances created by the Existing Cross Subordination Agreement (collectively, the "Permitted Liens") shall be senior to the liens granted to the Lender to secure the Loan.

6. *Findings Regarding the Loan.*

(a) Good cause has been shown for the entry of this Order.

(b) The Trustee has an immediate need to obtain the Loan, in order to, among other things, complete and sell the 73 approved Residential Units in Phase 1 of the Project and preserve the going concern value of the Debtor's residential subdivision project for the benefit of the Debtor's estate and its creditors. The Loan is necessary for the Trustee to operate in the ordinary course. In the absence of the availability of funds in accordance with the terms hereof, the Debtor estate's continued viability and Trustee's ability to reorganize the Debtor's estate would not be possible, and serious and irreparable harm to the Debtor, its estate, its creditors and equity holders would occur.

(c) The Trustee is unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in the Loan Documents. Specifically, the Trustee is unable to obtain (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed secured solely by a lien

on property of the estate that is not otherwise subject to a lien, (d) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien, (e) credit for money borrowed secured by a lien equal to the existing liens on property of the estate that is subject to a lien, or (f) credit for money borrowed secured by a lien senior to the existing liens on property of the estate subject to a lien, in each case, on more favorable terms and conditions than those provided in the Loan Documents and this Order. The Trustee also is not able to obtain credit for borrowed money without granting the Liens (as defined below).

(d) The terms and conditions of the Loan pursuant to this Order and the Loan Documents, and the fees to be paid thereunder, are fair, reasonable and the best available under the circumstances, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e) Proceeds of the Loan (net of any amounts used to pay fees, costs and expenses under the Loan Documents) shall be used, in each case in a manner consistent with the terms and conditions of the Loan Documents and this Order.

(f) The Loan Documents have been the subject of extensive negotiations conducted in good faith and at arm's length and the use of the proceeds to be extended under the Loan will be so extended in good faith, and for valid business purposes and uses, as a consequence of which all of the obligations under the Loan Documents shall be deemed to have been extended by the Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and the Lender shall be entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.(g) The Loan must be approved and consummated promptly in order to preserve the

viability of the Debtor's estate and to maximize the value of the Debtor's estate. Time is of the essence in consummating the Loan.

7.  *Authorization of the Loan and the Loan Documents.*

(a)  The Trustee is hereby authorized to enter into and perform under the Loan Documents and to immediately borrow under the Loan the amount of $4,700,000.00 on a revolving basis for the purposes set forth in the Loan Documents and the Budget attached to the Motion. Advances to the Trustee under the Loan Documents ("Advances") are to be used for payment of, or reimbursement for, the Trustee's operating expenses, fees and costs as set forth in the Budget.

(b)  In furtherance of the foregoing and without further approval of this Court, the Trustee is authorized to perform all acts and to execute and deliver all instruments and documents that the Lender determines to be reasonably required or necessary for the Trustee's performance of its obligations under the Loan Documents, including without limitation:

(i)  the execution, delivery and performance of the Loan Documents;

(ii)  the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the Loan Documents, in each case in such form as the Trustee and the Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the Loan Documents that do not materially and adversely affect the Debtor's estate or which do not (A) shorten the scheduled maturity of the Loan, (B) increase the commitments or the rate of interest payable on the Loan, or (C) change any Event of Default, add any covenants or amend the covenants therein, in each case as applicable to the Debtor's estate, in any such case to be materially more restrictive; provided, however, that a copy of any such amendment, waiver,

consent or other modification shall be filed by the Trustee with this Court and served by the Trustee on the U.S. Trustee and counsel for RDA and Prudential;

    (iii) the payment to the Lender of the fees and expenses as set forth in the Loan Documents; and

    (iv) the performance of all other acts required under or in connection with the Loan Documents.

  (c) Upon execution and delivery of the Loan Documents, the Loan Documents shall constitute valid and binding obligations of the Debtor's estate, enforceable against the Debtor's estate, in accordance with the terms of this Order and the Loan Documents. No obligation, payment, transfer, or grant of security by the Debtor's estate under the Loan Documents or this Order shall be stayed, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

  8. *Fees and Expenses of Professionals.* Trustee is authorized to use proceeds of the Loan to pay professional fees and expenses (collectively, "Professional Fees and Expenses") for: (i) Karalis PC ("KPC"), attorneys retained by the Trustee, (ii) Newbridge Management, LLC ("Newbridge"), financial advisors for Trustee, (iii) any accountant retained by the Trustee to prepare tax returns for the Debtor's estate, and (iv) the Trustee's commission pursuant to 11 U.S.C. §326 based on the Trustee's disbursements; in each case only to the extent that such compensation and expense reimbursement is approved by the Court.

9.  *Carve-Out*.

(a)  Notwithstanding anything to the contrary contained in this Order or the Loan Documents, the Liens conferred upon the Lender shall be subject and subordinate to the payment of the following expenses that have been incurred prior to an Event of Default (to the extent that there are not sufficient, unencumbered funds in the Debtor's estate to pay such amounts at the time payment is required to be made): (i) the Professional Fees and Expenses identified in this Section 5.5 of the Loan Agreement and approved by the Bankruptcy Court for the Trustee and the Professional Persons retained and employed by the Trustee; (ii) the Trustee's commission pursuant to 11 U.S.C. §326 based on the Trustee's disbursements (the "Trustee's Commission"), (iii) fees required to be paid to the Clerk of the Bankruptcy Court; and (iv) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) (the amounts described in the preceding clauses (i), (ii), (iii) and (iv) are collectively called the "Carve-Out"); provided, however, that no proceeds of Loan, no proceeds of the Collateral (as defined below), and no amounts received pursuant to the Carve-Out shall be used to pay Professional Fees and Expenses or any other costs incurred in connection with (1) commencing or continuing any claims, causes of actions or contested matters against Lender, including, without limitation, discovery proceedings subsequent to the commencement of any such claims or causes of action; (2) preventing, hindering or delaying performance or enforcement by Lender of its rights or remedies under this Order or any of the Loan Documents; or (3) challenging the Liens.

(b)  After an Event of Default, Lender may, at any time and without being deemed to have waived any Event of Default or to have reinstated the Loan (or any commitments thereunder), make one or more Advances under the Loan pursuant to the Loan Documents or pay any Court-approved Professional Fees and Expenses that are covered by the Carve-Out, and, in

8

such event, such Advances shall be entitled to all of the benefits and security of the Loan Documents and this Order.

10. *Liens*. As security for the its obligations under the Loan Documents, effective and perfected upon the date of this Order and (except as set forth below) without the necessity of the execution by the Trustee (or recordation or other filing) of security agreements, mortgages, or other similar documents, or the possession or control by the Lender of any property, the following security interests and liens are hereby granted to the Lender (all property of the Debtor and its estate identified in clause (a) below being referred to as the "Collateral") (all such liens and security interests granted to the Lender pursuant to this Order, the "Liens"):

(a)    First Mortgage Lien on Collateral. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien senior and superior to all other existing liens, claims and/or security interests, and proceeds thereof except for the Permitted Liens in all the Collateral including the real property located at 1600 Radcliffe Street, Bristol Borough, Bucks County, Pennsylvania (Tax Parcel No. 4-27-119) now owned or hereafter acquired by the Debtor's estate. The Trustee is authorized to execute and deliver to the Lender the Open-End Mortgage and Assignment of Rents and Leases in the form attached as Exhibit "C" to the Motion to secure the Loan and the Lender is authorized to record the Mortgage against the Debtor's Project (as defined in the Motion). The Permitted Liens shall be senior to the liens granted to the Lender under this Order.

(b)    Subordination of Prudential Bank's Liens. With the consent of Prudential Bank, which consent is set forth in the Release of Liens Agreement, all liens held by Prudential Bank, in the Debtor's assets including, the Project shall be and are hereby subordinated to the

9

Liens being granted to the Lender in all respects until the final indefeasible repayment of the Loan.

(c) <u>Priority Administrative Claim</u>. Pursuant to Bankruptcy Code Section 364(c)(1) the Loan shall be secured by an allowed administrative expense claim with priority over any and all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b).

(d) The Collateral shall not include (i) any claims arising under Chapter 5 of the Bankruptcy Code and proceeds thereof, (ii) any claims of the Debtor/Trustee against Prudential Savings Bank including the Lender Liability Litigation/Adversary Proceeding and proceeds thereof, and (iii) any claims and defenses of the Debtor/Trustee against any creditor, Affiliate of the Borrower or other Person and proceeds thereof.

11. *Perfection of Liens.*

(a) The Trustee stipulates and consents that all Liens granted herein and in the Loan Documents to or for the benefit of the Lender shall, pursuant to this Order, be, and hereby are, valid, enforceable and perfected, effective as of the date of this Order, and (notwithstanding any provisions of any agreement, instrument, document, or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection.

(b) The Lender is hereby authorized, but not required, to file or record mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Liens granted to it hereunder. Regardless of whether the Lender shall, in its sole discretion, choose to file such mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm

perfection of the Liens, such Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

(c) A certified copy of this Order may, in the discretion of the Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Order for filing and recording. The Lender may deliver a copy of this Order to any third parties having possession or control of the Collateral.

(d) The Trustee shall execute and deliver to the Lender all such agreements, mortgages, instruments and other documents as the Lender may reasonably request to evidence, confirm, validate or perfect the Liens.

12. *Remedies After Event of Default.*

(a) The Events of Default contained in the Loan Documents are hereby approved in their entirety and incorporated by reference into this Order.

(b) The Lender's delay or failure to exercise rights and remedies under the Loan Documents or this Order shall not constitute a waiver of the Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the Loan Documents.

13. *Payments Free and Clear.* Any and all payments or proceeds remitted to the Lender pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

14. *Approval of Lender's Fees and Expenses.* All reasonable fees payable and expenses reimbursable by the Debtor's estate to the Lender under the Loan Documents shall

promptly be paid by the Trustee in accordance with the Loan Documents and this Order, and the Trustee may pay such fees and expenses from the proceeds of the Loan. The Trustee hereby is authorized to pay all such reasonable fees and expense reimbursements arising in connection with any matter referred to in the Loan Documents, without the necessity of the Trustee or the Lender filing any further application with the Court for approval of payment of such fees and expense reimbursements or maintaining compliance with the U.S. Trustee guidelines. For the avoidance of doubt, the Trustee is authorized to pay the reasonable fees and disbursements of the attorneys and other advisors of the Lender without the necessity of such attorneys or other advisors filing retention applications or fee applications with the Court.

15. *Preservation of Rights Granted Under the Order*

(a) If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect in any manner whatsoever (i) the validity, priority or enforceability of any obligations under the Loan Documents incurred prior to the actual receipt of written notice by the Lender of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the Liens. Notwithstanding any such reversal, stay, modification or vacatur, any obligations incurred to the Lender prior to the actual receipt of written notice by the Lender of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the Lender shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the Loan Documents with respect to all obligations under the Loan Documents.

(b) Except as expressly provided in this Order or in the Loan Documents, the Liens and all other rights and remedies of the Lender granted by this Order and the Loan

Documents shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting the case to a case under chapter 7 of the Bankruptcy Code, in which case the Liens shall be valid and enforceable against any trustee appointed in the case, (ii) dismissing the case or by any other act or omission, or (iii) confirming a plan of reorganization in the case. The terms and provisions of this Order and the Loan Documents shall continue in the case, or in any superseding chapter 7 case under the Bankruptcy Code. The Liens, the obligations under the Loan Documents, and all other rights and remedies of the Lender granted by this Order and the Loan Documents shall continue in full force and effect until all obligations under the Loan Documents and are indefeasibly paid in full in cash.

16. *Proofs of Claim*. The Lender is not required to file proofs of claim in the case or in any successor case on account of the obligations under the Loan Documents and claims arising under the Loan Documents, which are hereby deemed allowed under this Order.

17. *After Acquired Property*. Pursuant to section 552(a) of the Bankruptcy Code and except for the replacement liens on behalf of the Permitted Liens, all of the property acquired by the Debtor's estate after date of this Order, including, without limitation, all unencumbered Collateral of the Debtor's estate pledged or otherwise granted to the Lender, including, without limitation, all proceeds of the Loan, pursuant to the Loan, pursuant to the Loan Documents and this Order is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtor prior to or after the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtor that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

18.  *Insurance Policies.* Upon entry of this Order, the Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee or each insurance policy maintained by the Trustee which in any way relates to the Collateral, and the payment of any insurance proceeds shall be made in accordance with the priorities set forth in this Order.

19.  *Binding Effect; Successors and Assigns.* The Loan Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the Lender, the Trustee, the Debtor, the Debtor's estate and its respective successors and assigns (including any chapter 7 trustee hereinafter appointed or elected for the Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor's estate or with respect to the property of the estate of the Debtor's estate) and shall inure to the benefit of the Lender and the Debtor's estate and its respective successors and assigns; provided that, except to the extent expressly set forth in this Order, the Lender shall have no obligation to extend any financing to any chapter 7 trustee.

20.  *Limitation of Liability.* In determining to make any loan under the Loan or in exercising any rights or remedies as and when permitted pursuant to this Order or the Loan Documents the Lender shall not be deemed to be in control of the operations of the Debtor's estate or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor's estate (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Order or in the Loan Documents shall in any way be construed or interpreted to impose or

allow the imposition upon the Lender any liability for any claims arising from the pre-petition or post-petition activities of the Debtor.

21.   *Approval of Release of Liens Agreement.*  The Release of Liens Agreement between the Trustee and Prudential Bank attached as Exhibit "F" to the Motion is hereby **APPROVED**. The Trustee and Prudential Bank are authorized to take all actions necessary to effectuate and consummate the resolution contemplated by the Release of Liens Agreement including, without limitation, the execution and delivery of any documents, agreements or other instruments. This Court shall retain jurisdiction to interpret and enforce the terms of the Release of Liens Agreement and this Order.

22.   *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof as of the Petition Date, and there shall be no stay of execution of effectiveness of this Order.

Dated: _____, 2018         **BY THE COURT**:

                                _____
                                ERIC L. FRANK
                                UNITED STATES BANKRUPTCY JUDGE