# EXHIBIT H

# Title Report



# COMMITMENT FOR TITLE INSURANCE
Issued by
**Commonwealth Land Title Insurance Company**

## NOTICE

**IMPORTANT-READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

## COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and the Commitment Conditions, **Commonwealth Land Title Insurance Company** (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I-Requirements have not been met within 180 Days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

**Commonwealth Land Title Insurance Company**

By: *[signature]*



President

ATTEST *[signature]*

Secretary

1 of 3

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by* Commonwealth Land Title Insurance Company *This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association

## COMMITMENT CONDITIONS

1. **DEFINITIONS**
    (a) "Knowledge" or "Known": Actual or imputed knowledge, but not constructive notice imparted by the Public Records.
    (b) "Land": The land described in Schedule A and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
    (c) "Mortgage": A mortgage, deed of trust, or other security instrument, including one evidenced by electronic means authorized by law.
    (d) "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
    (e) "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
    (f) "Proposed Policy Amount": Each dollar amount specified in Schedule A as the Proposed Policy Amount of each Policy to be issued pursuant to this Commitment.
    (g) "Public Records": Records established under state statutes at the Commitment Date for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.
    (h) "Title": The estate or interest described in Schedule A.
2. If all of the Schedule B, Part I-Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.
3. The Company's liability and obligation is limited by and this Commitment is not valid without:
    (a) the Notice;
    (b) the Commitment to Issue Policy;
    (c) the Commitment Conditions;
    (d) Schedule A;
    (e) Schedule B, Part I-Requirements; and
    (f) Schedule B, Part II-Exceptions; and
    (g) a counter-signature by the Company or its issuing agent that may be in electronic form.
4. **COMPANY'S RIGHT TO AMEND**
    The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company shall not be liable for any other amendment to this Commitment.
5. **LIMITATIONS OF LIABILITY**
    (a) The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
        (i) comply with the Schedule B, Part I-Requirements;
        (ii) eliminate, with the Company's written consent, any Schedule B, Part II-Exceptions; or
        (iii) acquire the Title or create the Mortgage covered by this Commitment.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by* Commonwealth Land Title Insurance Company *This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


    (b)    The Company shall not be liable under Commitment Condition 5(a) if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.

    (c)    The Company will only have liability under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

    (d)    The Company's liability shall not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Conditions 5(a)(i) through 5(a)(iii) or the Proposed Policy Amount.

    (e)    The Company shall not be liable for the content of the Transaction Identification Data, if any.

    (f)    In no event shall the Company be obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I-Requirements have been met to the satisfaction of the Company.

    (g)    In any event, the Company's liability is limited by the terms and provisions of the Policy.

**6.    LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT**

    (a)    Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

    (b)    Any claim must be based in contract and must be restricted solely to the terms and provisions of this Commitment.

    (c)    Until the Policy is issued, this Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

    (d)    The deletion or modification of any Schedule B, Part II-Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

    (e)    Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

    (f)    When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

**7.    IF THIS COMMITMENT HAS BEEN ISSUED BY AN ISSUING AGENT**

The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for the purpose of providing closing or settlement services.

**8.    PRO-FORMA POLICY**

The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

**9.    ARBITRATION**

The Policy contains an arbitration clause. All arbitrable matters when the Proposed Policy Amount is $2,000,000 or less shall be arbitrated at the option of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at <http://www.alta.org/arbitration>.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by.* Commonwealth Land Title Insurance Company *This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association



Commonwealth

Order Number: 6818802MA
PHL-1831826/26 733 404

Commonwealth Land Title Insurance Company
1700 Market Street, Suite 2110
Philadelphia, PA 19103
Phone: 215-241-6236
Fax: 215-241-1600

COMMITMENT FOR TITLE INSURANCE

Commonwealth Land Title Insurance Company

Effective Date: 02/02/2018

## Schedule A

1. Policy or Policies to be issued:

    A. Policy to be Issued:
    ALTA Owners 2006 (as modified by TIRBOP)
    Proposed Insured: Purchaser with contractual rights under a purchase agreement with the vested owner identified at Item 2 below
    Amount of Insurance: $100,000.00
    Effective Date:

    B. Policy to be Issued:
    ALTA Loan 2006 (as modified by TIRBOP)
    Proposed Insured: Lender with contractual obligations under a loan agreement with the Purchaser
    Amount of Insurance: $100,000.00
    Effective Date:

2. Title to the estate or interest in the land described or referred to in this Commitment is a Fee Simple and is at the effective date hereof vested in:

    Island View Crossing II, L.P., a Pennsylvania limited partnership

3. The land referred to in this Commitment is described in Schedule C attached hereto and made part hereof.

    For Information Purposes Only:
    Radcliffe Street
    Bristol Borough
    Bucks County, PA

**Copyright American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Commitment (08-01-2016)
C165B00



Page 1 of 12

Order Number: 6818802MA
PHL-1831826/26 733 404

# Schedule B Section 1
# Requirements

This Title Insurance Commitment (the "Commitment") is issued pursuant to the Agreement to Issue Policy contained on the American Land Title Insurance Commitment (2016) front cover form (the "Form") and is subject to the Conditions stated therein. Any title search and examination conducted by or for the Company in connection with the issuance of this Commitment is solely for the benefit of the Company. The sole liability of Company and its agent shall arise under and be governed by the Commitment and/or Policy subsequently issued. If this copy of the Commitment is not accompanied by the Form, a copy of the Form may be obtained from this Company upon request.

PLEASE BE ADVISED THAT A CONTINUATION SEARCH WILL BE MADE AT THE TIME OF CLOSING TO UPDATE THE EFFECTIVE DATE OF THE COMMITMENT AND THAT THE EARLIER EFFECTIVE DATE SHOWN AT THE BEGINNING OF THIS COMMITMENT WILL NOT AFFECT THE DATE OF COVERAGE OF THE POLICY. THE DATE OF THE POLICY WILL BE THE DATE OF RECORDING OF THE INSURED INSTRUMENT AND WILL COVER THE GAP BETWEEN THE LAST DATE COVERED BY THE OFFICIAL RECORD AT THE TIME OF CLOSING AND THE DATE OF RECORDING.

THE FOLLOWING REQUIREMENTS MUST BE MET:

1. Instrument(s) satisfactory to us, creating the estate or interest to be insured must be executed, delivered and filed for record.

   A. DEED FROM: Island View Crossing II, L.P., a Pennsylvania limited partnership
      TO: Purchaser with contractual rights under a purchase agreement with the vested owner identified at Item 2 Schedule A
      DATED: _____
      RECORDED: _____

   B. MORTGAGE FROM: Purchaser with contractual rights under a purchase agreement with the vested owner identified at Item 2 Schedule A
      TO: Lender with contractual obligations under a loan agreement with the Purchaser
      DATED: _____
      RECORDED: _____

2. Payment of full consideration to or for the account of the grantors or mortgagors.

3. Payment of the premiums, fees and charges for the policy.

4. Possible unfiled mechanics liens and municipal claims.

5. Terms of any unrecorded lease or rights of parties in possession.

6. Proof that all natural persons in this transaction are of full age and legally competent.

7. Proof of identity of parties as set forth in Recital.

8. POWERS OF ATTORNEY: If any party to the settlement intends to use a Power of Attorney at settlement, a copy of such Power of Attorney must be submitted for review in advance of settlement. Failure to comply with this requirement may result in the postponement of the settlement. Acceptability of the Power of Attorney for purposes of completion of settlement is within the discretion of the insurer.

**Copyright American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Commitment (08-01-2016)
C165B00


## Schedule B Section 1
## Requirements continued

9. Proof to be provided that any individuals holding record title have not, subsequent to acquisition of title, been a party to any divorce proceedings, whether currently ongoing or completed prior to the transaction that is the subject of this form. In the event such divorce proceedings have occurred, same to be examined and possible additional exceptions and requirements to be added. This requirement applies only to individuals and is not applicable if record owner is an LLC, LP, Corporation or other business entity.

10. Information must be furnished concerning the Social Security Number(s) and/or the Tax Identification Number(s) and future addresses of grantors for the completion of Substitute Form 1099 at the Closing of Transaction.

11. Proof that no parties to this transaction are involved in bankruptcy proceedings; if bankruptcy has been filed, same to be examined; possible additional requirements/exceptions to be added:

    **Two (2) cases filed:**

    **Chapter 11 Bankruptcy filed 6/30/2017 to Case No.17-14454-elf - Island View Crossing II, L.P.; and filed 7/18/17 to Case No.17-00202-elf - Island View Properties, Inc., trading as Island Vie v. Prudential Savings Bank (Lead Bk: 17-14454-elf).**

12. Satisfactory evidence should be provided that improvements and/or repairs or alterations thereto are completed; that contractor, sub-contractors, labor and materialmen are all paid; and have released of record all liens or notice of intent to perfect a lien for labor material.

13. TAXES:
    Receipts for Township, County and School Taxes for the three prior years to be produced.
    Township, County and School Taxes for the current year 2018
    Assessment $210,240.00 (land only) 04-027-119; Not assessed (04-027-119-002 thru and including 4-027-119-074)
    Tax ID / Parcel No.   04-027-119 and 04-027-119-002 thru and including 04-027-119-074

14. Taxes for the year(s) 2015, 2016 and 2017 have been returned to the Bucks County Tax Claim Bureau as unpaid and can only be paid at that Office.  (as to parcel 04-027-119 only; other parcels are clear)

15. Premises in Question may be or has been exposed to Upset or Judicial Sale.  Contact the Tax Claim Bureau for date of possible sale.

16. WATER AND SEWER RENTS:
    Receipts for Water and Sewer Rents for the three prior years to be produced.
    Water and Sewer Rents for the current year 2018.

17. MECHANICS AND MUNICIPAL CLAIMS:

    A. Plaintiff: Borough of Bristol
       Defendant:  Island View Crossing II, L.P.
       Filed: 04/22/2016 No. 2016-71251 in the amount of $56,239.22

18. MORTGAGES:

    A. Amount: $2,500,000.00
       Mortgagor:  Island View Crossing II, L.P.

Order Number: 6818802MA
PHL-1831826/26 733 404

## Schedule B Section 1
## Requirements continued

Mortgagee: Redevelopment Authority of Bucks County
Dated: 6/13/2003 and Recorded: 8/25/2003 in Land Record Book <u>3537 Page 792</u>.

Instrument Number 20030163787

Collateral Assessment of Rents and Leases, dated 6/13/2003 recorded 8/25/2003 in Land Record Book <u>3537 page 816</u>.

B. Amount: $3,911,250.00 (Collateral Mortgage)
Mortgagor: Island View Crossing II, L.P.
Mortgagee: Prudential Savings Bank
Dated: 9/20/2011 and Recorded: 10/19/2011 in Land Record Book <u>6838 Page 230</u>.

Instrument No. 2011070888)

Subordination Agreement recorded 1/8/2015 in Instrument Number <u>2015001215</u>. (Subordinates the lien of this mortgage to the lien of mortgage recorded in Instrument Number <u>2015001098</u>.

***Note in Mortgage***: ANY DEFAULT under any Mortgage which is a lien senior to the lien of this Mortgage shall be considered a default under this Mortgage.

***Complaint in Mortgage Foreclosure filed 12/13/2016 to File No. <u>2016-07768</u>, not reduced to judgment.***

C. Amount: $1,400,000.00 (Mortgage and Security Agreement)
Mortgagor: Island View Crossing, II, L/P.
Mortgagee: Prudential Savings Bank
Dated: 9/22/2013 and Recorded 9/27/2013 in Instrument Number <u>2013080879</u>.

Subordination Agreement dated 9/20/2013 as Instrument Number <u>2013080880</u> and termination recorded in Instrument Number <u>2015001085</u>.

Subordination Agreement 11/26/ 2014 and recorded as Instrument Number <u>2015001185</u>. (Subordinates the lien of this mortgage to the lien of mortgage recorded as Instrument Number <u>2015001098</u>.

***Note in Mortgage***: ANY DEFAULT under any Mortgage which is a lien senior to the lien of this Mortgage shall be considered a default under this Mortgage.

***Complaint in Mortgage Foreclosure filed 12/19/2016 to CP No. 2016-07904, not yet reduced to judgment.***

D. Amount: $5,136,000.00 (Collateral Mortgage)
Mortgagor: Island View Crossing II, LP
Mortgagee: Prudential Savings Bank
Dated: 5/30/2014 and Recorded 7/23/2014 in Instrument Number <u>2014038527</u>.

***Note in Mortgage***: ANY DEFAULT under any Mortgage which is a lien senior to the lien of this Mortgage shall be considered a default under this Mortgage.

***Complaint in Mortgage Foreclosure filed 12/13/2016 to CP No. <u>2016-7771</u>, not yet reduced to judgment.***

## Schedule B Section 1
## Requirements continued

E. Amount: $5,541,468.00 (Open-End Mortgage and Security Agreement)
Mortgagor: Island View Crossing II, L.P.
Mortgagee: Prudential Savings Bank
Dated: 11/26/2014 and Recorded as Instrument Number 2015001098.

Assignment of Rents, Leases and Agreements of Sale recorded as Instrument Number 2015001143.

Note: The above mortgage is an OPEN-END MORTGAGE securing future advances. Borrower(s) to execute appropriate documentation as required by lender authorizing termination of credit line unless mortgage is to remain a lien on other property. If only the property described in this commitment is to be released by lender from the lien of the mortgage, written confirmation from lender of its intent to release is required. Acknowledgement by the lender in the payoff letter that when the payoff amount is received that they will satisfy the mortgage.

**Note in Mortgage**: ANY DEFAULT under any Mortgage which is a lien senior to the lien of this Mortgage shall be considered a default under this Mortgage.

***Complaint in Mortgage Foreclosure filed 12/13/2016 to CP No. 2016-7770, not yet reduced to judgment.***

F. Amount: $127,627.83 (Open-End Mortgage and Security Agreement) (Secures Future Advances)
Mortgagor: Island View Crossing II, L.P.
Mortgagee: Redevelopment authority of the County of Bucks
Dated: 7/21/2016 and Recorded 7/22/2016 in Instrument Number 2016043135.

Assignment of Rents, Leases and Profits recorded as Instrument Number 2016044219.

Note: The above mortgage is an OPEN-END MORTGAGE securing future advances. Borrower(s) to execute appropriate documentation as required by lender authorizing termination of credit line unless mortgage is to remain a lien on other property. If only the property described in this commitment is to be released by lender from the lien of the mortgage, written confirmation from lender of its intent to release is required. Acknowledgement by the lender in the payoff letter that when the payoff amount is received that they will satisfy the mortgage.

19. SECURED TRANSACTIONS:

A. SECURED PARTY: Prudential Savings Bank
DEBTOR: Island View Crossing II, L.P.
FILED: 09/27/2013 in the Recorder of Deeds Office as Instrument Number 2013080881.

B. SECURED PARTY: Prudential Savings Bank
DEBTOR: Island View Crossing II, L.P.
FILED: 01/04/2015 in the Recorder of Deeds Office as Instrument Number 2015001161.

20. JUDGMENTS:

A. Plaintiff: McElderry Drywall, Inc.
Defendant: Americorp Homes, Inc. and Island View Crossing II, L.P.

Order Number: 6818802MA
PHL-1831826/26 733 404

## Schedule B Section 1
## Requirements continued

    Filed: 8/10/2017 No. 2016-05868 in the amount of $42,730.16

   B. Plaintiff: Monica Caione
     Defendant: Island View Crossing II, L.P., Americorp Homes and Island View Crossing II, Inc.
     Filed: 2/28/2017 No. 2016-04021 in the amount of $30,990.00

   C. Plaintiff: Samira Ranganathan and Khandulans Ranganathan
     Defendant: Island View Crossing II, L.P.
     Filed: 6/19/2017 No. 2016-05724 in the amount of $49,980.00

   D. Plaintiff: Frank Del Grasso
     Defendant: Island View Crossing II, L.P., Island View Crossing II, Inc. and Americorp Realty LLC (Americorp Homes LLC; Americorp Real Estate Development LLC)
     Filed: 3/23/2017 No. 2016-06685 in the amount of $27,250.00

   E. Plaintiff: Bohler Engineering PA, LLC
     Defendant: Island View Crossing II, L.P.
     Filed: 1/05/2017 No. 2017-00032 in the amount of $48,853.63

21. Names of all relevant parties to the within real estate transaction to be searched prior to closing to verify that they are not Specially Designated Nationals subject to the provisions of President's Executive Order Targeting Terrorist Assets.

22. Owner's Affidavit on Company form to be executed by sellers or mortgagors and filed with Company.

23. Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

24. Last Insured Not Available.

25. The following note is for Informational Purposes Only:

    The following deed(s) affecting said land were recorded within six (6) months of the date of this report: NONE

26. As to Island View Crossing II, L.P.:

    a. Certificate forming Island View Crossing II, L.P., a Limited Partnership, to be filed in the Department of State.

    b. Current Partnership Agreement of Island View Crossing II, L.P. to be produced, examined and possible additional requirements to be added.

    c. Names of all General Partners and proof that they are all of the General Partners of Island View Crossing II, L.P., a Limited Partnership, to be furnished and additional searches made.

    d. Present Deed to be made by Island View Crossing II, L.P., a Limited Partnership, with the joinder of all General Partners.

    e. Proof that Island View Crossing II, L.P. is still subsisting.

Order Number: 6818802MA
PHL-1831826/26 733 404

## Schedule B Section 1
### Requirements continued

27. Name of mortgagor to be furnished and additional searches made.

28. Certificate of Completion of Structural Components and Mechanical System to be produced and recorded.

29. Certificate of Unit Completion to be produced and recorded.

30. Proof that assessments due unit owners association are paid to date of settlement.

31. Requirements to be met with regard to bankruptcy of Island View Crossing II, L.P.
    a) full bankruptcy docket
    b) copies of all court orders, stipulations, motions, petitions etc. having an impact upon the transaction and premises in question.
    c) copies of all notices of mailing and proofs of notice with respect thereto
    d) any other information deemed to be relevant to the transaction
    e) fourteen (14) day appeal/stay period from date of indexing of Bankruptcy Court Orders to have expired prior to closing

    Possible additional requirements to be made hereto upon production of same.

32. Certified copy of Bankruptcy Court Order authorizing Sale of premises to be produced and examined; possible additional requirements to be made hereto upon production of same.

33. Certified copy of Petition, Affidavit of Service and final Bankruptcy Court Order authorizing sale of premises free and clear of liens to be produced and examined; possible additional requirements to be made hereto upon production of same.

34. Possible outstanding interest of DeLuca Signature, L.P. proposed Purchaser or Mortgagor under Application 6587873 . Possible additional searches to be made and additional requirements certified.

35. Declaration of Homeowners Association to be produced and recorded. Possible additional Exceptions/Requirements may be added.

36. Covenants (as referenced in Paragraph 3a) to be included in all deeds, leases and other instruments of conveyance of the property as per Consent Order and Agreement recorded in Land Record Book 3537 page 241.

    Notification to be provided to the Commonwealth of Pennsylvania - Department of Environmental Protection and copy of instrument used to transfer title, containing the aforesaid covenants, per Consent Order and Agreement (paragraph 3c) recorded in Land Record Book 3537 page 241.

37. The actual value of the estate or interest to be insured must be disclosed to the Company, and subject to approval by the Company, entered as the amount of the policy to be issued. Until the amount of the policy to be issued shall be determined, and entered as aforesaid, it is agreed that as between the Company, the applicant for this Commitment, and every person relying on this Commitment, the Company cannot be required to approve any such valuation in excess of $100,000.00 and the total liability of the Company on account of this Commitment shall not exceed said amount.

Order Number: 6818802MA
PHL-1831826/26 733 404

## Schedule B Section 1
## Requirements continued

38. For each policy to be issued as identified in Schedule A, Item 2; the Company shall not be liable under this commitment until it receives a designation for a Proposed Insured, acceptable to the Company. As provided in Commitment Condition 4, the Company may amend this commitment to add, among other things, additional exceptions or requirements after the designation of the Proposed Insured.

39. Possible additional Company approvals, which approvals depend on liability amount as shown on Schedule A, currently designated as $100,000.00.

Order Number: 6818802MA
PHL-1831826/26 733 404

# Schedule B Section 2
## Exceptions

**In the event that one or more of the Exceptions listed below references covenants, conditions and/or restrictions, please note that the Exception(s) specifically exclude any covenants or restrictions, if any, based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.**

1. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date of the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this form.

2. Rights or claims of parties in possession of the land not shown by the public record.

3. Any lien, or right to a lien, for services, labor or materials heretofore or hereafter furnished, imposed by law and not shown by the public records.

4. Easements, encroachments, overlaps, shortages of area, boundary line disputes and other matters affecting title that an accurate and complete survey would disclose.

5. Real estate taxes for the current and prior tax years which are hereafter assessed and are not yet due and payable.

6. Company assumes no liability by reason of failure of taxing authorities to assess premises.

7. Right of Way Agreement for railroad and siding, which includes ingress, egress and regress as in Deed Books 525 page 238.

8. Release and Quit Claim which includes fifty (50) foot right of way and passage, terms, any License granted by Philadelphia and Trenton Railroad Company and Pennsylvania Railroad Company, privileges, siding, ingress, egress and regress and reverter if railroad abandoned as in Deed Book 659 page 430.

9. Rights granted to Philadelphia Electric Company as in Deed Book 703 page 246.

10. Reservations, terms, conditions, easements, access and mineral rights to United States of America as in Deed Book 890 page 389.

11. Agreement to the Borough of Bristol of right of way for sewer purposes, which contains terms and access as in Deed Book 593 page 207.

12. Subject to laws and regulations of the Federal & State Government, their political subdivision and agencies over a portion of premises extending beyond low water mark of Delaware River to regulate, change, revise and relocate all lines or marks as well as exert governmental title and ownership vested in the State in area between original low water mark and the present pierhead line and to the rights of the public between high and low water mark.

13. Easement of pipe line as in Deed Book 1696 page 461.

14. Easement of Railroad right of way through the premises.

**Copyright American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association. 
ALTA Commitment (08-01-2016)
C165B00                                                                                                       Page 9 of 12

Order Number: 6818802MA
PHL-1831826/26 733 404

## Schedule B Section 2
## Exceptions continued

15. Easement Agreement to Borough of Bristol, which includes terms, conditions, maintenance, repair, duties, obligations and ingress and egress as in Land Record Books 1357 page 2310.

16. Parking Easement Agreement by and between Island View Crossing I, L.P. and Island View Crossing II, L.P. and The Borough of Bristol, which includes covenants, obligations, rights, pro-rata share of maintenance and access as in Land Record Book 5212 page 1993.

17. Restrictions as in Land Record Book 3537 page 234.

18. Consent Order and Agreement by and between the Commonwealth of Pennsylvania - Department of Environmental Protection, the Redevelopment Authority of the County of Bucks and Island View Crossing I, L.P. and Island View Crossing II, L.P., which includes obligations, covenants, restrictions, terms, conditions and access as in Land Record Book 3537 page 241.

19. Restrictions and Pennsylvania Land Recycling and Environmental Remediation Standards Act as to hazardous waste notice as in Land Record Book 5172 page 342.

20. Declaration of Easement by and between Island View Crossing I, L.P. and Island View Crossing II, L.P. and Borough for public and pedestrian walkway/river trail, which includes rights, easements, access, maintenance and repair as in Land Record Book 5212 page 2012.

21. Parking Lot Lease Agreement by and between Island View TCI, L.P. and The Borough of Bristol which includes rights, duties, access, maintenance, repair and reference to Ground Lease dated June 27, 2003, as in Land Record Book 5212 page 2058.

22. Highway Occupancy Permit as in Land Record Book 5409 page 607.

23. Declaration of Restrictive Covenant - Island View Crossing II, L.P. (Declarant) as in Land Record Book 5433 page 627.

24. Rights granted to PECO Energy Company, Verizon Pennsylvania, Inc. and Comcast Cable Company recorded as Instrument # 2015041393.

25. Notes, conditions, setback lines, easements, reservations, covenants and restrictions as shown in Plan Book 300 page 96 and in Instrument # 2015041670.

26. Declaration of Homeowners Association recorded in Instrument # _____. (to be recorded)

Order Number: 6818802MA
PHL-1831826/26 733 404

# Schedule C
## Description and Recital

ALL THAT CERTAIN lot or piece of land situate in Bristol Borough, Bucks County, Pennsylvania, described according to Plan of Subdivision, dated 3/29/2000, revised 5/1/2000 and recorded in Plan Book 300 page 96, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Radcliffe Street (SR 2002), a corner of Lot 2 on said Plan; thence extending from said point of beginning, along said Lot 2, South 54 degrees 04 minutes 10 seconds East, 694.13 feet to a point in line of the Delaware River; thence extending along the same the two following courses and distances; (1) South 21 degrees 17 minutes 52 seconds West, 271.88 feet and (2) South 33 degrees 23 minutes 27 seconds West, 718.45 feet to a point, a corner of lands now or late of Bucks County Redevelopment Authority; thence extending along the same the three following courses and distances, viz: (1) North 54 degrees 04 minutes 50 seconds West, 450.19 feet; (2) South 35 degrees 55 minutes 10 seconds West, 36.63 feet; and (3) North 54 degrees 04 minutes 10 seconds West, 344.47 feet to a point on the Southeasterly side of Radcliffe Street, aforesaid; thence extending along the same, North 35 degrees 55 minutes 50 seconds East, 1017.52 feet to the first mentioned point and place of beginning.

BEING Lot 1 on said Plan.

Tax ID / Parcel No.: 04-027-119 and 04-027-119-002 thru and including 04-027-119-074

Being the same premises which Redevelopment Authority of The County of Bucks by Deed dated 6/5/2003 and recorded 6/13/2003 in Bucks County in Land Record Book <u>3537 Page 234</u> conveyed unto Island View Crossing II, L.P., a Pennsylvania limited partnership, in fee.

Being the same premises which Redevelopment Authority of The County of Bucks by Corrective Deed dated 10/17/2006 and recorded 11/09/2006 in Bucks County in Land Record Book <u>5172 Page 342</u> conveyed unto Island View Crossing II, L.P., a Pennsylvania limited partnership, in fee.

**Copyright American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

ALTA Commitment (08-01-2016)
C165B00

## NOTICES

1. PLEASE BE ADVISED THAT Commonwealth Land Title Insurance Company ("COMPANY") AND Commonwealth Land Title Insurance Company ("AGENT") HAVE NO KNOWLEDGE, TRAINING OR EXPERIENCE IN MATTERS THAT ARE UNRELATED TO TITLE INSURANCE, INCLUDING, BUT NOT LIMITED TO, SUCH MATTERS AS BULK SALE TRANSFERS, BULK SALE CLEARANCE CERTIFICATE REQUIREMENTS (IF APPLICABLE), ZONING/SUBDIVISION, STRUCTURAL REPAIRS, ENVIRONMENTAL, WATER INFILTRATION, WETLANDS, TERMITES OR ONSITE SEWAGE SYSTEMS, AND WE DO NOT INTEND TO, AND CANNOT, PROVIDE SERVICES OR ADVICE TO YOU ON SUCH MATTERS. IF YOU ARE FACED WITH ISSUES REGARDING SUCH MATTERS, YOU SHOULD CONSULT A LAWYER, ENGINEER, ARCHITECT OR OTHER APPROPRIATE CONSULTANT OR PROFESSIONAL OF YOUR CHOICE.

2. ALSO BE ADVISED THAT YOU MAY PURCHASE AT ADDITIONAL COST ENHANCED COVERAGES FROM THE BASIC POLICY OF TITLE INSURANCE. IF YOU WISH AN EXPLANATION OF THE ENHANCED COVERAGES AND THE COST FOR THESE ADDITIONAL COVERAGES, PLEASE CONTACT THE PARTY LISTED BELOW.

3. THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF INSURANCE REQUIRES THAT WE SEND THE FOLLOWING NOTICE TO YOU, OUR APPLICANT, PRIOR TO CLOSING. IF APPLICABLE, THE DEPARTMENT FURTHER REQUIRE THAT YOU, THE APPLICANT, FORWARD THIS NOTICE TO THE ULTIMATE CONSUMER IN ADVANCE OF THE DAY OF CLOSING:

   YOUR TITLE INSURANCE FEE COVERS THE COST OF CLOSING ON THE INSURED REAL ESTATE PROPERTY IF IT TAKES PLACE DURING REGULAR OFFICE HOURS AND AT THE OFFICE OF THE TITLE INSURANCE AGENT OR UNDERWRITER. IF YOUR CLOSING TAKES PLACE AT A LOCATION OR TIME OF YOUR CHOOSING, OR THAT OF YOUR LENDER OR REALTOR, THE TITLE INSURANCE AGENT OR UNDERWRITER MAY IMPOSE AN ADDITIONAL CHARGE FOR THIS SPECIAL SERVICE. YOU MAY DETERMINE THE AMOUNT OF THIS ADDITIONAL CHARGE, IF ANY, BY CONTACTING THE PARTY LISTED BELOW.

### Commonwealth Land Title Insurance Company
1700 Market StreetSuite 2110
Philadelphia, PA 19103
Phone: 215-241-6236
Fax: 215-241-1600

**Copyright American Land Title Association. All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



ALTA Commitment (08-01-2016)
C165B00