IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | CHAPTER 11 |
| ISLAND VIEW CROSSING II, L.P. | BANKRUPTCY NO. 17-14454(ELF) |
| Debtor | |

**MOTION OF KEVIN O'HALLORAN, CHAPTER 11 TRUSTEE, FOR ENTRY
OF A FINAL ORDER AUTHORIZING THE TRUSTEE (I) TO OBTAIN
POST-PETITION UNSECURED FINANCING FROM BKRE INVESTMENTS LLC
AS AN ADMINISTRATIVE EXPENSE PURSUANT TO §§ 105 AND 364(b)
OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 4001; (II) TO ENTER INTO THE PROMISSORY
NOTE; AND (III) GRANTING RELATED RELIEF**

Kevin O'Halloran, Chapter 11 Trustee (the "Trustee") for the estate of Island View Crossing, II, L.P. (the "Debtor"), by and through his counsel, Karalis PC, hereby moves this Court for the entry of a final order authorizing the Trustee (i) to obtain from BKRE Investments LLC (the "Lender") unsecured post-petition financing as an administrative expense (the "Second Loan") pursuant to §§ 105 and 364(b) of the Bankruptcy Code of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 4001 (the "Bankruptcy Rules"); (ii) to enter into the Promissory Note; and (iii) granting related relief (the "Motion"). In support of these requests, the Trustee states as follows:

### Bankruptcy Rule 4001(c)(1)(B) Concise Statement

Below is the Trustee's Concise Statement pursuant to Bankruptcy Rule 4001(c)(1)(B) with cross references to the applicable paragraphs in the Promissory Note (also referred to at times as "Note"). The Second Loan transaction, if approved by this Court, provides for the following:[1]

---

[1] This summary of the Promissory Note is intended only to assist interested parties in examining the key aspects of the Loan and are qualified in their entirety by reference to the Promissory Note the terms of which shall govern.

a. *Borrower:*   Island View Crossing II, L.P. (by the Trustee on behalf of the Debtor).

b. *Lender:*   BKRE Investments LLC, an Ohio limited liability company.

c. *Loan Amount:* $443,352; provided however, only $200,000.00 of the amount of the Second Loan will be advanced to the Borrower upon Bankruptcy Court approval (the "Initial Advance") and the balance ($243,352.00) of the Second Loan (the "2nd Advance") will be advanced to Borrower only at such time as the Additional Condition (as defined below) is satisfied in the sole and absolute discretion of Lender. *See Note at first unnumbered paragraph.*

d. *Use of Proceeds:* The Initial Advance of $200,000 shall be used to fund the costs for the installation of the exterior siding, brick façade, garage doors, and trim to complete the exterior of buildings numbered 3 and 8 in Phase 1, the sidewalk improvements to the entrance of the Project and expenses for Phase 1. Subject to the Additional Condition being satisfied, the balance in the amount of $243,352.00, the 2nd Advance will be provided to fund the costs to complete the four residential units within building number 3 in Phase 1. *See Note at 2(e).*

e. *Fees and Costs:* Except for the interest rate charges set forth below, there are no fees or costs being charged by the Lender for this Second Loan. *See Note at 2(d).*

f. *Interest Rate and Accrual:* Interest shall accrue on the unpaid principal balance of the Second Loan outstanding at fixed rate of nine and one-quarter percent (9.25%) per annum until the entire outstanding principal balance has been paid and satisfied in full; provided, however, that if Borrower repays to Lender the entire unpaid principal balance of the Second Loan due to Lender on or before the Maturity Date, then the principal balance of the Second Loan shall accrue no interest. *See Note at 2(b).*

g. *Loan Term:* 12 months after date the Second Loan is approved by Bankruptcy Court. *See Note at 1.*

h. *Grant of Administrative Expense Claim:* The Second Loan shall be an allowed administrative expense claim of the kind specified in Section 503(b)(1) of the Bankruptcy Code. *See Note at 6.*

i. *Additional Condition.* The 2nd Advance will only be made to Trustee in the sole and absolute discretion of the Lender. *See Note at 5.*

2

## Preliminary Statement

By this Motion, the Trustee is seeking to obtain entry of a final order authorizing the Trustee to obtain the Second Loan which is an unsecured loan in the amount of $443,352 as an administrative expense claim. The initial amount of $200,000 will allow the Trustee to complete and pay the costs for the exterior finishes of buildings numbered 3 and 8 in Phase 1 of the Project which will protect and winterize these buildings from the elements, certain sidewalk improvements to the entrance of the project and miscellaneous construction costs for Phase 1. If the "Additional Condition" (as set forth in the Motion) is satisfied to the Lender's satisfaction, the balance of the loan in the amount of $243,352 will be advanced and used to complete the 4 Residential Units in building number 3. Building number 3 contains 4 Residential Units (Residential Units 12, 13, 14, & 15) and building number 8 contains 6 Residential Units (Residential Units 16, 17, 18, 19, 20 & 21).

As set forth in the Motion, the Trustee on October 9, 2019 obtained approval from the DEP (as defined below) of the Final Act 2 Report and cleanup plan for Phase 1. On December 16, 2019 the DEP signed and returned the fully executed environmental covenant ("EC") for Phase 1. The EC was recorded against Phase 1 with the Recorder of Deeds for Bucks County on December 17, 2019.

The Trustee is now able to accept agreements of sale for the Residential Units in Phase 1. Presently, the Trustee has 12 Residential Units [building number 4 (Residential Units 42, 42, 43, 44, 45, 46, & 47) and building number 2 (7, 8, 9, 10 & 11)] which are completed and ready for sale. To date the Trustee also has 15 non-binding reservation agreements for Residential Units in Phase 1 which the Trustee will seek to convert to agreements of sale for Residential Units in Phase 1.

Once the Trustee can schedule closings for Residential Units in Phase 1, the Trustee will be able to generate adequate cash flow to continue with the construction, sale and closing of the remaining buildings and Residential Units in Phase 1.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The legal predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 364(b) of the Bankruptcy Code and Fed. R. Bankr. P. 4001(c).

## BACKGROUND

A. **Procedural Background**

4. On June 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

5. Since the Petition Date, the Debtor remained in possession of its assets and continued in the management of its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code until a Chapter 11 Trustee was appointed.

6. On December 18, 2017, this Honorable Court entered an Order directing the appointment of a Chapter 11 Trustee.

7. On December 21, 2017, the United States Trustee filed an Application for Order Approving the Appointment of Christine C. Shubert as the interim Chapter 11 Trustee which application was approved pursuant to a Court Order entered on the same day.

8. A meeting of creditors commenced on January 11, 2018 which was continued and

concluded on January 29, 2018 for the purpose of electing a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(b)(1) and Fed. R. Bankr. P. 2007.1.

9. On January 30, 2018, the United States Trustee for Region 3 filed its Report of Undisputed Election which provided, *inter alia*, that the Trustee was elected to serve as the trustee in this bankruptcy proceeding.

B. **The Project**

10. The Debtor's bankruptcy estate owns a residential subdivision (the "Project") containing approximately 17.51 acres located at 1600 Radcliffe Street, Bristol Borough, Bucks County, Pennsylvania (Tax Parcel No. 4-27-119), which was approved for development in two phases, Phase 1 is currently approved for fourteen (14) buildings containing a total of 73 townhouses and certain site improvements ("Phase 1") and Phase 2 is currently approved for six (6) buildings containing a total of 96 condominiums units and certain site improvements, as may be amended (hereinafter defined as Phase 2). The terms townhouse(s) and condominium unit(s) are hereinafter individually referred to as a "Residential Unit" and collectively, as "Residential Units"

11. Phase 1 is known as "The Townhomes at Radcliffe Court on the Delaware, a planned community."

12. The Trustee is in the process of constructing residential units in Phase 1 of the Project.

C. **First Post-Petition Loan Provided by the Lender to the Trustee**

13. On August 17, 2018, the Trustee filed the Motion for Entry of Final Order Authorizing (I) Trustee to Obtain Secured Post-Petition Financing Pursuant to §§ 105, 361, 364(c)(1) and 364(d)(1) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001, (II) Trustee to Enter into the Promissory Note; (III) Granting an Allowed Super Priority Administrative Expense Claim With Priority Over Any and All Administrative Expenses of the

5

Kind Specified in Bankruptcy Code Section 503(B) or 507(B); (IV) Granting a Lien on All Assets of the Estate (Except for the Excluded Assets) Senior to All Other Liens (Except for the Permitted Liens) Pursuant to Section 364(D)(1) of Bankruptcy Code; (V) Approving the Release of Liens Agreement Between the Trustee and Prudential Bank Pursuant to Federal Rule of Bankruptcy Procedure 9019; and (VI) Granting Related Relief (the "First Financing/Approval Motion") [D.I. 342].

14. The First Financing/Approval Motion sought, *inter alia*, (i) post-petition financing in the amount of $4,700,000 on a revolving basis from the Lender in accordance with the terms of the Loan Documents (as defined in the First Financing/Approval Motion) and (ii) approval of the Release of Liens Agreement (the "Release of Liens Agreement") between the Trustee and Prudential.

15. As set forth in the First Financing/Approval Motion:

   a. The liens being granted to the Lender to secure the loan shall prime and be senior to the Existing Borough Judgment, Existing Judgement of Bohler Engineering, the Existing Judgments of Former Prospects and the Existing Judgment of McElderry Drywall Inc.

   b. The Borough of Bristol and Bohler Engineering advised the Trustee that they would not object to the Existing Borough Judgment and Existing Judgment of Bohler Engineering being primed by the lien to be granted to the Lender to secure the Loan.

   c. The liens securing unpaid real estate taxes shall remain senior to the liens being granted to the Lender to secure the Loan.

16. The Release of Liens Agreement provides, *inter alia*, as follows:

   a. Prudential's Consent to Loan. Subject to the mandatory release payments set forth therein, Prudential consents to the Loan, Trustee entering into the Loan Agreement and the granting of senior claims and liens to Lender to secure the Loan that will be senior and with priority over Prudential's existing liens arising from the Existing Mortgages of Prudential, and reservation of rights of Trustee, Debtor and Prudential as set forth in the Release of Liens Agreement.

6

b.  **Release payments to Redevelopment Authority of Bucks County ("RDA").** Mandatory release payment of $12,350 to RDA from the sale of each Residential Unit in Phase 1 of the Project in accordance with, and in full satisfaction of the Prudential obligations with respect to each unit, under the Existing Cross-Subordination Agreement to be applied to reduce the principal balance of the Existing RDA Loan and to release the RDA lien on the Residential Unit sold.

c.  **Release Payments to Prudential.** Mandatory release payment of $25,000 to Prudential from the sale of each of the first 35 Residential Units in Phase 1 of the Project and $45,000 to Prudential from the sale of each of the remaining 38 Residential Units in Phase 1 of the Project which will be applied to reduce the principal balance of the Existing Prudential Construction Loan as set forth in the proof of claim filed by Prudential as secured in the Bankruptcy Case identified on the Bankruptcy Court's claim register as claim no. 23 in the amount of $4,092,443.58.

d.  **Balance of Existing Prudential Construction Loan.** The unpaid balance due under the Existing Prudential Construction Loan shall be due and payable to Prudential on the last business day of the forty-second (42nd) month after the entry of a final order approving the Loan (the "Existing Prudential Construction Loan Maturity Date").

e.  **Subordination of Steeple Run Collateral Mortgage.** Concurrent with the execution of the Release of Liens Agreement, Prudential shall deliver to Trustee (in recordable form) a subordination agreement of the Steeple Run Collateral Mortgage subordinating the liens and claims of this mortgage for priority, distribution and payment purposes to all Permitted Claims so that the Trustee may utilize the proceeds from the sale of each Residential Unit at the Project and/or the Project to pay the Permitted Claims (as defined in the Release of Liens Agreement) in full from the proceeds of sale of the Residential Units at the Project and/or sale of the Project as set forth in any plan proposed by the Trustee and confirmed by the Bankruptcy Court. The Subordination Agreement will also provide that at the time of each closing on the sale of a Residential Unit at the Project and/or the sale of the Project, and only so long and to the extent the Permitted Claims have not been paid in full, Prudential will deliver a release of the lien of this mortgage to the Trustee without any charge or payment. The Trustee/Debtor preserves its claim to void or otherwise invalidate the Steeple Run Collateral Mortgage and Prudential likewise preserves all of its claims and defenses to any such claim.

f.  **Subordination of Calnshire Collateral Mortgage.** Concurrent with the execution of this Agreement, Prudential shall deliver to Trustee (in recordable form) a subordination agreement of the Calnshire Collateral

7

Mortgage subordinating the liens and claims of this mortgage for priority, distribution and payment purposes to all the Permitted Claims so that the Trustee may utilize the proceeds from the sale of each Residential Unit at the Project and/or the Project to pay the Permitted Claims in full from the proceeds of sale of the Residential Units at the Project and/or sale of the Project as set forth in any plan proposed by the Trustee and confirmed by the Bankruptcy Court. The Subordination Agreement will also provide that at the time of each closing on the sale of each Residential Unit at the Project and/or the sale of the Project, and only so long and to the extent the Permitted Claims have not been paid in full, Prudential will deliver a release of the lien of this mortgage to the Trustee without any charge or payment. The Trustee/Debtor preserves its claim to void or otherwise invalidate the Calnshire Collateral Mortgage and Prudential likewise preserves all of its claims and defenses to any such claim.

g. Subordination of IVC-Durham Mortgage. Concurrent with the execution of this Agreement, Prudential shall deliver to Trustee (in recordable form) a subordination agreement of the IVC-Durham Mortgage subordinating the liens and claims of this mortgage for priority, distribution and payment purposes to all the Permitted Claims so that the Trustee may utilize the proceeds from the sale of each Residential Unit at the Project and/or the Project to pay the Permitted Claims in full from the proceeds of sale of the Residential Units at the Project and/or sale of the Project as set forth in any plan proposed by the Trustee and confirmed by the Bankruptcy Court. The Subordination Agreement will also provide that at the time of each closing on the sale of each Residential Unit at the Project and/or the sale of the Project, and only so long and to the extent the Permitted Claims have not been paid in full, Prudential will deliver a release of the lien of this mortgage to the Trustee without any charge or payment. The Trustee/Debtor preserves its claim to void or otherwise invalidate the IVC-Durham Mortgage and Prudential likewise preserves all of its claims and defenses to any such claim.

h. Permitted Claims. Permitted Claims is defined in the Release of Liens Agreement to mean: claims arising from (i) the Loan, (ii) allowed Administrative Claims, (iii) allowed Priority Tax Claims, (iv) allowed secured claims, (v) allowed Priority Non-Tax Claims, and (vi) allowed general unsecured claims excluding claims held by insiders (as that term is defined by the Bankruptcy Code and applicable case law); provided however, allowed fee claims of counsel retained by the Debtor are specifically excluded.

i. Release of Clubhouse and Common Elements. In addition to the above releases and subordination of Existing Mortgages of Prudential, Prudential shall deliver to Trustee (in recordable form) for no charge or payment, a release of its liens arising from (i) the Steeple Run Collateral Mortgage, (ii) the Calnshire Collateral Mortgage, and (iii) the IVC-Durham Mortgage

8

in connection with the clubhouse (to be designed and built) and the common elements at the Project at the time that the Trustee is legally obligated to, and in fact conveys said clubhouse and common elements to the applicable master association, homeowners' association and/or condominium association for the Project as set forth in the Release of Liens Agreement.

j. <u>Existing Letters of Credit Issued by Prudential</u>. Prudential represents that the Borough Letter of Credit and the Aqua Letter of Credit are irrevocable and it will not cancel either letter of credit without the prior written consent of the Trustee. Prudential further agrees that it will take no action that will cause the Borough or Aqua of Pennsylvania to draw monies under either letter of credit. Any advances made by the Prudential after the date of the Release of Liens Agreement (the "Advances") to the Borough under the Borough Letter of Credit (not to exceed the undrawn balance of $1,231,087.02) or to Aqua of Pennsylvania under the Aqua Letter of Credit (not to exceed the undrawn balance of $30,000.00) shall constitute an allowed claim under the Existing Prudential Construction Loan and will increase the principal amount due under the Existing Prudential Construction Loan by the amount of the advance but will not impact or change the release prices set forth above; provided, however the Prudential must deliver written notice to Trustee and his counsel no later than five (5) business days before it makes any advance under the Borough Letter of Credit or the Aqua Letter of Credit. Advances, if any, by Prudential as set forth above shall be due and payable on the Existing Prudential Construction Loan Maturity Date, as set forth in the Release of Liens Agreement, and not subject to challenge, deduction or setoff.

17. On September 12, 2018, this Honorable Court granted the First Financing/Approval Motion [D.I. 352] and the loan closing was concluded on or about September 26, 2019.

18. The Trustee has drawn the full amount of $4,700,000 under the First Financing/Approval Motion in order to fund the cost of the improvements and other expenses associated with the Project.

19. Initially, the Trustee projected that the DEP approval of Phase 1 would occur by of the 2nd quarter of 2019. Unfortunately, DEP approval of the final Act 2 Report was not obtained until October 9, 2019 and the EC was not approved and signed by the DEP until

9

December 16, 2019. Accordingly, the sale of Residential Units has been delayed.

20. Based on the return of the EC signed by the DEP earlier this week the Trustee is projecting that agreements of sale should be signed during the month of January with closings commencing within 30 to 60 days thereafter depending on the respective buyer's contingencies.

D. **Current Status of the Project**

21. The work performed by the Trustee in Phase 1 is as follows:

    a. **Site Improvements**

        i. Retention of Penn E&R Environmental & Remediation, Inc. ("Penn E&R") as the environmental consultant for the Trustee to observe the remediation work at the Project, prepare the Final Act 2 Report for Phase 1 and obtain the applicable approvals.

        ii. Coordination of construction and remediation work in Phase 1 with the Pennsylvania Department of Environmental Protection ("DEP") to comply with the applicable Act 2 requirements and obtain DEP approval of the final Act 2 Report and cleanup plan for Phase 1.

        iii. Installation of the underground utilities consisting, of electricity, gas and cable for Phase 1. The Debtor had installed water lines but they were not connected to the main water service which was completed by the Trustee.

        iv. Installation of nine (9) pads for the remaining buildings in Phase 1 that do not have existing vertical construction have been compacted and are ready for stone and concrete.

        v. Obtained variance from Bristol Borough zoning board for the rear decks of certain Residential Units in Phase 1.

        vi. Completion of the pump Station improvements, which have been tested and approved.

        vii. Phase 1 has been capped with clean soil as required by DEP.

    b. **Vertical Construction**

        i. The Trustee retained McGrath & Son Development LLC as his

10

        construction manager for Phase 1.

    ii.    Five (5) buildings (Nos. 2, 3, 4, 8 and 10) have been constructed in Phase 1 containing a total of 26 Residential Units at different stages of completion. Twelve of the twenty-six Residential Units are 100% complete and available for sale.

    iii.    Two buildings (Nos. 2 & 4) are 100% complete.

        (a)    Building 2 has 5 Residential Units (nos. 7 to 11). Residential Units Nos. 10 and 11 are fully furnished model homes; and

        (b)    Building 4 has 7 Residential Units (nos. 41 to 47).

    ii.    Vertical construction has also begun for three additional buildings (building nos. 3, 8 and 10).

        (a)    Building 3 contains 4 Residential Units (nos. 12 to 15). This building is framed and the roof is installed. The rough mechanicals are completed. The exterior needs to be completed which the Trustee is presently having completed and the Second Loan will provide the funds required to pay these costs. The next tasks at this building are framing and mechanical inspections.

        (b)    Building 8 contains 6 Residential Units (nos. 16 to 21). This building is framed and the roof is installed. The exterior needs to be completed which the Trustee is presently having completed and the Second Loan will provide the funds required to pay these costs subject to the Additional Conditions being satisfied. The next task will be the interior framing and rough mechanicals.

        (c)    Building 10 contains 4 Residential Units (nos. 37 to 40). This building is framed, the roof is installed and exteriors are completed. The rough mechanicals are completed and have been inspected and the building is insulated. Final plumbing, electric, HVAC need to be installed.

c.    **DEP Approval of Phase 1 and Environmental Covenant**.

    i.    DEP Approval Letter. By letter dated October 9, 2019 (the "DEP Approval Letter"), the DEP advised the Trustee that it reviewed

11

            the "Final Report for Soil" dated April 30, 2019, as amended and related documents prepared by Penn E&R and submitted to DEP in accordance with the Land Recycling and Environmental Remediation Standards Act (Act 2) and constitute a clean up plan and final report as defined in Chapter 3 of Act 2. It further advised <u>inter alia</u> that it approves the Cleanup Plan Addendum and Final Reports for the substances identified and remediated to an Act 2 standard within the site specified. The DEP also required the Trustee to submit within 30 days of this approval letter an environmental covenant that sets forth the post remedial care obligations to meet and/or attain the Site-specific standard. A copy of the DEP Approval Letter is attached as Exhibit "A" and made a part hereof.

    ii.    <u>DEP Approved Environmental Covenant</u>. As required by the approval letter, the Trustee submitted to the DEP a draft of the Environmental Covenant which was thereafter amended to incorporate the DEP comments. The final form of the environmental covenant was signed by the Trustee and countersigned by the DEP on December 16, 2019 ("<u>EC</u>"). The EC was recorded on December 17, 2019 with the Recorder of Deeds for Bucks County. A copy of the EC is attached hereto as Exhibit "B" and made a part hereof.

d.    **Public Offering Statement for Phase 1**.

    i.    Now that the final Act 2 Report for Phase 1, as amended, has been approved by DEP and the EC has been recorded, the Trustee has finalized the Public Offering Statement for the Residential Units in Phase 1 ("<u>POS</u>"). A copy of the POS is attached hereto as Exhibit "C" and made a part hereof.

e.    **Conversion of Reservations for Residential Units into Agreements of Sale**.

    i.    While the Trustee was improving Phase 1 and seeking the DEP approval, the Trustee was also marketing Phase 1. Even though the Trustee was unable to accept an agreement of sale for a Residential Unit from a prospective purchaser, or provide a specific date when the Residential Units could be sold and closed, he did accept reservations and token deposits of $100 from prospective purchasers. In total, the Trustee has 15 reservations

12

|      |                                                                                                                                                                                                                                 |
|------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      | for Residential Units. The sale prices associated with these reservations total $5,215,430.                                                                                                                                     |
| ii.  | Three of the reservations are for Residential Units that are 100% completed and now available for sale. The sale prices associated with these three reservations total $945,970.                                                |
| iii. | The Trustee is now beginning to contact each prospective purchaser that signed a reservation to determine if they are prepared to execute an agreement of sale for a Residential Unit.                                           |

E.  **Current Required Expenditures**

22. The Trustee currently requires the sum of $200,000 to complete and pay the costs for the installation of the exterior finishes to buildings numbered 3 and 8 in Phase 1 which will protect and winterize these buildings from the elements, certain sidewalk improvements to the entrance of the project and miscellaneous construction costs for Phase 1 (the "Winter Sealing Expenditures"). Building number 3 contains four Residential Units (Residential Units 12, 13, 14, & 15) and building number 8 contains six Residential Units (Residential Units 16, 17, 18, 19, 20 & 21).

23. The Trustee believes in his business judgment that the Winter Sealing Expenditures are necessary to preserve and maintain the value of buildings numbered 3 and 8 and the completion of this work will enhance the value of these buildings and inure to the benefit of all creditors and the estate.

24. To protect buildings numbered 3 and 8 the Trustee has ordered the materials required to complete the exteriors of these buildings and to protect them from the elements.

25. The Trustee currently does not have sufficient cash to fund the payment of the Winter Sealing Expenditures.

26. If the "Additional Condition" as set forth below is satisfied to the Lender's satisfaction, the balance of the loan in the amount of $243,352 will be used to fund the payment

of the costs complete the four Residential Units in building number 3 (the "Building 3 Expenditures").

27. The Trustee believes in his business judgment that the completion of building numbered 3 during the winter months will not only increase the value of building numbered 3 but also provide the Trustee with four additional Residential Units available for immediate sale at the beginning of the 2020 spring selling season.

28. The Trustee cannot obtain interim financing of this amount from sources other than the Lender. Further, the Trustee does not believe that financing could be obtained on terms equal or more favorable than those contained herein.

29. The Trustee, absent receipt of the proceeds of the Second Loan will be unable to pay the Winter Sealing Expenditures or Building 3 Expenditures.

30. Based on the foregoing and the exigency of the circumstances, the Trustee has requested that the Lender provide the Second Loan in order to pay the Winter Sealing Expenditures and Building 3 Expenditures.

31. The Lender has agreed to provide the Trustee the Second Loan in the amount of $443,352 on the terms and conditions set forth in the Note as described in this Motion. Subject to approval of the Second Loan, the Trustee will have sufficient funds to pay for the Winter Sealing Expenditures and Building 3 Expenditures.

32. The Second Loan shall be re-paid by the Trustee to the Lender when the Trustee has sufficient cash flow to do so.

**Second Loan will pay the Winter Sealing Expenditures and Building 3 Expenditures**

33. The proposed Second Loan will enable the Trustee, among other things, to complete the winter sealing of building numbered 3 and 8 and pay the Winter Sealing Expenditures. If, the Additional Condition is satisfied, the balance of the Second Loan will provide funds needed by Trustee to complete the Residential Units in building no. 3 so that they will be available for sale in the early part of the 2020 spring selling season.

34. The Trustee has prepared an updated budget ("Budget") identifying the projected revenues and costs associated with the completion and sale of the 73 Residential Units in Phase 1 of the Project and the proposed release payments on account of the the First Loan, the existing RDA Loan and Prudential's Existing Construction Loan (as defined in the First Financing/Approval Motion) and payment of the Second Loan. A copy of the First Budget assuming the full amount ($443,352.00) of the Second Loan is advanced is attached to this Motion as Exhibit "D"; and a copy of the Second Budget assuming that only the Initial Advance of $200,000 of the Second Loan is advanced is attached to this Motion as Exhibit "E".

35. The Budget reflects that the construction and sale of the 73 Residential Units in Phase 1 of the Project will result in inter alia the following:

    a. The Second Loan and First Loan being repaid in full;

    b. All post-petition real estate taxes and municipal claims being paid;

    c. Subject to the terms of the Existing Cross Subordination Agreement (as hereinafter defined), the RDA (as hereinafter defined) being paid:

        i. release of lien payments totaling $901,550.00 from the sale of the 73 Residential Units in Phase 1 (73 x $12,350.00) and

        ii. all future quarterly interest and annual principal payments required under the RDA Loan.

    After the sale of the 73 Residential Units in Phase 1, the RDA loan

15

        balance will be approximately $728,000.00;

    d.    Subject to the terms of the Release of Liens Agreement, Prudential shall be paid release of lien payments totaling $2,585,000.00 from the sale of the 73 individual Residential Units in Phase 1 (35 Residential Units x $25,000.00; and 38 Residential Units x $45,000) to be applied to reduce the principal balance of the Existing Prudential Construction Loan (as hereinafter defined) as set forth in the proof of claim filed by Prudential Bank in this Bankruptcy Case identified on the Bankruptcy Court's claim register as secured claim no. 23 in the amount of $4,092,443.58. After the sale of the 73 Residential Units in Phase 1, the Existing Prudential Construction Loan principal balance will be approximately $1,507,000.00;

36.    After the above stated payments are paid, the Trustee will also have the following remaining assets in the Debtor's estate to monetize and/or liquidate for the benefit of creditors:

    a.    Phase 2 of the Project which is approved for 96 condominium units;

    b.    the claims and defenses of the Debtor/Trustee against Prudential including the lender liability litigation/adversary proceeding and claims under Chapter 5 of the Bankruptcy Code filed and pending before the Bankruptcy Court and proceeds thereof; and

    c.    The promissory note in the amount of $45,000 that accrues interest at 5.5% per annum from One State Street Associates, LP (the "OSSA Note"). The OSSA Note is secured by a first mortgage recorded against the real property located at 110 North State Street, Newtown, PA and a second mortgage recorded against the real property located at 1 South State Street and 2-4 Washington Street, Newtown, PA.

## THE PROPOSED SECOND LOAN

37.    Subject to this Court's approval, the Trustee and the Lender have agreed that the Lender will loan to the Trustee the sum of $443,352 under the terms and conditions set forth in the Note. A copy of the Note is attached hereto as Exhibit "F". The key provisions of the Note are as follows:

    a.    **Advances under Loan**: Only $200,000.00 of the amount of the Loan will be advanced to the Borrower upon Bankruptcy Court approval of the Second Loan (the "Initial Advance") and the balance ($243,352.00) of the Loan (the "2nd Advance") will be advanced to Borrower only at such time as the Additional Condition (as defined below) is satisfied.

16

    b.    **Use of Loan Advances**. The Initial Advance of $200,000 shall be used to fund the costs for the installation of the exterior siding, brick façade, garage doors, and trim to complete the exterior of buildings numbered 3 and 8 in Phase 1, the sidewalk improvements to the entrance of the Project and expenses for Phase 1. Subject to the Additional Condition being satisfied, the balance in the amount of $243,352.00, the 2nd Advance will be provided to fund the costs to complete the four residential units within building number 3 in Phase 1.

    c.    **Additional Condition.** The 2nd Advance will only be made to Borrower in the sole and absolute discretion of the Lender.

    d.    **Maturity Date; Repayment Terms**. The term of the Second Loan shall expire twelve (12) months after the Loan is approved by the Bankruptcy Court at which time the unpaid principal balance of the Second Loan is due and payable (the "Maturity Date"). The Second Loan may be repaid at any time, in whole, or in part, at the Trustee's sole discretion and subject to available cash flow.

    e.    **Interest Rate**. Interest shall accrue on the unpaid principal balance of this Loan outstanding at fixed rate of nine and one-quarter percent (9.25%) per annum until the entire outstanding principal balance has been paid and satisfied in full; provided, however, that if Borrower repays to Lender the entire unpaid principal balance of this Loan due to Lender on or before the Maturity Date, then the principal balance of this Loan shall accrue no interest. The interest rate hereunder shall be based on a year of 360 days and actual days elapsed.

    f.    **Fees and Costs**. Except for the Interest set forth above, no additional fees or costs are being charged by the Lender for this Loan.

    g.    **Priority Status.** The Lender shall be granted an allowed administrative claim for the amount of the Second Loan as specified in Section 503(b)(1) of the Bankruptcy Code.

## AUTHORIZATION FOR FINANCING

38.    Section 364(b) of the Bankruptcy Code authorizes the Trustee to incur unsecured credit allowable as an administrative expense claim under 11 U.S.C. § 503(b)(1). *See*, 11 U.S.C. § 364(b).

## RELIEF REQUESTED

39. The Trustee requests that this Court grant the Trustee the authority to obtain the proposed financing from the Lender on the terms and conditions set forth herein. The proposed financing is essential for the Trustee to pay for the Winter Sealing Expenditures and Building 3 Expenditures. The Second Loan is in the best interest of the Debtor, its bankruptcy estate and its creditors.

40. The Trustee respectfully requests that, in order to preserve the value of the assets of the Debtor's estate and address the immediate cash needs of the Trustee, the Second Loan be authorized under the terms and provisions set forth in the Promissory Note and form of Order submitted with this Motion.

41. Since the terms of the Second Loan were negotiated in good faith and at arms' length, the Lender should be provided with the benefit of § 364(e) of the Bankruptcy Code to the extent that, after any such borrowing, the provisions of this Courts' Order approving the Second Loan are later modified, vacated, stayed or terminated by subsequent order of this or any other court. Accordingly, the Trustee requests that this Court enter an Order approving the Second Loan on the terms and conditions set forth herein.

42. <u>Consent of RDA</u>. Prior to filing this Motion, the Trustee advised the RDA and Prudential Bank of the proposed terms of the Second Loan. The RDA advised that it has no opposition to the relief requested herein. Prudential Bank is still considering the Trustee's request.

WHEREFORE, the Trustee respectfully requests entry of an Order (i) granting the relief requested herein and (ii) for such other and further relief as is just and proper.

        **Respectfully submitted,**

        **KARALIS PC**

        By:   /s/ Aris J. Karalis
             ARIS J. KARALIS
             ROBERT W. SEITZER
             1900 Spruce Street
             Philadelphia, PA 19103
             (215) 546-4500
             Attorneys for the Trustee

Dated: December 20, 2019

## EXHIBITS

Exhibit A    DEP Approval Letter

Exhibit B    Environmental Covenant

Exhibit C    Public Offering Statement

Exhibit D    First Budget – Second Loan $443,352 is fully advanced

Exhibit E    Second Budget –Initial Advance ($200,000) only advanced under Second Loan

Exhibit F    Note