**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>**ISLAND VIEW CROSSING II, L.P.,**<br><br>Debtor. | Chapter 11<br>Bankruptcy No.: 17-14454-elf<br><br>Hearing Date: January 15, 2020<br>Hearing Time: 11:00 a.m.<br>Hearing Place:  Courtroom #1 |

**OBJECTIONS OF PRUDENTIAL SAVINGS BANK TO THE MOTION OF KEVIN O'HALLORAN, CHAPTER 11 TRUSTEE, FOR ENTRY OF A FINAL ORDER AUTHORIZING THE TRUSTEE (i) TO OBTAIN POST-PETITION UNSECURED FINANCING FROM BKRE INVESTMENTS LLC AS AN ADMINISTRATIVE EXPENSE PURSUANT TO §§ 105 AND 364(b) OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001; (ii) TO ENTER INTO THE PROMISSORY NOTE; AND (iii) GRANTING RELATED RELIEF**

Prudential Savings Bank ("Prudential"), by and through its undersigned counsel, Obermayer Rebmann Maxwell & Hippel LLP, hereby files this Objection to the Motion of Kevin O'Halloran (the "Trustee"), Chapter 11 Trustee of the bankruptcy estate of Island View Crossing II, L.P. ("Island View"), for Entry of a Final Order Authorizing the Trustee (i) to Obtain Post-Petition Unsecured Financing from BKRE Investments LLC ("BKRE") as an Administrative Expense Pursuant to §§ 105 and 364(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001; (ii) to Enter Into the Promissory Note; and (iii) Granting Related Relief (the "Second Trustee Financing Motion"), and in support thereof, Prudential states as follows:

**I.      JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  The statutory predicates for the relief sought herein are Sections 362(d), 363 and 364 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 4001 (c)(1) and 9014 and Local Bankruptcy Rules for the United States Bankruptcy Code for the Eastern District of Pennsylvania ("L.B.R") 1002-4 and 9014-3.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and/or 1409.

3. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (M), and (O).

## II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

4. On June 30, 2017, Island View and certain affiliated entities (collectively, the "Debtors") each filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

5. Prudential is the pre-petition secured lender to the Debtors and specifically loaned substantial amounts, evidenced by timely filed proofs of claim, to Island View to construct a Planned Unit Community along the Delaware River in Bristol Borough (the "Island View Project" or "Project").

6. On or about August 4, 2017, Prudential filed a Motion to Convert the Debtors' bankruptcy cases or appoint a Chapter 11 Trustee (the "Conversion Motion"), and on or about December 18, 2017, the Bankruptcy Court entered an Order appointing a Chapter 11 Trustee in Island View's Chapter 11 case and denying the DIP Financing Motion.

7. On or about January 30, 2018, after a contested election, the Trustee was elected Chapter 11 Trustee of the estate of Island View.

8. On or about August 17, 2018, Island View, by and through the Trustee, filed Motion for Entry of Final Order Authorizing (i) the Trustee to Obtain Secured Postpetition Financing Pursuant to §§105, 361, 364(c)(1) and 364(d)(1) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001, (ii) the Trustee to Enter into certain Loan Documents; (iii) Granting an Allowed Super Priority Administrative Expense Claim With Priority Over Any and All Administrative Expenses of the Kind Specified in Bankruptcy Code § 503(b) or 507(b); (iv)

Granting a Lien on All Assets of the Estate Senior to All Other Liens Pursuant to Section 364(d)(1) of Bankruptcy Code; (v) Approving the Release of Lien Agreement Between the Trustee and Prudential Pursuant to Federal Rule of Bankruptcy Procedure 9019; and (vi) Granting Related Relief (the "First Trustee Financing Motion"). See Island View Dkt. No. 341.

9. The purpose of the First Trustee Financing Motion was to attempt to jump start the Island View Project where construction was at a standstill under the control of Island View.

10. In the months leading up to the filing of the First Trustee Financing Motion, Prudential cooperated with the Trustee in an effort to facilitate debtor-in-possession financing for the Island View Project and even attempted to negotiate providing the financing necessary to complete the Island View Project. While those efforts were ultimately unsuccessful, Prudential continued to cooperate with the Trustee in an effort to work toward consensual financing for the Island View Project.

11. In connection with the First Trustee Financing Motion, the Trustee prepared and filed a cash flow budget as Exhibit F (the "Budget"). The First Trustee Financing Motion specifically stated that the Budget reflected the expected revenue from the construction and sale of Phase 1 of the Island View Project, the operating costs, and payment of existing secured claims. Prudential relied on the Budget in determining not to oppose the First Trustee Financing Motion. A copy of the Budget is attached hereto as Exhibit "A" and incorporated herein.

12. The First Trustee Financing Motion further stated that the Budget and the construction of the 73 residential units in Phase I of the Island View Project would result in "Prudential being paid release of lien payments totaling $2,585,000.00 from the sale of the 73 individual Residential Units in Phase 1 (35 units x $25,000.00; and 38 units x $45,000) to be applied to reduce the principal balance of the Existing Prudential Construction Loan (as

4840-4301-9697                                    3

hereinafter defined) as set forth in the proof of claim filed by Prudential Bank in this Bankruptcy Case identified on the Bankruptcy Court's claim register as Secured claim no. 23 in the amount of $4,092,443.58." See First Trustee Financing Motion at p. 8.

13. On or about September 12, 2018, the Bankruptcy Court entered an Order approving the First Trustee Financing Motion including the Budget. See Island View Dkt. No. 352.

14. In addition, the Budget further stated that sales and the corresponding distribution of release prices to Prudential would commence in month 7 of the Budget (or April 2019). See Exhibit "A" at p. 4.

15. According to the Budget, as of the date of this Objection, Prudential should have received $1,010,000 in distributions on account of budgeted release prices. See Exhibit "A" at p. 4-5.

16. As of the date of this Objection, Prudential has not received a single payment on account of budgeted release prices.

17. After it became clear that the release prices were not being distributed in accordance with the Budget, Prudential began to request information about why the Budget was not being followed.

18. After numerous requests and delays, the Trustee finally revealed that he did not have the queried Act 2 approvals from the Pennsylvania Department of Environmental Protection (the "DEP") and was not able to enter into any agreements of sale at the Island View Project, much less close on a sale, until after the DEP approved and signed the necessary Environmental Covenant (the "EC") and the EC was recorded in Bucks County. The recording of the EC was not achieved until December 17, 2019.

19. There was nothing to prevent the Trustee from knowing that the EC was required to be recorded before sales at the Island View Project could be consummated and, in fact, it was incumbent on the Trustee to be aware of this strict requirement before preparing and filing the Budget in support of the First Trustee Financing Motion, which was then relied upon by creditors and the Court.

20. The delay in sales of units at the Island View Project is a direct result of the Trustee not properly accounting for the necessity of recording the EC prior to entering into any agreements of sale.

21. The delay in sales has resulted in the Trustee running out of money for the Island View Project and seeking to borrow more money to once again jumpstart the project.

22. Since the Petition Date, Prudential has accrued in excess of $750,000 in post-petition interest without receiving a single adequate protection payment. A significant portion of that amount has accrued since the first release price should have been paid some eight (8) months ago. Under the Release of Lien Agreement entered into between Prudential and the Trustee, Prudential reserved all of its rights as a fully secured creditor.

23. The Trustee is now requesting approval of additional borrowing to cover the cash shortfall he created by the delay in sales of units (the "Second Trustee Financing Motion") without paying anything to Prudential despite being a year behind in the Island View Project.

24. The Trustee created and attached a cash flow budget as Exhibit D to the Second Trustee Financing Motion (the "Second Budget"), which does not propose to make any distributions to Prudential on account of release prices until April of 2020, which equates to month 19 of the Budget, by which time, Prudential should have received $1,460,000 in release prices. The Budget provides no payment on Prudential's accrued interest.

25. The Trustee seeks approval of additional post-petition financing without making a single adequate protection payment to Prudential or alleging he sought financing on better terms.

26. At this juncture, the offered adequate protection is insufficient to protect Prudential's fully secured lien. For the reasons set forth herein, Prudential objects to the Second Trustee Financing Motion.

### III. OBJECTIONS

27. Pursuant to Section 364 of the Bankruptcy Code, after notice and a hearing, the Court can authorize the Trustee to incur debt not in the ordinary course of business as an administrative expense. 11 U.S.C. § 364(b).

28. Under Section 364(b), while not expressly conditioned on credit not being available on better terms:

> it is likely not a sound exercise of a trustee's or debtor in possession's business judgment to obtain unsecured credit outside of the ordinary course of business on terms that are less favorable than other terms that have not been in offered in the case, and the court should deny authorization in that instance.

3 Collier on Bankruptcy, ¶ 364.03 (Richard Levin & Henry Sommer eds., 16th ed.).

29. Since financing pursuant to Section 364(d) of the Bankruptcy Code contemplates the priming of other liens, a request under Section 364(d) must be acted upon more cautiously than motions under the other provisions of Section 364. See generally In re Reading Tube Industries, Inc., 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987); 2 Collier on Bankruptcy, supra, ¶ 364.05, at 364-12.

30. Prudential has, now its detriment, cooperated in every way with the Trustee to facilitate timely construction at the Island View Project.

31. Further, the Trustee has at a minimum established that the reasons the project failed was its prior management.

32. From the time the Trustee first sought financing in and seemingly acknowledged that the reasons the Island View Project initially failed was prior management, Prudential welcomed an independent party to spearhead development.

33. Indeed, Prudential offered the Trustee virtually identical terms to the funding from BKRE sought in the First Trustee Financing Motion (the "First BKRE Loan"), but could not agree on release prices and other terms.

34. Nonetheless, Prudential continued to put its own interests aside, and in connection with the First BKRE Loan, not only subordinated its allowed claims to $1,600,000 in unsecured non insider debt, but also agreed to, and did, step aside in order to allow its second position fully secured lien of $4,092,443.58 to be primed by the First BKRE Loan.

35. But for Prudential's agreement to subordinate, for which it received only the promise of payment, the Island View Project would have never gotten off the ground again.

36. Prudential relied upon the Trustee's projections, which as set forth earlier, were woefully inadequate, failing to account for the substantial regulatory efforts necessary to enter into agreements of sale. As has regrettably become typical in this case, the Trustee failed to inform anyone of the ramifications of the earlier Penn E&R report, made to Island View prepetition and again to the Trustee post-petition.

37. Moreover, the Debtor's principal, Renato Gualtieri knew of the substantial regulatory hurdles that remained to even entering into a contract for sale, even when he fraudulently presented seven contracts for sales at the Island View Project, which we now know

legally he was not authorized to enter into. Either Gualtieri failed to inform the Trustee of these issues, or the Trustee was unaware of these potential regulatory impediments.

38. Prudential was unaware of the potential for the substantial delays that occurred here, having been told by Island View that the site was shovel ready, and having the Trustee assert that there were no significant regulatory hurdles necessary to begin sales – as evidenced by the Budget.

39. Accordingly, in exchange for its $6,000,000 in concession value provided to the Trustee and Island View's estate, the only thing Prudential has received is the broken promise of a release price within seven (7) months of beginning construction.

40. The Trustee failed to adequately project or take into account the time for regulatory approval, even though the Trustee knew that any objection by the DEP to either the Remediation Plan or the EC would result in delays of up to ninety (90) day.

41. Although Prudential concedes to the propriety of the First BKRE Loan, the Trustee must concede that his original promise of adequate protection has not been completed, and is now not adequate.

42. The Trustee is over a year behind on the Island View Project, and now seeks another $443,352 in loans to be treated as an administrative expense.

43. Prudential has a $4,092,443.58 allowed fully secured claim on the Island View Property, against which interest has been accruing since the Petition Date, in spite of the Trustee's efforts to vitiate that claim. The Trustee's efforts to avoid that lien failed. Accordingly, Prudential is entitled to interest on its fully secured loan.

44. At the time Prudential negotiated its release prices, the Trustee still had an objection to the validity of its lien. That objection has been overruled by this Court. A copy of

the Order and Memorandum Granting in Part and Denying in Part Prudential's Motion to Dismiss is attached hereto as Exhibit "B".

45. The Trustee's original projections in the Budget would have had Prudential receiving $1,010,000 in release prices to be applied against it Secured Debt as of the date of this Objection. To date, Prudential has received zero dollars.

46. The Trustee initially refused interest to Prudential because the Trustee argued that Prudential's lien was under attack. However, that is no longer the case. Prudential's now third position lien is allowed in full, and the value of the collateral is more than the total of all liens.

47. Prudential has a post-petition interest claim of over $750,000. Prudential believes its interest should be paid pari passu with other allowed administrative claims.

48. The Trustee asserts that the new BKRE loan proposal is better for Prudential in that it does not further prime Prudential's allowed secured claim; however, the Trustee refuses to acknowledge the failures and technical defaults under the First BKRE Loan that make the incurrence of an additional $443,352 in administrative claims, plus 9.25% interest on that obligation, untenable without some recognition of the Trustee's failed promise of adequate protection. The Trustee also ignores his bad projections in the Budget or the change in circumstances occurring as a result of the Trustee's breaches and the allowance of Prudential's claim.

49. The Trustee's projections were simply wrong, and though the Trustee knew or had reason to believe that the environmental issues could substantially delay the Island View Project, he failed to take those into account or disclose them to the parties or the Court.

50. The Trustee, like Gualtieri, knew before the First BKRE Loan was approved that the Debtor could not sell, convey, or occupy any of the properties until the Act 2 Plan was

4840-4301-9697                                    9

approved and the Environmental Covenant included in the planned community documents also approved by the DEP.

51. The Trustee was aware of the fact that any objection by DEP to the Act 2 remediation Plan, or the Environmental Covenant would result in substantial delays to the Island View Project.

52. Prudential asserts that it is in fact being punished for the Trustee and his professionals' failures to understand and convey to both creditors and the Court the seriousness and potential for delay that existed on the Island View Project.

53. During the negotiations for the First BKRE Loan, Prudential pressed the Trustee to communicate that at a minimum all approvals were in place and that there were no known impediments to the construction activities.

54. Unbeknownst to anyone involved, the Trustee ran through the entire $4,700,000 First BKRE Loan and is out of money to fund the Island View Project.

55. The Trustee is more than $60,000 in arrears with the Island View Project's construction manager, McGrath and Sons, who threatened to terminate its contractual arrangement, but the Trustee was able to convince McGrath and Sons to stay on the job.

56. Construction ceased, and the buildings were left in a state of partial construction but not wind and weather tight.

57. It was only through review of the operating reports that Prudential was able to ascertain the extent of the failures at the Island View Project. The Trustee failed to inform Prudential of the precarious financial condition of Island View's estate.

58. On a recent site visit, Prudential was shocked and forced to harken back to when Island View was in control at the condition of the Project with units in partial completion, Tyvek flapping in the wind, and no garage doors to keep out the elements in the middle of winter.

59. When the Trustee ran out of money, construction ceased. Prudential was told that there were approximately $150,000 in unpaid bills at the Island View Project.

60. Much of the expense was to a security firm from Tennessee that the Trustee hired.

61. Prudential was told that $112,000 was needed to winterize the partially completed units; however, the Second Trustee Financing Motion seeks much more, and the expenditures have the indubitable effect of diminishing Prudential's recovery, since unit sales will be the basis for the payments.

62. Undoubtedly, this Motion has the effect of removing nearly $500,000.00 of cash flows from operations even before single unit has been sold or even close to being sold.

63. The Trustee informed Prudential that the borrowing was interest free; however, the documents call for 9.25% interest on the additional moneys being lent if it cannot be paid back within the year.

64. To be clear, Prudential acknowledges money must be spent. The issue for the Court is whether the Trustee, on his new set of projections, should be permitted to remove $443,352 from the estate without acknowledging its failures under the First BKRE Loan, and the concomitant failure to provide Prudential any of the $1,010,000.00 promised as adequate protection.

65. This Island View Project is far from assured, and the fits and starts have in fact impacted Island View's case.

4840-4301-9697                                    11

66. The instant Motion presents an opportunity for further diminution in the value of Prudential's liens.

67. The Trustee's new projections are suspect, as is its ability to achieve the results projected.

68. There appears to be no reason for the Trustee to borrow significantly more than is necessary to winterize the properties.

69. The Trustee 's projections have significant "water" in them, where, for example, the Trustee budgets a line item contingency, and then adds into the general budget "contingencies." It therefore appears that the Trustee is double dipping on the budgeted contingencies.

70. The Trustee also has made significant payments to his professionals, including $50,000.00 paid to his counsel in April of 2019, when the Trustee knew or should have known he would soon run out of money. The moneys were improvidently paid, even though budgeted.

71. The April payment to counsel was made when it was or should have been clear to the Trustee that he was going to default on his obligations under the First BKRE Loan.

72. The Trustee's lawyers received $50,000.00 while the Trustee was not in compliance with the Budget and had no sales and no borrowings in that month.

73. If the Court decides the loan should be made on an administrative basis, the moneys paid to counsel should be returned to the estate and no further or additional legal fees should be paid until other administrative claims have been paid and absent order of the Court.

74. Prudential will not consent to any borrowings that allows legal and other fees to be paid out under budget without Court review of Island View's finances and being assured all debts can be paid in the ordinary course.

## IV. RESERVATION OF RIGHTS

75. Prudential reserves the right to supplement and/or amend this Objection on any grounds based upon information discovered from Island View or any other source.

## V. CONCLUSION

WHEREFORE, for the foregoing reasons, Prudential respectfully objects to the Trustee's Second Financing Motion on the grounds set forth herein and requests such other and further relief as is just and equitable.

Respectfully submitted,

Dated: January 13, 2020     BY:     *s/ Edmond M. George*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
Angela L. Baglanzis, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone – (215) 665-3000
Facsimile – (215) 665-3165

*Counsel to Prudential Savings Bank*