# EXHIBIT "E"

## ISLAND VIEW CROSSING II, LP
## RADCLIFFE COURT ON THE DELAWARE
## ("RADCLIFFE COURT")

**AGREEMENT OF SALE ("Agreement")**     DATE: _01/10/2020_

**1.   NAMES AND ADDRESS:**

(a)   Seller: Kevin O'Halloran, Chapter 11 Trustee for the Estate of Island Crossing II, L.P. Bankruptcy No. 17-14454(ELF) pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

(b)   Address: 1600 Radcliffe Street, Bristol Borough, PA 19007

(c)   Telephone: _____

(d)   Buyer: LINDA WALDER ____ cell # _267-559-2447_ e-mail: _LWalder@hotmail.com_

       Buyer: _____ cell # _____ e-mail: _____

(e)   Home Address: _204 Penn St Bristol, Pa 19007_

(f)   Home Phone: _____

(g)   Business Address: _____

(h)   Business Phone: _____

(i)   Broker: _____

(j)   Subagent: _____

(k)   Address: _____

(l)   Telephone: _____

**2.   LOT BEING PURCHASED AS NOTED ON THE SITE PLAN ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF (the "Lot")**

(a)   Lot Number: _47 (Tax Parcel 04-027-119-048)_

(b)   Legal Address: _16701 River View Circle Bristol, Pa 19007_

(c)   Model Type: _Cambridge_

**3.   PRICE AND TERMS**

(a)   Purchase Price:
       I. Home: _313,790 00_
       II. Lot Premium: _0 00_
       III. Extras Per Attached: _0 00_
       Total Purchase Price:                    $ _313,790 00_

(b)   Deposit amount paid directly to Seller at the execution
       of this Agreement to be held in escrow without interest
       pending Closing:                         $ _31,400 00_

(c)   Amount to be paid directly to Seller on or Before: ____ $ _1-15-2020_

(d)   Balance Due at Settlement:                $ _282,390.00_

(e)   Settlement Date (subject to Section 9 hereof): ____ $ _3-13-2020_

Buyer's Initials _____

1

### 4.  BACKGROUND

On June 30, 2017, Island View Crossing II, L.P. filed for protection under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"), which bankruptcy case is being administered as Case No. 17-14454(ELF).  The Seller was elected Trustee on January 30, 2018 and is so acting.

### 5.  THE LOT

Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller the Lot with dwelling to be erected as described above (collectively, the "Property").  Buyer agrees to pay to Seller the purchase price as set in Paragraph 3 above.

### 6.  TITLE

Title to said Property shall be conveyed by a special warranty deed and shall be good and marketable and such as will be insured by a reputable title company at regular rates.  The Property shall be conveyed free and clear of any and all liens (statutory or otherwise), claims, community property interests, mortgages, conditions, encumbrances, security interests, pledges, restrictions, charges, indentures, loan agreements, options, rights of first refusal, offsets, recoupments, rights of recovery, judgments, orders and decrees of any court or governmental entity, interests, successor, products, tax and other liabilities and claims against the Seller or its property, of any kind or nature, whether secured or unsecured, choate, or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, disputed or undisputed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, known or unknown (the "Encumbrances") except:  (a) existing restrictions, conditions and easements, especially those set forth in the Declarations of Covenants and Restrictions for Radcliffe Court Homeowners Association; (b) restrictions, conditions, covenants, and easements, if any, required to be placed on the Property including under Pennsylvania Act 2; (c) restrictions, conditions, and easements created by Seller at or prior to settlement hereunder and reasonably necessary for the development by Seller of the Property and adjoining properties; (d) the possibility of the filing of mechanics' liens or municipal liens; (e) zoning ordinance and any other act, ordinance, or regulation affecting the use of an improvement to said Property; (f) easements with respect to public or private sewers, storm sewer or surface water courses; and (g) agreements and easements with telephone, gas, water, catv, electric and other public utility companies (collectively the "Permitted Exceptions"). In the event of any violation of any such restrictions, conditions, easements, agreements and provisions after settlement hereunder, Seller is irrevocably authorized and empowered by Buyer to enter upon the Property and forthwith terminate any such violation, and the Buyer assumes full liability for, and agrees to indemnify Seller against any loss or damages resulting from such violation.  This provision shall survive settlement hereunder and at the option of the Seller may be included in the deed to Buyer.  Seller, its agents or contractors, shall have an easement across and upon the Lot being purchased in order to complete any work which may be required to be done by Seller after the date of settlement.   Seller shall use due care not to unduly injure the Property in the course of construction, but Seller shall not be liable to Buyer for such damage to the Property or property as is ordinarily incident to such construction (including, but not limited to, change of grade and earth and tree removal) whether caused by Seller, its agents or contractors.

If Seller cannot deliver title as herein provided, Buyer shall have the option of taking such title as Seller can give without abatement of price or of being repaid all monies paid by Buyer, without interest, and in the latter event, this Agreement shall terminate, and neither party shall have any further liability to the other.

At or prior to the time of Settlement, a restrictive covenant shall be placed on the Property providing that prior to the date of the last settlement at Radcliffe Court which Seller sells its last

Buyer's Initials _____

2

lot, Buyer shall not display or permit to be displayed on the Property any sign, including but not limited to a real estate "for sale" sign.

## 7. MORTGAGE CONTINGENCY.

This sale and settlement hereunder are <u>NOT</u> CONDITIONED OR CONTINGENT IN ANY MANNER UPON THE SALE OR SETTLEMENT OF ANY OTHER REAL ESTATE nor subject to any mortgage or financing except as herein provided. The insertion of a condition on sale or settlement of Buyer's present home by Buyer's Lender in Buyer's mortgage commitment shall not relieve Buyer of Buyer's obligation to proceed to settlement.

(a.)     It is mutually agreed and understood that within five (5) business days from the date hereof, Buyer will prepare and file written application and cooperate fully with a recognized mortgage lending institution for a first mortgage loan to be secured upon the property in the amount of $ 202,390 for a total term of no more than 30 years and at an initial interest rate that the lender is willing to specify, not to exceed 5 % . Buyer agrees to pay for any request from a recognized mortgage lending institution for credit report, appraisal and service charges (loan origination fees, placement fees). The Buyer herein agrees to comply with any conditions that may be contained in the mortgage commitment. Additionally Buyer agrees that Seller may at its option extend settlement up to 120 days beyond date which Seller receives written notice of Buyer's mortgage commitment.

(b.)     Should Buyer be unable to obtain a written commitment for a mortgage loan on the terms set forth above, valid until date of settlement, Buyer shall advise Seller and Sellers agent, in writing by registered or certified mail (return receipt requested) and/or by personal delivery on or before 30 days of such a condition. Seller shall at his sole option thereupon have a period of sixty days (60) from the date of receipt of such notice within which to obtain such a mortgage commitment for and on behalf of the Buyer, and Settlement shall, if required, be automatically extended for a further period of one hundred twenty (120) days after delivery to Buyer of a written mortgage commitment. Buyer agrees to execute an application at Seller's request and Buyer agrees to pay any request from and cooperate fully with a recognized mortgage lending institution for credit report, appraisal and service charges (loan origination fees, placement fees, discount points, etc.) not to exceed 2500.00

(c.)     If Buyer fails to make application for such mortgage loan or notify Seller of his inability to obtain a written commitment as herein set forth or fails to execute any application for such mortgage loan at Seller's request, the condition and contingency provided for shall no longer prevail and this Agreement shall be and remain in full force and effect according to its terms in the same manner as if the condition and contingency were not a part hereof.

(d.)     Should neither Buyer nor Seller be able to obtain such a mortgage commitment on the terms set forth above within the period above referred to, Buyer at Buyer's election may (i) proceed with the consummation of this Agreement without regard to the failure of the condition or (ii) may cancel this Agreement, in which event all monies paid hereunder by Buyer on account of the purchase price will be returned to Buyer upon receipt by Seller of (l) Buyer's written notice of intention to cancel, (2) the return to Seller of all copies of this Agreement. Thereafter all rights and liabilities of these parties shall cease and determine, anything herein contained to the contrary notwithstanding. Buyer shall notify Seller and Seller's Agent of Buyer's election under (i) or (ii) within three (3) days by registered mail (return receipt requested) or by personal delivery after being notified by Seller that a mortgage commitment was not

Buyer's Initials _____

3

obtained.   In the event that Buyer fails to notify Seller of this election to cancel this Agreement under (ii) above within the prescribed time limit, Buyer shall be obligated to proceed with the consummation of this Agreement, as if the condition and contingency were not a part hereof.

(e.)    Seller agrees to permit inspection of the Property, for purposes of appraisal, by agents of any lending institution to which an application has been made hereunder.

(f.)    Seller shall be under no obligation to commence construction until Buyer has supplied Seller with a copy of the commitment called for herein.

(g.)    Buyer agrees not to incur additional debt after the execution of this Agreement which would interfere with Buyer's ability to obtain a mortgage commitment or keep it in effect.    If Buyer incurs such debt and the mortgage application is rejected or the mortgage commitment is canceled as a result thereof, then Seller may elect to cancel this Agreement and retain all deposit monies.

(h.)    If Buyer's mortgage commitment expires after Seller has commenced construction on Buyer's Lot and the mortgage commitment is not renewed or extended, then Seller may elect to cancel this Agreement and retain all deposit monies.

## 8.    SETTLEMENT COSTS AND APPORTIONMENT.

At the time of Settlement, Buyer agrees to pay all settlement charges, including title insurance, fire insurance, a reasonable service and conveyancing charge, and recording and acknowledgment fees.   Buyer shall also pay $495.00 to the Homeowner's Association for the capital startup fee as called for in the Declaration and Covenants.  If applicable, Buyer agrees to execute the note, mortgage, and any other related loan documents at such time and pay any costs and fees charged by Buyer's lender.   Buyer agrees to comply with all terms and conditions of the mortgage commitment. Taxes, water, and sewer charges shall be apportioned pro rata as of the date of Settlement, which apportionments shall be based upon the fiscal years of the taxing authorities for which the subject taxes are levied.   Applicable realty transfer taxes shall be borne equally by Buyer and Seller.

## 9.    SETTLEMENT.

(a.)    Subject to satisfactions of the conditions set forth in Paragraph 18 hereof, Settlement hereunder shall be held in accordance with the date set forth in Paragraph 3(e) hereof at Seller's office or at such other locations as Seller shall designate. The actual date of settlement shall be set by Seller and notice of said settlement date shall be sent to Buyer at least thirty (30) days before said settlement date. The Seller as authorized by the Bankruptcy Court has the authority and right to sell, assign and deliver (subject to laws and regulations regarding the transfer of title in the jurisdiction where the Property is located) title to the Property free and clear of all Encumbrances and subject to the Permitted Exceptions.  At the Closing, Buyer will obtain title to the Property free and clear of all Encumbrances and subject to the Permitted Exceptions.

(b.)    In the event completion of construction is delayed due to inclement weather, strikes, government regulations, delay in obtaining or issuance of permits or mortgage commitments or approvals or inspection, or any act of God, storm, wind, or fire damage, unavailability of materials or failure of delivery of materials called for in the plans and specifications or any changes, alterations, additions, or modifications which are agreed to by the parties after the date of this Agreement, or for any other reason, the settlement date shall be extended until such as completion of the dwelling may require. However, at the time of settlement, Property shall have been substantially completed

Buyer's Initials 

4

which shall mean at such time as a Use and Occupancy Certificate is issued. Buyer hereby acknowledges that the above estimated time of completion on the part of the Seller is made as an accommodation to Buyer to assist Buyer in formulating further plans, but said settlement date shall not be considered of the essence of this Agreement. Seller is not responsible for and is hereby released from any loss, liability, expense, costs or incidental or consequential damages which may result by reasons of delay. If at the time of settlement, the dwelling is sufficiently complete to obtain a Use and Occupancy Certificate but minor work is incomplete or minor defects exist, Buyer agrees nevertheless to complete settlement, provided the Seller, at settlement, delivers to Buyer a letter whereby Seller agrees to complete or correct any such work or defects within a reasonable time. Seller will not escrow for any items not completed at the time of settlement. If the Buyer's mortgage lender requires an escrow, it will be the Buyer's responsibility to fund such escrow.

## 10. DEFAULT BY SELLER.

If Seller shall default hereunder, Buyer's sole remedy shall be to be repaid the amounts theretofore paid by Buyer on account of the purchase price and of being reimbursed for reasonable title insurance company charges and reasonable mortgage application fees heretofore incurred, in which event this agreement shall terminate and neither of the parties shall have any further rights or obligations hereunder, provided, however, that if such default shall consist solely of Seller being unable at settlement to convey title as and to the extent set forth in paragraph 6 hereof, Buyer shall have the option of taking such title that Seller can give without abatement of price.

## 11. DEFAULT BY BUYER.

If Buyer violates or fails to fulfill or perform any of the terms or conditions of this Agreement, all sums paid by Buyer on account of the sales price herein may be retained by Seller (a) as liquidated damages for such breach or (b) on account of the purchase price with a balance being recovered through a suit for specific performance or (c) as partial damages in the event Seller should elect to resell the property and claim against Buyer the amount of damages which Seller has incurred as a result of Buyer's breach. Seller shall have the option to elect any of the above remedies.

## 12. SAMPLE DWELLING AND PLANS.

The dwelling shall be completed substantially similar to the sample dwelling (less any upgrades or decorator furnishings), which is situated at Radcliffe Court and shall be in accordance with the "Standard Features" list attached hereto as Exhibit "B" and made a part hereof. It is expressly understood and agreed that the furniture and dwelling furnishings including without limitation, all special decorating effects, drapes, refrigerators, washers and dryers, landscaping, sod, signage, security systems, optional lighting, furnishings, wall paper, upgraded floor coverings, bath fixtures, other decorative features or extra cost items, as shown in or about any model homes are for display purposes only and are not considered a part of the Property being sold under this Agreement unless specifically itemized on Seller's Home Selection Form attached hereto as Exhibit "C" and made a part hereof. If the dwelling to be constructed herein is not similar to the sample dwelling, it will be completed substantially similar to the floor plans and elevations shown on the sales brochure, for the applicable model and shall also be in accordance with the "Standard Features". SELLER HAS THE RIGHT AT SELLER'S SOLE DISCRETION, TO MAKE SUBSTITUTIONS OF MATERIAL OF SUBSTANTIALLY EQUAL, OR BETTER QUALITY WHENEVER SELLER SHALL FIND IT NECESSARY OR EXPEDIENT TO DO SO, AND SELLER SHALL HAVE THE RIGHT TO MAKE ANY CHANGE IN THE CONSTRUCTION OF THE SAID PROPERTY THAT SELLER MAY FIND NECESSARY IN THE COURSE OF CONSTRUCTION OF WHICH ARE REQUIRED,

*Notwithstanding anything to the Contrary Contained herein, Buyer + Seller acknowledge that Exhibit C is not applicable to this sale as the Buyer is purchasing a completed home with all selections on an AS IS basis*

*LW 1/16/2020*

Buyer's Initials _____LW_____

5

BY GOVERNMENT REGULATION. Buyer hereby acknowledges that the dwelling which Buyer has selected may be constructed as [either a "right hand" dwelling or a "left hand" dwelling (i.e., a dwelling having a front elevation with the garage door to the right is a "right hand" dwelling or a "left hand" dwelling (i.e., a dwelling having a front elevation with the garage door to the left \is a "left hand" dwelling). Buyer cannot be guaranteed, prior to construction, which "hand" the dwelling will be. Seller has the sole discretion to establish all vertical and horizontal contours of grading. It is agreed that the plans for said building and/or sample dwelling referred to above have been inspected by Buyer or Buyer's duly authorized agent, and that the above Property are being purchased by Buyer as a result of said inspection and not upon any representation made by Seller, or any salesman or selling agent or any other person whatsoever.

### 13. GRUBBING, CLEARING, GRADING AND SEEDING.

The grounds shall be finish graded using on site sod and the areas disturbed shall be seeded for grass. All grading and seeding shall be completed in a manner within the sole discretion of Seller.

As to quantity or quality of growth of grass, it is Buyer's responsibility to water, fertilize and reseed as necessary. Any soil washouts from rain or melting snow or burnouts due to droughts after settlement are the sole responsibility of Buyer. Further, if such grading, seeding and walkways cannot be completed prior to settlement due to inclement weather, settlement shall nonetheless take place in accordance with the terms hereto; and seller's only obligation shall be to complete same at such time after settlement as weather and Seller's scheduling permit, with Buyer agreeing that escrow for same is not required.

### 14. POSSESSION.

Possession will be given by Deed upon completion of final settlement and full payment of the balance of the funds called for under this agreement together with all costs of settlement. THE ACCEPTANCE OF KEY OR DEED OR ENTRY INTO POSSESSION OF ANY PART OF THE PROPERTY BY BUYER IS AN ACCEPTANCE BY BUYER OF COMPLETION. IT IS HEREBY AGREED THAT, AFTER SETTLEMENT IS MADE AND/OR KEY IS ACCEPTED AND/OR ENTRY INTO POSSESSION OF ANY PART OF THE PROPERTY BY BUYER, CLAIMS OR DEMANDS OF ANY KIND WILL BE LIMITED TO THOSE PROVIDED FOR HEREIN.

### 15. WAIVER OF TENDER.

Formal tender of deed and tender of monies are hereby waived.

### 16. TIME OF ESSENCE.

Except where stated to the contrary, time, wherever mentioned herein shall be of the essence of this Agreement.

### 17. RISK OF LOSS.

Damage by fire or other casualty prior to settlement shall not void this Agreement provided that Seller shall rebuild the dwelling as quickly as is reasonably practical and the date of settlement shall be automatically extended by the appropriate period required to allow Seller to rebuild the dwelling a aforesaid.

Buyer's Initials _____

6

## 18. CONDITIONS TO SELLER'S OBLIGATIONS.

(a.)    If Seller for any reason, cannot construct or complete the Property due to any present or future rules, regulations, or restrictions by Federal, State or Municipal Government s, or any agency thereof (or if the terms of this Agreement do not comply with such rules, regulations, or restrictions), or if Seller is unable to construct or complete the Property by reasons of unanticipated sub-surface drainage and/or latent conditions at the site or as a result of any conditions beyond Seller's control or as a result in a change in circumstances occurring after the date of the Agreement which would impose a severe hardship on Seller, Seller shall have the right to cancel this Agreement upon written notice to Buyer, delivered prior to settlement, in which event Seller shall return to Buyer, without interest, the full deposit monies, and in such event Seller shall have no further liability whatsoever to Buyer.

(b.)    If Buyer has made a misstatement of material fact relating to this Agreement, or the mortgage application, Seller, at its option, may cancel this Agreement by returning to Buyer the sum or sums paid on account of the purchase price, without interest and this Agreement shall therefore become null and void, neither party shall have any further liability to the other.

(c.)    Trustee shall have obtained approval from the Bankruptcy Court to sell the Property.

## 19. NO ENTRY.

Because of dangers involved in construction areas, Buyer agrees not to enter upon the Property or into any portion of the dwelling to be constructed thereon or at any time to, interfere in any manner with construction upon the Property unless and until accompanied by a representative of the Seller.  Buyer shall, in advance, contact Seller or Seller's representative at Seller's office or such sub office or location as Seller may designate in order to arrange any inspection of the Property or the dwelling to be constructed.    Seller shall not be responsible for any physical injury or damage to property caused by any unauthorized entry by Buyer and Buyer hereby relieves Seller and Seller's agents, employers, or workmen of any liability and holds Seller and Seller's agents, employees and workmen harm less from any and all   liability or claims arising out of any unauthorized entry.  Buyer further agrees not to do any work on the Property or have anyone do work on Buyer's behalf on the Property, prior to settlement.

## 20. SELECTIONS.

(a.)    Selections and/or options as listed on the Home Selection Form shall be made by Buyer within thirty (30) days after execution of this Agreement or within five (5) days after notice from Seller directing Buyer to do so.  In the event Buyer fails to make such selections within the stipulated time, Seller is hereby authorized to make selections for Buyer at Seller's discretion within the standard allowances.  If material colors are unavailable as selected by Buyer, Seller will substitute with like colors. If like colors are unavailable, a change order must be agreed to in writing between Seller and Buyer for a color substitution.  If a color substitution is necessary, Seller will advise Buyer of the necessary substitution.  Buyer must immediately accept or reject the substitution offered.  If no response is received from Buyer, the Seller reserves the right to substitute colors as Seller so chooses.

(b.)    Buyer may select such options only by submitting to Seller, on Seller's form, a written authorization of Seller for such options together with payment of one-half (1/2) of the cost of the Seller's standard options (the "Extras Agreement").   Any custom options would be paid for in full prior to the start of construction.  Seller promises to convey as part of the dwelling, such extras as shall be scheduled and agreed upon be the

Buyer's Initials _____

7

parties. Except for the inclusion of the enumerated extras as fully set forth, no changes in construction or in completion ordered by Buyer will be made unless authorized in writing by Buyer at a cost agreed upon and approved by Seller in writing. In the event Buyer desires to select any additional extras or to make any other changes after this Agreement and Extras Agreement have been signed by both parties, they may do so under the following conditions:

(i)     Buyer will immediately pay to Seller the exact cost of such changes or extras. In the event that the Seller does not obtain said money, the extras or changes will not become part of the Agreement.

(ii)    In the event that settlement is not held under the terms of this Agreement for any reason other than default by Seller, any monies paid to Seller for extras ordered shall in no instance be refunded.

(iii)   Seller's responsibility for omission of any option shall be limited to the cost paid by Buyer therefore, any such omission shall not invalidate the Agreement.

(iv)    Buyer will be charged ONE HUNDRED FIFTY DOLLARS ($150.00) to be paid to Seller, to amend the related documents and change orders. Said payment is due upon the signing of the Agreement regarding the changes or extras if approved by Seller.

## 21. WARRANTY PROVISION.

(a.)    In accordance with the Pennsylvania Uniform Planned Community Act, 68 Pa. C.S. et seq. (the "Act"), Seller will cause to be corrected "structural defects" on the Property for two (2) years from the date the Property is conveyed to the Buyer at closing. The Act defines the term "structural defects" as defects in any structure which is a component of the Property or any other portion of the Property constructed, modified, altered or improved by or on behalf of the Seller; any of which reduce the stability or safety of the structure below accepted standards or restrict the normal intended use of the structure and which require repair, renovation, restoration or replacement.

(b.)    In addition to the warranties provided by the Act, subject to paragraph 14 of the Agreement, Seller agrees to guarantee and warrant all work and materials for a period of one (1) year against any defects in workmanship or materials provided such defects do not result from work or alterations by Buyer or others on Buyer's behalf. Buyer agrees to notify Seller in writing of all complaints or defects in workmanship or materials. Seller shall make reasonable and necessary repairs or adjustments without cost to Buyer within sixty (60) days, weather and labor conditions permitting and emergencies excepted. Buyer shall not be entitled to any damages, monetary or otherwise, from Seller for defective workmanship or materials unless buyer notifies Seller of said defects and grants Seller the right to repair and correct said defects pursuant to the paragraph. The provisions of this warranty shall not apply if there is any money due and owing to Seller pursuant to this Agreement.

(c.)    The provisions of this warranty shall cover all phases of construction for a period of one (1) year from date of occupancy or date of completion of Buyer's dwelling, whichever occurs first, except as otherwise specified by the manufacturer's warranty on individual equipment incorporated in the dwelling, in that case the manufacturer's warranty shall apply.

Buyer's Initials _____

8

THE LIMITED WARRANTY OF THIS AGREEMENT IS THE ONLY WARRANTY APPLICABLE TO THE PROPERTY. NO IMPLIED WARRANTY (WHETHER OF MERCHANTABILITY, HABITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE), IS GIVEN ON PORTIONS OF THE PROPERTY OTHER THAN CONSUMER PRODUCTS. THE SELLER DOES NOT ASSUME ANY LIABILITY OR OBLIGATION ON ACCOUNT OF REPRESENTATIONS MADE BY ANY OTHER PERSON. THE OBLIGATION OF SELLER IS LIMITED SOLELY TO THE REPAIR OR REPLACEMENT OF THE DEFECTIVE COMPONENT AND DOES NOT EXTEND TO ANY DAMAGE OR HARM RESULTING THEREBY OR THEREFROM. EXCEPT AS SET FORTH ABOVE, THE PROPERTY IS BEING SOLD "AS IS". THE SELLER SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL DAMAGES OR PERSONAL INJURIES ARISING FROM BREACH OR ANY OF THE LIMITED WARRANTIES DESCRIBED IN THIS AGREEMENT. IF ANY DEFECT IS DISCOVERED DURING THE APPLICABLE WARRANTY PERIOD, THE SELLER SHALL HAVE THE EXCLUSIVE RIGHT TO DETERMINE WHETHER THE DEFECT SHALL BE CORRECTED BY REPAIR, ADJUSTMENT OR REPLACEMENT. NO LIMITED WARRANTY CONTAINED HEREIN COVERS A DEFECTIVE PORTION OF THE PROPERTY WHICH HAS BEEN SUBJECT TO ALTERATION, MISUSE OR ACCIDENTAL DAMAGE (CAUSED BY PERSONS OTHER THAN SELLER'S EMPLOYEES AND AGENTS), OR HAS NOT BEEN AFFORDED REASONABLE CARE. BUYER AGREES THAT SELLER SHALL NOT BE RESPONSIBLE FOR ANY DAMAGES, LIABILITIES, CLAIMS OR LOSSES INCURRED BY BUYER ARISING OUT OF OR RELATING TO MOLD OR ANY OTHER FUNGUS OR AGENT, WHETHER OR NOT ASSOCIATED WITH ALLEGED DEFECTS IN CONSTRUCTION, INCLUDING, BUT NOT LIMITED TO, PROPERTY DAMAGES, PERSONAL INJURY, ADVERSE HEALTH EFFECTS, LOSS OF INCOME, EMOTIONAL DISTRESS, DEATH, LOSS OF USE OR LOSS OR VALUE AND BUYER HEREBY RELEASES SELLER FROM SAME.

(d.)    The limited warranty set forth herein above is provided to protect Buyer from faulty construction and defective materials. Warranties on appliances, equipment and other items which are consumer products for purposes of the Magnuson-Moss Warranty Act will not be effective after the stated term of the manufacturer's warranty on that item. Buyer understands and agrees that shrinkage, settlement and items of a similar nature, and the results thereof; are a normal development of new construction and are not an indication of poor workmanship or defective materials. Buyer also understands and agrees that the repair thereof is normal maintenance. The parties hereto agree that the cost of these repairs are not included in this limited warranty and shall be responsibility of Buyer.

## 22. ENTIRE AGREEMENT.

This writing and the Exhibits attached here to, contains the entire agreement between the parties and no agent, representatives, salesman or officer of the parties hereto has the authority to make or has made any statement, agreement, representation, or contemporaneous agreement, oral or written, in connection therewith modifying, adding to or changing the terms and conditions set forth herein, No dealing between the parties shall be permitted to delete, contradict, vary or add to the term thereof. No modification of this Agreement shall be binding unless such modification shall be in writing and signed by the parties hereto.

## 23. OFFSETS.

Anything herein above to the contrary notwithstanding, Seller may at its option deduct from any deposit monies to be refunded under provision of this Agreement to Buyer, any unpaid charges for which Buyer may be liable, including but not limited to the unpaid costs of any changes and or additions ordered by Buyer.

Buyer's Initials _____

24. **NO ASSIGNMENT.**

This Agreement shall not be assigned or transferred by the Buyer without the written consent of the Seller being first had and obtained. Subject to the provision regarding assignment by the Buyer, this Agreement shall extend to and bind the heirs, administrators, successors and assigns of the respective parties hereof.

25. **NOTICES.**

Notices to Seller hereunder, shall be given by registered or certified mail, postage prepaid, return receipt requested, addressed to Seller at the address on page one hereof.

26. **CAPTIONS.**

The headings in the Agreement are for convenience of reference only and shall not affect the construction hereof.

27. **HOMEOWNERS' ASSOCIATION.** Seller has advised Buyer that the Property is subject to the terms and conditions of a Homeowners' Association and Buyer acknowledges that prior to execution of this Agreement, it has received a copy of the Public Offering Statement and all exhibits thereto pertaining to the Homeowners' Association for which Buyer has acknowledged receipt by executing a Declaration Receipt, a copy of which is attached hereto as Exhibit "D" and made a part hereof.

28. **GOVERNING LAW; JURISDICTION.**

This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania. Any and all disputes, disagreements or matters concerning the interpretation or consummation and enforcement of this Agreement shall be and remain in the exclusive jurisdiction of the Bankruptcy Court for resolution, provided that, if jurisdiction cannot be had in the Bankruptcy Court, such dispute shall be submitted to the United States District Court for the Eastern District of Pennsylvania, provided if jurisdiction cannot be had in the District Court, such dispute shall be submitted to the Court of Common Pleas in Bucks County.

29. **BROKER.**

(a.) It is expressly understood and agreed between the parties that the within named agent, broker and any sub-agent, broker and their sales people, employees, officers and/or partners are the agents for Seller, not Buyers. Said individual will in no case be liable to either party for the performance of any of the terms or covenants of the Agreement or for damages for non-performance thereof. Furthermore, no Agent of Seller has any authority to make any representations, covenants, agreements, or the like, in respect of the Property. Agent, however, may perform services for the Buyer in connection with financing, insurance and document preparation. Although Buyer is free to order title insurance from any company it chooses, the Buyer is hereby specifically authorizing the Broker to place title insurance for said purchase with First Partners, an agent for Commonwealth Land Title Insurance Company, Buyer further authorizes Seller's agent to prepare documents and other conveyancing services for settlement.
Located at 605 Corporate Drive, Langhorne, PA 19047 *[handwritten]* 1/16/2020

(b.) Buyer warrants and represents that Buyer has made no agreement and has had no dealings, negotiations or communications with any brokers, finders or other intermediaries, nor has Buyer taken any action which may cause anyone to become entitled to a commission as a result of the purchase and sale contemplated by this Agreement. Buyer will indemnify, defend and hold seller harmless from any claims, actual or threatened, for compensation by reason of Buyer's breach of its representation, warranty or obligation contained in this section. This provision shall

Buyer's Initials _____

10

survive closing and any termination of the Agreement.

(c.)    The legislature and the State Real Estate Commission require that certain language be included in all agreements of sale, whether or not it is applicable.  Those disclosures are as follows:

    i.    A Real Estate Recovery Fund exists to reimburse any person who has obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about this Fund, call (717) 783-3658.

    ii.    The broker is the agent of the Seller.

    iii.    The failure of an agreement of sale to contain the zoning classification of the property shall render the Agreement void and deposits tendered by the Buyer shall be returned to the Buyer without a requirement of court action.  The zoning classification of the property is MX-Mixed Use.

    iv.    Access to a public road may require issuance of a Highway Occupancy Permit from the Department of Transportation.  Seller has arranged all necessary Highway Occupancy Permits.

## 30.  ENVIRONMENTAL DISCLOSURE.

Property will be sold subject to a Deed Notification.  A copy of the Deed Notification is available upon request.

## 31.  INTERSTATE LAND SALES ACT.

Buyer and Seller recognize that this sale is exempt from the Interstate Land Sales act by reason of Seller's absolute obligation to erect the dwelling within two years of the date Buyer signs this contract.  Should Seller for any reason fail to so construct the improvements within this two year period, Buyer's sole remedy shall be to be repaid the deposit and option payments and to be reimbursed for reasonable title insurance company charges and loan application fees paid by Buyer.  Should such delay be excused under State law by Acts of God, casualty or other delays completely beyond the control of Seller, such delay shall not excuse Seller's performance, but may delay their same only by the number of days of delays as outlined herein.

## 32.  REPRESENTATIONS.

All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

Buyer's Initials _____

**33.    EXHIBITS:**

Exhibit "A" = Site Plan
Exhibit "B" = Standard Feature List
Exhibit "C" = Home Selection Form (to be completed in accordance with paragraph 20)
Exhibit "D" = Declaration Receipt

Buyer's Initials _____

IN WITNESS W HEREOF, the said parties hereto, intending to be legally bound hereby, have hereunto set their hands and seals the day and year below written.

The above Agreement is hereby approved.

Seller:

KEVIN O' HALLOREN IN HIS CAPACITY
AS CHAPTER 11 TRUSTEE OF
ISLAND VIEW CROSSING II, L.P.

By: _____
    Kevin O'Halloren, Chapter 11 Trustee of
    Island View Crossing II, L.P.

Date: _1 / 13 / 2020_____

Buyer _Linda Walder_____

By: _LINDA WALDER_____

Date: _1-10-2020_____

Co-Buyer: _____

By: _____

Date: _____

Buyer's Initials _____

13

Exhibit A - Site Plan





Exhibit B - Standard Features List

*Distinctive Luxury Features included and Energy Home*

**ELEGANT DESIGNER INTERIORS**
- ☐ Classic 9' ceilings
- ☐ Open concept Living Room, Dining Room & Kitchen
- ☐ Hardwood flooring in entrance foyer, Kitchen &
- ☐ Powder Room
- ☐ Three spacious bedrooms including luxurious Owner's Suite
- ☐ 2 1/2 Baths
- ☐ Quality wall-to-wall carpeting in a variety of colors
- ☐ (Radaflex Model)
- ☐ Crown molding in Living Room & Dining Room
- ☐ Overhead lighting in Owner's Suite (Harimart Model)
- ☐ Vinyl coated ventilated shelving system in Owner's Suite
- ☐ Laundry (Dryer on first or second level)
- ☐ Levered Hardware

**STATE-OF-THE-ART KITCHENS**
- ☐ Green Island Kitchens
- ☐ Custom molding
- ☐ Granite countertops in select styles
- ☐ Stainless steel self-cleaning oven/gas range
- ☐ Stainless steel Spacesaver microwave
- ☐ Stainless steel Dishwasher
- ☐ Stainless steel pull out kitchen dishwasher
- ☐ Waste disposal
- ☐ Overhead 42" kitchen cabinets, choice of finishes
- ☐ Recessed lighting package (5)
- ☐ Hardwood flooring in Kitchen
- ☐ Convenient Luxury cabinet brands
- ☐ Single lever faucets
- ☐ Ice maker water line

**LUXURIOUS BEDROOMS AND BATHS**
- ☐ Owner's Suite on first or second level with
- ☐ spacious walk-in closet
- ☐ Fiberglass shower with deco door
- ☐ Double bowl vanity in Owner's Bath
- ☐ 6' x 6' Ceramic tiled floors in Owner's Bath

**ENERGY EFFICIENT DESIGN**
- ☐ Open, commercial natural gas heating
- ☐ for year round comfort
- ☐ 92% efficiency rated Energy Saver Package
- ☐ Energy efficient, dual pane vinyl windows with low E,
- ☐ enerlined grids, grilles and screens

**MCGRATH QUALITY CONSTRUCTION STANDARDS**
- ☐ Covered front porch on all homes
- ☐ Exterior lighting on all homes
- ☐ Electronic garage door opener with two home
- ☐ 30 year architectural roof shingles
- ☐ Brick front on every home, as per model
- ☐ Chest drawer doors, triple hinged
- ☐ Single lever faucets
- ☐ Durable laminate laminate countertop, low-maintenance,
- ☐ soffits and fascia, virtually maintenance free
- ☐ Insulated entry door
- ☐ Front door chimes
- ☐ Exterior lighting at front entry, garage door & rear entry
- ☐ Frost free hose connection in garage
- ☐ Exterior weatherproof electrical outlets on GFI, one (2)
- ☐ All drywall screwed, glued and nailed
- ☐ All prefabricated, spackled & painted in garage homes
- ☐ Washer and Dryer hookups
- ☐ Electric smoke detectors w/ battery back up system
- ☐ Baronial hardware on front doors
- ☐ McGRATH HOMES "COMMITMENT TO QUALITY"

**MCGRATH HOMES "COMMITMENT TO QUALITY"**
- ☐ Trash removal and recycling provided

**LANDSCAPING, UTILITIES AND IMPROVEMENTS**
- ☐ Professionally landscaped, sodded and seeded lawn
- ☐ Pachysandra and ivy throughout
- ☐ 200 Amp electrical service
- ☐ Underground telephone, electric and gas lines
- ☐ Prewired for (2) telephone outlets
- ☐ Prewired for (2) cable TV outlets
- ☐ Street lighting throughout

**CAREFREE LIVING**
- ☐ Snow removal from sidewalks, driveways & roads
- ☐ Lawn mowing on front, sides and rear of all homes
- ☐ Mulching and shrub maintenance provided
- ☐ Trash removal and recycling/self removal provided
- ☐ Exterior painting provided
- ☐ Roof replacement provided
- ☐ Maximum luxury with minimum maintenance

5897577v1

## EXHIBIT "C"

Home Selection Form

Page 1

CUSTOMIZER_SalesTeam_McGlinnMason_Je4M1AM1U.xls

| DATE: | | LOT: | | | |
|---|---|---|---|---|---|
| NAME: | | MODEL: | | | |
| **HOME SELECTIONS FORM** | | **Radellla Court on the Delaware** | | | RADELPH COURT INVITER |
| **CODE** | **DESCRIPTIONS BELOW** | **SELECTIONS** | **SELECTIONS** | **Retail** | |
| | DOOR COLOR: | | | | |
| | GAS FIREPLACE OR HOLE | | | | |
| | TRIMMED GAS FIREPLACE with SHELF and SLATE Surround 2 SIDES | | | | |
| | ADD ITEM DETAIL ABOVE (MANTEL Menu TOP PART) | Mantle only see above | | | |
| | STOVE GAS FIREPLACE with SHELF (Previous Model) | | | | |
| | ADD READ TO BOARD ABOVE | | | | |
| | FIREPLACE BLOWER | | | | |
| | | | | | |
| | ATTIC STORAGE Includes floored AREA | | | | |
| | Add Attic Stairs (STD Use Corner with Attic Access No) | | | | |
| | DAYS Shame Elevation) | | | | |
| | | | | | |
| | OAK STAIRS (PINE STD) | | | | |
| | RAILING STAIN COLOR | | | | |
| | | | | | |
| | POWDER ROOM | | | | |
| | PEDESTAL SINK STD (LAVATRAIN MODELS (ALL) | | | | |
| | VANITY (Pedestal Only) | | | | |
| | HARDWARE | | | | |
| | CULTURED MARBLE SINK/TOP | | | | |
| | UPGRADE VANITY TOP | | | | |
| | GRANITE / EDGE | | | | |
| | PEDESTAL SINK | | | | |
| | OVAL LAVATOR FOR PEDESTAL SINK | | | | |
| | FIXTURE COLOR | | | | |
| | FAUCETS STANDARD | | | | |
| | OPTIONAL FAUCETS | MODEL # | | | |
| | TOILET PAPER HOLDER/TOWEL BAR | MODEL # | | | |
| | FLOOR TILE | | | | |
| | TILE ON DIAGONAL | | | | |
| | THRESHOLD | | | | |
| | ELONGATED TOILET | | | | |
| | COMFORT HEIGHT ELONGATED TOILET | | | | |
| | HARDWOOD IN LIEU OF TILE | | | | |
| | | | | | |
| | HALL BATH | | | | |
| | HALL BATH VANITY | | | | |
| | HALL BATH STD HARDWARE | | | | |
| | CULTURED MARBLE SINK/TOP | | | | |
| | CULTURED MARBLE - UPGRADE | | | | |
| | GRANITE TOP WITH UNDERMOUNT SINK | | | | |
| | GRANITE EDGE | | | | |
| | FIXTURE COLOR | | | | |
| | HALL BATH FAUCETS STANDARD | | | | |
| | FAUCET UPGRADE | MODEL # | | | |
| | TUB / SHOWER FAUCET | MODEL # | | | |
| | TOWEL BAR / TOILET PAPER HOLDER | MODEL # | | | |
| | HALL BATH TILE FLOOR | | | | |
| | TILE FLOOR ON DIAGONAL | | | | |
| | THRESHOLD COLOR | | | | |
| | ELONGATED TOILET B | | | | |
| | COMFORT HEIGHT ELONGATED | | | | |
| | FIBERGLASS TUB/SHOWER ENCLOSURE | | | | |
| | TILE SHOWER/WALLS - STD HEIGHT | | | | |
| | TILE SHOWER WALLS TO CEILING | | | | |
| | DRAIN LOCK (see in at) | | | | |
| | MASTER BATH | | | | |
| | VANITY | | | | |
| | HARDWARE | | | | |
| | CULTURED MARBLE SINK/TOP | | | | |
| | UPGRADE CULTURE MARBLE TOP | | | | |
| | GRANITE TOP WITH UNDERMOUNT SINK | | | | |
| | GRANITE EDGE | | | | |
| | FIXTURE COLOR | | | | |
| | FAUCETS STANDARD | | | | |
| | UPGRADE FAUCET PACKAGE | MODEL # | | | |
| | SHOWER FAUCET | MODEL # | | | |
| | | MODEL # | | | |
| | BATH TILE FLOOR | | | | |
| | BATH TILE FLOOR ON DIAGONAL | | | | |
| | SHOWER TILE | | | | |
| | TILE TO CEILING | | | | |

Page 3    CUSTOMIZER_SMINSTROM_McGinnis*MSDn_InM1nM418.xlsx

| CODE | DESCRIPTIONS BELOW | SELECTIONS | SELECTIONS | Retail | Units |
|---|---|---|---|---|---|
| | CERAMIC SOAP DISH | | | | |
| | CORNER SHELF | | | | |
| | SEAT FOR SHOWER (corner) | | | | |
| | OPTIONAL BENCH SEAT | | | | |
| | FIBERGLASS SHOWER PAN | | | | |
| | TILE W/ WEDGE | | | | |
| | SHOWER GEL | | | | |
| | THRESHOLD COLOR | | | | |
| | SHOWER DOOR | | | | |
| | UPGRADE SHOWER DOOR | | | | |
| | TOILET PAPER HOLDER / TOWEL BAR | | | | |
| | ELONGATED TOILET | | | | |
| | COMFORT HEIGHT ELONGATED | | | | |
| | GRAB BAR (18in max) | Area | | | |
| | LAUNDRY ROOM | | | | |
| | LAUNDRY ROOM CABINETS | | | | |
| | HARDWARE | | | | |
| | CABINET LAYOUT | | | | |
| | VINYL FLOOR SELECTION | | | | |
| | HARDWOOD UPGRADE FLOOR UPGRADE | | | | |
| | CERAMIC TILE | | | | |
| | TILE ON DIAGONAL | | | | |
| | THRESHOLD | | | | |
| | KITCHEN LAYOUT (Straight or Parallel) | | | | |
| | CARRIAGE HOUSE CABINETS | STANDARD LEVEL CABN | | | |
| | CARRIAGE HOUSE CABINETS | UPGRADE (SEE PRICING ATTACHED) | | | |
| | HARDWARE | | | | |
| | DRAWERS | | | | |
| | DOORS | | | | |
| | CROWN MOLDING | | | | |
| | LIGHT RAIL MOLDING | | | | |
| | KITCHEN APPLIANCES | | | | |
| | USE LIST OR MFG'T COLOR | | | | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | | |
| | DISHWASHER | MODEL# | | | |
| | DISPOSAL | MODEL# | | | |
| | RANGE | MODEL# | | | |
| | MICROWAVE | MODEL# | | | |
| | COOK TOP (ELECT) requires the | MODEL# | | | |
| | purchase of a 220 L sq) | | | | |
| | KITCHEN COUNTERTOPS | | | | |
| | GRANITE COUNTERTOP | | | | |
| | EDGE PROFILE | | | | |
| | BREAKFAST BAR & EDGE | | | | |
| | SINK SELECTION | | | | |
| | UNDERMOUNT STAINLESS Sink | | | | |
| | FAUCET SELECTION | | | | |
| | KOHLER FAUCET - CHROME STANDARD MODELS | | | | |
| | OPTIONAL FAUCET | MODEL# | | | |
| | TILE BACKSPLASH (finishes) | | | | |
| | TILE SELECTION | | | | |
| | KITCHEN FLOOR | | | | |
| | HARDWOOD STANDARD | | | | |
| | CERAMIC TILE Upgrade | | | | |
| | ELECTRIC GARAGE DOOR OPENER | | | | |
| | EXTRA REMOTE | | | | |
| | KEYLESS ENTRY | | | | |
| | UPGRADE GARAGE OPENER | | | | |
| | ELECTRICAL OPTIONS | | | | |
| | TRANSFER? | | | | |
| RADCLIFFE COUNT | UPDINE HVAC SYSTEM/DIV/DUCT UNIT/CATV (LOTS 11 has sec......) | | | | |
| | SECURITY SYSTEM / HYBRID SYSTEM | | | | |
| | GLASS BREAK RATED - 1 | | | | |
| | ADDITIONAL KEYPAD | | | | |
| | MOTION DETECTOR | | | | |
| | CONTACT WIRELESS - EXTRA DOOR OR WINDOW (1) | | | | |
| | WIRELESS KEY FOB | | | | |
| | Electric Outlets / Area, See Electrical Walk thru Change Order | | | | |

Customer Initials _____          Confidential          Page 2



Page 3                    CUSTOMIZER_SalesTeam_BAsGradthHMSOn_14^M4^M19.xlsx

| CODE | DESCRIPTIONS BELOW | SELECTIONS | SELECTIONS | Retail | Profit |
|---|---|---|---|---|---|
| | SURGE SUPPRESSOR/WHOLE HOUSE SURGE PROTECTOR | | | | |
| | 220 LINE for RANGE | | | | |
| | 220 LINE for DRYER | | | | |
| | JUNCTION BOX W/ SWITCH | | | | |
| | | | | | |
| | LED RECESSED LIGHT - 1 | | | | |
| | LED RECESSED LIGHTS - 2 PKG. | | | | |
| | LED RECESSED LIGHTS - 3 PKG. | | | | |
| | LED RECESSED LIGHTS - 4 PKG. | | | | |
| | LED RECESSED LIGHTS - 5 PKG. | | | | |
| | LED RECESSED LIGHTS - 6 PKG. | | | | |
| | LINE of LED RECESSED LIGHT | | | | |
| | 2 SCONCE LIGHT ON 1 SWITCH - PENDANTS (2) | | | | |
| | 3 SCONCE LIGHT ON 1 SWITCH - PENDANTS (3) | | | | |
| | LED EYEBALL LIGHTS | | | | |
| | PHONE OUTLETS (2) | | | | |
| | CABLE OUTLETS (2) | | | | |
| | | | | | |
| | LED WATERPROOF RECESSED | | | | |
| | DIMMER SWITCH | | | | |
| | DIMMER SWITCH - 3 WAY | | | | |
| | FANS LIGHT SEPARATE SWITCH | | | | |
| | EXTERIOR JUNCTION BOX | | | | |
| | ELECTRICAL OUTLETS | | | | |
| | ELECTRICAL OUTLET W/ SWITCH | | | | |
| | CAPPED BOX/SWITCH for fan | | | | |
| | OVER CABINET LED LIGHTERS | | | | |
| | UNDER CABINET LED LIGHTS | | | | |
| | DIMMER FOR UNDER CABINET LIGHTS | | | | |
| | DEDICATED CIRCUIT (WIFI gel) | | | | |
| | GFI FREEZER LINE | | | | |
| | ATTIC FAN | | | | |
| | WHOLE HOUSE SURGE PROTECTOR | | | | |
| | | | | | |
| | TRIM OPTIONS | | | | |
| | Window Casing Upgrade (Does not include window PKG) | | | | |
| | WINDOW PKG   (INTERIOR LEFT) | | | | |
| | A.   Colonial | | | | |
| | B.   Windsor | | | | |
| | | | | | |
| | WINDOW PKG   (END UNIT) | | | | |
| | A.   Colonial | | | | |
| | B.   Windsor | | | | |
| | LIVING RM & DINING RM 3 PIECE CROWN (THREE STD.) | | | | |
| | MASTER BEDROOM CROWN UPPER & LOWER AREAS | | | | |
| | A.   1 PIECE | | | | |
| | B.   2 PIECE | | | | |
| | | | | | |
| | UP STAIRS HALLWAY & STAIRWELL CROWN | | | | |
| | | | | | |
| | BEDROOM 2 OR 3 CROWN (1 PIECE) | | | | |
| | | | | | |
| | BOX WINDOW PANEL DETAIL | | | | |
| | | | | | |
| | BEADED BOARD Dining Room and Kitchen | | | | |
| | | | | | |
| | BEADED BOARD DINING RM & KITCHEN | | | | |
| | BEADED BOARD living room | | | | |
| | | | | | |
| | DINING ROOM WAINSCOTING TO CEILING | | | | |
| | A.   1 SIDE | | | | |
| | B.   2 SIDES | | | | |
| | | | | | |
| | DINING ROOM COFFEE BOX CEILING | | | | |
| | | | | | |
| | WAINSCOTING LIVING RM | | | | |
| | WAINSCOTING FAMILY RM | | | | |
| | WAINSCOTING DINING ROOM KITCHEN | | | | |
| | | | | | |
| | SHADOW BOXES DINING RM & KITCHEN | | | | |
| | Shadow boxes LIVING ROOM | | | | |
| | shadow boxes family room | | | | |
| | | | | | |
| | DINING RM | | | | |
| | 48 X 1 HIGH WAINSCOTING WITH TOP CAP | | | | |

Customer Initials                    Confidential                    Page 3

Page 4                    CUSTOMER_SalesTeam_McGrath^MSOn_14^M1^M19.xls

| CODE | DESCRIPTIONS BELOW | SELECTIONS | SELECTIONS | Retail | Total |
|---|---|---|---|---|---|
| | MASTER BDRM. | | | | |
| | 12FT HIGH WENSCOTING WITH TOP CAP | | | | |
| | LIVING RM & LOFT | | | | |
| | 1 PIECE CROWN | | | | |
| | LIVING RM CEILING | | | | |
| | OGEE PANEL WITH 9 BOXES | | | | |
| | MASTER BDRM | | | | |
| | HEAD PIECE OVER SUGARD DR. W/ 1 OGEE PANEL | | | | |
| | AND TOP CAP | | | | |
| | ADD OGEE TO DOWNSTAIRS CROWN TO MAKE 2 PIECE | | | | |
| | SHADOW BOXES IN MASTER BDRM | | | | |
| | BUILD 2 POSTS FLOOR TO CEILING W/ OGEE PANELS | | | | |
| | AND UNDER AND OVER DOUBLE WINDOW | | | | |
| | 2 OGEE PANELS & ON EITHER SIDE OF FIREPLACE | | | | |
| | | | | | |
| | WENSCOTING DETAIL ON FIREPLACE FROM | | | | |
| | MANTLE DOWN | | | | |
| | WENSCOTING DETAIL ON FIREPLACE FROM | | | | |
| | MANTLE UP | | | | |
| | KITCHEN CROWN & LIGHT RAIL | | | | |
| | OGEE DETAIL ON RM. CEILING  SINGLE | | | | |
| | OGEE DETAIL ON RM. RM. CEILING  DOUBLE | | | | |
| | OGEE DETAIL ON MAS. BDRM. | | | | |
| | TRAY CEILING SINGLE | | | | |
| | OGEE DETAIL ON MAS. BDRM. | | | | |
| | TRAY CEILING DOUBLE | | | | |
| | MISC OPTIONS | | | | |
| | INSULATE GARAGE | | | | |
| | Insulation & plumbing w/Laundry Line Air Plumbing | | | | |
| | Insulate Master Bedroom Interior Partitions | | | | |
| | Insulate with Interior Wall Sound Batting for Laundry Room Interior Partitions | | | | |
| | PAINT GARAGE | | | | |
| | DRAIN BARS | | | | |
| | INTERIOR DOOR HARDWARE (upgrade to Oil Rubbed Bronze) ($10 - 2 dr. faced) | | | | |
| | Upgraded High Efficiency FURNACE in Bsmt area at 95d | | | | |
| | LANDSCAPE PKG A | | | | |
| | LANDSCAPE PKG B (Sunbridge Green) | | | | |
| | LANDSCAPE PKG B (Stone Ridge Green) | | | | |
| | UPGRADED LANDSCAPE PKG A | | | | |
| | LANDSCAPE A 12X12 patio | | | | |
| | LANDSCAPE A 14x20 patio | | | | |
| | LANDSCAPE OPTIONS | | | | |
| | PKG A - SIDE OF END UNIT | | | | |
| | PKG B +(18) ADD FOR 12 x 20 PATIO | | | | |
| | PKG B - (180) FOR 12 x 12 PATIO | | | | |
| | LIGHT FIXTURE OPTIONS | | | | |
| | CHROME VANITY LIGHTS (FIRST FLOOR) - UPGRADE NICKEL OR MATTE +$ | | | | |
| | UPGRADE TO BRUSHED NICKEL | | | | |
| | UPGRADE TO ANTIQUE BRONZE | | | | |
| | FLOORING SELECTIONS | FLOORING SELECTIONS | | | |
| | HARDWOOD in the Following LOCATIONS | DESCRIPTIONS | | | |
| | FOYER | | | | |
| | KITCHEN | | | | |
| | FRONT FAMILY ROOM | | | | |
| | 3 Risers at Home Dining Room | | | | |
| | BACK LIVING ROOM | | | | |
| | 3 FT. HALLWAY FROM Garage Door to Dining Rm | | | | |
| | POWDER ROOM-THFL | | | | |
| | CLOSET UNDER STAIRS (STO 13 CARPET) | | | | |
| | STAIRWELL | | | | |
| | 2nd FLOOR HALLWAY | | | | |
| | LAUNDRY ROOM | | | | |
| | BEDROOM #2 | | | | |
| | BEDROOM #3 | | | | |
| | MASTER BEDROOM/CLOSET | | | | |
| | HALL BATH - 2nd FL | | | | |
| | CARPET in the Following LOCATIONS | | | | |
| | TILE in the Following LOCATIONS (this area FREE if not selected for Hardwood | DESCRIPTIONS | | | |

Customer Initial                        Confidential                        Page 4

Page 5                    CUSTOMIZER_SalesForm_McGrath#4SOn_J#M1#M13.xlsx

| CODE | | DESCRIPTIONS BELOW | SELECTIONS | SELECTIONS | Retail | UPGRADE |
|---|---|---|---|---|---|---|
| | FOYER | | | | | |
| | KITCHEN | | | | | |
| | FRONT FAMILY ROOM | | | | | |
| | Middle of Foyer DINING ROOM | | | | | |
| | BACK LIVING ROOM | | | | | |
| | 1st FL HALLWAY (from Garage Door to Dining Rm) | | | | | |
| | POWDER ROOM-1st FL | | | | | |
| | CLOSET UNDER STAIRS (STD IS CARPET) | | | | | |
| | STAIRWELL | | | | | |
| | 2nd FLOOR HALLWAY | | | | | |
| | LAUNDRY ROOM | | | | | |
| | BEDROOM #1 | | | | | |
| | BEDROOM #1 | | | | | |
| | MASTER BEDROOM/CLOSET | | | | | |
| | HALL BATH - 2nd FL | | | | | |
| | | | | | | |
| | RUNNER FOR STAIRS (OAK STAIRS ONLY/STD PINE STAIRS (FAMILY/LINEN) | | | | | |
| | | | | | | |
| | UPGRADE PADDING FOR CARPET | | | | | |
| | | | | | | |

TO CHANGE A SELECTION, BUYER AGREES TO PAY A $150.00 CHANGE ORDER FEE.
BUILDER NOT RESPONSIBLE FOR COLOR VARIATIONS IN NATURAL WOOD, CERAMIC
OR MARBLE. OPTION PRICES ARE SUBJECT TO CHANGE WITHOUT NOTICE.

DATE: _____
LOT # _____                          TOTAL DUE

Sales Signature: _____                          15% DEPOSIT DUE

BUYER: _____          RADCLIFFE
                                COURT
                                On the Delaware
BUYER: _____                          BALANCE DUE AT
                                                SETTLEMENT

Customer Initials                    Confidential                    Page 5

# EXHIBIT D
# DECLARATION RECEIPT

DATE: _1/10/2020_

HOMEBUYERS: _Linda Waller_

LOT: _47_

We hereby acknowledge receipt of a copy of the below listed documents affecting the Community:

1. Public Offering Statement;
2. Declaration of A Planned Community, the Townhomes at Radcliffe Court on the Delaware;
3. Bylaws for Radcliffe Court on the Delaware, a planned community; and
4. Master Association Declaration of Radcliffe Court on the Delaware

HOMEBUYER: _Linda Walker_ DATE: _1/10/2020_

HOMEBUYER:_____ DATE: _____

# INFORMATION FOR PROSPECTIVE BUYERS

The following items are provided in order to assist you to a more complete understanding of the real estate transaction and to fulfill our responsibility as required by law. Please read them and sign where indicated. Thank you for your cooperation.

1.    Agency. As a buyer(s), you should know that the listing and selling brokers and sales associates are licensed agents for the Seller unless otherwise specified.   They have a fiduciary responsibility to the Seller who is their client and will pay their commission.

However, both listing and selling brokers and sales associates are obliged by law to treat you fairly and honestly.  They must;   (1)   present all offers to the Seller as soon as possible and (2) respond honestly and completely to questions concerning the property.

2.    Equal Housing Opportunity.    Brokers and sales associates are required by law and/or the National Association of Realtors Code of Ethics to treat all parties in a real estate transaction fairly without regard to race, religion, national origin, ancestry, sex, age, marital status, sexual orientation, presence of children, physical or mental handicaps or familial status.

3.    Real Estate Recovery Fund.  "A Real Estate Recovery Fund exists to reimburse any person who has obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting all legal and inequitable remedies.  For complete details about the fund, call (717) 783-3658."

4.    Legal Requirement.  All contracts for real property are required to be in writing in order to be enforceable and to comply with the law.  The Agreement of Sale will be a legally binding document. You may wish to have legal counsel review all documentation prior to signing and to represent you pertaining to all legal documentation and its interpretation.

I/We have received a copy of this information and have read and understood it.

BUYER: _____    DATE: 1/10/2020

BUYER: _____    DATE: _____