**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

In re:                                    :        **CHAPTER 11**
                                          :
**ISLAND VIEW CROSSING II, L.P.**        :        **BANKRUPTCY NO. 17-14454(ELF)**
                                          :
                    **Debtor**            :
_____  :

_____

**PLAN OF LIQUIDATION PROPOSED**
**BY KEVIN O'HALLORAN, AS CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY**
**ESTATE OF ISLAND VIEW CROSSING II, L.P.**

_____

**KARALIS PC**
**Aris J. Karalis, Esquire**
**1900 Spruce Street**
**Philadelphia, PA 19103**
**(215) 546-4500**
**Attorneys for Kevin O'Halloran,**
**the Chapter 11 Trustee**

**Dated:  April 19, 2021**

# TABLE OF CONTENTS

**PAGE NO.**

INTRODUCTION ................................................................................................................1

ARTICLE I - Definitions, Rules of Interpretation, and Computation of Time ............................1

    A.    Scope of Definitions ................................................................................1
    B.    Definitions.................................................................................................2
    C.    Rules of Interpretation ...........................................................................15
    D.    Computation of Time ..............................................................................16
    E.    References to Monetary Figures .............................................................16
    F.    Exhibits ...................................................................................................16

ARTICLE II – Classification of Claims and Interest................................................................16

    2.1    Classification and Designation as Impaired and Unimpaired.............................16
    2.2    Unclassified Claims ...........................................................................................17
    2.3    Unimpaired Claims and Disputed Claims not entitled to Vote on Plan .............17
    2.4    Impaired Claims and Interests entitled to Vote on Plan ....................................17

ARTICLE III – Provisions for Treatment of Classes of Claims and Interests ...........................18

    3.0    Satisfaction of Claims and Interests...................................................................18
    3.1    Class 1. Tax Claim Bureau Claim......................................................................18
    3.2    Class 2. RDA Claim...........................................................................................19
    3.3    Class 3. Prudential Construction Loan Claim.....................................................21
    3.4    Class 4. Prudential IVC-Durham Loan Claim.....................................................24
    3.5    Class 5. Steeple Run Collateral Mortgage Claim ..............................................26
    3.6    Class 6. Calnshire Collateral Mortgage Claim ..................................................28
    3.7    Class 7. Pre-Petition Judgment Claims..............................................................31
    3.8    Class 8. Priority Non-Tax Claims ......................................................................32
    3.9    Class 9. General Unsecured Claims....................................................................32
    3.10    Class 10. Limited Partner Interests in the Debtor ............................................33
    3.11    Class 11. General Partner Interest in the Debtor...............................................34

ARTICLE IV – Provisions for Treatment of Unclassified Claims............................................34

    4.1    Administrative Claims ........................................................................................34
    4.2    Treatment of Priority Tax Claims .......................................................................36
    4.3    No Liability for Certain Tax Claims....................................................................36
    4.4    Treatment of Post-Petition Loan ........................................................................36

ARTICLE V – Acceptance or Rejection of the Plan; Cramdown .............................................36

    5.1    Acceptance by Impaired Classes of Claims and Interests ..................................36

5.2     Voting Classes ...................................................................................................37
5.3     Elimination of Vacant Classes ............................................................................37
5.4     Voting Instructions..............................................................................................37
5.5     Cramdown ...........................................................................................................38

ARTICLE VI – Means for Implementation of The Plan ...........................................................38

6.1     Retained Estate....................................................................................................38
6.2     Development, Construction, Marketing, and Sale of the Real Property.............38
6.3     Sale of Real Property Free and Clear of the Claim Interests .............................39
6.4     Plan Funding .......................................................................................................39
6.5     Powers and Duties of Trustee .............................................................................40
6.6     Corporate Action.................................................................................................40
6.7     Continued Existence ...........................................................................................41
6.8     Management.........................................................................................................41
6.9     Closing of the Chapter 11 Case ..........................................................................41

ARTICLE VII – Provisions Governing Distributions and General Provisions .........................42

7.1     Timing of Distributions.......................................................................................42
7.2     Distributions to Holders of Allowed Claims ......................................................42
7.3     No Payment or Distribution Pending Allowance................................................42
7.4     Delivery of Distributions ....................................................................................42
7.5     Method of Cash Distributions.............................................................................43
7.6     Failure to Negotiate Checks................................................................................43
7.7     Unclaimed Property ............................................................................................43
7.8     Limitation on Distribution Rights.......................................................................43
7.9     Fractional Dollars................................................................................................43
7.10    Compliance with Tax Requirements....................................................................44
7.11    De Minimis Distributions ...................................................................................44

ARTICLE VIII – Preservation of Causes of Action and Right to Defend and Contest ............44

8.1     Preservation of Rights.........................................................................................44
8.2     Preservation of Causes of Action........................................................................44
8.3     Setoffs .................................................................................................................45
8.4     Resolution of Disputed Claims ...........................................................................45
8.5     Late Filed Claims................................................................................................45
8.6     No Payment or Distribution Pending Allowance................................................45

ARTICLE IX – Executory Contracts and Unexpired Leases ...................................................46

9.1     Rejection of Executory Contracts and Unexpired Leases...................................46
9.2     Bar Date for Claims for Rejection Damages .......................................................46
9.3     Treatment of Rejection Claims ...........................................................................46

ARTICLE X – Conditions to Consummation of the Plan ...........................................................46

    10.1   Confirmation Order.........................................................................................46
    10.2   Conditions to Effective Date...........................................................................46
    10.3   Effect of Failure or Absence of Waiver of Conditions Precedent to the
           Effective Date of the Plan ...............................................................................47

ARTICLE XI – Effects of Confirmation ............................................................................47

    11.1   Vesting of Assets – Retained Estate ...............................................................47
    11.2   Injunction .......................................................................................................47
    11.3   Exculpation .....................................................................................................48
    11.4   Other Documents and Actions ........................................................................48
    11.5   Preservation of Insurance ...............................................................................48
    11.6   Guaranties ......................................................................................................48
    11.7   Section 1146 Exemption .................................................................................48
    11.8   No Successor Liability ....................................................................................49

ARTICLE XII – Retention of Jurisdiction..........................................................................49

    12.1   Exclusive Jurisdiction of Bankruptcy Court ..................................................49
    12.2   Failure of Bankruptcy Court to Exercise Jurisdiction.....................................51

ARTICLE XIII – Miscellaneous Provisions........................................................................51

    13.1   Binding Effect of Plan ....................................................................................51
    13.2   Withdrawal of the Plan ...................................................................................51
    13.3   Final Order .....................................................................................................51
    13.4   Modification of the Plan .................................................................................52
    13.5   Business Days .................................................................................................52
    13.6   Severability ....................................................................................................52
    13.7   Governing Law ...............................................................................................52
    13.8   Payment of Statutory Fees ..............................................................................52
    13.9   Post-Confirmation Reports .............................................................................52
    13.10  Notices ...........................................................................................................52
    13.11  Filing of Additional Documents .....................................................................53
    13.12  Section 1125 of the Bankruptcy Code ............................................................53
    13.13  Time ...............................................................................................................53
    13.14  No Attorneys' Fees ........................................................................................53
    13.15  No Injunctive Relief .......................................................................................53
    13.16  No Discharge of Debtor ..................................................................................53
    13.17  Destruction of Records ...................................................................................53
    13.18  Liability in Connection with Plan ...................................................................54
    13.19  Default............................................................................................................54
    13.20  Continued Confidentiality Obligations ...........................................................54
    13.21  No Admissions or Waivers .............................................................................54

13.22   Entire Agreement ...............................................................................................54
13.23   Conflicts .........................................................................................................54

ARTICLE XIV – Confirmation Request ...................................................................................54

## INTRODUCTION

Island View Crossing II, L.P. is the Debtor[1] in this Chapter 11 Case. On June 30, 2017, the Debtor commenced the Chapter 11 Case by filing a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. On December 18, 2017, the Bankruptcy Court entered an Order directing the appointment of a chapter 11 trustee.

On December 21, 2017, the United States Trustee filed an Application for entry of an Order approving the appointment of an interim Chapter 11 Trustee which application was approved pursuant to a Court Order entered on the same day. A meeting of creditors commenced on January 11, 2018 which was continued and concluded on January 29, 2018 for the purpose of electing a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(b)(1) and Fed. R. Bankr. P. 2007.1. On January 30, 2018 (the "Appointment Date"), the United States Trustee for Region 3 filed its Report of Undisputed Election which provided, inter alia, that Kevin O'Halloran was elected to serve as the Chapter 11 Trustee (the "Trustee") in the Chapter 11 Case.

The Trustee hereby proposes this Plan, as may be amended or modified, for the resolution of the Claims against the Debtor's Estate and Interests in the Debtor pursuant to chapter 11 of the Bankruptcy Code. Reference is made to the Disclosure Statement dated April 19, 2021 and filed on the same date as the Plan, as may be amended or modified, for a discussion of the Debtor's history, business, historical financial information, property, projections for future operations and risk factors, a summary and analysis of the Plan, a summary of the litigation commenced by the Debtor and Trustee against Prudential pending before the Bankruptcy Court and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

## ARTICLE I
### Definitions, Rules of Interpretation, and Computation of Time

A.    **Scope of Definitions.**

For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules.

---

[1] Capitalized terms used herein shall have the meanings set forth in Article 1 hereof.

B.    **Definitions**.

1.1    **"Accrued"** means an expense incurred but not yet billed or paid.

1.2    **"Administrative Claim"** means a Claim for: (a) any cost or expense of administration (including, without limitation, the fees and expenses of Professionals and the Trustee Commission) of the Chapter 11 Case asserted or arising under sections 503, 507(a)(1), 507(b) or 1114 (e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post Petition Date cost or expense of preserving the Debtor's Estate or operating the business of the Debtor, (ii) any post Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by or on behalf of the Debtor or Trustee in the ordinary course of its business, (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546 of the Bankruptcy Code; (b) any fees or charges assessed against the Debtor's Estate under section 1930 of title 28 of the United States Code; (c) any Allowed administrative claim or super priority claim granted to the Post-Petition Lender pursuant to the Post-Petition Financing Order or any subsequent Final Order of the Bankruptcy Court; and (d) Claims of the Post-Petition Lender in connection with the Post-Petition Loan.

1.3    **"Administrative Claims Bar Date"** means, depending on the context, (i) _____ 2021 the date set by the Bankruptcy Court by which an Administrative Claim arising prior to the _____ date must have been Filed, and (ii) the date set forth in the Confirmation Order by which an Administrative Claim arising after the _____ Date must be Filed.

1.4    **"Affiliate"** shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1.5    **"Allowance Date"** means the date a Claim or Interest becomes an Allowed Claim or Allowed Interest, respectively.

1.6    **"Allowed"** means, with respect to any Claim, (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may have been amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not Disputed or contingent, and with respect to which no contrary Proof of Claim has been filed, (b) any Claim specifically Allowed under the Plan, (c) any Claim the amount or existence of which has been determined or Allowed by a Final Order, or (d) any Claim as to which a Proof of Claim has been timely filed before the Bar Date, provided at the time of Effective Date the Debtor has not identified such Claim as being objectionable in part or in whole and no Objection to the allowance thereof has been filed by the Claims Objection Deadline; provided, however, that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated Claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan.

1.7    **"Allowed Claim"** means a Claim that is Allowed.

2

1.8 **"Appointment Date"** means January 30, 2018.

1.9 **"Avoidance Actions"** means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under sections 502, 510, 541, 543, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

1.10 **"Avoidance and Subordination Action"** means the action commenced by the Trustee against Prudential in the Bankruptcy Court on December 3, 2018 to avoid and recover fraudulent transfers pursuant to 12 Pa.C.S. §§ 5104(a)(2) & 5105, and 11 U.S.C. §§ 544 & 550 and for equitable subordination pursuant to 11 U.S.C. § 510 captioned as *Kevin O'Halloran, in his capacity as Chapter 11 Trustee for  Island View Crossing II, L.P. v. Prudential Savings Bank*, adversary no. 18-280 (ELF).  By Order dated December 6, 2018, the Trustee's Avoidance Action was consolidated for all purposes with the pending Lender Liability Action.

1.11 **"Ballot"** means the form of ballot to be provided to Holders of claims in classes which are entitled to vote on the Plan, upon which such shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

1.12 **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§101 et. seq., in effect on the Petition Date, as may be amended and modified from time to time.

1.13 **"Bankruptcy Court" or "Court"**  means the United States Bankruptcy Court for the Eastern District of Pennsylvania having jurisdiction over the Chapter 11 Case or, if such Court ceases to exercise jurisdiction over these proceedings, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

1.14 **"Bankruptcy Rules"**  means: (a) the Federal Rules of Bankruptcy Procedure and the Official Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedures issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

1.15 **"Bar Date"** means the deadline set by the Bankruptcy Court for filing proofs of claim or interests in the Chapter 11 Case.  For pre-Petition Claims (other than those of governmental units) and Interests, the Bar Date fixed by Order of the Court is **October 11, 2017** (the "General Bar Date"). For pre-Petition Claims of governmental units, in accordance with § 502(b)(9) of the Bankruptcy Code, the Bar Date is 180 days from the date of the Order for relief (the "Governmental Unit Bar Date").  The Order for relief in this case was June 30, 2017.

1.16 **"Bohler Engineering Judgment"** means a judgment entered pre-petition against the Debtor and in favor of Bohler Engineering PA, LLC on January 5, 2017 (No. 2017-00032) in the amount of $48,853.63.

1.17    **"Borough Judgment"** means a judgment entered pre-petition against Debtor and in favor of the Borough of Bristol on April 22, 2016 (No. 2016-71251) in the amount of $56,239.22.

1.18    **"Bristol Borough Letter of Credit"** means the Irrevocable Standby Letter of Credit No. IVC-1 for $2,090,381.19 issued by Prudential to the Borough of Bristol and Bristol Borough Water and Sewer Authority for the Island View Crossing II, LP Subdivision Development Improvements in connection with the Subdivision Financial Security Agreement dated March 4, 2015 by and among Bristol Borough, Bristol Borough Water & Sewer Authority, the Debtor and Prudential for the installation of the public improvements required for development of Phase 1 and Phase 2 at the Real Property.

1.19    **"Business Day"** means any day other than a Saturday, Sunday, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in the Commonwealth of Pennsylvania are authorized or obligated by law, executive order or governmental decree to be closed.

1.20    **"Caione Judgment"** means a judgment entered pre-petition against the Debtor, Americorp Homes and Island View Crossing II, Inc. and in favor of Monica Caione on February 28, 2017 (No. 2016-04021) in the amount of $30,990.00.

1.21    **"Calnshire Collateral Mortgage"** means that certain collateral mortgage in the amount of $5,136,000 dated May 30, 2014 in favor of Prudential and recorded against the Real Property on July 23, 2014, instrument number 2014038527.

1.22    **"Calnshire Collateral Mortgage Subordination Agreement"** means that certain subordination agreement between the Trustee and Prudential dated September 24, 2018 but effective September 26, 2018 and recorded against the Real Property in the land records on September 28, 2018 at Instrument No. 2018053795 whereby Prudential inter alia subordinated the liens and claims of the Calnshire Collateral Mortgage for priority, distribution and payment purposes to all the Permitted Claims so that the Trustee may utilize the proceeds from the sale of each residential unit at the Project and/or the Project to pay the Permitted Claims in full from the proceeds of sale of the residential units at the Project and/or sale of the Project as set forth in any plan proposed by the Trustee and confirmed by the Bankruptcy Court.   This Subordination Agreement also provides that at the time of each closing on the sale of each residential unit at the Project and/or the sale of the Project, and only so long and to the extent the Permitted Claims have not been paid in full, Prudential will deliver a release of the lien of the Calnshire Collateral Mortgage to the Trustee without any charge or payment.  The Trustee preserved his claim to void or otherwise invalidate the Calnshire Collateral Mortgage and Prudential likewise preserved all of its claims and defenses to any such claim.

1.23    **"Cash"** means legal tender of the United States of America and its equivalents.

1.24    **"Causes of Action"** means any and all actions, Claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced

to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, secured or unsecured and whether asserted or assertible directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtor, including, but not limited to, the Lender Liability Action and the Avoidance and Subordination Action (consolidated for all purposes with the Lender Liability Action and at times collectively, referred to as "**Trustee's Actions Against Prudential**").

      1.25   **"Chapter 11 Case"** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date captioned, <u>In re Island View Crossing II, L.P.</u>, Case No. 17-14454(ELF).

      1.26   **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code, against the Debtor.

      1.27   **"Claim Objection Deadline"** means 90 days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified above.

      1.28   **"Claimant"** means a person or entity holding a Claim or Interest (including, his, her or its successors, assigns, heirs, executors, or personal representatives).

      1.29   **"Class"** means each class, subclass or category of Claims or Interests, as classified in Article II of the Plan.

      1.30   **"Class 7 Payment Fund"** means the fund to be created and funded under Class 7 of the Plan and distributed Pro-Rata to Holders of Allowed Class 7 Claims in accordance with Class 7 of the Plan.

      1.31   **"Class 9 Unsecured Creditor Fund"** means the fund to be created and funded under Class 9 of the Plan and distributed Pro-Rata to Holders of Allowed Class 9 Claims in accordance with Class 9 of the Plan.

      1.32   **"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

      1.33   **"Confirmation Hearing"** means the hearing held before the Bankruptcy Court to consider confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

      1.34   **"Confirmation Order"** means the Order of the Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

      1.35   **"Creditor"** means any Person that is the Holder of any Claim against the Debtor.

      1.36   **"Cross Subordination Agreement"** means the cross-subordination agreement by and

among the RDA, the Debtor and Prudential dated December 10, 2014.

1.37    **"Debtor"** means Island View Crossing II, L.P., the debtor in the Chapter 11 Case.

1.38    **"Disallowed"** means with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (a) has been withdrawn, in whole or in part, by agreement of Debtor or Trustee and Holder thereof; (b) has been withdrawn, in whole or in part, by the Holder thereof; or (c) has been disallowed, in whole or part, by Final Order of a court of competent jurisdiction. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance or withdrawal.

1.39    **"Disclosure Statement"** means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules attached thereto, if any, as submitted by the Trustee, as the same may be amended, supplemented, or modified from time to time, as approved by the Bankruptcy Court and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

1.40    **"Disputed"** means any Claim or Interest that has been neither Allowed nor Disallowed.

1.41    **"Disputed Claim"** means a Claim, or any portion thereof, that is Disputed. For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

1.42    **"Effective Date"** means the first Business Day following the date on which all the conditions to Effective Date set forth in Article X of the Plan have been satisfied or waived (if capable of being duly and expressly waived), provided that no stay of the Confirmation Order is then in effect.

1.43    **"Entity"** means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, Unites States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

1.44    **"Estate"** means the estate created in the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

1.45    **"Exhibit"** means an exhibit attached to this Plan.

1.46    **"Existing Mortgages of Prudential"** means collectively, the Calnshire Collateral, Mortgage, the Construction Loan Mortgage, the IVC-Durham Mortgage, and the Steeple Run Collateral Mortgage.

1.47    **"Federal Rate"** means the rate of 1.16% per annum which is the federal judgment rate per 28 U.S.C. § 1961 as of the Petition Date. The Federal Rate is equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal

Reserve System, as of the Petition Date

1.48    **"File," "Filed," or "Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Case.

1.49    **"Final Decree"** means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

1.50    **"Final Order"** means, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) of the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the Bankruptcy Rules or Rules 69 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

1.51    **"General Unsecured Claim"** means all Claims, including Rejection Claims, that are not Administrative Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Class 5 Claims, Class 6 Claims, Class 7 Claims, Class 8 Claims, Class 10 Interests or Class 11 Interests.

1.52    **"Governmental Unit"** means a "governmental unit" as that term is defined in § 101(27) of the Bankruptcy Code.

1.53    **"Governmental Unit Bar Date"** means **December 27, 2017**.

1.54    **"Gualtieri"** means Renato J. Gualtieri.

1.55    **"Holder"** means an Entity or Person holding a beneficial interest in a Claim and, when used in conjunction with a Class or type of Claim, means a holder of a beneficial interest in a Claim in such Class or such type.

1.56    **"Impaired"** means, when used with reference to Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.57    **"Impaired Claim"** means a Claim which is Impaired.

1.58    **"Insider"** shall have the meaning set forth in section 101(31) of the Bankruptcy Code and shall also encompass any Person with a sufficiently close relationship with the Debtor that his or her conduct is made subject to closer scrutiny than a Person dealing at arm's length with the Debtor.

1.59    **"Interests"** means any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding equity interests

of the Debtor together with any warrants, options, or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto.

1.60   **"IVC-Durham Loan"**   means that certain Loan Agreement dated September 20, 2013 by and among the Debtor, Island View Properties, Inc., Gualtieri, and Americorp Homes, Inc., each as a co-borrower and Prudential, as lender which loan was advanced to reduce the balance due on a certain loan from Prudential to Durham Manor, LLC on which loan Gualtieri and Americorp Homes, Inc. are obligors and for the payment of costs and expenses associated with the closing of this loan.

1.61   **"IVC-Durham Mortgage"**   means that certain mortgage in the amount of $1,400,000 dated September 22, 2013 in favor of Prudential and recorded against the Real Property on September 27, 2013, instrument number 2013080879.

1.62   **"IVC-Durham Mortgage Subordination Agreement"**   means that certain subordination agreement between the Trustee and Prudential dated September 24, 2018 but effective September 26, 2018 and recorded against the Real Property in the land records at Instrument No. 2018053797 whereby Prudential *inter alia* subordinated the liens and claims of the IVC-Durham Mortgage for priority, distribution and payment purposes to all the Permitted Claims so that the Trustee may utilize the proceeds from the sale of each residential unit at the Project and/or the Project to pay the Permitted Claims in full from the proceeds of sale of the residential units at the Project and/or sale of the Project as set forth in any plan proposed by the Trustee and confirmed by the Bankruptcy Court. This Subordination Agreement also provides that at the time of each closing on the sale of each residential unit at the Project and/or the sale of the Project, and only so long and to the extent the Permitted Claims have not been paid in full, Prudential will deliver a release of the lien of the IVC-Durham Mortgage to the Trustee without any charge or payment.  The Trustee preserved his claim to void or otherwise invalidate the IVC-Durham Mortgage and Prudential likewise preserved all of its claims and defenses to any such claim.

1.63   **"Lender Liability Action"** means the lender liability action commenced by the Debtor against Prudential on or about March 31, 2016 in the Court of Common Pleas of Philadelphia County, captioned as *Island View Properties, Inc. trading as Island View Crossing II, LP, and Renato J. Gualtieri v. Prudential Savings Bank*, case no. 160303161, that was removed to the Bankruptcy Court and assigned adversary no. 17-202(ELF).  By Order dated December 6, 2018, the Trustee was substituted as party plaintiff in this action, in lieu of "Island View Properties Inc. t/a Island View Crossing II, L.P.".

1.64   **"Liens"** means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in

priority to the payment of General Unsecured Creditors.

1.65    **"McElderry Drywall Judgement"** means a judgment entered pre-petition against the Debtor and in favor of McElderry Drywall, Inc. on February 22, 2017 (No. 2016-06868) in the amount of $33,266.00.

1.66    **"Net Phase 2 Sales Proceeds"** means the proceeds from the sale of Phase 2: (i) after payment of the normal and customary closing costs, (ii) after payment of brokerage commissions with respect to the sale of Phase 2, if any, (iii) after payment in full of the Allowed Class 1 Claim, (iv) after payment in full of the Allowed Class 2 Claim, (v) after payment in full of the Post-Petition Loan Claim, and (vi) after payment in full of the reasonable, necessary costs and expenses of preserving, or disposing of, Phase 2 to the extent of the benefit to the Holders of Allowed Claims secured by Phase 2, including the payment of all ad valorem property taxes with respect to Phase 2 as allowed by the Bankruptcy Court pursuant to Section 506(c) or as otherwise agreed in writing by the Trustee and the Holders of the Allowed Claims.

1.67    **"Objection"** means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) other than a Claim that is Allowed.

1.68    **"Permitted Claims"** means the claims arising from (i) the Post-Petition Loan, (ii) Allowed Administrative Claims including Professional Fee Claims and Trustee Commission, (iii) Allowed Priority Tax Claims, (iv) Allowed Secured Claims including Class 1, Class 2, and Class 7, (v) Allowed Priority Non-Tax Claims, and (vi) Allowed General Unsecured Claims excluding claims held by Insiders (as that term is defined by the Bankruptcy Code and applicable case law); provided however, the allowed Professional Fee Claim of counsel retained by the Debtor is specifically excluded as set forth in the Prudential Release of Liens Agreement.

1.69    "**Permitted Senior Liens**" means (i) the Liens arising by operation of law from the Pre-Petition Secured Property Tax Claim, and (ii) the Liens arising from the RDA Mortgages.

1.70    **"Person"** means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organization or association, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, "Person" does not include governmental units, except that a governmental unit that acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person.

1.71    **"Petition"** means the Petition for Relief filed by the Debtor with the Court pursuant to Chapter 11 of the Bankruptcy Code commencing the Chapter 11 Case.

1.72    **"Petition Date"** means June 30, 2017.

1.73    **"Phase 1"** means the area of the Real Property that is approved for the construction of fourteen (14) buildings containing a total of 73 townhouses and certain site improvements.

1.74    **"Phase 2"** means the area of the Real Property that is approved for the construction six (6) buildings containing a total of 96 condominiums units and certain site improvements.

1.75    **"Plan"** means this Chapter 11 Plan of Liquidation including all exhibits, schedules, and annexes attached hereto, if any, as submitted by the Trustee, as such Plan may be modified, amended or supplemented from time to time, including the Plan Supplement (as modified, amended or supplemented from time to time), in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order and the terms and conditions of the Plan.

1.76    **"Plan Documents"** means, collectively, the Disclosure Statement, the Plan, the Confirmation Order, and any exhibit to such documents.

1.77    **"Plan Proponent"**  means the Trustee.

1.78    **"Post-Petition Financing Order"** means the interim or Final Order, as in effect from time to time, entered by the Bankruptcy Court authorizing, *inter alia,* the Trustee to enter into the Post-Petition Loan and to receive the Post-Petition Loan pursuant to section 364 of the Bankruptcy Code, and any extensions or amendments thereof.

1.79    **"Post-Petition Lender"** means BKRE Investments LLC, in its capacity as post-petition lender to the Trustee, on behalf of the Debtor's Estate.

1.80    **"Post-Petition Loan"** means the post-petition priority secured loan provided to the Trustee by the Post-Petition Lender pursuant to the Post-Petition Financing Order, the Post-Petition Loan Mortgage, and related documents (as amended, restated, supplemented, or otherwise modified from time to time) governing the Post-Petition Loan which is senior to all liens against the Property except for the Liens arising from the RDA Mortgages and the Pre-Petition Secured Property Tax Claim.

1.81    **"Post-Petition Loan Claim"** means any Claim derived from, based upon, relating to, or arising from the Post-Petition Loan.

1.82    **"Post-Petition Loan and Security Agreement"** means the Post-Petition Lender's construction loan and security agreement entered into by and between the Trustee and Post-Petition Lender (as amended, restated, supplemented, or otherwise modified from time to time) providing the terms and conditions of the Post-Petition Loan.

1.83    **"Post-Petition Loan Mortgage"** means that certain mortgage in the amount of $4,700,000.00 dated September 12, 2018 in favor of the Post-Petition Lender and recorded against the Real Property on October 26, 2018 as instrument number 2018059405.

1.84    **"Pre-Petition Judgment Claims"** means collectively, the Borough Judgment, the Bohler Engineering Judgment, the Caione Judgment, and the Ranganathan Judgment.

     1.85    **"Pre-Petition Secured Property Tax Claim"** means the pre-petition property taxes due to the Bucks County Tax Claim Bureau arising from the unpaid property taxes for 2015 and 2016 for the Real Property in the amount of $118,436.82 as of the Petition Date.

     1.86    **"Priority Non-Tax Claim"** means any Claim against the Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

     1.87    **"Priority Tax Claim"** means any and all Claims afforded priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

     1.88    **"Professional Fee Claim"** means an Allowed Claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with an application by the Professionals in the Chapter 11 Case made to and approved by the Bankruptcy Court.

     1.89    **"Professionals"** means any professional employed in the Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with §§327 or 1103 of the Bankruptcy Code or any professional entitled to compensation pursuant to §§327, 328, 330, 331, 503(b)(2) or (4), or 1103 of the Bankruptcy Code, exclusive of any ordinary course professionals retained in the Chapter 11 Case.

     1.90    **"Project"**  means the design, engineering, and construction of (i) the 14 buildings in Phase 1 which will contain a total of 73 Residential Units, including existing buildings numbered 4 and 2, (ii) the site improvements in Phase 1, (iii) the site improvements in Phase 2 that are required as a condition to the Trustee being able to sell and settle on the 73 Residential Units in Phase 1, and (iv) the construction of any additional improvements in Phase 1 or Phase 2 as may be determined by the Trustee.

     1.91    **"Proof of Claim"** means a written proof of Claim Filed against the Debtor in the Chapter 11 Case.

     1.92    **"Property"** means all assets or property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor's Estate, wherever situated together with proceeds thereof as defined in section 541 of the Bankruptcy Code.

     1.93    **"Pro Rata"**  means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class.

     1.94    **"Prudential"** means Prudential Savings Bank.

     1.95    **"Prudential Construction Loan"** means that certain Development Construction Loan Agreement dated November 26, 2014 between the Debtor, as borrower, and Prudential, as

lender, to finance the construction of site improvements and vertical construction at the Project whereby, Prudential agreed <u>inter alia</u> to lend to the Debtor up to the aggregate sum of $5,541,468.00.

      1.96   **"Prudential Construction Loan Mortgage"** means that certain open-end mortgage and security agreement in the amount of $5,541,468 dated November 26, 2014 in favor of Prudential and recorded against the Real Property on January 7, 2015 as instrument number 2015001098.

      1.97   **"Prudential Release of Liens Agreement"** means that certain agreement by, and between, the Trustee and Prudential dated September 24, 2018, approved by Final Order of the Bankruptcy Court and recorded against the Real Property in the land records at Instrument No. 2018053794 whereby Prudential <u>inter alia</u> agreed to (i) release all of its liens arising from the Existing Mortgages of Prudential at the time of the closing on the sale of each Residential Unit in Phase 1 in exchange for the payment of the fixed release price set forth therein, (ii) extend the maturity date of the unpaid balance due under the Prudential Construction Loan Mortgage to be due and payable on the last business day of the 42nd month after the Post-Petition Financing Order becomes a Final Order (March 31, 2022), and (iii) subordinate all the liens and claims arising from the Calnshire Collateral Mortgage, the Steeple Run Collateral Mortgage, and the IVC-Durham Mortgage to all the Permitted Claims as set forth therein to allow the Trustee to use the proceeds from the sale of Residential Units at the Project and/or sale of the Project to pay the Permitted Claims.

      1.98   **"Prudential Subordination Agreements"** means collectively, the Calnshire Collateral Mortgage Subordination Agreement, the IVC-Durham Mortgage Subordination Agreement, and the Steeple Run Collateral Mortgage Subordination Agreement.

      1.99   **"Ranganathan Judgment"** means a judgment entered pre-petition against the Debtor and in favor of Samira Ranganathan and Khandulans Ranganathan on June 19, 2017 (No. 2016-05724) in the amount of $49,980.00.

      1.100   **"RDA"** means the Redevelopment Authority of Bucks County.

      1.101   **"RDA Loan"** means the acquisition loan provided by the RDA to the Debtor to purchase the Real Property in the original principal amount of $2,500,000.00 and related documents.

      1.102   **"RDA Mortgages"** means (i) that certain mortgage in the amount of $2,500,000.00 dated June 13, 2003 in favor of the RDA and recorded against the Real Property on August 25, 2003 in land record book 3537, Page 792 (Instrument No. 20030163787), and (ii) that certain open-end mortgage and security agreement in the amount of $127,627.83 dated July 21, 2016 in favor of the RDA and recorded against the Real Property on July 22, 2016 as instrument number 2016043135).

      1.103   **"Real Property"** means the real property owned by the Estate located at 1600 Radcliffe Street, Bristol Borough, Bucks County, Pennsylvania, which is a residential subdivision of approximately 17.51 acres, wherein Phase 1 is currently approved for fourteen (14) buildings containing a total of 73 townhouses and certain site improvements and Phase 2 is currently approved for six (6) buildings containing a total of 96 condominiums units and certain site improvements, as

may be amended and all improvements thereon and all rights, licenses, permits and approvals relating thereto.

1.104    **"Rejection Claim"** means Claims of any non-Debtor counterparty to any unexpired lease of nonresidential property or any executory contract arising on account of the rejection of such lease or contract during the administration of the Chapter 11 Case under section 365 of the Bankruptcy Code or pursuant to the Plan.

1.105    **"Retained Actions"** means all Causes of Action which the Debtor may hold against any Person, including, without limitation, all Causes of Action that are pending and being prosecuted by the Trustee against Prudential as of the Effective Date.

1.106    **"Retained Estate"** means all of the Property of the Debtor, including without limitation, the Real Property, all Causes of Action, including without limitation the Avoidance and Subordination Action that has been consolidated for all purposes with the Lender Liability Action, (which consolidated matters are referred to as the Trustee's Actions against Prudential), all preservation of rights, setoffs, and the Cash and non-Cash proceeds thereof, the Class 7 Payment Fund, and the Class 9 Unsecured Creditor Fund which shall not be revested in Debtor on or after the Confirmation Date or the Effective Date but shall be retained in the Debtor's Estate and shall vest and remain Property of the Retained Estate which shall continue to be administered by the Trustee under the terms of the Plan until fully liquidated and the proceeds have been entirely distributed or otherwise disposed of under the Plan and the Confirmation Order by the Trustee.

1.107    **"Scheduled"** means, with respect to any Claim or Interest, the status, priority, and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.108    **"Schedules"** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor in the Chapter 11 Case, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

1.109    **"Secured Claim"** means any Claim arising before the Petition Date that is:  (a) secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtor's Estate has an interest and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; or (b) subject to setoff under section 553 of the Bankruptcy Code, but with respect to both case (a) and (b), only to the extent of the value of assets or Property securing such Claim or the amount subject to setoff, as the case may be.

1.110    **"Site Improvements"** means site improvements to the Real Property including, but not limited to the following:  road overlay, curbing, earthwork, paving, storm drainage, sanitary sewer, water, electric, excavation, street lighting, layout, engineering and inspection to be constructed in accordance with the Site Plans, together with all equipment, fixtures and other personal property attached thereto or used in connection therewith.

1.111    **"Site Plans"** means the final approved plans and specifications for the construction of the Site Improvements on the Real Property, as the same may be amended, modified or supplemented from time to time.

13

1.112 **"State Street Receivable"** means the that certain promissory note dated April 10, 2019 from One State Street Associates, LP payable to the Trustee in the amount of $45,000.00, plus interest accruing at the fixed rate of 5.5% per annum, secured by mortgages recorded against the real properties located at 1 South State Street and 204 Washington Street, Newtown, Pennsylvania and 110 North State Street, Newtown, Pennsylvania.

1.113 **"Steeple Run Collateral Mortgage"** means that certain collateral mortgage in the amount of $3,911,250 dated September 20, 2011 in favor of Prudential and recorded on October 19, 2011 against the Real Property in land record book 6838, Page 230 (Instrument No. 2011070888).

1.114 **"Steeple Run Collateral Mortgage Subordination Agreement"** means that certain subordination agreement between the Trustee and Prudential dated September 24, 2018 but effective September 26, 2018 and recorded against the Real Property in the land records on September 28, 2018 at Instrument No. 2018053796 whereby Prudential inter alia subordinated the liens and claims of the Steeple Run Collateral Mortgage for priority, distribution and payment purposes to all Permitted Claims so that the Trustee may utilize the proceeds from the sale of each residential unit at the Project and/or the Project to pay the Permitted Claims in full from the proceeds of sale of the residential units at the Project and/or sale of the Project as set forth in any plan proposed by the Trustee and confirmed by the Bankruptcy Court. This subordination agreement also provides that at the time of each closing on the sale of a residential unit at the Project and/or the sale of the Project, and only so long and to the extent the Permitted Claims have not been paid in full, Prudential will deliver a release of the lien of the Steeple Run Collateral Mortgage to the Trustee without any charge or payment. The Trustee preserved his claim to void or otherwise invalidate the Steeple Run Collateral Mortgage and Prudential likewise preserved all of its claims and defenses to any such claim.

1.115 **"Subdivision Site Improvements Agreement"** means the Subdivision Financial Security Agreement dated March 4, 2015 and related agreements by and among Bristol Borough, Bristol Borough Water & Sewer Authority, the Debtor and Prudential for the installation of the public improvements required for development of the Real Property.

1.116 **"Tax"** means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation, and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

1.117 **"Tax Claim Bureau"** means the Bucks County Tax Claim Bureau.

1.118 **"Trustee"** means Kevin O'Halloran, as the chapter 11 trustee for the Estate of the Debtor.

1.119 **"Trustee's Actions against Prudential"** means collectively, the Avoidance and Subordination Action that has been consolidated for all purposes with the Lender Liability Action.

14

1.120  **"Trustee Commission"** means the commission due the Trustee in accordance with section 326 of the Bankruptcy Code authorized by the Bankruptcy Court for the Trustee's services rendered after the Petition Date and prior to and including the Effective Date.

1.121  **"Unclaimed Property"**  means any distribution (a) of Cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Trustee as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case, or (b) the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in section 7.7 of the Plan.

1.122  **"Unimpaired"** means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

1.123  **"Unimpaired Class"** means any Class of Claims which is not impaired within the meaning of § 1124 of the Bankruptcy Code.

1.124  **"United States Trustee"** means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Eastern District of Pennsylvania.

1.125  **"U.S. Trustee's Fee Claims"** means any fees assessed against the Debtor's Estate pursuant to section 1930(a)(6) of title 28 of the United States Code.

1.126  **"Voting Deadline"** means the date and time set by the Bankruptcy Court for the submission of Ballots voting in favor or against the Plan.

1.127  **"Voting Record Date"** means the voting record date established in the Order approving the Disclosure Statement.

C.     **Rules of Interpretation**.  All reference to the "Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code). Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan.  The words "include" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.  The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any term that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or

ambiguity).  Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.

        D.    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall govern.

        E.    **References to Monetary Figures**. All references in the Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

        F.    **Exhibits**.  All Exhibits to the Plan are incorporated into and are made a part of the Plan as if set forth in full herein, regardless of when filed.  To the extent any Exhibit is not attached hereto, such Exhibits shall be filed with the Bankruptcy Court.  Copies of Exhibits can be obtained upon written request to Karalis P.C., 1900 Spruce Street, Philadelphia, PA 19103 (Attention: Aris J. Karalis, Esquire), counsel to the Trustee, or by downloading such Exhibits from the Court's website at http://ecf.paeb.uscourts.gov.

### ARTICLE II
### Classification of Claims and Interests

        2.1    **Classification and Designation as Impaired and Unimpaired**.  Pursuant to sections 1122 and 1124 of the Bankruptcy Code respectively, set forth below is a designation of Classes of Claims and Interests and a designation of each class as Impaired or Unimpaired.  A Claim or an Interest is placed in a particular Class to the extent that the Claim or Interest qualifies with the description of that Class.  A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

| **Class** | **Description** | **Designation** |
|---|---|---|
| Class 1 | Class 1 consists of the Claim of the Tax Claim Bureau | Impaired; entitled to vote |
| Class 2 | Class 2 consists of the Claim of RDA | Impaired; entitled to vote |
| Class 3 | Class 3 consists of the Prudential Construction Loan Claim | Impaired; entitled to vote |
| Class 4 | Class 4 consists of the Disputed Prudential IVC-Durham Loan Claim | Impaired; not entitled to vote unless Claim is Allowed |

| **Class** | **Description** | **Designation** |
|---|---|---|
| Class 5 | Class 5 consists of the Disputed Steeple Run Collateral Mortgage Claim | Impaired; not entitled to vote unless Claim is Allowed |
| Class 6 | Class 6 consists of the Disputed Calnshire Collateral Mortgage Claim | Impaired; not entitled to vote unless Claim is Allowed |
| Class 7 | Class 7 consists of the Pre-Petition Judgment Claims | Impaired; entitled to vote |
| Class 8 | All Priority Non-Tax Claims | Unimpaired; Deemed to accept the Plan; not entitled to vote |
| Class 9 | All General Unsecured Claims | Impaired; entitled to vote |
| Class 10 | Limited Partner Interests in the Debtor | Impaired; entitled to vote |
| Class 11 | General Partner Interest in the Debtor | Impaired; entitled to vote |

2.2    **Unclassified Claims**.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and the Post-Petition Loan Claim are not classified and are excluded from the Classes designated in this Article II of the Plan.  The treatment afforded to Administrative Claims, Priority Tax Claims and the Post-Petition Loan Claim is as set forth in Article IV of the Plan.

2.3    **Unimpaired Claims and Disputed Claims not entitled to Vote on Plan**.  The Plan classifies the following Unimpaired Claims and Disputed Claims that are not entitled to vote on the Plan:

2.3.1    Class 8 Priority Non-Tax Claims are classified as Unimpaired.   In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Claims in Class 8 are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

2.3.2    The Class 4 Disputed IVC-Durham Loan Claim, Class 5 Disputed Steeple Run Collateral Mortgage Claim, and Class 6 Disputed Calnshire Collateral Mortgage Claim represent Disputed Claims not entitled to vote to accept or reject the Plan unless the respective Claim is Allowed by a Final Order prior to the Voting Record Date (other than a Claim held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code).

17

    2.4    **Impaired Claims and Interests entitled to Vote on Plan**. The Plan classifies the following Classes as Impaired Classes that will or may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

> Class 1 Tax Claim Bureau Claim.
> Class 2 RDA Claim.
> Class 3 Prudential Construction Loan Claim.
> Class 7 Pre-Petition Judgment Claims.
> Class 9 General Unsecured Claims.
> Class 10 Limited Partner Interests in the Debtor.
> Class 11 General Partner Interest in the Debtor.

The Holders of such claims and interests (other than a Claim or Interest held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) are entitled to vote to accept or reject the Plan on account of such respective Allowed Claims and Allowed Interests.

## ARTICLE III
## Provisions for Treatment of Classes of Claims and Interests

    3.0    **Satisfaction of Claims and Interests**.  The treatment and consideration to be received by Holders of Allowed Claims or Allowed Interests pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, and extinguishment of their respective Claims against or Interests in the Debtor's Estate, except as otherwise provided in the Plan or the Confirmation Order.  No distribution will be made and no rights will be retained on account of any Claim or any Interest that is not Allowed.

    3.1    **Class 1.  Tax Claim Bureau Claim.**

    3.1.1    <u>Amount of Class 1 Claim and Priority</u>**.**  The Class 1 Claim is Impaired.  The Class 1 Claim consists of the Pre-Petition Secured Property Tax Claim held by the Tax Claim Bureau for unpaid pre-petition property taxes in the amount of $118,436.82 as of the Petition Date, and is a fully secured claim.  The Class 1 Claim holds valid, perfected enforceable Liens on the Real Property up to the Allowed secured amount of the Claim senior to all other Liens on the Real Property.  On the Effective Date the Tax Claim Bureau shall be deemed to hold an Allowed Class 1 Claim.

    3.1.2    <u>Payment of Claim</u>.  The Holder of the Class 1 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, monthly payments over a term commencing on or as soon as reasonably practicable after the later of the (i) Effective Date, and (ii) a date agreed to by the Trustee and the Holder of the Class 1 Claim, and ending on the third anniversary of the Effective Date.

    3.1.2.1 These payments shall be in an amount determined as follows: (i) for the first thirty five (35) months following the Effective Date, equal monthly payments of principal and interest ($1,905.54), calculated with respect to the secured amount of the Allowed Class 1 Claim at a fixed rate of 9.0% (the statutory rate); and amortized over a seven-year period from the

commencement of such payments; and (ii) a balloon payment in the amount of the entire balance of the unpaid principal and interest owed shall be made on the third anniversary of the Effective Date;; or (iii) notwithstanding, the foregoing, the entire balance of the unpaid principal and interest owed to the Holder of the Class 1 Claim shall be due and payable at the time of the closing on the sale of Phase 2, or any individual residential unit in Phase 2; or (iv) such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of the Class 1 Claim and the Trustee.

The Class 1 Claim may be prepaid, in whole or in part, at any time without any prepayment penalty or fee.

3.1.3   Retention of Liens.   Until payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 1 Claim, the Holder of the Allowed Class 1 Claim shall retain its Liens against the Real Property to the same extent and priority as exists on the Confirmation Date; provided however, that at the time of each closing on the sale of each residential unit in Phase 1, the Lien securing the Class 1 Claim against said residential unit shall be deemed released without any charge or payment to the Holder of the Class 1 Claim, and provided further that at the time of the closing on the sale of Phase 2, the Liens securing the Class 1 Claim against Phase 2 shall be released subject to the payment of the unpaid principal and interest owed to the Holder of the Allowed Class 1 Claim.

3.1.4   Deficiency Claim.   The Holder of the Class 1 Secured Claim is treated as a fully secured claim and therefore holds no General Unsecured Claim.

3.1.5   Extinguishment of Liens.   Upon payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 1 Claim, the Liens securing the Class 1 Allowed Secured Claim shall be extinguished and shall effect a full and final satisfaction of such Claim.

3.1.6   Voting.   Class 1 is impaired by the Plan and may vote to accept or reject the Plan.

3.2   **Class 2.  RDA Claim.**

3.2.1   Amount of Class 2 Claim and Priority.   The Class 2 Claim is Impaired.  The Class 2 Claim consists of the Secured Claim held by the RDA arising from the unpaid balance of the RDA Loan in the amount of $1,981,000 as of the Petition Date plus accrued interest thereafter. The Class 2 Claim holds a valid, perfected enforceable Liens on the Real Property subordinate only to the Class 1 Claim but senior to all other Liens on the Real Property.  On the Effective Date the RDA shall be deemed to hold an Allowed Class 2 Secured Claim.

3.2.2   Payment of Claim.   The Holder of the Class 2 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, payments over a term commencing on or as soon as reasonably practicable after the later of the (i) Effective Date, and (ii) a date agreed to by the Trustee and the Holder of the Class 2 Claim, and ending on August 1, 2023.

3.2.2.1 These payments shall be as follows:

19

3.2.2.2 At the time of closing on the sale of each residential unit in Phase 1 or Phase 2, a payment of $12,350.00 to be applied by the RDA to reduce the principal balance of the RDA Loan and to release the RDA Lien on the residential unit being sold;

3.2.2.3 A payment of $117,000 on August 1, 2021 to be applied by the RDA to reduce the principal balance of the RDA Loan;

3.2.2.4 A payment of $117,000 on August 1, 2022 to be applied by the RDA to reduce the principal balance of the RDA Loan;

3.2.2.5 Following the Effective Date and until August 1, 2023, quarterly payments of interest-only payments calculated at the contract rate of interest set forth in the RDA Loan on the Allowed secured amount of the Class 2 Claim; and

3.2.2.6 A balloon payment in the amount of the entire balance of the unpaid principal and interest owed shall be made on August 1, 2023; or

3.2.2.7 notwithstanding, the foregoing, the entire balance of the unpaid principal and interest owed to the Holder of Class 2 Claim shall be due and payable at the time of the closing on the sale of Phase 2; or

3.2.2.8 such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of the Class 2 Claim and the Trustee.

The Class 2 Claim may be prepaid, in whole or in part, at any time without any prepayment penalty or fee. Following the Effective Date, all existing terms of the RDA Loan, RDA Mortgages and related documents shall be modified by the terms of the Plan; in the event of any conflict between the terms of the RDA Loan, RDA Mortgages and related documents and the Plan, the terms of the Plan shall control.

3.2.3    Retention of Liens.  Until payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 2 Claim, the Holder of the Allowed Class 2 Claim shall retain its Liens against the Real Property to the same extent and priority as exists on the Confirmation Date; provided however, that at the time of each closing on the sale of each residential unit in Phase 1 or Phase 2, the Liens securing the Class 2 Claim against said residential unit in Phase 1 or Phase 2 shall be released subject to the payment of the release price in the amount of $12,350.00 as set forth above, and provided further that at the time of the closing on the sale of Phase 2, the Liens securing the Class 2 Claim against Phase 2 shall be released subject to the payment of the unpaid principal and interest owed to the Holder of the Allowed Class 2 Claim.

3.2.4    Deficiency Claim.  The Holder of the Allowed Class 2 Claim is treated as a fully secured claim and therefore holds no General Unsecured Claim.

3.2.5    Extinguishment of Liens.  Upon payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 2 Claim, the Liens securing the Allowed Class 2 Claim shall be extinguished and shall effect a full and final satisfaction of such Claim.

20

3.2.6 <u>Voting</u>. Class 2 is impaired by the Plan and may vote to accept or reject the Plan.

3.3    **Class 3. <u>Prudential Construction Loan Claim</u>.**

3.3.1 <u>Class 3 Claim and Priority</u>. The Class 3 Claim is Impaired. The Class 3 Claim consists of the Secured Claim held by Prudential arising from the Prudential Construction Loan in the amount of $4,092,443.58 as of the Petition Date plus accrued interest thereafter but only to the extent that such Claim is a fully secured claim as determined by section 506 of the Bankruptcy Code.[2]  In the Trustee's Actions against Prudential, the Trustee is seeking to <u>inter alia</u> subordinate this Class 3 Claim to all creditors in the Chapter 11 Case. If the Class 3 Claim is subordinated or any other relief in connection with the Trustee's Actions against Prudential is awarded in favor of the Trustee by a Final Order, to the extent that any provision of this Plan conflicts with or is any way inconsistent with said Final Order, the terms and provisions of said Final Order shall govern and control. Except as may be otherwise ordered by a Final Order of the Bankruptcy Court, the Class 3 Claim holds a valid, perfected enforceable Lien on the Real Property subordinate to (i) the Permitted Senior Liens that secure the Allowed Class 1 Claim and the Allowed Class 2 Claim, and (ii) the Liens that secure the Post-Petition Loan including, the Post-Petition Loan Mortgage, but senior to all other Liens on the Real Property.

3.3.2 <u>Prudential Release of Liens Agreement, Subordination Agreements, and Surcharge of Prudential Collateral</u>. Prudential executed and delivered to the Trustee the Prudential Subordination Agreements which <u>inter alia</u> authorize the Trustee to utilize the proceeds from the sale of the residential units at the Project and/or sale of the Project that secures Claims held by Prudential to pay the Permitted Claims under any plan proposed by the Trustee and confirmed by the Bankruptcy Court. Likewise, under the Prudential Release of Liens Agreement and subject to the payment of the release prices set forth in the Prudential Release of Liens Agreement (and detailed below), the Trustee may utilize the remaining proceeds from the sale of the residential units at the Project to fund this Plan including payment of the Permitted Claims. Notwithstanding anything otherwise contained herein, the Trustee preserves all rights to recover from the Real Property securing the Prudential Allowed Class 3 Claim the reasonable, necessary costs and expenses of preserving, or disposing of, such Real Property to the extent of any benefit to the Holder of such Claim, including the payment of all ad valorem property taxes with respect to the Real Property pursuant to section 506(c) of the Bankruptcy Code.

3.3.3 <u>Payment of Class 3 Claim</u>. The Holder of the Class 3 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, payments over a term commencing on or as soon as reasonably practicable after the later of the (i) Effective Date, (ii) the date on which such Class 3 Claim becomes Allowed, and (iii) a date agreed to by the Trustee and the Holder of the Class 3 Claim, and ending on the third Anniversary of the Effective Date.

3.3.3.1 These payments shall be as follows:

---

2 Prudential Filed a proof of claim (POC # 23-1) in the Chapter 11 Case in connection with the Class 3 Claim in the amount of $4,092,443.58 as of the Petition Date, designated as a Secured Claim.

3.3.3.1.1    At the time of closing on the sale of each of the first thirty-five (35) residential units in Phase 1, a payment of twenty-five thousand Dollars ($25,000.00) to Prudential which will be applied to reduce the principal balance of the Prudential Construction Loan as set forth in the Prudential Proof of Claim No. 23-1 in the amount of $4,092,443.58 and to release all the Liens arising from the Existing Mortgages of Prudential on the residential unit being sold.  These payments to the Holder of the Allowed Class 3 Claim: (i) commenced at the time of the closing on the sale of the first residential unit in Phase 1 and continued thereafter to be paid at the time of the closing of each residential unit sold in Phase 1, (ii) have been applied to reduce the principal balance of the Allowed Class 3 Claim, and (iii) will continue after the Effective Date to be paid and applied as set forth herein;

3.3.3.1.2    At the time of closing on the sale of each of the remaining thirty-eight (38) residential units in Phase 1, a payment of forty-five thousand Dollars ($45,000.00) to Prudential which will be applied to reduce the principal balance of the Prudential Construction Loan as set forth in the Prudential Proof of Claim No. 23-1 in the amount of $4,092,443.58 and to release all the Liens arising from the Existing Mortgages of Prudential on the residential unit being sold;

3.3.3.1.3    At the time of closing on the sale of Phase 2, the Holder of Allowed Class 3 Claim will receive the Net Phase 2 Sales Proceeds from the sale of Phase 2, if any, up to the amount of the balance of the unpaid principal and interest of the Allowed Class 3 Claim;

3.3.3.1.4    If Phase 2 has not been sold and the Net Phase 2 Sales Proceeds distributed on or before March 31, 2022, commencing on April 1, 2022, monthly interest-only payments calculated at a fixed rate of interest of 5.0% per annum on the unpaid secured amount of the Allowed Class 3 Claim until Phase 2 is sold and the Net Phase 2 Sales Proceeds distributed; and

3.3.3.1.5    no later than the third anniversary of the Effective Date, the Trustee shall sell and conclude the closing on the sale of Phase 2 and distribute the Net Phase 2 Sales Proceeds, if any, up to the amount of the balance of the unpaid principal and interest of the Allowed Class 3 Claim; or

3.3.3.1.6    such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of the Class 3 Claim and the Trustee.

3.3.3.2    <u>Right to Credit Bid for Purchase of Phase 2</u>.    In the event that the sale of Phase 2 does not result in the unpaid principal and interest of the Allowed Class 3 Claim being paid in full at the time of closing of Phase 2, then, in such instance, the Holder of the Allowed Class 3 Claim may exercise the right to submit to the Trustee a credit bid for the purchase of Phase 2 free and clear of all Liens and Claims set forth in the Plan subject to the following conditions:

3.3.3.2.1    the Holder of the Allowed Class 3 Claim may submit a credit bid to the Trustee up to the unpaid principal and interest of the Allowed Class 3 Claim at the time of any sale of Phase 2; provided, however, the credit bid shall be (a) subordinate to the

22

Permitted Senior Liens and the Post-Petition Loan Mortgage (which is the same extent validity and priority of these Liens that exists as of the date of this Plan) and (b) contingent upon payment in Cash at the time of closing on sale of Phase 2: (i) the balance of the unpaid principal and interest of the Permitted Senior Liens, (ii) the balance of the unpaid principal and interest of the Post-Petition Loan Mortgage and (iii) the reasonable, necessary costs and expenses of preserving or disposing of Phase 2 including the payment of all ad valorem property taxes with respect to the Real Property pursuant to section 506(c) of the Bankruptcy Code as allowed by the Bankruptcy Court, if any, or as may be agreed upon in writing by the Holder of the Class 3 Claim and the Trustee; and

                3.3.3.2.2      if the Holder of the Allowed Class 3 Claim is the successful bidder for the purchase of Phase 2 then, at the time of the closing on the sale of Phase 2, the Holder of the Allowed Class 3 Claim shall be required as a condition precedent to closing, to pay in Cash:  (i) the balance of the unpaid principal and interest of the Permitted Senior Liens, (ii) the balance of the unpaid principal and interest of the Post-Petition Loan Mortgage and (iii) the reasonable, necessary costs and expenses of preserving or disposing of Phase 2 including the payment of all ad valorem property taxes with respect to the Real Property pursuant to section 506(c) of the Bankruptcy Code as allowed by the Bankruptcy Court, if any, or as may be agreed upon in writing by the Holder of the Class 3 Claim and the Trustee.  All the liens, claims and interests on Phase 2 shall attach to the proceeds of sale to the same extent, validity, and priority as existed on the date of the closing of Phase 2.

The Class 3 Claim net of the Permitted Claims may be prepaid, in whole or in part, at any time without any prepayment penalty or fee.  Following the Effective Date, all existing terms of the Prudential Construction Loan, the Prudential Construction Mortgage, the Prudential Release of Liens Agreement, the Prudential Subordination Agreements, and related documents shall be modified by the terms of the Plan; in the event of any conflict between the terms of the Prudential Construction Loan, the Prudential Construction Mortgage, the Prudential Release of Liens Agreement, the Prudential Subordination Agreements and related documents thereto and the Plan, the terms of the Plan shall control.

                3.3.4   Retention of Liens.  Until payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 3 Claim, the Holder of the Allowed Class 3 Claim shall retain its Liens against the Real Property to the same extent and priority as exists on the Confirmation Date; provided however, that at the time of each closing on the sale of each residential unit at the Project and/or sale of the Project in whole or in part, the Liens securing the Class 3 Claim against said residential unit at the Project or the Project, shall be released subject to the payment of the required release price set forth above; and provided further that at the time of the closing on the sale of Phase 2, the Liens securing the Allowed Class 3 Claim against Phase 2 shall be released subject to the distribution of the Net Phase 2 Sale Proceeds as set forth in this Plan.

                3.3.5   Deficiency Claim.  To the extent that the Allowed Class 3 Claim is not paid in full, the deficiency shall be treated as an Allowed Class 9 General Unsecured Claim under this Plan

                3.3.6   Extinguishment of Liens.  Upon payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 3 Claim less the amount of the Permitted Claims,

the Lien securing the Class 3 Allowed Secured Claim shall be extinguished and shall affect a full and final satisfaction of such Claim.

    3.3.7   <u>Voting</u>.  Class 3 is impaired by the Plan and may vote to accept or reject the Plan.

    3.4   **Class 4.  <u>Prudential IVC-Durham Loan Claim</u>.**

    3.4.1   <u>Class 4 Disputed Prudential IVC-Durham Claim</u>.  The Class 4 Claim is Impaired.  The Class 4 Claim is a Disputed Claim which arises from the Prudential IVC-Durham Loan.  In the Trustee's Actions against Prudential, the Trustee is seeking to <u>inter alia</u> avoid the IVC-Durham Mortgage, recover transfers arising in connection therewith and to subordinate this Claim to all creditors in the Chapter 11 Case.  Therefore, unless the Class 4 Claim is Allowed by a Final Order of the Bankruptcy Court, the Class 4 Claim will not receive any distribution under the Plan.

In addition, if the Class 4 Claim is Disallowed, avoided, subordinated or any other relief in connection with the Trustee's Actions against Prudential is awarded in favor of the Trustee by a Final Order, to the extent that any provision of this Plan conflicts with or is any way inconsistent with said Final Order, the terms and provisions of said Final Order shall govern and control.

**ONLY TO THE EXTENT THAT THE CLASS 4 CLAIM IS ALLOWED IN WHOLE OR IN PART BY A FINAL ORDER OF THE BANKRUPTCY COURT, THEN WILL THE BELOW STATED PROVISIONS APPLY TO THE PORTION OF THE CLASS 4 CLAIM THAT IS ALLOWED.**

    3.4.2   <u>Amount of the Class 4 Claim and Priority</u>.  If Allowed, the Class 4 Claim shall consist of the Secured Claim held by Prudential arising from the IVC-Durham Loan (limited to the amount and extent Allowed by Final Order of the Bankruptcy Court) as of the Petition Date plus accrued interest thereafter but only to the extent that such Claim is a fully secured claim as determined by section 506 of the Bankruptcy Code.  To the extent Allowed and except as may be otherwise ordered by the Bankruptcy Court, the Class 4 Claim may hold a valid, perfected enforceable Lien on the Real Property subordinate to the Permitted Senior Liens that secure the Allowed Class 1 Claim, and the Allowed Class 2 Claim, the Liens that secure the Post-Petition Loan Claim, the Liens that secure the Allowed Class 3 Claim, and the payment of the other Permitted Claims, but senior to all other Liens on the Real Property**.**

    3.4.3   <u>Prudential Release of Liens Agreement and Subordination Agreements</u>.  In accordance with the Prudential Release of Liens Agreement, Prudential executed and delivered to the Trustee the Prudential Subordination Agreements which <u>inter alia</u> authorize the Trustee to utilize the proceeds from the sale of the residential units at the Project and/or sale of the Project which secures Claims held by Prudential (including the Class 4 Claim) to pay the Permitted Claims in full under any plan proposed by the Trustee and confirmed by the Bankruptcy Court. Notwithstanding anything otherwise contained herein, the Trustee preserves all rights to recover from the Real Property securing the Prudential Class 4 Allowed Claim the reasonable, necessary costs and expenses of preserving, or disposing of, such Real Property to the extent of any benefit

24

to the Holder of such Claim, including the payment of all ad valorem property taxes with respect to the Real Property pursuant to section 506(c) of the Bankruptcy Code.

3.4.4    Payment of Class 4 Claim.

3.4.4.1 At the time of each closing on the sale of each residential unit at the Project and/or the sale of the Project, and so long and to the extent that the Permitted Claims have not been paid in full, the Holder of the Class 4 Claim shall deliver to the Trustee a release of the Liens of the IVC-Durham Mortgage without any charge or payment as provided by the terms of the IVC-Durham Mortgage Subordination Agreement;

3.4.4.2 If any portion of the Class 4 Claim is allowed as a Secured Claim by a Final Order of the Bankruptcy Court, the Holder of the Class 4 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, at the time of closing on the sale of Phase 2, the Net Phase 2 Sales Proceeds from the sale of Phase 2, if any, after payment in full of the Allowed Class 3 Claim, up to the amount of the unpaid principal and interest owed, if any, on the Allowed Class 4 Claim; or

3.4.4.3 such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of the Class 4 Claim and the Trustee.

The Class 4 Claim to the extent it is Allowed less the amount of the Permitted Claims may be prepaid, in whole or in part, at any time without any prepayment penalty or fee.  Following the Effective Date, all existing terms of the IVC-Durham Loan, the IVC-Durham Mortgage, the Prudential Release of Liens Agreement, the Prudential Subordination Agreements and related documents thereto shall be modified by the terms of the Plan; in the event of any conflict between the terms of the IVC-Durham Loan, the IVC-Durham Mortgage, the Prudential Release of Liens Agreement, the Prudential Subordination Agreements and related documents thereto, the terms of the Plan shall control.

3.4.5    Retention of Liens.  Until payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 4 Claim (but only to the extent Allowed by Final Order of the Bankruptcy Court) less the Permitted Claims, the Holder of the Allowed Class 4 Claim shall retain its Liens against the Real Property to the same extent and priority as exists on the Confirmation Date; provided however, that at the time of each closing on the sale of each residential unit at the Project and/or sale of the Project in whole or in part, the Liens securing the Class 4 Claim against said residential unit at the Project or the Project, shall be deemed released without any charge by, or payment to, the Holder of the Class 4 Claim as set forth above, and provided further that at the time of the closing on the sale of Phase 2, the Liens securing the Class 4 Claim against Phase 2 shall be released subject to the distribution of the Net Phase 2 Sale Proceeds as set forth in this Plan.

3.4.6    Deficiency Claim.  The terms of the Prudential Subordination Agreements inter alia allow the Trustee to pay the Permitted Claims from the proceeds of the sale of the residential units at the Project and/or the sale of the Project and receive a release of the Liens that secure the Disputed Class 4 Claim without any payment to the Holder of the Disputed Class 4 Claim until the Permitted Claims are paid.  The Holder of the Class 4 Claim shall hold no General Unsecured Claim.

3.4.7    <u>Extinguishment of Liens</u>.  Upon payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 4 Claim (but only to the extent Allowed by Final Order of the Bankruptcy Court), less the amount of the Permitted Claims, the Liens securing the Class 4 Claim shall be extinguished and shall affect a full and final satisfaction of such Claim.

3.4.8    <u>Voting</u>.  The Class 4 Claim is Disputed and not entitled to vote to accept or reject the Plan unless it is Allowed by a Final Order prior to the Voting Record Date.

### 3.5    **Class 5.  <u>Steeple Run Collateral Mortgage Claim</u>.**

3.5.1    <u>Class 5 Disputed Claim</u>.  The Class 5 Claim is Impaired.  The Class 5 Claim is a Disputed Claim which arises from the Steeple Run Collateral Mortgage that purports to secure the loan obligation of the Debtor's Affiliate, Steeple Run, L.P. ("Steeple Run") to Prudential ("Steeple Run Loan"). Except for the collateral mortgage, there is no note or other instrument from the Debtor to evidence any obligation due from the Debtor's Estate to Prudential on account of the Class 5 Claim or the Steeple Run Loan.   In the Trustee's Actions against Prudential, the Trustee is seeking to <u>inter alia</u> avoid the Steeple Run Collateral Mortgage and to subordinate this Claim to all creditors in the Chapter 11 Case.  Therefore, unless the Class 5 Claim is Allowed by a Final Order, the Class 5 Claim will not receive any distribution under the Plan and any Liens arising from the Steeple Run Collateral Mortgage against the Real Property shall be void in accordance with section 506(d) of the Bankruptcy Code.

In addition, if the Class 5 Claim is Disallowed, avoided, subordinated or any other relief in connection with the Trustee's Actions against Prudential is awarded in favor of the Trustee by a Final Order, to the extent that any provision of this Plan conflicts with or is any way inconsistent with said Final Order the terms and provisions of said Final Order shall govern and control.

If the Class 5 Claim survives the claims asserted against it in the Trustee's Actions against Prudential, this Disputed Class 5 Claim may still be Disallowed if Prudential does not procure by a Final Order an allowed deficiency claim against Steeple Run and the Debtor in accordance with the provisions of the Pennsylvania Deficiency Judgment Act, 42 Pa.C.S.A. § 8103.  Since Prudential is in the process of foreclosing on its mortgage recorded against that certain real property ("Steeple Run Property") owned by Steeple Run which secures the Steeple Run Loan, unless Prudential files with the applicable court of common pleas a deficiency petition within six months of the sale of the Steeple Run Property and prosecutes such petition to a Final Order in accordance with the provisions of the Pennsylvania Deficiency Judgment Act, 42 Pa.C.S.A. § 8103, there is an irrebuttable presumption that Prudential was paid in full on account of the Steeple Run Loan which effectively discharges any amount due under the Class 5 Claim.

**ONLY TO THE EXTENT THAT THE CLASS 5 CLAIM IS ALLOWED IN WHOLE OR IN PART BY A FINAL ORDER OF THE BANKRUPTCY COURT, THEN WILL THE BELOW STATED PROVISIONS APPLY TO THE PORTION OF THE CLASS 5 CLAIM THAT IS ALLOWED.**

3.4.5    <u>Amount of the Class 5 Claim and Priority</u>.  If Allowed, the Class 5 Claim shall consist of the Secured Claim held by Prudential arising from the Steeple Run Collateral Mortgage (limited to the amount and extent Allowed by Final Order of the Bankruptcy Court) as

of the Petition Date plus accrued interest thereafter but only to the extent that such Claim is a fully secured claim as determined by section 506 of the Bankruptcy Code.  To the extent Allowed and except as may be otherwise ordered by the Bankruptcy Court, the Class 5 Claim may hold a valid, perfected enforceable Lien on the Real Property subordinate to the Permitted Senior Liens that secure the Allowed Class 1 Claim, and the Allowed Class 2 Claim, the Liens that secure the Post-Petition Loan Claim, the Lien that secures the Allowed Class 3 Claim, the payment of the other Permitted Claims, the Lien that secures the Allowed Class 4 Claim, but senior to all other Liens on the Real Property.

3.5.2   Prudential Release of Liens Agreement and Subordination Agreements.  In accordance with the Prudential Release of Liens Agreement, Prudential executed and delivered to the Trustee the Prudential Subordination Agreements which inter alia authorize the Trustee to utilize the proceeds from the sale of the residential units at the Project and/or sale of the Project which secures Claims held by Prudential (including the Class 5 Claim) to pay the Permitted Claims in full under any plan proposed by the Trustee and confirmed by the Bankruptcy Court. Notwithstanding anything otherwise contained herein, the Trustee preserves all rights to recover from the Real Property securing the Prudential Class 5 Allowed Claim the reasonable, necessary costs and expenses of preserving, or disposing of, such Real Property to the extent of any benefit to the Holder of such Claim, including the payment of all ad valorem property taxes with respect to the Real Property pursuant to section 506(c) of the Bankruptcy Code

3.5.3   Payment of Class 5 Claim.

3.5.3.1 At the time of each closing on the sale of each residential unit at the Project and/or the sale of the Project in whole or in part, and so long and to the extent that the Permitted Claims have not been paid in full, the Holder of the Class 5 Claim shall deliver to the Trustee a release of the lien of the Steeple Run Collateral Mortgage without any charge or payment as provided by the terms of the Steeple Run Collateral Mortgage Subordination Agreement;

3.5.3.2 If any portion of the Class 5 Claim is allowed as a Secured Claim by a Final Order of the Bankruptcy Court, the Holder of the Class 5 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, at the time of closing on the sale of Phase 2, the Net Phase 2 Sales Proceeds from the sale of Phase 2, if any, (i) after payment in full of the Allowed Class 3 Claim, and (ii) after payment in full of the Allowed Class 4 Claim, up to the amount of the unpaid principal and interest owed, if any, on the Allowed Class 5 Claim; or

3.5.3.2.1   such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of Class 5 Claim and the Trustee.

The Class 5 Claim to the extent it is Allowed may be prepaid less the amount of the Permitted Claims, in whole or in part, at any time without any prepayment penalty or fee.  Following the Effective Date, all existing terms of the Steeple Run Collateral Mortgage, the Prudential Release of Liens Agreement, the Prudential Subordination Agreements, and related documents thereto shall be modified by the terms of the Plan; in the event of any conflict between the terms of the Steeple Run Collateral Mortgage, the Prudential Release of Liens Agreement, the Prudential Subordination Agreements, and related documents thereto, the terms of the Plan shall control.

3.5.4    Retention of Liens.  Until payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 5 Claim (but only to the extent Allowed by Final Order of the Bankruptcy Court) less the Permitted Claims, the Holder of the Allowed Class 5 Claim shall retain its Liens against the Real Property to the same extent and priority as exists on the Confirmation Date; provided however, that at the time of each closing on the sale of each residential unit at the Project and/or sale of the Project in whole or in part, the Liens securing the Class 5 Claim against said residential unit at the Project or the Project, shall be deemed released without any charge by, or payment to, the Holder of the Class 5 Claim as set forth above, and provided further that at the time of the closing on the sale of Phase 2, the Liens securing the Class 5 Claim against Phase 2 shall be released subject to the distribution of the Net Phase 2 Sale Proceeds as set forth in this Plan.

3.5.5    Deficiency Claim.  The terms of the Prudential Subordination Agreements inter alia allow the Trustee to pay the Permitted Claims from the proceeds of the sale of the residential units at the Project and/or the sale of the Project and receive a release of the Liens that secure the Disputed Class 5 Claim without any payment to the Holder of the Disputed Class 5 Claim until the Permitted Claims are paid.  Additionally, there is no note or other contractual obligation of the Debtor to pay the Disputed Class 5 Claim beyond the portion of the Class 5 Claim that is secured in whole or in part by the Real Property and Prudential filed no proof of claim for this Class 5 Claim.  The Holder of the Class 5 Claim shall hold no General Unsecured Claim in the Chapter 11 Case.

3.5.6    Extinguishment of Liens.  Upon payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 5 Claim (but only to the extent Allowed by Final Order of the Bankruptcy Court) less the Permitted Claims, the Liens securing the Class 5 Allowed Claim shall be extinguished and shall affect a full and final satisfaction of such Claim.

3.5.7    Voting.  The Class 5 Claim is Disputed and not entitled to vote to accept or reject the Plan unless it is Allowed by a Final Order prior to the Voting Record Date.

3.6    **Class 6.  Calnshire Collateral Mortgage Claim.**

3.6.1    Class 6 Disputed Claim.  The Class 6 Claim is Impaired.  The Class 6 Claim is a Disputed Claim which arises from the Calnshire Collateral Mortgage that purports to secure the loan obligation of the Debtor's Affiliate, Calnshire Estates, LLC ("Calnshire LLC") to Prudential (the "Calnshire Loan"). Except for the collateral mortgage, there is no note or other instrument from the Debtor to evidence any obligation due from the Debtor's Estate to Prudential on account of the Class 6 Claim or the Calnshire Loan.  In the Trustee's Actions against Prudential, the Trustee is seeking to inter alia avoid the Calnshire Collateral Mortgage and to subordinate this Claim to all creditors in the Chapter 11 Case.  Therefore, unless the Class 6 Claim is Allowed by a Final Order, the Class 6 Claim will not receive any distribution under the Plan and any Liens arising from the Calnshire Collateral Mortgage against the Real Property shall be void in accordance with section 506(d) of the Bankruptcy Code.

In addition, if the Class 6 Claim is Disallowed, avoided, subordinated or any other relief in connection with the Trustee's Actions against Prudential by a Final Order is awarded in favor of

29

the Trustee, to the extent that any provision of this Plan conflicts with or is any way inconsistent with said Final Order, the terms and provisions of said Final Order shall govern and control.

If the Class 6 Claim survives the claims asserted against it in the Trustee's Actions against Prudential, this Disputed Class 6 Claim may still be Disallowed if Prudential does not procure by a Final Order an allowed deficiency claim against Calnshire LLC and the Debtor in accordance with the provisions of the Pennsylvania Deficiency Judgment Act, 42 Pa.C.S.A. § 8103.  Since Prudential is in the process of foreclosing on its mortgage recorded against that certain real property ("Calnshire Property") owned by Calnshire LLC which secures the Calnshire Loan, unless Prudential files with the applicable court of common pleas a deficiency petition within six months of the sale of the Calnshire Property and prosecutes such petition to a Final Order in accordance with the provisions of the Pennsylvania Deficiency Judgment Act, 42 Pa.C.S.A. § 8103, there is an irrebuttable presumption that Prudential was paid in full on account of the Calnshire Loan which effectively discharges any amount due under the Class 6 Claim.

**ONLY TO THE EXTENT THAT THE CLASS 6 CLAIM IS ALLOWED IN WHOLE OR IN PART BY A FINAL ORDER OF THE BANKRUPTCY COURT, THEN WILL THE BELOW STATED PROVISIONS APPLY TO THE PORTION OF THE CLASS 6 CLAIM THAT IS ALLOWED.**

3.6.2    Amount of the Class 6 Claim and Priority.  If Allowed, the Class 6 Claim shall consist of the Secured Claim held by Prudential arising from the Calnshire Collateral Mortgage (limited to the amount and extent Allowed by Final Order of the Bankruptcy Court) as of the Petition Date plus accrued interest thereafter but only to the extent that such Claim is a fully secured claim as determined by section 506 of the Bankruptcy Code.  To the extent Allowed and except as may be otherwise ordered by the Bankruptcy Court, the Class 6 Claim may hold a valid, perfected enforceable Lien on the Real Property subordinate to the Permitted Senior Liens that secure the Allowed Class 1 Claim, and the Allowed Class 2 Claim, the Liens that secure the Post-Petition Loan Claim, the Lien that secures the Allowed Class 3 Claim, the payment of the other Permitted Claims, the Liens that secures the Allowed Class 4 Claim and the Allowed Class 5 Claim, but senior to all other Liens on the Real Property**.**

3.6.3    Prudential Release of Liens Agreement and Subordination Agreements.  In accordance with the Prudential Release of Liens Agreement, Prudential executed and delivered to the Trustee the Prudential Subordination Agreements which inter alia authorize the Trustee to utilize the proceeds from the sale of the residential units at the Project and/or sale of the Project which secures Claims held by Prudential (including the Class 6 Claim) to pay the Permitted Claims in full under any plan proposed by the Trustee and confirmed by the Bankruptcy Court. Notwithstanding anything otherwise contained herein, the Trustee preserves all rights to recover from the Real Property securing the Prudential Class 6 Allowed Claim the reasonable, necessary costs and expenses of preserving, or disposing of, such Real Property to the extent of any benefit to the Holder of such Claim, including the payment of all ad valorem property taxes with respect to the Real Property pursuant to section 506(c) of the Bankruptcy Code.

3.6.4    <u>Payment of Class 6 Claim</u>.

3.6.4.1 At the time of each closing on the sale of each residential unit at the Project and/or the sale of the Project in whole or in part, and so long and to the extent that the Permitted Claims have not been paid in full, the Holder of the Class 6 Claim shall deliver to the Trustee a release of the lien of the Calnshire Collateral Mortgage without any charge or payment as provided by the terms of the Calnshire Collateral Mortgage Subordination Agreement;

3.6.4.2 If any portion of the Class 6 Claim is allowed as a Secured Claim by a Final Order of the Bankruptcy Court, the Holder of the Class 6 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, at the time of closing on the sale of Phase 2, the Net Phase 2 Sales Proceeds from the sale of Phase 2, if any, (i) after payment in full of the Allowed Class 3 Claim, (ii) after payment in full of the Allowed Class 4 Claim, and (iii) after payment in full of the Allowed Class 5 Claim, up to the amount of the unpaid principal and interest owed, if any, on the Allowed Class 6 Claim; or

3.6.4.2.1    such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of Class 6 Claim and the Trustee.

The Class 6 Claim to the extent it is Allowed may be prepaid less the amount of the Permitted Claims, in whole or in part, at any time without any prepayment penalty or fee. Following the Effective Date, all existing terms of the Calnshire Collateral Mortgage, the Prudential Release of Liens Agreement, the Prudential Subordination Agreements, and related documents thereto shall be modified by the terms of the Plan; in the event of any conflict between the terms of the Calnshire Collateral Mortgage, the Prudential Release of Liens Agreement, the Prudential Subordination Agreements, and related documents thereto, the terms of the Plan shall control.

3.6.5    <u>Retention of Liens</u>.  Until payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 6 Claim (but only to the extent Allowed by Final Order of the Bankruptcy Court) less the Permitted Claims, the Holder of the Allowed Class 6 Claim shall retain its Liens against the Real Property to the same extent and priority as exists on the Confirmation Date; provided however, that at the time of each closing on the sale of each residential unit at the Project and/or sale of the Project in whole or in part, the Liens securing the Class 6 Claim against said residential unit at the Project or the Project, shall be deemed released without any charge by, or payment to, the Holder of the Class 6 Claim as set forth above, and provided further that at the time of the closing on the sale of Phase 2, the Liens securing the Class 6 Claim against Phase 2 shall be released subject to the distribution of the Net Phase 2 Sale Proceeds as set forth in this Plan.

3.6.6    <u>Deficiency Claim</u>.  The terms of the Prudential Subordination Agreements <u>inter alia</u> allow the Trustee to pay the Permitted Claims from the proceeds of the sale of the residential units at the Project and/or the sale of the Project and receive a release of the Liens that secure the Disputed Class 6 Claim without any payment to the Holder of the Disputed Class 6 Claim until the Permitted Claims are paid.  Additionally, there is no note or other contractual obligation of the Debtor to pay the Disputed Class 6 Claim beyond the portion of the Class 6 Claim that is secured in whole or in part by the Real Property and Prudential filed no proof of claim for

31

this Class 6 Claim.  The Holder of the Class 6 Claim shall hold no General Unsecured Claim in the Chapter 11 Case.

3.6.7  <u>Extinguishment of Liens</u>.  Upon payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 6 Claim (but only to the extent Allowed by Final Order of the Bankruptcy Court) less the Permitted Claims, the Liens securing the Class 6 Allowed Claim shall be extinguished and shall affect a full and final satisfaction of such Claim.

3.6.8  <u>Voting</u>.  The Class 6 Claim is Disputed and not entitled to vote to accept or reject the Plan unless it is Allowed by a Final Order prior to the Voting Record Date.

3.7    Class 7.  **<u>Pre-Petition Judgment Claims</u>**.

3.7.1  <u>Class 7 Claims and Priority</u>.  Class 7 Claims are Impaired.  The Class 7 Claims arise from the Claims held by the five (5) Holders of pre-petition judgments as follows: (i) the Borough Judgment in the amount of $56,239.22, (ii) the Bohler Engineering Judgment in the amount of $48,853.63, (iii) the Caione Judgment in the amount of $30,990.00, (iv) the Ranganathan Judgment in the amount of $49,980.00; and (v) the McElderry Drywall Judgment in the amount of $33,266.00.  The Class 7 Claims in the aggregate total the amount of $219,328.85 as of the Petition Date.  Each Class 7 Claim is junior and subordinate in priority to the Liens that secure the Post-Petition Loan Claim, Class 1 Claim, Class 2 Claim, Class 3 Claim, Class 4 Claim, Class 5 Claim, and Class 6 Claim to the extent Allowed.  Each Holder of an Allowed Class 7 Claim shall receive in full satisfaction, settlement, release and extinguishment of such Claim its Pro Rata share of the Class 7 Payment Fund.

3.7.2  <u>Class 7 Payment Fund</u>.  As soon as reasonable practicable after the Effective Date: (a) after the Retained Estate has been fully liquidated, (b) after full payment of the Allowed Administrative Claims including Professional Fee Claims and Trustee Commission, (c) after full payment of all post Effective Date fees, costs, and obligations including professional fees and Trustee commissions incurred in connection with the administration of the Retained Estate including the development, construction, marketing, and sale of the Real Property, the prosecution of the Trustee Actions against Prudential to the entry of a Final Order and collection thereof, and the disposition of any other assets, (d) after full payment of the Post-Petition Loan Claim, (e) after full payment of Allowed Priority Tax Claims, and (f) after full payment of the Class 1 Claim, Class 2 Claim, Class 3 Claim, Class 4 Claim, Class 5 Claim, and Class 6 Claim, to the extent that the Claims in these classes are Allowed, the Trustee shall (i) deposit the remaining Cash, if any, up to the amount of the Allowed Class 7 Claims into the Class 7 Payment Fund, and (ii) deposit the remaining Cash, if any, up to the amount of the accrued interest at 3.0% per annum on the Allowed Class 7 Claims from the Effective Date through the date the Class 7 Payment Fund is funded; provided, however none of the proceeds collected by, or paid to the Trustee, from the Trustee's Actions against Prudential or the State Street Receivable will be deposited into the Class 7 Payment Fund.

3.7.3  <u>Payment of the Class 7 Claims</u>.  Each Allowed Class 7 Claim shall be treated on a pari passu basis with each other Allowed Class 7 Claim irrespective of the date when the respective pre-petition judgment held by each Holder of Allowed Class 7 Claims was entered against the Debtor.  Each Holder of an Allowed Class 7 Claim shall receive Cash in an amount

equal to such Holder's Pro Rata share of the Class 7 Payment Fund, with such share to be calculated based on the Allowed amount of such Holder's Class 7 Claim relative to the total amount of Allowed Class 7 Claims.  Such payment of Cash shall be made on or as soon as practicable after the latest of (i) the Effective Date, (ii) the date on which such Class 7 Claim becomes Allowed, (iii) ten (10) business days after the date on which the Allowed Amount of all Class 7 Claims have been determined by Final Order and the Class 7 Payment Fund has been funded by the Trustee; and (iv) such later date as may be agreed upon by the Trustee and the Holder of such Class 7 Claim.

      3.7.4   <u>Retention of Liens</u>.  Subject to the provisions of Section 3.7.1 above, each Holder of an Allowed Class 7 Claim shall retain her/his/its Liens against the Real Property to the same extent and priority as exists on the Confirmation Date; provided however, that at the time of each closing on the sale of each residential unit at the Real Property and/or the Real Property in whole or in part, all Liens securing each Class 7 Claim shall be deemed released without any charge by, or payment to, each Holder of a Class 7 Claim.

      3.7.5   <u>Deficiency Claim</u>.  To the extent that the amount of the Class 7 Payment Fund is not adequate to pay the Allowed Class 7 Claims in full, the deficiency due each Holder of an Allowed Class 7 Claim shall be treated as an Allowed General Unsecured Claim under this Plan.

      3.7.6   <u>Extinguishment of Liens</u>.  Upon the creation and distribution of the Class 7 Payment Fund on a Pro Rata basis to the Holders of the Class 7 Allowed Claims as set forth in the Plan, all Liens arising from the Class 7 Claims shall be extinguished.  If there are insufficient funds to create the Class 7 Payment Fund, then all Liens arising from the Class 7 Claims shall be extinguished.

      3.7.7   <u>Voting</u>.   Class 7 is Impaired by the Plan and may vote to accept or reject the Plan.

    3.8    Class 8.   **<u>Priority Non-Tax Claims</u>**.  Class 8 Priority Non-Tax Claims are Unimpaired.  Each Holder of an Allowed Class 8 Priority Non-Tax Claim shall receive, in the discretion of the Trustee, in full satisfaction, settlement, release, and extinguishment of such Claim:  (a) the amount of such unpaid Allowed Claim in cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which Class 8 Priority Non-Tax Claim becomes Allowed, (iii) a date agreed to by the Trustee and the Holder of such Class 8 Priority Non-Tax Claim; or (b) such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Trustee.

    3.9    Class 9. **<u>General Unsecured Claims</u>**.

      3.9.1   <u>Class 9 Claims</u>.  Class 9 General Unsecured Claims are Impaired.  Each Holder of an Allowed General Unsecured Claim shall receive in full satisfaction, settlement, release and extinguishment of such Claim, its Pro Rata share of the Class 9 Unsecured Creditor Fund.

      3.9.2   <u>Class 9 Unsecured Creditor Fund</u>.  As soon as reasonable practicable after the Effective Date: (a) after the Retained Estate has been fully liquidated, (b) after full payment of

the Allowed Administrative Claims including Professional Fee Claims and Trustee Commission, (c) after full payment of all post Effective Date fees, costs, and obligations including professional fees and Trustee commissions incurred in connection with the administration of the Retained Estate including the development, construction, marketing, and sale of the Real Property, the prosecution of the Trustee Actions against Prudential to the entry of a Final Order and collection thereof, and the disposition of any other assets, (d) after full payment of the Post-Petition Loan Claim, (e) after full payment of Allowed Priority Tax Claims, and (f) after full payment of the Class 1 Claim, Class 2 Claim, Class 3 Claim, Class 4 Claim, Class 5 Claim, Class 6 Claim, Allowed Class 7 Claims, and Class 8 Claims, to the extent that the Claims in these classes are Allowed,  the Trustee shall (i) deposit the remaining Cash, if any, up to the amount of the Allowed Class 9 Claims into the Class 9 Unsecured Creditor Fund, and (ii) deposit the remaining Cash, if any, up to the amount of  the accrued interest on the Allowed Class 9 Claims at the Federal Rate from the Effective Date to the date the Class 9 Unsecured Creditor Fund is funded.

3.9.3   <u>Payment of Class 9 Claims</u>.  Each Holder of an Allowed Class 9 General Unsecured Claim shall receive Cash in an amount equal to such Holder's Pro Rata share of the Class 9 Unsecured Creditor Fund, with such share to be calculated based on the Allowed amount of such Holder's Class 9 Claim and, if applicable, post-petition interest as set forth in Section 3.9.2 (above) relative to the total amount of Allowed Class 9 Claims.  Such payment of Cash shall be made on or as soon as practicable after the latest of (i) the Effective Date, (ii) the date on which such Class 9 Claim becomes Allowed, (iii) ten (10) business days after the date on which the Allowed Amount of all Class 9 Claims have been determined by Final Order and the Class 9 Creditor Fund has been funded by the Trustee, and (iv) such later date as may be agreed upon by the Trustee and the Holder of such Class 9 Claim.

3.9.4   <u>General Provisions</u>.  Except as set forth in Section 3.9.2 above, no interest or other similar post-petition charges will be paid on account of Allowed Class 9 General Unsecured Claims.

3.10   **Class 10.  <u>Limited Partner Interests in the Debtor</u>.**

3.10.1  <u>Class 10 Limited Partner Interests</u>.  Class 10 is impaired.   The Interests of each Holder of a Class 10 Limited Partner Interest shall remain equal to the Interest each held as of the Petition Date.  No distributions shall be made to any Holder of a Class 10 Limited Partner Interest on account of their Interest unless and until all assets in the Retained Estate have been fully liquidated and then only after all Claims of the Debtor and its Estate have been paid in full including but not limited to (a) full payment of the Allowed Administrative Claims including Professional Fee Claims and Trustee Commission, (b) full payment of all post Effective Date fees, costs, and obligations including professional fees and Trustee commissions incurred in connection with the administration of the Retained Estate including the development, construction, marketing, and sale of the Real Property, the prosecution of the Trustee Actions against Prudential to the entry of a Final Order and collection thereof, and the disposition of any other assets, (c) full payment of the Post-Petition Loan Claim, (d) full payment of Allowed Priority Tax Claims, and (e) full payment of Class 1 Claim, Class 2 Claim, Class 3 Claim, Class 4 Claim, Class 5 Claim, Class 6 Claim, Class 7 Claims, Class 8 Claims, and Class 9 Claims, to the extent that the Claims in these classes are Allowed (the "Senior Claims").

3.10.2 Each Holder of an Allowed Class 10 Interest shall receive Cash in an amount equal to such Holder's Interest in the Debtor multiplied by the remaining Cash, if any, after all Senior Claims (as defined in Section 3.10.1 above) are paid in full.  Such payment of Cash, if any, shall be made on or a soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which the Class 10 Interest becomes Allowed, (iii) ten (10) business days after the latest of (a) the date on which all assets in the Retained Estate have been fully liquidated and (b) the date after all Senior Claims (as defined in Section 3.10.1 above) of the Debtor and its Estate have been paid in full, and (iv) such later date as may be agreed upon by the Trustee and the Holder of such Class 10 Interest.

3.11    **Class 11.  <u>General Partner Interest in the Debtor</u>.**

3.11.1 <u>Class 11 General Partner Interest</u>.  Class 11 is impaired.  The Interest of the Holder of the Class 11 General Partner Interest shall remain equal to the Interest it held as of the Petition Date.  No distributions shall be made to the Holder of the Class 11 General Partner Interest on account of its Interest unless and until all assets in the Retained Estate have been fully liquidated and then only after all of the Senior Claims (as defined in Section 3.10.1 above) have been paid in full and the distributions to the Holders of Class 10 Limited Partner Interests have been paid in full.

3.11.2  The Holder of the Allowed Class 11 Interest shall receive Cash in an amount equal to such Holder's Interest in the Debtor multiplied by the remaining Cash, if any, after all Senior Claims (as defined in Section 3.10.1 above) are paid in full and the distributions to Holders of Class 10 Limited Partner Interests have been paid in full.  Such payment of Cash, if any, shall be made on or a soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which the Class 11 Interest becomes Allowed, (iii) ten (10) business days after the latest of (a) the date on which all assets in the Retained Estate have been fully liquidated, (b) the date after all Senior Claims (as defined in Section 3.10.1 above) of the Debtor and its Estate have been paid in full, and (c) the date after all the distributions to the Holders of Class 10 Limited Partner Interests have been paid in full, and (iv) such later date as may be agreed upon by the Trustee and the Holder of such Class 11 Interest.

## ARTICLE IV
## <u>Provisions for Treatment of Unclassified Claims</u>

Administrative Claims, Priority Tax Claims, and the Post-Petition Loan Claim are treated in accordance with sections 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of the Plan and for purposes of sections 1123, 1124, 1126, and 1129 of the Bankruptcy Code.

4.1    **<u>Administrative Claims</u>**.

4.1.1    <u>Time for Filing Administrative Claims</u>.  The Holder of an Administrative Claim other than (i) a Professional Fee Claim, or (ii) a liability incurred and paid in the ordinary course of business by the Trustee, must file with the Bankruptcy Court and serve on the Trustee and his counsel, a motion or request for the payment of such Administrative Claim within thirty

(30) days after the Effective Date.  Such motion or request must include, at minimum, (i) the name of the Holder of the claim, (ii) the amount of the claim, and (iii) the basis of the claim. Furthermore, all persons and entities asserting Administrative Claims, which do not fall within Section 4.1 of the Plan, shall file a motion or request for the payment of such administrative claim within thirty (30) days of the Effective Date, or be forever barred from asserting any such Administrative Claim.  Failure to file a motion or request for payment timely and properly shall result in the Administrative Claim being forever barred and discharged.

   4.1.2 <u>Time for Filing Fee Claims and Trustee Commission Claim</u>.  Except for Kaufman, Coren & Ress, P.C. ("KCR") retained by the Trustee as his special litigation counsel and approved by Bankruptcy Court Order dated April 4, 2018, final applications for (i) Professional Fee Claims for compensation for services rendered and reimbursement of expenses incurred by Professionals from the Petition Date through the Effective Date, and (ii) the Trustee Commission from the Appointment Date through the Petition Date shall be filed with the Bankruptcy Court within thirty (30) days after the Effective Date.  Failure to timely file a final fee application shall result in the Professional Fee Claim being forever barred and discharged.  KCR shall file its final application for its Professional Fee Claim for compensation for services rendered and reimbursement of expenses incurred within thirty (30) days after the date that the Trustee's Actions Against Prudential have been determined by a Final Order.

   4.1.3 <u>Allowance of Administrative Claims</u>.  An Administrative Claim with respect to which notice is required and which has been properly filed pursuant to Section 4.1 of this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim.  If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  An Administrative Claim that is a Professional Fee Claim or Trustee Commission Claim, and with respect to its fee application has been timely filed pursuant to Section 4.1.2 of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

   4.1.4 <u>Payment of Allowed Administrative Claims</u>.  Unless otherwise provided for herein, each Holder of an Allowed Administrative Claim (including Allowed Professional Fee Claims and the Trustee Commission) shall receive from the Trustee in full satisfaction, settlement, release, and extinguishment of such Claim: (a) the amount of such unpaid Allowed Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, (iii) the date on which unencumbered funds become available to pay the Allowed Administrative Claim; or (iv) a date agreed to in writing by the Trustee and the Holder of such Administrative Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Trustee, or as the Bankruptcy Court may order, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Trustee may be paid in the ordinary course of business.

   4.1.5 <u>Professional Fees and Trustee Commission Incurred After the Effective Date</u>.  Professional fees incurred by the Trustee after the Effective Date for the administration of the Chapter 11 Case, the Plan and the Retained Assets shall be paid by the Trustee after his review and approval of the respective invoices and, thereafter, can be paid without further Order of the

Court.  For services rendered by the Trustee after the Effective Date, the Trustee shall be paid a commission at the rate of three (3%) percent upon all moneys disbursed or turned over after the Effective Date to parties in interest (excluding the Debtor), but including all Holders of Claims under the Plan, and all disbursements made in connection with the operation of the Debtor's business until all the Retained Assets have been fully liquidated, plus reimbursement of his reasonable expenses.

4.2    **Treatment of Priority Tax Claims**.  Each Holder of an Allowed Priority Tax Claim that is not also a Class 8 Claim shall receive, at the sole option of the Trustee (i) the amount of such Holder's Allowed Claim on the Effective Date; (ii) the amount of such Holder's Allowed Claim, plus interest accrued at the applicable statutory rate, in equal monthly cash payments in accordance with the provisions of § 1129(a)(9)(c) of the Bankruptcy Code or (iii) such other treatment as may be agreed upon in writing by the Trustee and such Creditor.

4.3    **No Liability for Certain Tax Claims**.  To the extent that any Claim asserted by a governmental taxing authority seeks recovery of a fine on or penalty against the Debtor's Estate, that portion of such Claim, if Allowed, which represents such fine or penalty, shall be treated as a General Unsecured Claim.

4.4    **Treatment of Post-Petition Loan**. As of the Effective Date, the Post-Petition Loan and the Post-Petition Lender's legal, equitable, and contractual rights thereunder shall continue unaltered, in full force and effect until paid in full in Cash; provided that the Post-Petition Lender and the Trustee may agree to extend the maturity date of the Post-Petition Loan or to such other terms and conditions as may be agreed upon in writing by the Post-Petition Lender and the Trustee. Notwithstanding anything to the contrary contained herein, the Liens that secure the Post-Petition Loan shall continue unaltered and in full force and effect until the Post-Petition Loan has been paid in full in Cash. In addition, pursuant to Bankruptcy Code Section 364(c)(1) the Post-Petition Loan is also secured by an allowed administrative expense claim with priority over any and all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b).

Upon the occurrence of the Effective Date, the Maturity Date of the Post-Petition Loan shall be extended from September 19, 2021 to December 31, 2023 and the Confirmation Order shall so provide.  Subject to the Trustee's compliance with the provisions of the Post-Petition Construction Loan and Security Agreement including the payment of the required release prices to the Post-Petition Lender set forth therein, the Post-Petition Lender shall release its Lien on each residential unit being sold in Phase 1 at the time of closing of each said residential unit.  At the time of the closing on the sale of Phase 2, and subject to payment of Cash, in an amount equal to the entire balance of the unpaid principal and interest owed to the Post-Petition Lender under the Post-Petition Loan, the Post-Petition Lender shall release its Lien on Phase 2.

## ARTICLE V
## Acceptance or Rejection of the Plan; Cramdown

5.1    **Acceptance by Impaired Classes of Claims and Interests**.

5.1.1    Impaired Classes of Claims.  Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-

thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by a Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan.

Pursuant to section 1126(c) of the Bankruptcy Code, Class 1, Class 2, Class 3, Class 7, and Class 9 shall each be deemed to have accepted this Plan **if** (a) with regard to the Allowed Claims that are actually voted in each class, at least two thirds in aggregate principal amount of such Claim have voted to accept the Plan, and (b) with regard to the Claimants who actually vote in each class, more than one half in number of such Claimants have voted to accept the Plan.

No Holder of a Claim that is not an Allowed Claim may vote to accept or reject the this Plan pursuant to section 1126 (a) of the Bankruptcy Code.  Class 4, Class 5 and Class 6 represent Disputed Claims and therefore not entitled to vote to accept or reject the Plan unless, these Claims are Allowed by Final Order on or before the Voting Record Date.

> 5.1.2   <u>Impaired Classes of Interests</u>.   Pursuant to section 1126(d) of the Bankruptcy Code, an Impaired Class of Interests shall have accepted the Plan **if**: the Holders of at least two-thirds (2/3) in amount of the Allowed Interests actually voting in such Class (other than Interests held by a Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan.

> 5.2   **Voting Classes**.  Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or otherwise provided in this Article V, only Classes 1, 2, 3, 7, 9, 10 and 11 shall be entitled to vote to accept or reject the Plan, in accordance with Article V of the Plan. Classes 4, 5, and 6 represent Disputed Claims and shall only be entitled to vote to accept or reject the Plan to the extent that these Claims are Allowed by a Final Order on or before the Voting Record Date.  Class 8 which is Unimpaired shall not be entitled to vote to accept or reject the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Administrative Claims, Priority Tax Claims and the Post-Petition Loan Claim are Unimpaired and not classified under the Plan and therefore not entitled to vote to accept or reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

> 5.3   **Elimination of Vacant Classes.**  Any Class of Claims that does not have at least one Holder of an Allowed Claim by Final Order on or before the Voting Record Date shall be deemed to be eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

> 5.4   **Voting Instructions**.  Holders of Claims in Classes 1, 2, 3, 7, and 9 and Interests in Classes 10 and 11 will be asked to complete and return a Ballot to counsel for the Trustee in order that their vote may be tallied as part of their respective class.  The voting materials to be distributed shall include appropriate instructions regarding the return of Ballots.  Holders of Class 4, Class 5, and Class 6 will only be asked to complete and return a Ballot to counsel for the Trustee if their respective Claim is Allowed on or before the Voting Record Date.

5.5    **Cramdown**.  If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code as applied to a partnership entity, except that Bankruptcy Court determines that the requirements of subsection (8) thereof have not been met, the Trustee may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the basis that the Plan is fair and equitable, and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

## ARTICLE VI
## Means for Implementation of The Plan

6.1    **Retained Estate**.  The Retained Estate shall not be revested in the Debtor on or after the Confirmation Date or the Effective Date, but shall continue to vest and remain Property of the Retained Estate free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise specifically provided in the Plan.  The Retained Estate shall continue to be administered by the Trustee.  The Retained Estate shall continue to be subject to the jurisdiction of the Bankruptcy Court following Confirmation Date and the Trustee's administration of the Retained Estate shall continue until the Retained Estate and remaining Property have been fully liquidated and the proceeds distributed by the Trustee to (i) Holders of Allowed Claims, (ii) if applicable, Holders of Allowed Interests, or (iii) otherwise disposed of by the Trustee in accordance with the terms of the Plan and Confirmation Order on or after the Effective Date.  The automatic stay under section 362 of the Bankruptcy Code shall continue after the Effective Date in full force and effect as to the Retained Estate and as to all Creditors for the term of the Plan, until the Retained Estate and remaining Property have been fully liquidated and the proceeds distributed by the Trustee under the Plan.

6.2    **Development, Construction, Marketing, and Sale of the Real Property**.  After the Confirmation Date, the Trustee shall be authorized to take any and all actions necessary to continue to develop, construct, market and sell residential units in Phase 1 and Phase 2, including without limitation the sale of Phase 1 or Phase 2 of the Real Property in whole or in part.   This authority shall include but not be limited to: (i) develop, construct, complete, market and sell the 14 approved buildings in Phase 1 containing a total of 73 residential units, (ii) complete the site improvements in Phase 1, (iii) complete the site improvements in Phase 2 that are required as a condition precedent to the Trustee being able to construct, sell and settle on the units in Phase 1, and (iv) construct any additional improvements in Phase 1 or Phase 2 as may be determined by the Trustee to be necessary to complete and sell the residential units in Phase 1 of the Real Property. The Trustee shall also continue to investigate: (i) the development of Phase 2 of the Real Property which is approved for six (6) buildings containing a total of 96 condominium units, (ii) the amendment or modification of the approvals for Phase 2 of the Real Property to townhomes, or combination of townhomes and condominiums (which may result in fewer than the 96 condominiums presently allowed in Phase 2), or any other permitted use, (iii) the completion of the site improvements in Phase 2 as required as a condition precedent to the Trustee being able to construct, sell or close on the sale of residential units in Phase 2; and (iv)  all options available to monetize Phase 2 of the Real Property including the sale of Phase 2 in whole or in part.   The Trustee may sell Phase 1 or Phase 2 in whole or in part, if the Trustee determines in his business judgment that a sale in whole or in part of Phase 1 or Phase 2 will maximize the value of the

39

Retained Estate.

      6.3    **Sale of Real Property Free and Clear of the Claim Interests**.  The Confirmation Order shall authorize the Trustee to sell the Retained Estate including the individual residential units in Phase 1 and Phase 2, and/or the sale of Phase 1 and/or Phase 2 of the Real Property in whole or in part.  Each sale of a residential unit in Phase 1 or Phase 2 of the Real Property, or any sale of Phase 1 or Phase 2 of the Real Property, in whole or in part, shall be under sections 105(a), 363, 1123(b)(4), 1129(b)(2)(A), 1145 and 1146(a) of the Bankruptcy Code and shall be free and clear of any and all liens, claims, community interests, security interests, mortgages, conditions, encumbrances, pledges, restrictions, charges, indentures, loan agreements, options, rights of first refusal, offsets, recoupments, rights of recovery, judgments, orders and decrees of any court or governmental entity, interests, successor, products, tax and other liabilities and claims against the Trustee, Debtor, the Debtor's Estate, or the Retained Estate including the Real Property, of any kind or nature, whether secured or unsecured, choate, or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, disputed or undisputed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, known or unknown (collectively, the "Claim Interests") except: (a) existing restrictions, conditions, easements, especially that set forth in the Declarations of Covenants and Restrictions for Radcliffe Court Homeowners Association; (b) restrictions, conditions, covenants, and easements, if any, required to be placed on the Real Property including under Pennsylvania Act 2; (c) restrictions, conditions, and easements created by the Trustee at or prior to settlement hereunder and reasonably necessary for the development of the Real Property and adjoining properties; (d) the possibility of the filing of mechanics' liens or municipal liens; (e) zoning ordinance and any other act, ordinance, or regulation affecting the use of an improvement to said Real Property; (f) easements with respect to public or private sewers, storm sewer or surface water courses; and (g) agreements and easements with telephone, gas, water, catv, electric and other public utility companies (collectively, the "Permitted Exceptions"); and any such Claim Interests which existed prior to the closing shall attach to the proceeds of the sale in the same order and priority as existed before the sale under applicable non-bankruptcy law, as such laws may be modified by the Bankruptcy Code, this Plan, and subject to any claims and defenses that the Trustee may possess with respect thereto with said Claim Interests to attach to the proceeds of sale.  The transfers of the residential units at the Real Property, or any sale of Phase 1 or Phase 2 of the Real Property, in whole or in part, to any respective buyer(s) shall constitute a legal, valid and effective transfers and shall vest the respective buyer(s) with all right, title and interest of the Trustee in and to the land and improvements transferred (e.g. any residential unit at the Real Property, or Phase 1 or Phase 2 of the Real Property, in whole or in part), free and clear of all Claim Interests.  The proceeds of sale will be distributed to, and utilized by, the Trustee in accordance with the provisions of the Plan.

      6.4    **Plan Funding**.  On or after the Effective Date, the distributions provided for under the Plan shall be effectuated as follows: (i) the Trustee shall fund distributions through Cash on hand in any deposit account of the Trustee, (ii) proceeds from the prosecution of the Trustee's Actions against Prudential, (iii) proceeds from the operation of the Debtor's business including the development, construction, marketing, sale or liquidation of residential units in Phase 1 and/or Phase 2, (iv) proceeds from the sale of Phase 1 or Phase 2, in whole or in part, (v) the collection or liquidation of the State Street Receivable; and (vi) any other funds received by the Trustee after the Effective Date.  Should the Trustee require financing to fund distributions required by the Plan, the Trustee is hereby authorized to obtain credit and borrow money (secured by the assets of the

Retained Estate) for the purpose of making such required Plan payments.

   6.5  **Powers and Duties of Trustee**.  The Trustee shall administer the Retained Estate and continue the operations of the Debtor's business as set forth in the Plan until the Retained Estate is fully liquidated, and shall be responsible for, among other things, making distributions required under the Plan, the Class 7 Payment Fund, if applicable, and the Class 9 Unsecured Creditor Fund under the Plan.  From and after the Effective Date and continuing until the Retained Estate is fully liquidated and all proceeds therefrom have been distributed under the Plan, the Trustee shall:  (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Case and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court; (b) have the authority to act on behalf of the Debtor in all adversary proceedings and contested matters pending or to be filed by the Trustee in the Bankruptcy Court and in all actions and proceedings pending or to be filed by the Trustee elsewhere; (c) have the authority to execute and deliver all necessary documents to transfer and sell individual residential units at the Real Property, or to transfer and sell the Real Property in whole or in part for a fair and reasonable purchase price pursuant to the terms and conditions of sale agreements that are acceptable to the Trustee, and entered into in good faith, (d) have the authority to issue, execute, deliver, file, and record, as appropriate, such other documents as may be necessary to evidence and consummate the sale of any of the assets that comprise the Retained Estate, including individual residential units at the Real Property, or to transfer and sell the Real Property in whole or in part, and (e) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors, or other agents) as he deems appropriate.  The reasonable and necessary fees and actual and necessary expenses of such professionals and the Trustee shall be paid by the Trustee upon each monthly submission of a fee statement to the Trustee in accordance with the following procedures.  The Trustee shall have ten (10) days from the delivery of a fee statement to give notice of an objection to the fee statement to the professional seeking compensation.  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Bankruptcy Court for resolution.  The uncontested portion of each invoice shall be paid within thirty (30) days after its delivery to the Trustee to the extent of available funds in the Retained Estate. The Trustee shall also have the specific authority to wind-down and dissolve the Debtor (but is not directed or required to do so) once the Retained Estate has been fully liquidated, distributed and/or otherwise disposed of by the Trustee pursuant to the Plan.

   6.6  **Corporate Action**.  The entry of the Confirmation Order shall constitute authorization for the Trustee to take or to cause to be taken all corporate/partnership actions necessary or appropriate to consummate and implement the provisions of the Plan, including without limitation, the dissolution of the Debtor after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including without limitation, the execution and delivery of: (i)  purchase and sale agreements for residential units in Phase 1 and/or Phase 2;  (ii) purchase and sale agreements for Phase 1 or Phase 2 in whole or in part; (iii)  all necessary documents to transfer and sell the residential units in Phase 1 or Phase 2, and/or Phase 1 or Phase 2 in whole or in part; (iv) to issue,

execute, deliver, file, and record, as appropriate, such other documents as may be necessary evidencing and consummating the sale of the respective real property described above; and (v) to receive and distribute the sale proceeds from the sale of the Real Property under the Plan.

6.7   **Continued Existence**.  From and after the Effective Date, the Debtor's Estate shall continue in existence for the purposes of (i) the development, construction, marketing and sale of residential units at the Real Property including without limitation the sale of  Phase 1 or Phase 2 at the Real Property in whole or in part, (ii) winding up the Debtor's affairs, (iii) liquidating, by conversion to Cash, or other methods, all remaining Property, (iv) enforcing and prosecuting claims, interests, rights and privileges of the Debtor, including, without limitation, the prosecution or settlement of the Trustee's Actions against Prudential, and any other Causes of Action, (v) resolving Disputed Claims, (vi) administering this Plan and (vii) filing appropriate tax returns.  All of the foregoing actions shall be taken by the Trustee and his authorized agents.

6.8   **Management**.  After the Appointment Date, the Trustee managed (a) the development, construction, marketing and sale of residential units at the Real Property including investigating the sale of Phase 1 and/or Phase 2 in whole or in part, (b) the completion of Site Improvements at the Real Property, (c) the prosecution of the Trustee's Actions against Prudential, and (d) other administrative matters related to the Debtor's business and the Chapter 11 Case.  On and after the Effective Date, the Trustee shall continue to manage all of the above matters in connection with the Retained Estate and shall also manage all other matters arising under and in connection with the Plan including distributions under the Plan.  For services rendered by the Trustee after the Effective Date, the Trustee shall be paid a commission at the rate of three (3%) percent upon all moneys disbursed or turned over after the Effective Date to parties in interest, excluding the Debtor, but including all Holders of Claims under the Plan, and all disbursements made in connection with the operation of the Debtor's business until all the Retained Assets have been fully liquidated, plus reimbursement of his reasonable expenses.

6.9   **Closing of the Chapter 11 Case**.  When: (i) the Trustee's Actions against Prudential and all other Causes of Action have been determined by a Final Order, (ii) all Disputed Claims filed against the Debtor have been Allowed or Disallowed, (iii) all Real Property has been constructed, sold, or liquidated and converted into Cash (other than Property that is abandoned), and such Cash has been distributed in accordance with this Plan, (iv) all other assets in the Retained Estate have been liquidated, or (v) at such earlier time as the Trustee deems appropriate, the Trustee may seek authority from the Bankruptcy Court to close the Chapter 11 Case, dissolve the Debtor, and discharge himself from all further duties in connection with the Debtor, the Retained Estate or the Plan, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and applicable state law; provided however, once the matters set forth in subsections (i) and (ii) above have been concluded but before the matters set forth in subsections (iii) and (iv) above have been concluded, the Trustee may request that this Chapter 11 Case be closed for administrative convenience and to minimize administrative costs while the Retained Assets and Plan continue to be administered and such request may be subject to *inter alia* the entry of an order providing that the automatic stay of § 362(a) of the Code remains in full force and effect as to all Creditors for the term of the Plan, until the Retained Estate and remaining Property have been fully liquidated and the proceeds distributed by the Trustee under the Plan and further, subject to the Trustee reserving all rights under section 350(b) of the Bankruptcy Code to request that the Bankruptcy Court reopen the Chapter 11 Case

at a later date to allow the Trustee to request the entry of an order discharging him from all further duties and such request constituting cause under section 350(b) of the Bankruptcy Code to reopen the Chapter 11 Case.

## ARTICLE VII
## Provisions Governing Distributions and General Provisions

7.1     **Timing of Distributions**.  Except as specifically set forth in the Plan, distributions of Property will be made to Holders of Allowed Claims in accordance with Article III and IV of the Plan.  If a Claim is not an Allowed Claim as of the applicable distribution date, distributions will be made only if and when the Claim is Allowed, and then in accordance with Article III and IV of the Plan.  Distributions to be made as of the Effective Date on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter.

7.2     **Distributions to Holders of Allowed Claims**.  Except as otherwise provided herein, the Trustee shall make all distributions required under the Plan in a manner consistent with the Plan. Distributions to Holders of Allowed Claims will be made in accordance with Articles III and IV of the Plan, subject to the provisions of the Post-Petition Loan, the Release of Liens Agreement and the Prudential Subordination Agreements.   Payments and other distributions to be made pursuant to the Plan will be made by the Trustee and such distributions will be from available Cash in the Retained Estate.   No distributions will be made to Allowed Class 10 (Limited Partner) Interests or Allowed Class 11 (General Partner) Interest until all Allowed Administrative Claims including Professional Fee Claims and Trustee Commission, the Post-Petition Loan Claim, Allowed Priority Tax Claims, and all Classes of Allowed Claims have been paid in full in accordance with Articles III of the Plan including Allowed unclassified Claims in accordance with Class IV of the Plan.   If any dispute arises as to the identity of a Holder of an Allowed Claim or Allowed Interest who is to receive any distribution, the Trustee shall delay such distribution until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

7.3     **No Payment or Distribution Pending Allowance**.  All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Trustee and the Holder of such Claim, by operation of law, by Final Order, or by this Plan.  Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

7.4     **Delivery of Distributions**.  Distributions to Holders of Allowed Claims shall be made by the Trustee: (a) at the last known address of such Holder or (b) at the addresses set forth in any written notices of address changes delivered to the Trustee.  If any Holder's distribution is returned as undeliverable, the Trustee shall treat such distribution as Unclaimed Property pursuant to Section 7.7 of the Plan unless and until the Trustee is notified of such Holder's then current address, at which time such distribution shall be made to such Holder without interest.  The Holders of Allowed Claims in respect of distributions that become Unclaimed Property but do not deliver written notices of address changes to the Trustee on or before the entry of the Final Decree shall be forever barred, estopped and enjoined from asserting a claim to such funds in any

manner against the Debtor, the Estate, or the Trustee.

7.5    **Method of Cash Distributions**.  Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of the Trustee.

7.6    **Failure to Negotiate Checks**.  Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  Any amounts returned to the Trustee in respect of such non-negotiated checks shall be held by the Trustee.  Requests for reissuance for any such checks shall be made directly to the Trustee by the Holder of the Allowed Claim with respect to which such check originally was issued.  All amounts represented by any voided check will be held until, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to, the earlier of: (a) one (1) month after the date on which the check is voided; or (b) the date on which the Bankruptcy Court enters the Final Decree.  Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Section 7.7 of the Plan, and such Holder of Claims in respect of void checks that become Unclaimed Property shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtor, the Estate, or the Trustee.

7.7    **Unclaimed Property**.  All Unclaimed Property must be claimed, or in the case of a distribution made in the form of a check, must be negotiated, prior to the date on which the Bankruptcy Court enters the Final Decree.  All Unclaimed Property will be retained by the Trustee and either (a) distributed in accordance with the priorities set forth in the Plan; or (b) if the Trustee concludes that the costs of making a further distribution exceeds the likely benefit to the Holders of Allowed Claims, such Unclaimed Property shall be deposited with the registry of the Bankruptcy Court.  All full or partial payments made by the Trustee and received by the Holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtor's Estate pursuant to the Plan.  Nothing contained in the Plan shall require the Trustee to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of the Debtor and any Claims filed in the Chapter 11 Case.  Pursuant to section 1143 of the Bankruptcy Code, all claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Section 7.7 will be forever barred, expunged and enjoined from asserting such Claim in any manner against the Debtor, the Debtor's Estate, or the Trustee.

7.8    **Limitation on Distribution Rights**.  If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

7.9    **Fractional Dollars**.  Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect the rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash remains undistributed as a result of rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 7.7 of this Plan.

7.10    **Compliance with Tax Requirements**.  In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Trustee shall file such information return with the Internal Revenue Service and provide any required statement in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Entity from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Trustee within thirty (30) days from such request, the Trustee may, withhold the amount required and distribute the balance to such Entity or decline to make such distribution, treating such distribution as Unclaimed Property pursuant to Section 7.7 of this Plan unless and until the information is received.

7.11    **De Minimis Distributions**.  No Cash interim payment of less than twenty ($20.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim; provided, however, such Holder of such Allowed Claim will receive, at the time of the final distribution, a distribution equal to the cumulative Pro-Rata distribution paid to all other Holders of Allowed Claims in its class.  For the avoidance of doubt, distributions to Holders of Allowed Administrative Claims shall be in full amount of the allowed claim, not subject to this limitation.

## ARTICLE VIII
## PRESERVATION OF CAUSES OF ACTION AND
## RIGHT TO DEFEND AND CONTEST

8.1    **Preservation of Rights**.  Except to the extent that any Claim is Allowed during the Chapter 11 Case, nothing, including, but not limited to the failure of the Debtor or the Trustee to object to a Claim for any reason during the pendency of the Chapter 11 Case, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtor or the Trustee with respect to any Claim, including, but not limited to, all rights of the Debtor or the Trustee to contest or defend themselves against such Claims in any lawful manner or forum when and if such Claim is sought to be enforced by Holder thereof.

8.2    **Preservation of Causes of Action**.  All Causes of Action, including the Trustee's Actions against Prudential, shall remain the Property of the Debtor's Estate and be part of the Retained Estate.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including without limitation: (i) the Trustee's Actions against Prudential which includes the Lender Liability Action and the Avoidance and Subordination Action which has been consolidated for all purposes with the Lender Liability Action, (ii) any Causes of Action whether arising before or after the Petition Date, (iii) to recover from property securing an Allowed Secured Claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the Holder of such Claim, including the payment of all ad valorem property taxes with respect to the Real Property pursuant to section 506(c) of the Bankruptcy Code, and (iv) the Trustee's right to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of Confirmation Date or the Effective Date.  The Trustee shall determine, in his sole discretion, whether to prosecute any of the Causes of Actions.  No Entity may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against them as any indication that the Trustee will not pursue any and all

45

available Causes of Action against them. The Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan. The Trustee reserves and shall retain the applicable Causes of Action notwithstanding the rejection or repudiation of any executory contract or unexpired lease in the Chapter 11 Case or pursuant to the Plan.

8.3    **Setoffs**.  Except to the extent that any Claim is Allowed, the Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect such Claims, any and all debts, liabilities, Causes of Action and claims of every type and nature whatsoever which the Estate, the Debtor, or the Trustee may have against such Creditors, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtor or the Trustee of any such claims or Causes of Action the Debtor or the Trustee may have against such Creditors, and all such claims and Causes of Action which are not expressly released, conveyed or compromised pursuant to the Plan shall remain Property of the Estate and be part of the Retained Estate.

8.4    **Resolution of Disputed Claims**.  Unless otherwise ordered by the Bankruptcy Court, the Trustee shall have the exclusive right to File objections to Claims (except those specifically Allowed by this Plan), on and after the Effective Date, but not later than the Claims Objection Deadline, and shall serve a copy of each objection and notice of hearing upon the Holder of the Claim to which the objection is made as soon as practicable.  The Claims Objection Deadline may be extended by order of the Bankruptcy Court.  An objection to any Claim shall be deemed properly served on the Holder thereof if the Trustee effects service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Federal Rules of Bankruptcy Procedure 7004; (b) by first class mail, postage prepaid on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Case.

8.5    **Late Filed Claims.**  No objection shall be filed with respect to any proof of claim filed after the Bar Date, and the Holder of any such late filed proof of claim shall receive no distribution under the Plan, except as specifically ordered by the Bankruptcy Court following a motion by such Claimant, after notice to the Trustee, counsel for the Trustee, and such parties as the Court may direct, and a motion and hearing thereon.  Any such motion shall be filed on or before the Effective Date or the Holder of such Claims shall be forever barred and all such Claims shall be discharged.  Nothing herein shall constitute a waiver by the Debtor or the Trustee of any counterclaims, setoffs, or of any defenses with respect to such late filed proofs of claim, including defenses as to the timeliness of the filing of such proofs of claim.

8.6    **No Payment or Distribution Pending Allowance**.  Notwithstanding any other provision of the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

## ARTICLE IX
## Executory Contracts and Unexpired Leases

9.1 **Rejection of Executory Contracts and Unexpired Leases**. Except for the Subdivision Site Improvements Agreement which will be deemed automatically assumed and vested in the Retained Estate on the Effective Date in accordance with the provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code, each executory contract and unexpired lease to which the Debtor is party shall be deemed automatically rejected by the Debtor on the Confirmation Date, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, or (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections on the Effective Date, pursuant to §§ 365 and 1123 of the Bankruptcy Code. Nothing contained herein is intended to limit or alter the effect of § 365(g)(1) of the Bankruptcy Code.

9.2 **Bar Date for Claims for Rejection Damages**. If the rejection by the Debtor (pursuant to the Plan or otherwise) of any executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or the Trustee, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Trustee within thirty (30) days after service of the earlier of (a) notice of the Confirmation Order, or (b) such other notice or order that the executory contract or unexpired lease has been rejected; provided, however, that the foregoing requirement to file a Proof of Claim shall not be applicable to any such Claim that was previously allowed by Final Order of the Bankruptcy Court.

9.3 **Treatment of Rejection Claims**. The Bankruptcy Court shall determine any objections Filed in accordance with Section 8.3 hereof at a hearing held on a date to be determined by the Bankruptcy Court. Subject to any statutory limitations, including, but not limited to the limitations contained in sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code, any Claims arising out of the rejection of executory contracts and unexpired leases shall, pursuant to section 502(g) of the Bankruptcy Code, be Impaired and treated as Class 9 Claims in accordance with Article III of the Plan.

## ARTICLE X
## CONDITIONS TO CONSUMMATION OF THE PLAN

10.1 **Confirmation Order**. The Confirmation Order shall not be entered unless and until the Confirmation Order is in a form and substance satisfactory to the Trustee.

10.2 **Conditions to Effective Date**. The Plan shall not be consummated, and the Effective Date shall not occur, unless and until the following conditions have occurred or have been duly waived (if waivable) pursuant to Section 10.3 below:

10.2.1 the Confirmation Order, in form and substance satisfactory to the Trustee, shall have been entered by the Bankruptcy Court, shall become a Final Order, shall be in full force and effect and shall not be subject to any stay or injunction by order of a court of competent jurisdiction;

10.2.2  all authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained (this condition may be waived in writing by the Trustee); and

10.2.3  no order of a court shall have been entered and shall remain in effect restraining the Debtor, acting by and through the Trustee or the Trustee, from consummating the Plan.

10.3  **Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan**.  In the event that one or more of the conditions specified in Section 10.2 of the Plan have not occurred (or have not been waived as set forth in Section 10.2 of the Plan), upon notification submitted by the Trustee to the Bankruptcy Court: (a) the Confirmation Order, automatically and without further order of the Bankruptcy Court, shall be, and shall be deemed, vacated, null and void, with no force or legal effect whatsoever; (b) no distributions under the Plan shall be made; (c) all Property of the Estate shall revest in the Debtor's Estate; (d) the Debtor and all Holders of Claims shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (e) the Debtor's obligations with respect to the Claims shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or Entity or to prejudice in any manner the rights of the Debtor or the Trustee or any Person or Entity in any further proceedings involving the Debtor.

## ARTICLE XI
## EFFECTS OF CONFIRMATION

11.1  **Vesting of Assets - Retained Estate**.  The Retained Estate shall not be revested in the Debtor on or after the Confirmation Date or the Effective Date, but shall continue to vest and remain Property of the Retained Estate free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise specifically provided in the Plan.  The Retained Estate shall continue to be administered by the Trustee.  The Retained Estate shall continue to be subject to the jurisdiction of the Bankruptcy Court following Confirmation Date and the Trustee's administration of the Retained Estate shall continue until the Retained Estate and remaining Property have been fully liquidated and the proceeds distributed by the Trustee to (i) Holders of Allowed Claims, (ii) if applicable, Holders of Allowed Interests, or (iii) otherwise disposed of by the Trustee in accordance with the terms of the Plan and Confirmation Order on or after the Effective Date.  The automatic stay under section 362 of the Bankruptcy Code shall continue after the Effective Date in full force and effect as to the Retained Estate and as to all Creditors for the term of the Plan, until the Retained Estate and remaining Property have been fully liquidated and the proceeds distributed by the Trustee under the Plan.

11.2  **Injunction**.  The automatic stay under section 362 of the Bankruptcy Code shall continue after the Effective Date in full force and effect as to the Retained Estate and as to all Creditors and Interests for the term of the Plan, until the Retained Estate and remaining Property have been fully liquidated and the proceeds distributed by the Trustee under the Plan.

48

11.3    **Exculpation**.  None of the Debtor, the Debtor's Estate, the Retained Estate, or the Trustee shall have or incur any liability to any Person, including, without limitation, any Holder of a Claim or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act taken or omission made in connection with, relating to, or arising out of, the Chapter 11 Case, Filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating this Plan, or the Property to be distributed under this Plan, including all activities leading to the promulgation and confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtor or this Chapter 11 Case, provided, however, that the foregoing exculpation shall not (i) apply to any act of gross negligence or willful misconduct, (ii) not affect the liability of the Debtor or the Estate to any Creditor in connection with any Allowed Claim under the Plan; or (iii) shall the foregoing affect the liability of any party with respect to any act or omission that occurred prior to the Petition Date.

11.4    **Other Documents and Actions**.  The Trustee is authorized to execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan including, but not limited to, issuing, executing, delivering, and recording documents that release Liens on the Real Property on behalf of those Creditors whose Liens have been extinguished by the Plan.

11.5    **Preservation of Insurance**.  Except as necessary to be consistent with the Plan, the Plan shall not diminish or impair the enforceability of insurance policies that may cover Claims against the Debtor, the Trustee, or any other Person or Entity.

11.6    **Guaranties**.  Notwithstanding the existence of guaranties, if any, by the Debtor of obligations of any Person, Entity or Entities, and the Debtor's joint obligations with another Person, Entity or Entities with respect to the same obligations, all Claims against the Debtor based upon any such guaranties shall be satisfied and released in the manner provided in this Plan and the Holders of Claims shall be entitled to only one distribution with respect to any given obligation of the Debtor.

11.7    **Section 1146 Exemption**.  To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the execution, delivery or recording of an instrument of transfer under the Plan, or the transfer or sale of any Real Property or other Property of or to the Debtor, or the Trustee, or the Estate, or the Retained Estate, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. All the transfers of Real Property including individual residential units in Phase 1 or Phase 2, or Phase 1 or Phase 2 in whole or in part pursuant to this Plan or Confirmation Order shall constitute and be deemed to be "transfers under a plan" within the purview of section 1146(a) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar taxes in accordance with such section.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is⁻ to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax

11.8    **No Successor Liability**.  Except as otherwise expressly provided in the Plan, the Trustee does not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or indemnify or otherwise have any responsibilities for any liabilities or obligations of the Debtor or any other party relating to or arising out of the operations of or assets of the Debtor, whether arising prior to, on, or after the Effective Date. The Trustee is not and shall not be, successor to the Debtor by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Trustee shall assume the obligations specified in the Plan and the Confirmation Order.

## ARTICLE XII
## RETENTION OF JURISDICTION

12.1    **Exclusive Jurisdiction of Bankruptcy Court**.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

12.1.1    classify or establish the priority or secured or unsecured status of any Claim (whether Filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated) or resolve any dispute as to the treatment of any Claim pursuant to the Plan;

12.1.2    grant or deny any applications for allowance of compensation or reimbursement of expenses pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code or otherwise provided for in the Plan, for periods ending on or before the entry of the Final Decree by the Bankruptcy Court;

12.1.3    determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

12.1.4    ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

12.1.5    construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, including, without limitation, the Confirmation Order, for the maintenance of the integrity of the Plan and protection of the Trustee in accordance with sections 324 and 1141 of the Bankruptcy Code following consummation;

12.1.6        determine and resolve any case, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Entity's rights arising under or obligations incurred in connection therewith;

12.1.7        hear any application of the Trustee to modify the Plan after the Effective Date pursuant to section 1127 of the Bankruptcy Code and Section 13.4 hereof or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

12.1.8        issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

12.1.9        enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

12.1.10        determine any other matters that may arise in connection with or relating to the Plan, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, or the Confirmation Order, except as otherwise provided in the Plan;

12.1.11        determine such other matters and for such other purposes as may be provided in the Confirmation Order;

12.1.12        hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

12.1.13        hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

12.1.14        enter a Final Decree closing the Chapter II Case;

12.1.15        determine and resolve any and all controversies relating to the rights and obligations of the Trustee in connection with the Chapter 11 Case;

12.1.16        allow, disallow, determine, liquidate or estimate any Claim, including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance of Claims and to hear and determine any other issue presented hereby or arising hereunder. including during the pendency of any appeal relating to any

51

Objection to such Claim (to the extent permitted under applicable law);

12.1.17    permit the Trustee to the extent provided for in the Plan, to recover all assets of the Debtor and Property of its Estate, wherever located;

12.1.18    hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the Debtor or the Debtor's Estate arising prior to the Effective Date or relating to the period of administration of the Chapter 11 Case, including, without limitation, matters concerning federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

12.1.19    hear and determine any motions, applications, adversary proceedings, contested matters and other litigated matters pending on, filed or commenced after the Effective Date that may be commenced by the Trustee thereafter, including Causes of Action, proceedings with respect to the rights of the Trustee to recover Property under sections 542, 543 or 553 of the Bankruptcy Code, or proceedings to otherwise collect to recover on account of any claim or Causes of Action that the Debtor may have had; and

12.1.20    hear any other matter not inconsistent with the Bankruptcy Code.

12.2    **Failure of Bankruptcy Court to Exercise Jurisdiction**.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtor, including with respect to the matters set forth above in Section 12.1 hereof, this Article XII shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1    **Binding Effect of Plan**.  The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Trustee, any Holder of any Claim treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

13.2    **Withdrawal of the Plan**.  The Trustee reserves the right, at any time prior to Confirmation of the Plan, to withdraw the Plan.  If the Plan is withdrawn, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall he deemed to constitute a waiver or release of any Claims by or against the Debtor, the Debtor's Estate, or any other Person or to prejudice in any manner the rights of the Debtor, the Debtor's Estate, or any Person in any further proceedings involving the Debtor.

13.3    **Final Order**.  Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Trustee upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending

appeal of any order that is not a Final Order.

13.4  **Modification of the Plan**.  The Trustee reserves the right to alter, amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code or as otherwise permitted at any time prior to the Confirmation Date. After the Confirmation Date and prior to the substantial consumption of the Plan, and in accordance with the provisions of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Trustee may, and so long as the treatment of Holders of Claims under the Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, prior notice of such proceedings shall be served in accordance with Bankruptcy Rules 2002 and 9014.

13.5  **Business Days**.  If any payment or act under the Plan is required to he made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.6  **Severability**.  Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim, such provision shall he unenforceable as to all Holders of Claims or to the specific Holder of such Claim, as the case may be, as to which such provision is illegal. Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Trustee reserves the right not to proceed with Confirmation or consummation of the Plan if any such ruling occurs.

13.7  **Governing Law**.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to conflicts-of-law principles which would apply the law of a jurisdiction other than the Commonwealth of Pennsylvania.

13.8  **Payment of Statutory Fees**.  All U.S. Trustee's Fee Claims, as determined, if necessary, by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date by the Debtor's Estate.

13.9  **Post-Confirmation Reports**.  The Trustee shall file reports as required by the United States Trustee (in respect of such reports to the United States Trustee on a quarterly basis) and the local rules until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Chapter 11 Case.

13.10  **Notices**.  Any notice required or permitted to be provided under this Plan to the Trustee, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable

overnight delivery service, freight prepaid, to be addressed as follows:

> Kevin O'Halloran
> P.O Box 723307
> Atlanta, GA 31139
> Email: kevinnm@bellsouth.net

> With a copy to:

> Karalis PC
> 1900 Spruce Street
> Philadelphia, PA 19103
> Attn: Aris J. Karalis, Esquire
> Email: akaralis@karalislaw.com

13.11 **Filing of Additional Documents**.  On or before substantial consummation of the Plan, the Trustee shall issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

13.12 **Section 1125 of the Bankruptcy Code**.  The Trustee has, and upon Confirmation of the Plan shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

13.13 **Time**.  Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

13.14 **No Attorneys' Fees**.  No attorneys' fees will be paid by the Trustee with respect to any Claim except as expressly specified herein or by order of the Bankruptcy Court.

13.15 **No Injunctive Relief**.  No Claim shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

13.16 **No Discharge of Debtor**.  The Confirmation Order shall not discharge the Debtor from any debt and liability that arose before the confirmation, as provided in § 1141(d)(3)(A) of the Bankruptcy Code.

13.17 **Destruction of Records**.  After the Effective Date, the Trustee, in his discretion, may continue to retain the Debtor's business records, abandon such records, or destroy such records without further Court approval.  The cost or expense of retention or destruction incurred from time to time shall be paid from the Property of the Retained Estate, without need for further Court approval.

54

13.18 **Liability in Connection with Plan**. Neither the Debtor, the Trustee, or any of their respective attorneys, accountants, financial advisors, investment bankers or agents shall have, or shall they incur, any liability to any Creditor or Person for any act or omission in connection with or arising out of their duties and participation in the Chapter 11 Case, the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and all such Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The foregoing shall not, however, affect the liability of the Debtor or the Trustee to any Creditor in connection with any Allowed Claim under the Plan; or shall the foregoing affect the liability of any party with respect to any act or omission that occurred prior to the Petition Date.

13.19 **Default.** No default shall be declared under this Plan unless any payment or performance due under the Plan shall not have been made or deemed made within fifteen (15) days after written notice of the default to the Trustee and counsel for the Trustee of failure to make a payment when due under the Plan. The Trustee shall have fifteen (15) days after receipt of written notice of any default under the Plan in which to cure such default.

13.20 **Continued Confidentiality Obligations**. Pursuant to the terms thereof, any Holder of a Claim, and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with this Chapter 11 Case or the Debtor, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date.

13.21 **No Admissions or Waivers**. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Trustee with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any classification of any Claim.

13.22 **Entire Agreement**. The Plan (and all Exhibits to the Plan) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Trustee shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

13.23 **Conflicts**. To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the term of this Plan, the terms and provisions of the Confirmation Order shall govern and control.

**ARTICLE XIV**
**CONFIRMATION REQUEST**

The Trustee hereby requests confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

55

KEVIN O'HALLORAN AS CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF ISLAND VIEW CROSSING II, LP

By:_____
       Kevin O'Halloran

Dated:_____


KARALIS PC

By:_____
       Aris J. Karalis, Esquire
       1900 Spruce Street
       Philadelphia, PA 19103
       (215) 546-4500

       *Counsel to the Trustee*

Dated:_____


[SIGNATURE PAGE TO CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY KEVIN O'HALLORAN, AS CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF ISLAND VIEW CROSSING II, LP]