# MORTGAGE
# THIS IS A PURCHASE MONEY MORTGAGE

THIS INDENTURE made this 13th day of June, 2003 between **ISLAND VIEW CROSSING I, L.P., a Pennsylvania Limited Partnership**, owner of Tax Parcel Nos. 4-22-48 AND 4-22-49 having a registered address of 1001 East Hector Street, Suite 100, Conshohocken, Pennsylvania 19428 (the "Mortgagor") and **REDEVELOPMENT AUTHORITY OF THE COUNTY OF BUCKS**, a Municipal Authority organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania (the "Authority").

RECITALS

A. The Authority, Mortgagor and Island View Crossing II, L.P. have entered into a Loan Agreement dated the same date as this Mortgage (the "Loan Agreement"), under which the Authority has agreed to lend the said Mortgagor the principal sum of **TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS** (the "Loan") upon the terms and subject to the conditions of the Loan Agreement.

B. In order to evidence its obligation to repay the Loan, Mortgagor, jointly and severally with Island View Crossing II, L.P., signed a Note in the amount of $2,500,000.00, dated the same date as this Mortgage (the "Note") which it has delivered to the Authority, and the Mortgagor has agreed to give this Mortgage to encumber its interests in the premises as hereinafter described to secure the obligation. The Note describes the interest rate and the payment terms of the Loan. The Loan, the Note and this Mortgage are sometimes referred to together as the "Loan Documents."

NOW, THEREFORE, THIS INDENTURE WITNESSETH, that the Mortgagor, in consideration of the Loan, and to secure the payment of the Loan, interest on the Loan and of all other sums due or to become due under the Loan Documents (the "Indebtedness") and to secure the performance by Mortgagor of all other provisions of the Loan Documents,

Intending to be legally bound by these presents, do hereby grant, bargain, sell, convey, release, alien, confirm and assign unto the Authority, its successors and assigns, all those certain parcels of land fully and accurately described on Exhibit A, attached hereto and made a part hereof.

TOGETHER with all and singular the buildings and improvements erected or to be erected thereon, streets, alleys, passages, ways, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances whatsoever, thereunto belonging or in anywise appertaining, and the reversions and remainders and rents, issues and profits thereof, including all income arising therefrom and all insurance proceeds and proceeds of condemnation awards (the "Premises").

TO HAVE AND TO HOLD the Premises hereby granted or mentioned and intended so to be unto the Authority, its successors and assigns, to and for the only proper use and behoof of the Authority, its successors and assigns forever.

PROVIDED, HOWEVER, that if the Mortgagor pays to the Authority the Indebtedness and any other sums properly payable under the terms of the Loan Documents on the dates and in the manner provided in the Loan Documents, and keeps all the other covenants and promises contained in the Loan Documents, then from that time this Mortgage and the estate hereby created, granted, transferred and assigned will be void, but otherwise will remain in full force and effect.

AND THE MORTGAGOR HEREBY FURTHER COVENANTS AND AGREES AS FOLLOWS:

1. <u>Title</u>. The Mortgagor has good, valid and marketable title to the Premises. The Mortgagor has the right, full power and lawful authority to execute this Mortgage and to mortgage the Premises to the Authority. The Premises are free and clear of all liens and encumbrances except those of record which have been previously disclosed in writing to the Authority. The Mortgagor will warrant and defend the rights and title of the Authority to the Premises against all claims.

2. <u>Payment and Performance</u>. The Mortgagor will punctually pay the Indebtedness, in the amounts and at the times provided in and by the Loan Agreement,

222097.1                                           2

the HUD Contract (hereinafter defined), the HUD Note (hereinafter defined) and the Note, and will perform all other agreements and provisions of the Loan Documents, and pay when due all other obligations and debts hereby secured.

3. Real Estate Taxes and Assessments. The Mortgagor will pay when due, and before they become delinquent, all taxes, water and sewer rents, assessments and other governmental charges against the Premises or upon the rents, income and profits from the Premises so as to prevent the same from becoming or being an enforceable lien or claim against the Premises. Upon request, the Mortgagor will furnish to the Authority, not less than fifteen (15) days prior to the date on which payment of the same would become delinquent, receipts or other evidence satisfactory to the Authority of the payment of all such taxes, rents, assessments and other governmental charges.

4. Insurance. The Mortgagor will maintain insurance on all buildings and improvements forming a part of the Premises (including those constructed after the date of this Mortgage) for the benefit of the Authority and the County as additional insureds (hereinafter defined) under an all-risk hazard insurance policy, in an amount not less than the full insurable value of the Premises (excluding foundations and other parts below the surface of the lowest floor). The Authority may from time to time, but not more than once annually, require that the full insurable value of the Premises be determined by an appraiser or rating bureau satisfactory to the Authority. The insurance policy will name the Authority and the County as a mortgagee in a standard mortgagee clause. In addition, either in the insurance policy or in a separate policy, the Mortgagor will provide insurance insuring the Mortgagor against loss of rental for a period of not less than one year in an amount equal to the gross aggregate rental receivable during that period by the Mortgagor under the Agreement insuring all fixed charges of the Mortgagor, including the amount necessary to repay this Mortgage, for a period of not less than one year, such insurance to be acceptable to the Authority and the County. The Mortgagor will deliver to the Authority and the County copies of all of said policies upon the execution of this Mortgage and upon each renewal, expansion or modification thereof, together with a current Accord

Evidence of Property Insurance Certificate. Any modification of any insurance policy must be approved by the Authority and the County in writing prior to the effective date of such modification.

The Authority, at its sole option, may settle all claims under all such policies and may demand, receive and receipt for all moneys becoming payable thereunder. The proceeds under any policy will be paid by the insurer to the Authority as the Authority's interest may appear, and the Authority shall apply the amount so collected toward the payment of the Indebtedness or toward the alteration, reconstruction, repair or restoration of the damaged portion of the Premises or any portion thereof, and any excess shall be paid by the Authority to Mortgagor.

The Mortgagor will prepay the premiums for all such insurance for at least one (1) year in advance and thereafter will deliver to the Authority and the County evidence of payment of all premiums due on such insurance together with certificates of such insurance at least thirty (30) days before payment is due. All of such policies will contain provision for notice to the Authority and the County not less than thirty (30) days in advance of any cancellation of such policy.

The Mortgagor will also demonstrate to the satisfaction of the Authority and the County that the Premises are not located within an area identified by Federal Emergency Management Agency as having "special flood hazards," as such term is interpreted under federal law or in a zoned flood plain or flood hazard area as determined by local officials. If all or any part of the Premises is located in such an area, the Mortgagor will pay for and provide the amount of flood insurance required by the Authority and the County in its reasonable discretion.

While this Mortgage is in effect, the Mortgagor will also maintain public liability and property damage insurance on the Premises in amounts satisfactory to the Authority and the County and will deliver copies of such policies to the Authority and the County.

All insurance policies described in this Section 4 will be written by insurance companies licensed to do business within the Commonwealth of Pennsylvania and satisfactory to the Authority and the County.

5. Maintenance. The Mortgagor will keep the Premises in good condition and repair (reasonable wear and tear excepted). The Mortgagor will maintain the Premises in compliance with all applicable governmental requirements. If there is any damage to the Premises which is caused by fire or other casualty or condemnation, the Authority may require the Mortgagor to restore the Premises to the condition it was in prior to the occurrence of such damage, provided the Authority deliver the insurance proceeds to Mortgagor for such purpose. The Mortgagor will permit the Authority's agents at any reasonable time and upon reasonable notice to enter upon the Premises for the purpose of inspecting and appraising the buildings and improvements.

6. Restrictions. The Mortgagor will not take or permit any action with respect to the Premises which will in any manner, materially and adversely, impair the Authority's security under this Mortgage. The Mortgagor will not convey, transfer, encumber, hypothecate, lease or otherwise dispose of the Premises or permit the creation of any additional debt secured by the Premises, without the Authority's consent.

7. Payment of Costs. If the Authority retains the services of counsel in connection with any default under this Mortgage or the Note, the Mortgagor will pay the Authority a reasonable attorney's fee, but not less than five percent (5%) of the amount then in default and this obligation will be secured hereby. The Mortgagor will also pay all costs in connection with the both the recording of this Mortgage and the recording of any satisfaction of this Mortgage.

8. Events of Default. Any of the following will constitute an event of default under this Mortgage: (i) the occurrence of any Event of Default under the Loan Agreement, the HUD Contract, the HUD Note or the Note; or (ii) any covenant default by Mortgagor in the punctual observance or performance of any of the Mortgagor's covenants or agreements in this Mortgage ("Event of Default"). If any Event of Default occurs, the

Authority will have the option of doing any or all of the following: (a) making the entire unpaid balance of the Indebtedness due and payable immediately, without further notice to the Mortgagor; (b) taking immediate possession of the Premises as provided in this Mortgage; and (c) exercising immediately any and all other rights and remedies provided in this Mortgage and in the Note, or which may be available to the Authority. All such rights and remedies will be cumulative and concurrent and may be pursued singly, successively or together in the Authority's sole discretion. All such rights and remedies may be exercised from time to time and as often as an occasion, or occasions, therefor will occur until the Indebtedness is paid in full. A default in the Note, the HUD Note, the Loan Agreement or the HUD Contract shall be deemed to be a default under the terms of this Mortgage.

9. <u>Possession and Rents</u>. If the Authority takes possession of the Premises after an event of default, the Authority may, in its sole discretion take any or all of the following actions:

    a. The Authority may hold, manage, operate and lease the Premises to the Mortgagor or to any other person or persons, on such terms and for such periods of time as the Authority may deem reasonably appropriate. The provisions of any lease made by the Authority pursuant to this <u>Section 9</u> will be valid and binding upon the Mortgagor notwithstanding the fact that the Authority's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of such lease.

    b. The Authority may make such alterations, additions, improvements, renovations, repairs and replacements to the Premises as the Authority may deem reasonably proper.

    c. The Authority may remodel all or portions of the Premises so as to make the Premises available in whole or in part for other purposes.

    d. The Authority may collect the rents and other charges from the Premises, including those which are past due, and apply the sums collected,

in such order of priority as the Authority may determine, to the payment of all charges and commissions incidental to the collection of rents and the management of the Premises and all other sums or charges required to be paid by the Mortgagor hereunder. In addition to the payment of such charges and commissions, the Authority will be entitled to retain not less than five percent (5%) or the actual costs of such rents, issues and profits in payment for the administrative and management services of the Authority

All moneys advanced by the Authority for any of the actions permitted under this Section 9 and not repaid out of the rents collected will immediately and without demand be repaid by the Mortgagor to the Authority, together with interest thereon at the rate of fifteen percent (15%) per annum, and will be added to the principal of the Loan and be secured by this Mortgage. The production of a receipt by the Authority will be conclusive proof of a payment or advance authorized hereby, and the amount and validity thereof. The taking of possession and collection of rents by the Authority under this Section 9 will not be construed to be an affirmation of any lease of the Premises or any part thereof, and the Authority or any other purchaser at any foreclosure sale may, if otherwise entitled to do so, exercise the right to terminate any such lease as though such taking of possession and collection of rents had not occurred.

10.  Confession of Judgment for Possession.     **THE FOLLOWING PARAGRAPH SETS FORTH A WARRANT OF AUTHORITY FOR AN ATTORNEY TO CONFESS JUDGMENT AGAINST THE MORTGAGOR. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE MORTGAGOR, THE MORTGAGOR HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, AND, ON THE ADVICE OF THE SEPARATE COUNSEL OF THE MORTGAGOR, UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS THE MORTGAGOR HAS OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA.**

in such order of priority as the Authority may determine, to the payment of all charges and commissions incidental to the collection of rents and the management of the Premises and all other sums or charges required to be paid by the Mortgagor hereunder. In addition to the payment of such charges and commissions, the Authority will be entitled to retain not less than five percent (5%) or the actual costs, whichever is less of such rents, issues and profits in payment for the administrative and management services of the Authority

All moneys advanced by the Authority for any of the actions permitted under this Section 9 and not repaid out of the rents collected will immediately and without demand be repaid by the Mortgagor to the Authority, together with interest thereon at the rate of fifteen percent (15%) per annum, and will be added to the principal of the Loan and be secured by this Mortgage. The production of a receipt by the Authority will be conclusive proof of a payment or advance authorized hereby, and the amount and validity thereof. The taking of possession and collection of rents by the Authority under this Section 9 will not be construed to be an affirmation of any lease of the Premises or any part thereof, and the Authority or any other purchaser at any foreclosure sale may, if otherwise entitled to do so, exercise the right to terminate any such lease as though such taking of possession and collection of rents had not occurred.

10. Confession of Judgment for Possession. **THE FOLLOWING PARAGRAPH SETS FORTH A WARRANT OF AUTHORITY FOR AN ATTORNEY TO CONFESS JUDGMENT AGAINST THE MORTGAGOR. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE MORTGAGOR, THE MORTGAGOR HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, AND, ON THE ADVICE OF THE SEPARATE COUNSEL OF THE MORTGAGOR, UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS THE MORTGAGOR HAS OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE**

RESPECTIVE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA.

IN CASE OF ANY EVENT OF DEFAULT HEREUNDER, (OF WHICH AN AFFIDAVIT ON BEHALF OF AUTHORITY SHALL BE SUFFICIENT EVIDENCE), THEN, AND IN ANY SUCH EVENT, ANY ATTORNEY OF ANY COURT OF RECORD OF PENNSYLVANIA OR ELSEWHERE IS HEREBY AUTHORIZED AND EMPOWERED TO APPEAR FOR THE MORTGAGOR, AND ALL PERSONS CLAIMING UNDER OR THROUGH THE MORTGAGOR, AND AS ATTORNEY FOR THE MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH THE MORTGAGOR, TO SIGN AN AGREEMENT FOR ENTERING AN AMICABLE ACTION OF EJECTMENT FOR POSSESSION OF THE PREMISES OR ANY PART THEREOF AND TO CONFESS JUDGMENT THEREIN AGAINST THE MORTGAGOR, IN FAVOR OF AUTHORITY, WHEREUPON A WRIT FOR POSSESSION MAY IMMEDIATELY ISSUE FOR THE POSSESSION OF THE PREMISES, WITHOUT ANY PRIOR COMPLAINT, WRIT OR PROCEEDING WHATSOEVER; AND FOR SO DOING THIS MORTGAGE, OR A COPY HEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT. THIS POWER MAY BE EXERCISED AS OFTEN AS AUTHORITY SHALL REQUIRE AND SHALL NOT BE EXHAUSTED BY ONE OR MORE OR BY ANY IMPERFECT EXERCISE THEREOF.

IF MORTGAGOR WISHES TO CHALLENGE ANY JUDGMENT CONFESSED PURSUANT TO THIS SECTION, IT SHALL DO SO ONLY BY FILING A PETITION TO OPEN THE JUDGMENT PURSUANT TO PENNSYLVANIA RULES OF CIVIL PROCEDURE RULE 2959, AS IN EFFECT FROM TIME TO TIME ("RULE 2959"), AND SHALL NOT OTHERWISE INTERFERE (BY FILING ANY CIVIL ACTION, BILL IN EQUITY, OR OTHERWISE) WITH THE ENTRY OF THE JUDGMENT GRANTED PURSUANT TO THIS SECTION. MORTGAGOR EXPRESSLY ACKNOWLEDGES THAT THE PROCEDURE AVAILABLE TO IT THROUGH RULE

2959 WILL PROVIDE IT WITH A FULL AND FAIR OPPORTUNITY TO BE HEARD AS TO ANY REASON WHY JUDGMENT SHOULD NOT BE ENTERED AGAINST IT.

IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED THE SAME SHALL BE DISCONTINUED OR POSSESSION OF THE PREMISES SHALL REMAIN IN OR BE RESTORED TO THE MORTGAGOR, AUTHORITY SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER AMICABLE ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE PREMISES. AUTHORITY MAY BRING SUCH AMICABLE ACTION IN EJECTMENT BEFORE OR AFTER JUDGMENT ON THIS MORTGAGE OR ON THE NOTES, OR AFTER A SALE OF THE PREMISES BY THE SHERIFF. IF AFTER EXECUTION AND RETURN OF THE WRIT OF POSSESSION, THE MORTGAGOR SHALL RE-ENTER INTO POSSESSION OF THE PREMISES, THE PROTHONOTARY, UPON PRAECIPE AND AFFIDAVIT SETTING FORTH THE FACTS FILED WITHIN THREE YEARS AFTER THE RETURN OF THE WRIT UPON WHICH EXECUTION WAS COMPLETED SHALL ISSUE A NEW WRIT OF POSSESSION.

THE MORTGAGOR ACKNOWLEDGES THAT IT UNDERSTANDS THE MEANING AND EFFECT OF THE CONFESSION CONTAINED IN THE FOREGOING PARAGRAPH, SPECIFICALLY, THE MORTGAGOR UNDERSTANDS AMONG OTHER THINGS THAT (1) IT IS RELINQUISHING THE RIGHT TO HAVE NOTICE EXCEPT AS PROVIDED HEREIN, AN OPPORTUNITY TO BE HEARD AND THE RIGHT TO HAVE THE BURDEN OF PROOF OF DEFAULT REST ON AUTHORITY PRIOR TO THE ENTRY OF JUDGMENT, (2) THE ENTRY OF JUDGMENT MAY RESULT IN A LIEN ON ITS PROPERTY, (3) IT WILL BEAR THE BURDEN AND EXPENSE OF ATTACKING THE JUDGMENT AND CHALLENGING EXECUTION ON THE LIEN AND SALE OF THE PROPERTY COVERED THEREBY, AND (4) ENOUGH OF THEIR PROPERTY MAY BE TAKEN TO PAY THE PRINCIPAL AMOUNT, INTEREST, COSTS AND ATTORNEY'S FEES.

11. <u>Waivers</u>. The Mortgagor waives the right of inquisition on any property levied upon under a judgment obtained in proceedings to collect the Indebtedness hereby secured or in proceedings on this Mortgage, and further waives and releases any and all benefits that may accrue to the Mortgagor by virtue of any law relating to appraisements, stay of execution or exemption of the Premises from levy or sale under execution, now or hereafter in force. A foreclosure sale will constitute a foreclosure sale of all equity whatsoever of the Mortgagor in the Premises and the Authority will, if it is the purchaser at the sale, hold the Premises and any part thereof so purchased free of any equity of redemption by reason of any circumstances whatsoever and not as collateral for any obligation.

12. <u>No Release</u>. No extension or indulgence granted to the Mortgagor, and no alteration, change or modification of the Note consented or agreed to by the Authority, and no other act or omission of the Authority, including the taking of additional security or the release of any security, or the waiver by the Authority or failure by the Authority to enforce any provision of this Mortgage, the Note or the Loan Agreement or to declare a default with respect thereto, will constitute a release of the lien and obligation of this Mortgage or be interposed as a defense against the enforcement of this Mortgage, or operate as a waiver of any subsequent defaults or otherwise affect the right of the Authority to exercise all rights or remedies stipulated herein and in the Note and the Loan Agreement, except an act of the Authority which constitutes an express, effective, written release and satisfaction of the Note.

13. <u>Protective Advances by Mortgagee</u>. If the Mortgagor fails to pay any taxes, water and sewer rents, charges, claims, assessments, assessments for public improvements, liens or encumbrances or fails to furnish and pay for the insurance required by <u>Section 4</u>, or fails to keep the Premises in good condition and repair, the Authority may, at its option and upon three (3) days written notice to Mortgagor, pay any or all such items together with penalties and interest thereon, and procure and pay for such insurance and repairs. Additionally, following any Event of Default by the Mortgagor, the Authority may

at any time advance such other sum or sums as the Authority in its sole discretion may deem reasonably necessary to protect the security of this Mortgage. Any advance by the Authority under this Section 13 will be considered a protective advance. All protective advances made by the Authority will immediately and without demand be secured hereby and the Mortgagor will be obligated to repay such protective advances to the Authority, together with interest thereon at the rate of fifteen percent (15%) per annum. If not immediately repaid, the amount of such protective advances will be added to the principal of the Indebtedness and be secured by this Mortgage. The production of a receipt by the Authority will be conclusive proof of a payment or advance authorized hereby, and the amount and validity thereof.

14. <u>Binding Effect</u>. All covenants, stipulations and agreements contained in this Mortgage by or on behalf of the Mortgagor will be binding upon its successors in title or interest and its assigns, whether so expressed or not.

15. <u>Amendments</u>. This Mortgage may be amended only with the written consent of the Mortgagor and the Authority.

16. <u>Notices</u>. Notice to the Mortgagor under the Note or this Mortgage will be deemed sufficient if given in accordance with the Loan Agreement.

17. <u>Severability</u>. The provisions of this Mortgage are severable. This means that if any of the terms, covenants, conditions or provisions of this Mortgage are unenforceable or invalid under federal, state or other applicable law, such unenforceability or invalidity will not make any other of the terms, covenants, conditions or provisions hereof unenforceable or invalid. If any waiver by Mortgagor in this Mortgage is prohibited by law, including but not limited to the waiver of exemption from execution, such waiver will be and be deemed to be deleted herefrom.

18. <u>Purchase Money Mortgage</u>. If any of the debt secured by this Mortgage is lent to Grantor to acquire title to the Real Property, this Mortgage shall be a purchase money mortgage under 42 P.S. Section 8141.

19. <u>Release</u>. Notwithstanding anything to the contrary in this Mortgage, the Authority hereby agrees to release Mortgagor under the Loan and to release the lien of this Mortgage (the "Release") immediately upon or concurrently with (i) the closing of a loan with a banking institution providing construction or permanent financing on the Premises, and (ii) the delivery of the Guaranty and Corporate Guaranty (as defined in the Loan Agreement). Such release shall be without prepayment or penalty.

20. <u>Definitions.</u>

    a. <u>HUD Note</u> shall mean a Note dated June 13, 2003 in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) from the Authority to Afterwatch & Co, ("Holder") as nominee for Money Market Obligations Trust on behalf of its Government Obligations Fund issued pursuant to the United States Department of Housing and Urban Development Section 108 Loan Guarantee Program.

    b. <u>HUD Contract</u> shall mean Contract for Loan Guarantee Assistance between the Authority, the County of Bucks ("County"), and the Secretary of Housing and Urban Development ("Secretary") dated June 13, 2003 ("HUD Contract").

    c. <u>County</u> shall mean the governmental agency known as the County of Bucks in the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage on the day and year first above written.

ISLAND VIEW CROSSING I, L.P.<br>
By its General Partner:<br><br>
ISLAND VIEW CROSSING I, INC.<br>
By: _____<br>
Attest: _____

COMMONWEALTH OF PENNSYLVANIA        :
                                    : ss
COUNTY OF BUCKS                     :

On this 13th day of June, 2003, before me, the undersigned officer, personally appeared Nimish Sanghrajka, Vice President of Island View Crossing I, Inc., the General Partner of Island View Crossing I, L.P., a Pennsylvania Limited Partnership, who executed the foregoing instrument and acknowledged the seal of said Corporation; that he/she did sign and seal said instrument as such officer in behalf of the said Corporation; and that the said instrument is the free act and deed of such Corporation.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal on the day and year first above written.

_____
NOTARY PUBLIC

Notarial Seal
Elaine M. Garvin, Notary Public
Middletown Twp., Bucks County
My Commission Expires Dec. 15, 2006
Member, Pennsylvania Association Of Notaries

222097.1                          13

ALL THAT CERTAIN lot or parcel of land situate in the Borough of Bristol, County of Bucks, Commonwealth of Pennsylvania, bounded and described as shown on a "Boundary Survey for Dial Corporation", Project Number M-828, Sheet 1 of 1, dated December 2000, last revised December 7, 2000, prepared by Unitech Engineers, Inc., Langhorne, PA 19047, as follows to wit:

BEGINNING at a point, said point being at the intersection of the Northeasterly Right-of-Way line of Pine Grove Street (variable width) with the Southeasterly Right-of-Way line of Radcliffe Street (60 feet wide) (SR 2002); Thence along said Right-of-Way line of Radcliffe Street North 36 degrees 23 minutes 00 seconds East for a distance of 729.84 feet to a point; Thence along the lands now or formerly of Bucks County Redevelopment Authority, Bucks County Tax Parcel Number 04-022-049, the following four courses and distances: (1) South 53 degrees 37 minutes 00 seconds East for a distance of 345.70 feet to a point; Thence (2) South 36 degrees 23 minutes 33 seconds West for a distance of 152.61 feet to a point; Thence (3) South 53 degrees 37 minutes 00 seconds East for a distance of 389.38 feet to a point on the High Water Line, a corner of an Easement in favor of the Commonwealth of Pennsylvania; Thence, (4) along said Easement South 53 degrees 37 minutes 00 seconds East for a distance of 26.54 feet to a point on the Low Water Line, a corner of said Easement, Thence, along the Low Water Line, the Southeasterly edge of an Easement in favor of the Commonwealth of Pennsylvania, the following four courses and distances: (1) South 43 degrees 35 minutes 38 seconds West for a distance of 181.13 feet to a point; Thence, (2) South 43 degrees 58 minutes 10 seconds West for a distance of 191.32 feet to a point; Thence (3) South 45 degrees 02 minutes 50 seconds West for a distance of 191.21 feet to a point; Thence (4) South 45 degrees 42 minutes 18 seconds West for a distance of 184.85 feet to a point, a corner; Thence, along the lands now or formerly of Pamela Kuhn, Bucks County Tax Parcel Number 04-04-22-50, North 34 degrees 07 minutes 00 seconds West for a distance of 8.71 feet to a point on the High Water Line, a corner of an Easement in favor of the Commonwealth of Pennsylvania; Thence continuing along the same lands of Kuhn, North 34 degrees 07 minutes 00 seconds West for distance of 415.84 feet to a point; Thence, continuing along the lands now or formerly of Pamela Kuhn, and along the Easterly Right-of-Way Line of the aforesaid Pine Grove Street, North 01 degrees 15 minutes 00 seconds East for a distance of 85.70 feet to a point; Thence continuing along the aforesaid Northeasterly Right-of-Way line of Pine Grove Street, the following two courses and distances: (1) North 64 degrees 15 minutes 00 seconds West for a distance of 84.50 feet to a point; Thence (2) North 68 degrees 34 minutes 00 seconds West for a distance of 126.58 feet to a point, the point and place of beginning.

CONTAINING 503,631 square feet or 11.5618 Acres more or less.

222157.1

passage in and along a right of way over and across two certain strips or pieces of land included in lands conveyed by Merchant Sterling Corporation to George N. Maroney by deed dated April 5, 1926 (now of Superior Zinc Corporation) in common with said Merchant-Sterling Corporation and Huff, Daland & Company, Incorporated, their respective successors and assigns, tenant and undertenants, occupiers and possessors of land owned by either of them, subject to the reservations and upon the terms and conditions stated in the deed dated April 5, 1926, from George N. Maroney to Merchant Sterling Corporation.

Together with the perpetual, free and uninterrupted use, liberty, privilege of and passage in and along a right of way over and across a certain strip or piece of land included in lands conveyed by Merchant-Sterling Corporation to the said Huff, Daland & Company, Incorporated, by deed dated May 29, 1925, for a perpetual right of way for a railroad of one or two tracks over and across the said premises, as surveyed and laid out by Charles Henry Moon, shown on the map or plan annexed to another deed also dated May 29, 1925, from Huff, Daland & Company, Inc., to the said Merchant-Sterling Corporation, conveying the right of way herein described in common with the said Merchant-Sterling Corporation and Huff, Daland & Company, Inc., their respective successors and assigns, tenants and undertenants, occupiers and possessors of land owned by either of them, subject to the reservations and upon the terms and conditions stated to the reservations and upon the terms and conditions stated in said deed, dated May 29, 1925, from said Huff, Daland & Company Incorporated to the said Merchant-Sterling Corporation.

Together with the perpetual, free and uninterrupted use, liberty and privilege of and passage in and along all that certain 50 feet wide right of way extending from the premises of Huff, Daland & Company, Inc., in a Northwesterly direction to the property and right of way of the Pennsylvania Railroad Company, as surveyed and laid out by Charles Henry Moon, Surveyor, May 20, 1925, the boundaries and limits thereof being shown and fixed by the red lines on the map or plan, marked "Right of Way Map A" attached to the deed dated May 29, 1925 from the said Merchant Sterling Corporation to Huff, Daland & Company, Inc., their respective successors an assigns.

The Rights of Way mentioned in the three foregoing paragraphs are appurtenant to the premises herein conveyed and run with said land.

COUNTY PARCEL NUMBER 4-22-48.

BEING the same premises which The Dial Corporation, a Delaware Corporation by Deed dated April 6, 2001 and recorded April 9, 2001 in Bucks County, in Land Record Book 2262 page 268, granted and conveyed unto Redevelopment Authority of the County of Bucks, in fee.

222157.1

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected situate in the Borough of Bristol, Bucks County, Pennsylvania, and described according to a survey made thereof by C.H. Moon on February 17, 1926, as follows:

BEGINNING at an iron pipe in the center line of Radcliffe Street in line of land of Huff and Daland Company; thence extending Southwardly along the same 53 degrees 37 minutes East 375.7 feet; thence extending Northwardly 36 degrees 23 minutes East 36.1 feet; thence extending Southwardly 53 degrees 37 minutes East 455.7 feet to a point in the United States Government Pier head and bulkhead line of the Delaware River; thence along the same Southwardly 33 degrees, 49 minutes West 446.85 feet; thence extending Northwardly 53 degrees 37 minutes West 475.7 feet; thence extending Northwardly 36 degrees 23 minutes East 152.6 feet; thence extending Northwardly 53 degrees 37 minutes West 375.7 feet to a point in the center line of Radcliffe Street; thence along the same Northwardly 36 degrees 23 minutes East 257.7 feet to the place of beginning.

County Parcel No. 4-22-49.

BEING the same premises which The Bucks County Redevelopment Authority acquired title to premises identified as Bucks County Tax Parcel No. 4-22-49 by Declaration of Taking filed 03/23/1989 as No. 89-02313-14-4 and a Notice of Filing recorded in Land Record Book 30 page 117.

222157.1