IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : |
| | : |
| | : CHAPTER 11 |
| ISLAND VIEW CROSSING II, L.P., | : |
| | : BANKRUPTCY NO. 17-14454 (ELF) |
| Debtor. | : |
| | : |

**OBJECTIONS OF PRUDENTIAL SAVINGS BANK TO THE FIRST INTERIM APPLICATION FOR COMPENSATION & REIMBURSEMENT OF EXPENSES OF NEWBRIDGE MANAGEMENT, LLC, AS FINANCIAL ADVISORS FOR KEVIN O'HALLORAN, THE CHAPTER 11 TRUSTEE FOR ISLAND VIEW CROSSING II, L.P. FOR THE PERIOD FEBRUARY 4, 2018 THROUGH JULY 31, 2021**

Prudential Savings Bank ("Prudential"), by and through its undersigned counsel, hereby files these objections ("Objections") to the First Interim Application for Compensation & Reimbursement of Expenses of Newbridge Management, LLC ("Newbridge"), as Financial Advisors for Kevin O'Halloran, the Chapter 11 Trustee (the "Trustee") for the estate of Island View Crossing II, L.P., (the "Debtor"), for the Period from February 4, 2018 through July 31, 2021.

Prudential avers that the fees are patently unreasonable and excessive, and that Newbridge appears to bill for work that is within the province and duty of the Trustee. In support of its Objections, Prudential states as follows:

1. Newbridge was retained by the Trustee to provide services as the Trustee's Financial Advisors.

2. Newbridge filed an application for compensation in the amount of $1,136,048.73, including expenses of over $103,000.00 through only July of 2021 (the "Application"). Presumably, Newbridge will have many more months for fees between the date of its Application and confirmation.

1

3. The Trustee is developing Island View Crossing II, L.P., now "Radcliff on the Delaware" (the "IVC Project") under the promise of payments to creditors. Unfortunately, the Trustee's prognostications, and the projections supporting this decision, have not come to fruition. The Trustee has filed a plan of liquidation, which is contingent on litigation, and does **not providing for any firm distribution** to unsecured creditors.

4. The Trustee has developed the IVC Project in Phase I without generating any money for unsecured creditors. Indeed, the outcome for Phase I is likely to be repeated on Phase II, where the value is speculative and reduced. The Trustee has removed all equity from the IVC Project without generating a dime for creditors.

5. While not a single dollar has been generated for unsecured creditors in the case, while the Trustee and his embedded Financial Advisors seek excessive payments from the Debtor's estate. The Application must be reviewed with that backdrop.

6. Between the Trustee and his professionals, nearly $4,000,000.00 will be paid out, on administrative expenses, without any distribution to creditors.

7. Accordingly, fees should not be awarded at all, until the outcome of this case is clearer.

8. To the extent the court now wishes to review the Application, Prudential avers that the fees and expenses of Newbridge are excessive and duplicative of time the Trustee should have been spending as a part of his duties.

9. The Trustee has an interest in Newbridge, which is disclosed. However the Trustee's interest is significant enough to justify additional scrutiny. It is not disclosed exactly how these requested fees would benefit the Trustee financially, but suffice is to say, he will benefit. Accordingly, this court should assess the relationship between the Trustee and

Newbridge and assure that Newbridge is not doing the Trustee's job and forcing creditors to pay for it.

10. Accordingly, because the extent of the Trustee's financial interest in Newbridge is undisclosed, the fees of Newbridge are to be exposed to a higher scrutiny.

11. The bankruptcy court's scrutiny of professional fee applications is particularly important when a trustee and/or his firm has been authorized to serve as an attorney or accountant for the estate. See In re Bird, 577 B.R. 365, 374 (10th Cir. BAP 2017). Section 327(d) permits this 'dual capacity' status. But in light of the fact this recognized conflict of interest provides an opportunity for self-dealing, a trustee may be retain his own firm only if it 'is in the best interests of the estate.' Id. This issue is more significant here, where the Trustee owns an interest in Newbridge, benefits financially from payments to it, and does not appear to have been careful in the division of labor between him and his Financial Advisors.

12. Particularly where, as here, the Trustee's plan provides no meaningful distribution to unsecured creditors of the estate, the claims of Newbridge, and its relationship with the Trustee must be held up to further scrutiny. The fees themselves are excessive. Over $1,000,000,000.00 in a case where the Trustee has generated no distributions in Phase I of the development, though he promised to.

13. It further appears that if the Trustee sells Phase II, there will be no additional money for unsecured creditors. The Debtor's original case has become saddled with unrecoverable and excessive administrative expenses, each of which will dwarf any distribution to creditors, unless the Trustee wins hotly contested litigation with Prudential.

14. Newbridge spent substantial moneys for efforts that are uniquely the Trustee's.

15. Newbridge charges $50,572.50 for "Asset Analysis and Recovery". Ironically, the Trustee has not found, nor has he recovered, a single additional asset in this case. Newbridge does not explain why the Trustee is not investigating assets. The Trustee has sued no other party other than Prudential. It has not identified or brought any claims against Gaultieri for his mismanagement or misuse of the Debtor's funds. Notwithstanding that this is the Trustee's duty, there has been no benefit from these services.

16. Newbridge spent $9,155.00 on "Business Operations". No further detail is given relating to these alleged services. The description is vague and unhelpful, and appears to reflect a duplication of other efforts.

17. Newbridge spent $81,330.00 on "Case Administration", when it is the one of Trustee's duties to administer the case. The services are described generally as "reviewing analyzing and resolving various issues that arose during the administration of the case." This description is unintelligible, and does not identified a single achieved objective, within the Fincial Advisor's retention in the case.

18. Newbridge billed $28,392.50 on "Insurance". Notably, not a single insurance claim was made during the case, so it is likely that Newbridge was billing to obtain or administer insurance, which is the Trustee's job. The fees, even if appropriate, are excessive.

19. Newbridge billed $53,362.50 on "Litigation-Lender Liability" for a "damage calculation". This is excessive in light of the fact that the Debtor never incurred a profit, had no finances to model such a calculation, and no report for this alleged service was provided.

20. Newbridge billed $39,865.00 for "Meetings and Communications with McGrath", the now fired construction manager. The Trustee had issues with McGrath and his services, such that the Trustee determined McGrath breached the Construction Management Agreement. There

4

is no further description of the time spent on this particular task, or set of tasks.  Further, there is no indication that Newbridge did anything during these meetings.  Dealing with McGrath and its contract breaches are jobs for the Trustee.

21.  Newbridge spent $152,227.50 on "Sales and Marketing".  Why a Financial Advisor was involved at all in the sales or marketing is not intuitive, and the descriptions of the work are of little assistance.  This appears to be a service the Trustee should have been providing.  This is alleged to be time spent ". . . with the Title company, and other closing agents in the coordination of sales contracts and closings. . .".  The Fees are excessive and not justified.  Moreover, this is the Trustee's duty.

22.  Newbridge spent $30,000.00 trying to reconcile McGrath's calculation of option prices - one of the shortcomings in McGrath's services that ultimately resulted in McGrath's termination.  This was the Trustee's responsibility.  The Trustee believed McGrath was mishandling options at the IVC Project.  No reconciliation has ever been provided.  It is the Trustee's duty to monitor contract compliance by McGrath, not the Financial Advisor.

23.  Sections 19 and 19a of the services description are $115,842.50 and $78,860.00, respectively.  Nearly $200,000.00 to monitor cash – a job for the Trustee and to do, and monthly operating reports.  The Fees for "monitoring cash" are not a service for the Financial Advisor, but is for the Trustee.  The fees for reporting are excessive for these tasks.

24.  Section 19d is a request for $63,567.50 for "processing reporting related to sales of Townhomes".  This entry is duplicative of the time stated for the reporting of sales results.

25.  Section 20 refers to "Site/Security".  The amount Newbridge charged was $13,290.00.  The Trustee incurred over $500,000.00 in security expenses.  Accordingly, this time was beyond Newbridge's retention and unnecessary.

5

26. Much of Newbridge's services are described as "tracking site improvement expenditures"- another job that is inherently the Trustee's.

27. Newbridge seems to be justifying its elephantine fees on the fact the Trustee sold property. Newbridge has little to do with this. Newbridge ignores the absolute failure of the Trustee to generate and profit or distributions for creditors when requesting fees.

28. The fees of Newbridge in the Application are excessive, unnecessary, provided no benefit to the estate, and should not be approved.

WHEREFORE, and for the foregoing reasons, Prudential prays this court enter an order in the form attached denying or significantly reducing the fee request of Newbridge as the Trustee's Financial Advisors, and providing such other and further relief as the court deems just and equitable.

Respectfully submitted,

Dated: November 8, 2021       BY: */s/ Edmond M. George*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3000
Facsimile: (215) 665-3165
Email: Edmond.george@obermayer.com

*Counsel to Prudential Savings Bank*