IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ISLAND VIEW CROSSING II, L.P. | : | BANKRUPTCY NO. 17-14454(ELF) |
| | : | |
| Debtor | : | |
| | : | |

**MOTION OF KEVIN O'HALLORAN, CHAPTER 11 TRUSTEE, FOR APPROVAL OF A SETTLEMENT AGREEMENT WITH STRADLEY RONON STEVENS & YOUNG, LLP PURSUANT TO FED. R. BANKR. P. 9019(a) AND 11 U.S.C. § 105(a)**

Kevin O'Halloran, in his capacity as the Chapter 11 Trustee (the "Trustee") for the estate of Island View Crossing II, L.P. (the "Debtor"), by and through his counsel, Karalis PC, respectfully moves this Honorable Court for the entry of an Order approving a Settlement Agreement (the "Agreement") with Stradley Ronon Stevens & Young, LLP ("Stradley") (referred to collectively as the "Parties" and individually as a "Party") pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a) (the "Motion"), and in support thereof, respectfully avers as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

2.     The statutory basis for the relief requested herein is Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a).

## BACKGROUND

3.     On June 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"), in the matter of *Island View Crossing II, L.P. (Debtor)*, U.S.B.C.E.D.PA, case No. 17-14454 (ELF)

(the "Bankruptcy Case"). The Debtor continued in the management and operation of its business and property as a debtor in possession until December 18, 2017, when the Bankruptcy Court directed the appointment of a chapter 11 trustee.

4. On April 20, 2021, the Trustee filed a plan of liquidation dated April 19, 2021 in the Bankruptcy Case, as modified on December 14, 2021, which has been confirmed by the Bankruptcy Court (the "Plan").

## STRADLEY'S GENERAL UNSECURED CLAIM

5. On September 21, 2017, Stradley filed a proof of claim in the Bankruptcy Case in the amount of $1,680,625.69 designated as a general unsecured claim (claim no. 14-1 on the Court's Claim register). On September 27, 2022, Stradley filed an amended proof of claim in the Bankruptcy Case in the amount of $1,655,625.69 designated as a general unsecured claim (claim no. 14-2 on the Court's Claim register) (the "First Amended Claim") and on September 28, 2022, filed a further amended claim to correct a typographical error in the First Amendment Claim (claim no. 14-3 on the Court's Claim register) (together with the First Amended Claim, the "Stradley Amended Unsecured Claim"). The Stradley Amended Unsecured Claim is an allowed general unsecured claim in the Bankruptcy Case.

## STRADLEY'S FIRST AND FINAL FEE APPLICATION

6. On July 12, 2021, Stradley filed its First and Final Fee Application as special litigation counsel for the Debtor for the period from July 18, 2017 through February 28, 2018 for compensation in the amount of $364,220.50 and reimbursement of expenses of $980.14 for a total amount of $364,220.50 ("Stradley Final Fee Application") [D.I. 755].

7. On July 26, 2021, Prudential Bank ("Prudential") filed objections to the Stradley Final Fee Application [D.I. 774].

8. On August 30, 2021, the Trustee filed a Limited Objection to the Stradley Final Fee Application [D.I. 811].

9. On December 2, 2021, a hearing was held with respect to the Stradley Final Fee Application and at the end of this hearing the Court allowed the Trustee until December 17, 2021 to file a statement as to his position with respect to the Stradley Final Fee Application after considering all of the evidence presented at this hearing.

10. On December 17, 2021, the Trustee filed his Statement with Respect to Allowance of the Stradley Final Fee Application [D.I. 915] and on December 24, 2021, Stradley filed a response to the Trustee's Statement [D.I. 927].

11. The Parties have been unable to resolve the objections to the Stradley Final Fee Application that were taken under advisement by the Bankruptcy Court. Stradley requested the Bankruptcy Court to reopen the record with respect to the Stradley Final Fee Application and the Trustee and Prudential did not object to this request.

12. On September 28, 2022, the Bankruptcy Court entered an Order reopening the record with respect to the Stradley Final Fee Application and scheduled a further hearing for November 10, 2022, to continue on November 14, 2022, if necessary.

### STRADLEY'S REQUEST FOR AN ADMINISTRATIVE CLAIM PURSUANT TO 503(b)(3)(D) AND 503(b)(4)

13. On July 12, 2021, Stradley filed its Motion for an Order Allowing Administrative Expense Pursuant to Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code (the "Stradley Request for an Administrative Claim") [D.I. 756].

14. On August 30, 2021, Prudential filed objections to the Stradley Request for an Administrative Claim [D.I. 810] and the Trustee filed his Limited Objection to the Stradley Request for an Administrative Claim [D.I. 811].

3

15. On December 2, 2021, a status hearing was held with respect to the Stradley Request for an Administrative Claim at which time: (i) Stradley withdrew its request for fees in the amount of $34,531.00 (designated as Category 5 in its motion), and (ii) the Trustee and Prudential agreed to the Stradley request in the amount of $23,517.00 (designated as Category 3) could be allowed as an administrative claim.

16. In response, the Court entered an Order allowing an administrative claim for Stradley in the amount of $23,517.00 (the "Stradley Allowed Administrative Claim") [D.I. 888], and the parties deferred the hearing on the balance of the Stradley Request for an Administrative Claim in the amount in the amount of $153,402.00.

17. To avoid the incurrence of continuing and substantial expenses and the significant uncertainties with respect to the remainder of the Stradley Request for an Administrative Claim, the Parties have decided to compromise, settle, and forever resolve this claim, as stated in the Agreement. The Agreement is attached hereto as Exhibit "A" and made a part hereof.

## RELIEF REQUESTED

18. Pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a), the Trustee seeks approval of the Agreement.

19. The terms and conditions of the Agreement provide, *inter alia*, as follows:

    A. **Effective Date and Related Matters**. No later than seven (7) days after the execution and delivery of the Agreement, the Trustee shall file with the Bankruptcy Court a motion to approve the Agreement under Fed. R. Bankr. P. 9019 and otherwise applicable bankruptcy law ("Settlement Motion"). This settlement shall be evidenced and implemented by the Agreement, the Settlement Motion, and the "Final Order" approving the Agreement. "Final Order" shall mean an order entered by the Bankruptcy Court which is unstayed and has become final and non-appealable. The term "Effective Date" shall mean the date on which the order entered by the Bankruptcy Court approving the Agreement (the "Approval Order") becomes final and non-appealable.

B. **Allowance and Subordination of Stradley Request for an Administrative Claim**. Upon the Effective Date, the Stradley Request for an Administrative Claim in the amount of $153,402.00 shall be an allowed administrative claim in the Bankruptcy Case but shall be subordinated to the payment of:

   i. all fees, costs and expenses incurred by the Trustee to (a) complete, market and sell the fifteen (15) remaining riverfront units in Phase 1 and (b) complete, dedicate and/or turnover the Site Improvements for the Real Property (as these capitalized terms are defined in the Plan) to the Borough of Bristol or its municipal authorities, the homeowners association or the master association, as applicable;

   ii. all other allowed administrative claims in the Bankruptcy Case;

   iii. all allowed secured claims in Class 1, Class 2, and Class 3 of the Plan;

   iv. all allowed pre-petition judgment claims in Class 7 of the Plan;

   v. all allowed priority claims in Class 8 of the Plan; and

   vi. all allowed general unsecured claims in Class 9 of the Plan including, the Prudential $1,000,000 general unsecured claim but exclusive of any post-petition interest that may be payable to holders of allowed general unsecured claims, if any, as set forth in Section 3.9.2(ii) of the Plan.

   After all the claims set forth above are paid, Stradley shall receive the remaining distributions under the Plan, if any, until the Stradley Request for an Administrative Claim has been paid in full, and before any distributions are made of post-petition interest that may be due to holders of allowed Class 9 general unsecured claims under the Plan, and before any distributions that may be due to the holders of Class 10 Limited Partner Interests under the Plan.

C. **Release of Stradley**. Upon the Effective Date and except as provided in paragraph 6 of the Agreement, and the obligations under the Agreement and the Plan (to the extent not modified by the Agreement), the Trustee on behalf of the Debtor and the Debtor's estate, without further action, irrevocably and unconditionally, fully and finally and forever waives, releases, acquits and discharges Stradley, and its members, directors, officers, managers, partners, attorneys, employees, insurers, agents, and each of their successors and assigns (collectively, the "Stradley Releasees") of and from any and all claims, obligations, suits, judgments, damages, demands, debts, liabilities, or causes of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, asserted

5

or retained, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, statute or otherwise, including but not limited to any of the foregoing arising under theories of contract, agency, tort, equity or otherwise.

D. **Stradley's Release**. Upon the Effective Date and except as provided in paragraph 6 of the Agreement, and the obligations under the Agreement and the Plan (to the extent not modified by the Agreement), Stradley shall, without further action, irrevocably and unconditionally, fully and finally and forever waives, releases, acquits and discharge the Trustee, the Trustee's professionals and agents, the Debtor and the Debtor's estate (collectively, the "Debtor Releasees") of and from any and all claims, obligations, suits, judgments, damages, demands, debts, liabilities, or causes of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, asserted or retained, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, statute or otherwise, including but not limited to any of the foregoing arising under theories of contract, agency, tort, equity or otherwise.

E. **Limitations on Above Releases**. Notwithstanding, the releases contained above, nothing contained in said releases shall release or discharge any obligation of:

   i. Stradley or the Trustee under the Agreement; and

   ii. The Trustee to Stradley under Class 9 of the Plan as modified by the Agreement; and

   iii. Notwithstanding the releases contained above, the Trustee, the Debtor and the Debtor's estate preserve, retain and may hereafter assert any and all claims and defenses of the Debtor and the Debtor's estate against Stradley arising out of or in connection with Debtor's retention of Stradley after the Petition Date as special litigation counsel, including but not limited to: (i) the Stradley Final Fee Application for which the Trustee and Prudential agreed to permit Stradley to reopen the record with respect thereto and for which a further hearing on the Stradley Final Fee Application is scheduled on November 10, 2022 and November 14, 2022 to be conducted by video conferencing; and (ii) the right to assert by way of claim or defense that Stradley is not entitled to recover or to be paid for the fees and costs set forth in the Stradley Final Fee Application. Stradley likewise reserves and preserves all of its rights, claims and defenses with respect to the Stradley Final Application.

F. **Representations and Warranties.**

  i. Each Party represents and warrants that they have carefully read the Agreement, the contents thereof are known to them, and that the Agreement is executed voluntarily and without duress or undue influence.

  ii. Each Party represents and warrants that in executing the Agreement each rely solely upon its own judgment, belief, and knowledge, and on the advice and recommendations of its own independently selected counsel, concerning the nature, extent, and duration of its rights and claims, and that each has not been influenced to any extent whatsoever in executing the same by any representations or statements covering any matters made by any of the Parties or by any person representing them or any of them.

  iii. Each Party represents and warrants that (i) the persons and entities executing the Agreement have the power and legal authority to do so, (ii) have taken all necessary actions to authorize the execution, delivery and performance of the Agreement, (iii) the Agreement has been duly executed and delivered by each Party, subject to Bankruptcy Court approval, (iv) constitutes the legal, valid, and binding obligations of such Party, enforceable against it in accordance with their respective terms, and (v) such Party's execution, delivery, and performance of the Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Party.

G. **No Admission of Liability.** The Agreement constitutes a compromise of the Parties' disputes. Nothing in the Agreement shall be deemed an admission of liability by any person or entity, whether party to the Agreement or otherwise.

H. **Bankruptcy Court Approval.** The Agreement is contingent upon the entry of final and non-appealable orders of the Bankruptcy Court approving the Agreement. If the Agreement is not approved by the Bankruptcy Court, the Agreement shall be null and void and made without prejudice to the Parties who shall be returned to their original factual and legal positions.

I. **Expenses.** The Parties agree that each shall bear their own costs and attorneys' fees incurred in connection with the negotiation and preparation of the Agreement.

J.  **Binding Effect.** The Agreement shall be binding upon the Parties and their respective heirs, successors and assigns.

K.  **Modification.** No term or provision of the Agreement may be varied, changed, modified, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom the enforcement of the variation, change, modification, waiver, discharge or termination is sought.

L.  **Applicable Law; Jurisdiction.** The Agreement is to be interpreted according to the laws of the Commonwealth of Pennsylvania, except to the extent inconsistent with federal law. Any dispute arising over the meaning, application or interpretations of the Agreement shall be submitted to the Bankruptcy Court for resolution, provided that, if jurisdiction cannot be had in the Bankruptcy Court, such dispute shall be submitted to the United States District Court for the Eastern District of Pennsylvania or other court of competent jurisdiction.

M.  **Entire Agreement.** The Agreement constitutes the entire agreement between or among the Parties pertaining to the subject matter hereof, and there are no terms other than those contained herein. Any agreement previously entered into between the Parties and/or any of their affiliates or subsidiaries are terminated and shall be of no force and effect.

N.  **Waiver.** A breach of any provision of the Agreement can be waived only by a writing signed by the non-breaching party. Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof. The Agreement may be amended only by a written agreement executed by the Parties.

O.  **Headings.** The headings of any paragraph of the Agreement are for convenience only and shall not be used to interpret any provision of the Agreement.

P.  **Further Action.** The Parties hereto agree to execute promptly upon request any and all other documents and instruments necessary to effectuate the terms of the Agreement.

Q.  **Counterparts.** The Agreement may be executed in counterparts and by electronic transmission, facsimile or by portable document file ("PDF") and when each of the Parties has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and all counterparts taken together shall constitute one and the same agreement, which shall be binding and effective as to all Parties. Electronic transmission, facsimile and PDF copies shall be deemed original.

*See*, Exhibit "A".

20. The discussion of the terms contained in the Agreement is intended as a summary only and all parties in interest are encouraged to read the Agreement. To the extent that there are any discrepancies between the summary contained in the Motion and the terms contained in the Agreement, the terms of the Agreement shall control.

## BASIS FOR RELIEF

21. Federal Rule of Bankruptcy Procedure 9019(a) provides "on motion by the trustee and after notice and a hearing, the Court may approve a compromise or settlement. The decision to approve or disapprove a settlement is within the sound discretion of the bankruptcy judge." *See, In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996).

22. The Trustee seeks approval, pursuant to Bankruptcy Code § 105 and Fed. R. Bankr. P. 9019, of the settlement of the claims among the Settling Parties as set forth in the Agreement.

23. In *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, *reh'g denied*, 391 U.S. 909 (1968), the Supreme Court instructed as to those factors to be considered in determining whether to approve a settlement. The factors outlined by the Supreme Court in *Anderson* have been uniformly summarized as follows:

    A.    the probability of success in the litigation;

    B.    the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it;

    C.    the difficulties, if any, to be encountered in the matter of collection; and

    D.    the paramount interest of the creditors.

*See, Martin*, 91 F.3d at 393; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993); *In re Grant Broadcasting*

9

*of Philadelphia, Inc.*, 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

24. Bankruptcy Rule 9019 authorizes this Court to approve the settlement entered into by the Trustee. The decision whether to accept or reject a compromise is committed to the sound discretion of the Bankruptcy Court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *See, Louis's*, 211 B.R. at 801. *See also, In re Neshaminy Office Building Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

25. The settlement need not be the best that the debtor could have achieved, but must only fall "within the reasonable range of litigation possibilities." *See, In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court is not to substitute its own judgment for that of the debtor. *See, Neshaminy Office Bldg.*, 63 B.R. at 803. Moreover, it is not necessary for the court to conduct a truncated trial of the facts of the merits underlying the dispute. *See, Grant Broadcasting*, 71 B.R. at 396. *See also, In re A&C Properties*, 784 F.2d 1377, 1384 (9th Cir.), cert. denied, 479 U.S. 854 (1986). Rather, the court need only "canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." *See, Neshaminy Office Bldg.*, 62 B.R. at 803, *quoting, In re W.T. Grant Co.*, 4 B.R. 53, 69 (S.D.N.Y. 1977).

**BASIS FOR SETTLEMENT**

26. In the present case, the Agreement clearly falls within the range of reasonableness for purposes of satisfying Rule 9019 criteria.

27. The dispute between the Parties involves numerous and complex issues. The Agreement resolves these matters in a manner which, in the exercise of his business judgment, the Trustee believes highly beneficial to the bankruptcy estate.

28. If the Agreement is not approved, it will be costly and time consuming for the

Parties, there are uncertainties in connection with the outcome and the potential for appeals, all of which could delay the final determination of these matters for a significant period of time.

29. If the Agreement is approved, the Stradley Request for an Administrative Claim in the amount of $153,402.00 shall be an allowed administrative claim in the Bankruptcy Case but it shall be subordinated to the payment of all the fees, costs, expenses and claims in paragraph 3 of the Agreement. Therefore, until all the fees, costs, expenses and claims in paragraph 3 of the Agreement are paid in full as set forth in the Agreement, there will be no payment on account of the Stradley Administrative Claim allowed by the terms of the Agreement.

30. The Trustee believes in his business judgment that the Agreement is in the best interests of the Debtor's estate and creditors.

## NOTICE

31. The Trustee's counsel has served this Motion and Notice of this Motion upon: (a) the Office of the United States Trustee, (b) counsel to Stradley, (d) counsel to Prudential, and (d) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Trustee respectfully submits that no further notice is necessary.

[Intentionally left blank]

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court enter an Order (i) approving the Agreement and (ii) granting such other and further relief it deems just and proper.

**Respectfully submitted,**

**KARALIS PC**

By: /s/ Robert W. Seitzer
ARIS J. KARALIS
ROBERT W. SEITZER
1900 Spruce Street
Philadelphia, PA  19103
(215) 546-4500
akaralis@karalislaw.com
rseitzer@karalislaw.com

*Attorneys for the Trustee*

Dated: October 17, 2022